AYNUR BAGHIRZADE
1968 S. Coast Highway #2429
Laguna Beach, CA 92651
Phone: 619-630-6646
Email: contact@aynurlawyers.com

*AYNUR BAGHIRZADE, IN PRO SE*

# UNITED STATES DISTRICT COURT FOR THE

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYNUR BAGHIRZADE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ARMENIAN NATIONAL COMMITTEE OF AMERICA, A NON-PROFIT CORPORATION, et al.<br><br>Defendants. | Case No.: 24CV1077 RSH MMP<br><br>**OPPOSITION TO DEFENDANTS YELP INC. AND JEREMY STOPPELMAN'S MOTION FOR DISMISSAL PURSUANT TO F.R.C.P. RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with Declaration of Aynur Baghirzade; Exhibits; Proposed Order, and Certificate of Service]<br><br>Date: 10/14/2024<br>Place: 3B-3rd Floor (Rm# 3142)<br><br>Presiding Judge: Hon. Robert Huie<br><br>Magistrate Judge: Hon. Michelle M. Petit |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................10

II.   FACTUAL & PROCEDURAL BACKGROUND............................................10

III.    LEGAL STANDARD FOR MOTION TO DISMISS...................................15

    1.    Ninth Circuit is Hostile to 12 (b)(6) Motion for Failure to State Claim...............15

IV.   ARGUMENTS

    **A**. Neither Defendant Yelp Inc., nor Defendant Jeremy Stoppelman has protection of Section 230 of CDA as the Plaintiff's claims arise from criminal law.........................17

    **B.** Each Act of the Defendants Yelp Inc. and Jeremy Stoppelman was not an innocent editorial decision, instead it was a predicate act of wire fraud, intentional and deliberate to defraud public and damage Plaintiff's reputation and business.........................19

    **C**. Plaintiff has no burden under RICO statute to prove conspiracy once pattern of predicate acts is established contrary to allegations of Defendant Yelp Inc. and Jeremy Stoppelman..................................................................................20

    **D**. Plaintiff successfully showed several patterns of racketeering activity committed by the Defendants..................................................................................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E.** Defendants Yelp Inc. and Jeremy Stoppelman have no protection of Section 230 of CDA because they allowed copyright infringement and invasion of Plaintiff' Privacy Rights..................................................................................**23**

**F**. Defendants Yelp Inc. and Jeremy Stoppelman do not have protection of Section 230 of CDA because they were not publishers, but content creators..............................**24**

**G**. Defendants Yelp Inc. and Jeremy Stoppelman do not have protection of Section 230 of CDA because they violated their own TOS. ..................................................**25**

**H**. Defendants Yelp inc. and Jeremy Stoppelman do not have protection of Section 230 of CDA because they acted not in good faith as it was required by the Statute and by their own TOS. ..................................................................................**25**

**I.** Plaintiff's Claim for Conspiracy Pursuant to Section 1 of the Sherman & Clayton Act was Sufficiently Pleaded in The Complaint. ..............................................**27**

**K.** Plaintiff has pleaded enough facts showing that Defendants Yelp Inc. was a place of public accommodation..............................................................................**28**

**L.** Plaintiff pleaded enough facts in her complaint to establish violation of the California Business and Professional Code, Section 16720, et seq. ....................................**29**

**M**.  Plaintiff has pleaded enough facts to establish Unfair Competition and Defendants' references to First Amendment rights are invalid, as the speech at Defendants' platform was commercial and in any case unprotected speech. …………………………………**30**

**N.**  Plaintiff pleaded enough facts on discrimination under Unruh Act …………………**32**

**O**.  Plaintiff pleaded enough facts for Civil Harassment and her claims are not barred by First Amendment as the speech at Defendants' platform was unprotected speech………**33**

**P**.  Plaintiff pleaded enough facts for IIED and NIED …………………………………**34**

**R.**  Plaintiff is not bared by Defendants' TOS, because Defendants violated their own TOS. …………………………………………………………………………………………**35**

**V.**    **CONCLUSION** ……………………………………………………………………..**36**

# TABLE OF AUTHORITIES

*CASES:*

*Angelucci v. Century Supper Club,*
    41 Cal.4th 160, 59 Cal. Rptr. 3d 142, 158 P.3d 718 (Cal. 2007)................32

*Ashcroft v. Iqbal,*
    556 U.S. 662, 663-64 (2009)…………………………………………………17

*Auster Oil Gas, Inc. v. Stream,*
    764 F.2d 381, 386 (5th Cir. 1985)…………………………………………15

*Avidity Partners, LLC v. State,*
    221 Cal.App.4th 1180, 165 Cal. Rptr. 3d 299 (Cal. Ct. App. 2014)..........26

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)…………..………16

*Blair Foods, Inc. v. Ranchers Cotton Oil,*
    610 F.2d 665, 671 (9th Cir. 1980) …………………………………….. 29

*Burgess v. Superior Court,*
    2 Cal.4th 1064, 9 Cal. Rptr. 2d 615, 831 P.2d 1197 (Cal. 1992)………… 35

*Calise v. Meta Platforms, Inc.,*
    103 F.4th 732 (9th Cir. 2024)…………………………………………………26

*Conley v. Gibson,*
    *355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)*.................16

1

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.,*
    946 F.3d 1040 (2019)……………………………………………………….23, 26

*Facenda v. N.F.L. Films, Inc.,*
    542 F.3d 1007, 1017 (3dCir. 2008)…………………………………… 30

*Frost v. LG Elecs., Inc.,*
    801 Fed. Appx. 496, 497 (9th Cir. 2020)…………………………… 27

*Gibson v. United States,*
    781 F.2d 1334, 1337 (9th Cir. 1986………………………………......16

*Gilligan v. Jamco Development Corporation,*
    108 F.3d 246, 248-49 (9th Cir. 1997)……………………………………16

*Hall v. City of Santa Barbara,*
    833 F.2d 1270, 1274 (9th Cir. 1986)……………………………………16

*Harris v. Capital Growth Investors XIV,*
    52 Cal.3d 1142, 278 Cal. Rptr. 614, 805 P.2d 873 (Cal. 1991)……………32

*Hughes v. Pair,*
    46 Cal.4th 1035, 1050-51 (2009)…………………………………… 35

*Jordan v. Jewel Food Stores, Inc.,*
    743 F.3d 509 (7th Cir. 2014)………………………………………….30

*Kimzey v. Yelp, Inc.*
    836F.3d 1263, 1269 (9th Cir. 2016)………………………………… 24

*Koebke v. Bernardo Heights Country Club,*

    36 Cal.4th 824, 31 Cal. Rptr. 3d 565, 115 P.3d 1212 (Cal. 2005)............. 32


*Leighty v. Spokane Cnty.,*

    2:24-CV-0165-TOR (E.D. Wash. Jul. 16, 2024)...........................31, 33


*Liapes v. Facebook, Inc.,*

    95 Cal.App.5th 910, 313 Cal. Rptr. 3d 330 (Cal. Ct. App. 2023)............32


*Noah v. AOL Time Warner Inc.,*

    261 F. Supp. 2d 532 (E.D. Va. 2003)......................................28


*Prager University v. Google LLC,*

    85 Cal. App. 5th 1022; 301 Cal. Rptr. 3d 836 (2022)............... 25, 31, 33


*RJR Nabisco, Inc. v. European Cmty.,*

    136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016)...................................... 18


*Salinas v. United States,*

    522 U.S. 52, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)................... 20, 27


*Scheur v. Rhodes,*

    416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)............. 16


*UMB Bank v. Guerin,*

    89 F.4th 1047 (8th Cir. 2024).............................................19


*United States v. Larios-Villatoro,*

    No. 16-20194 (5th Cir. Nov. 1, 2018)...................................... 21

*United States v. Sawyer,*
    799 F.2d 1494, 1502 (11th Cir. 1986)…………………………………….. 19

*United States v. Sryniawski,*
    48 F.4th 583 (8th Cir. 2022)……………………………………………31, 33

*USA v. Stepanyan, et al.,*
    # 2:21-cr-00188………………………………………………………….13

*U.S. v. Hovsepian,*
    422 F.3d 883 (9th Cir. 2005)……………………………………………13

*Wayne Johnson for Cong., Inc. v. Hunt,*
    2024 U.S. App LEXIS 2850, 2024 WL471938……………………………19

*Wozniak v. YouTube, LLC,*
    319 Cal. Rptr. 3d 597, 100 Cal.App.5th 893 (Cal. Ct. App. 2024)………. 24


***STATUTES:***


California Business & Professional Code, § 16720……………………………… 29

California Business & Professional Code, § 17200………………………………30

California Civil Code, § 51……………………………………………………… 32

California Code of Civil Procedure, § 527.6 …………………………………….33

Fed.R.Civ.P 8 (a)……………………………………………………………….15

Fed.R.Civ. P 8 (a)(2)…………………………………………………………….16

*CONSTITUTIONAL POVISIONS:*

15 U.S.C. § 1………………………………………………………………… 27

18 U.S.C. § 371……………………………………………………………… 27

18 U.S.C. §§ 1460 or §§ 2251 ……………………………………………… 18

18 U.S.C. §1961(1)(A)……………………………………………………… 18

18 U.S.C. §1961(1)(B)-(C), (E)-(G)……………………………………… 18

18 U.S.C. §1961(1)(D)……………………………………………………… 18

18 U.S.C. § 1962(C)………………………………………………………… 19

18 U.S.C. § 1962(D)………………………………………………………20, 27

18 U.S.C. §§1961-1968……………………………………………………… 18

18 U.S.C. § 2331…………………………………………………………… 22

18 U.S.C. § 2331- 2339D…………………………………………………… 22

42 U.S.C. § 2000a(b)(4)…………………………………………………… 28

47 U.S.C. § 223 or 231……………………………………………………… 18

47 U.S.C. § 230……………………………………………………17, 23, 26, 32

47 U.S.C.  § 230(b)(2)-(3)…………………………………………………… 26

47 U.S.C.  § 230(c)(1)………………………………………………………17

47 U.S.C.  § 230(c)(2)(1)……………………………………………………17

47 U.S.C.  § 230(c)(2)(a)……………………………………………………26

47 U.S.C.  § 230(e)(1)………………………………………………………18

47 U.S.C.  § 230(e)(2)………………………………………………………23

OPPOSITION TO DEFENDANTS YELP INC. AND JEREMY STOPPELMAN'S MOTION FOR DISMISSAL PURSUANT TO F.R.C.P. RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

9                        24CV1077 RSH MMP

# I. INTRODUCTION

Plaintiff and everyone else in his protected class of US citizens or permanent residents have a right to be free of public corruption, antitrust violations, and racketeering by false actors.

Defendants Yelp Inc., Jeremy Stoppelman are only two of around 20 Defendants Plaintiff currently sues in this court. The real number of Defendants are much more than stipulated in the complaint brought before Southern District of California in June 21, 2024, the magnitude of the attack on Plaintiff's personality, life, health, finances and her business is paramount. Plaintiff in fact considers bringing even more Defendants to this lawsuit, but is concerned that she will not be able to handle too many Defendants as she is left alone to fight enormous enterprise formed against her with the sole purpose to destroy her mentally, financially and even physically. Defendant Yelp Inc., and Jeremy Stoppelman now claim that they have no relationship to the Enterprise and that they have defense of Section 230 of Communication Decency Act (CDA), shielding them from everything, including crime.  Both Defendants are wrong. Besides, Defendants clearly do not understand that the lawsuit brought against them is not a simple negligence claim, is not a simple civil lawsuit,  they are sued as a part of much bigger enterprise. Motion to dismiss is based on plausible, completely speculative arguments, allegations that complaint is "missing" facts are completely wrong, as facts were pleaded sufficiently and Plaintiff was not required under the Law to enclose any evidence at the stage of drafting her complaint.

## II.  FACTUAL & PROCEDURAL BACKGROUND

In September 1984, a research paper prepared by the The Global Terrorism: Justice Commandos of Armenian Genocide was issued. The paper was prepared by Terrorism Analysis Branch, Instability and Insurgency Center, Office of Global Issues, Information about the United States was provided and coordinated by the Federal Bureau of Investigation - ¶ 8, First Amended Complaint (FAC). The research paper states, "the Justice Commandos of the Armenian Geno-

cide" (JCAG) is a very efficient terrorist organization whose meticulous planning has allowed it to attack Turkish interests worldwide with virtual impunity. From its inception in 1975, JCAG has shunned connections to other terrorist groups or patron states…" , *See Exh. A*. Then the paper states "The Justice Commandos' parent organization, the Armenian Revolutionary Federation (ARF), is in competition with the other major Armenian terrorist group, the Marxist Armenian Secret Army for the Liberation of Armenia (ASALA)"… *Id*. Further the paper gives a glimpse of the history of the Armenian terrorism. It states that 'Modeled on ***Russian*** nihilist organizations - which advocated the use of intimidation, terror, assassination - these paramilitary groups evolved into well-trained soldiery, influenced strongly by the revolutionary ideas promulgated by Russian social democrats', *Id*. ***Further the research paper articulates how ARF organized fedayihs and carried out operation Nemesis for the sake of Armenian genocide.*** It says that "while officially sanctioned by the ARF, these attacks were blood -feud killings carried out by Armenian assassins"…. Killings happened worldwide, some of the most remarkable killings happened in California, including assassination of Turkish consul in Santa Barbara by Gourgen Yanikian, when the consul was lured into Biltmore hotel in Santa Barbara and then shot there back in 1973. *Id.*

Plaintiff further mentioned in her complaint that she is confused as to the incorporation status of Defendant ANCA , ¶ 2, FAC. In February 18, 2009, Citizens for Responsibility and Ethics in Washington D.C. sent their research letter to U.S. Attorney General and Commissioner of Internal Revenue in Internal Revenue Service, where they articulated that Defendants ANCA, ANCAWR as well as ARF are engaged in prohibited political activity by violating their non-profit status as well as by violating the Foreign Agents Registration Act, and by violating of the Lobbying Disclosure Act, *See Exh. B*. Though the purpose of the paper was to show that these organizations were engaged in lobbying activities without proper registration, the paper has a good evidence and facts showing what Defendant ANCA and ANCAWR present of themselves. It states "***Evidence suggests that ANCA is an agent, indeed an inseparable part, of ARF,*** yet it

has failed to register under FARA or to make required disclosures in disseminating information.", *Id*. The letter further states that "for example, in the October 22, 2005 issue of the Armenian Weekly, Hayg Oshagan, then Chairman of the Central Committee of the ARF for the Eastern Region of the United States, elaborated on the ANCA agency relationship: …. "In the diaspora, the effort is aimed towards Genocide recognition efforts… Our political work is pursued by every member of the ARF, and I organized at the local level by our Gomidehs and Armenian National Committee chapters." , at Id. Mr. Oshagan further declared, "And so we have the Hairenik Building, the Hairenik newspaper, the Armenian Weekly, the Armenian National Committee of America, the local Armenian National Committee Chapters, the local Armenian Revolutionary Federation Chapters, the Armenian Youth Federation, the Armenian Relief Society…. ", *Id*. The letter further states that there is a link between Defendants ANCA and ANCAWR leadership and terrorist acts. It states that "the ARF's governing body is the ARF Bureau, which is composed of 11 members, elected at the ARF World Congress, the most recent of which was held may 21-26, 2008 in Yerevan…. Viken Hovsepian, for example, once convicted of conspiring to destroy a Turkish consulate in Philadelphia, but now a U.S. citizen *(U.S. v. Hovsepian, 422 F.3d 883 (9th Cir. 2005))*, is a member of the ARF Bureau, the highest executive body of the party.. ", *Id*. Further, the letter urges that the Department of Justice should open a criminal inquiry into the failure of ANCA and its individual employees' persistent evasion of FARA compliance. , *Id*.

On or around July 21, 2020, DEFENDANT ANCAWR organized a demonstration of Armenians near Azerbaijan consulate in Los Angeles. More than 300 Armenians attacked a group of people of around 30 Azerbaijanis. Group of Azerbaijanis called for the help to Los Angeles sheriff, ethnically Azerbaijani Fakhri Mirzaguliyev. Fakhri Mirzaguliyev organized buses and departure of the Azerbaijanis from the area close to the consulate. Many Azerbaijanis were beaten, got severe damages, some of them ended up in hospitals with longstanding bone fractures

and other damages. After this incident, a group of Armenians with intent to defraud by using mail and wire sent numerous complaints to Los Angeles Police Department about officer Fakhri Mirzaguliyev demanding his resignation, all of those complaints investigation proved to be false and defamatory, ¶ 6, FAC, ¶ 3, Declaration of Aynur Baghirzade.

In November 4, 2020, group of Armenians attacked family owned Turkish restaurant in Los Angeles, they "stormed inside, threw hard wooden chairs at the victims, smashed glassware, destroyed a plexiglass barrier, and overturned tables." Later two of them were indicted for hate crimes *(Case USA v. Stepanyan, et al., # 2:21-cr-00188)*, ¶ 6, FAC.

In 2022, DEFENDANTS ANCA and ANCAWR with intent to defraud targeted Doctor Mehmet Oz during his election campaign to U.S. Senate. Before launching a smear campaign against Dr. Oz DEFENDANT ANCA and ANCAWR several times using wire asked him by tagging his Twitter account whether he recognizes Armenian genocide or not. After getting no response from Dr. Oz, DEFENDANTS ANCA and ANCAWR started calling different ethnic groups not to vote for Doctor Oz and give their voices to another candidate. DEFENDANTS ANCA's and ANCAWR's arguments in launching this outrageous campaign was based specifically on its racist agenda and goals, and had nothing to do with anything else, ¶¶ 6,7, FAC, ¶¶ 3,4, Declaration of Aynur Baghirzade.

On several occasions PLAINTIFF noticed how DEFENDANTS ANCA and ANCAWR with intent to defraud and using wire targeted Azerbaijani and Turkish businesses in the United States, by encouraging people to demand from the U.S. businesses to stop selling Turkish and Azerbaijani goods, because those countries are "genocidal". Turkish and Azerbaijani owners of the businesses throughout U.S. and in California report that their business accounts at Yelp and Google were shelled with negative reviews, when in 2020 a war started between Azerbaijan and Armenia, ¶ 7, FAC.

Plaintiff also alleged in the complaint that DEFENDANTS ANCA and ANCAWR use DEFENDANT YELP platform to harass Azerbaijani and Turkish business owners, whose views they do not like in order to suppress their speech in the United States. YELP is also used against those business owners who dared not to recognize Armenian Genocide. Thus, presumably an Armenian account under the name goliath.the.great in the Instagram targeted a Sacramento business, because his owner openly suggested that he does not believe in Armenian genocide. Immediately afterwards, goliath.the.great using wire and with the intent to defraud public asked his community to leave this business "great reviews" on YELP. After getting multiple negative reviews in his business account the owner of the business, stressed and lost, apologized in Instagram. Goliath.the. great didn't stop on this business owner's apology, but asked him to donate to the Armenian genocide cause, which the latter did, and only afterwards all negative reviews were deleted from his business account, ¶ 7, FAC, *See also Exh. C* .

The person with the same picture as in this instagram account later left a threat at Plaintiff's Yelp account, which was kept by Defendant Yelp Inc., for significantly long time despite her requests to remove it along with inappropriate picture of her in violation of her copyright and privacy rights, ¶ 5, Declaration of Aynur Baghirzade.

In particular, FAC states a lot facts about Yelp's actions. Defendants Yelp Inc., and Jeremy Stoppelman need to read the FAC (particularly its General Allegations part very carefully - ¶ 13, 3:28,¶ 14, 1:28, ¶ 15, 21:28, ¶ 16, 1:28, ¶ 17, 1:24 ). Plaintiff clearly do not understand allegations of Defendant Yelp Inc., and Jeremy Stoppelman that the FAC is "missing" facts while all facts were pleaded very carefully. Plaintiff also enclose with this opposition Exhibits confirming her allegations in FAC  - *See Exh. A- N*, but in no case those evidence shall be considered separately from other facts alleged in the Complaint, because  Yelp Inc. and Jeremy Stoppelman were only part of the Enterprise.

Particularly, Defendant Yelp Inc.'s staff was engaged primarily in defrauding public not as a publisher, but as a content creator by sending her at least two formerly removed fake reviews with new date but with Plaintiff's past dated comments under them, ¶ 5, Declaration of Aynur Baghirzade, *See also Exh. J.*

Defendant Yelp Inc's staff also violated its own Terms and Conditions when back in January 2024 refused to close her account despite her requests, intentionally left it open, after which another two fake reviews were placed in Plaintiff's account and were left there despite her protests, ¶¶ 13, 14, FAC, ¶ 5, Declaration of Aynur Baghirzade.

Defendant Yelp Inc. violated its own Terms and Conditions again when after her request to close her account they changed the name of her business without her permission from Law Offices of Aynur Baghirzade to the new Accura Law Firm, locked her account by not allowing her to make any changes and by constantly removing all positives reviews about her business to make sure that they satisfy demands of the Armenian Enterprise and her business has a poor rating, ¶ 17, FAC.

On June 21, 2024 Plaintiff filed her complaint, on August 15, 2024, Plaintiff filed her FAC.

### III. LEGAL STANDARD FOR MOTION TO DISMISS

1. <u>Ninth Circuit is hostile to 12(b)(6) Motions for Failure to State Claim</u>

The Ninth Circuit is particularly hostile to motions to dismiss for failure to state a claim. "The federal rules require only a "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P 8 (a)*. The Rule 8 standard contains "a powerful presumption against rejecting pleading for failure to state a claim." *(Auster Oil Gas, Inc. v. Stream,*

*764 F.2d 381, 386 (5th Cir. 1985); see also Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986)* ("It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.").

The Supreme Court has explained that 'it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *(Scheur v. Rhodes, 416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)).* In reviewing the sufficiency of a complaint, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *(Gilligan v. Jamco Development Corporation, 108 F.3d 246, 248-49 (9th Cir. 1997).*

Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *(Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).).* Under Federal Rules of Civil Procedure 8 (a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations are not required, Twombly, 550 U.S., at 555, 127 S.Ct. 1955, but the Rule does not call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its place", id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the plaintiff is entitled to relief for the misconduct alleged. *Id.*, at 556*, 127 S.Ct. 1955.* Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id., at 555, 127 s.ct. 1955.* A court considering the motion to dismiss may begin by identifying the allegations that, because they are mere conclusions, are not entitled to assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well pleaded factual allegations, a court should assume their ve-

racity and then determine whether they plausible give rise to an entitlement to relief. *(Ashcroft v. Iqbal, 556 U.S. 662, 663-64 (2009).).*

Allegations against Defendants Yelp Inc., and Jeremy Stoppelman are supported by the facts in the FAC, FAC specifically refers to the timeframe when each incident occurred and actions of the Defendants. See also Factual & Procedural part of the present Opposition. Allegations of the Plaintiff are not merely conclusory for the Court to dismiss the case, and neither Defendant Yelp inc., nor Jeremy Stoppelman is entitled to be relieved from responsibility. Moreover, facts cited in the FAC concerning specifically actions of Defendants Yelp Inc., and Jeremy Stoppelman can't be considered separately from the facts alleged against other Defendants because all Defendants acted as one big Enterprise to ruin Plaintiff's reputation and business, every fact in the Complaint adds to another and supports another. The entire FAC is full of facts suggesting that Yelp Inc. and Jeremy Stoppelman were a part of the Enterprise.

# IV. ARGUMENTS

## A.    Neither Defendant Yelp Inc., nor Defendant Jeremy Stoppelman has protection of Section 230 of CDA as the Plaintiff's claims arise from criminal law.

Section 230 c(1) of CDA states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *47 USCS § 230.* Section 230 c(2)(a) of CDA states: *"No provider or user of an interactive computer service shall be held liable on account any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." Id.* Section 230 e (1) of CDA states

OPPOSITION TO DEFENDANTS YELP INC. AND JEREMY STOPPELMAN'S MOTION FOR DISMISSAL PURSUANT TO F.R.C.P. RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

further: "No effect on criminal law. Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this Act [47 USCS § 223 or 231], chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, United States Code 18 USCS §§ 1460 et seq. or §§ 2251 et seq.], or ***any other Federal criminal statute***." *Id.*    " T h e Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.S. §§1961-1968, is founded on the concept of racketeering activity. The statute defines "racketeering activity" to encompass dozens of state and federal offenses, known in RICO parlance as predicates. These predicates include any act "indictable" under specified federal statutes, 18 U.S.C.S. §1961(1)(B)-(C), (E)-(G), as well as certain crimes"chargeable" under state law, § 1961(1)(A), and any offense involving bankruptcy or securities fraud or drug-related activity that is "punishable" under federal law, §1961(1)(D). A predicate offense implicates RICO when it is part of a "pattern of racketeering activity"--a series of related predicates that together demonstrate the existence or threat of continued criminal activity." *(RJR Nabisco, Inc. v. European Cmty., 136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016)).*

Defendants Yelp Inc. and Jeremy Stoppelman were no sued for civil remedies based on violations of their Terms and Conditions, they were not even sued specifically for tort, they were sued for engaging in the pattern of racketeering activity, for the organized crime to ruin Plaintiff's business, to affect her wellbeing, finances and to terrorize her into submission to the needs of the Armenian Enterprise. Defendants Yelp Inc. and Jeremy Stoppelman are either not aware for what they were sued or pretend that their actions were "innocent" editorial decisions in "good faith" (!), and that's why they are entitled to protection of Section 230 of CDA. Section 230 of CDA was not enacted by the Congress to protect criminal activity of the Enterprise, it was enacted to allow interactive computer providers to feel free to remove inappropriate content from the internet in good faith.

**B. Each act of the Defendants Yelp Inc. and Jeremy Stoppelman was not an innocent editorial decision, instead it was a predicate act of wire fraud, intentional and deliberate to defraud public and damage Plaintiff's reputation and business.**

"A violation of § 1962(c) requires to show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." (*UMB Bank v. Guerin, 89 F.4th 1047 (8th Cir. 2024).* 'We have said that the predicate acts of mail and wire fraud "occur when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *(Wayne Johnson for Cong., Inc. v. Hunt, 2024 U.S. App. LEXIS 2850, 2024 WL 471938*). "Under the mail and wire fraud statutes, a plaintiff only can show a scheme to defraud if he proves that some type of deceptive conduct occurred", *Id*. Such deceptive conduct includes "knowingly making false representations," "concealing material facts," and making statements "with reckless indifference to their truth or falsity." *(United States v. Sawyer, 799 F.2d 1494, 1502 (11th Cir. 1986)* .

Defendants Yelp Inc., and Jeremy Stoppelman via their staff were put on notice that Plaintiff's business page gets shelled regularly because she is persecuted because of her political views, race, national origin, ancestry and etc., they were aware that a business owner can't get around 50-60 reviews for his business activity within 1 or two days, that people were placing in her account accusations not related to her business or her activity as a lawyer, they were aware that all these people have never been her clients, but still chose to keep those reviews despite Plaintiff's multiple requests to remove them. Moreover, Defendant Yelp Inc. accurately deleted those reviews which were claiming that she is a racist while keeping those alleging that they were her customers and got cheated. Defendants Yelp Inc. and Jeremy Stoppelman intentionally didn't close her business page when she requested them to do so in violation of their own TOS.

so that Armenian Enterprise continues shelling her business page with absurd reviews in the hope to chase her into silence. Defendant Yelp Inc. employees used wire each time when they refused to delete outrageous reviews and pictures in her business account. Each email sent by Defendant Yelp Inc. was a predicate act of wire fraud for the purposes of RICO statute. Moreover, each act of Yelp Inc. placing in her business account formerly removed reviews with past dated comments was an independent predicate act of wire fraud to fulfill the expectations of the Enterprise to silence her and damage her reputation and business.

**C. Plaintiff has no burden under RICO statute to prove conspiracy once pattern of racketeering activity is established contrary to allegations of Defendant Yelp Inc. and Jeremy Stoppelman.**

" The RICO conspiracy statute, simple in formulation, provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b),or (c) of this section." *18 U.S.C. § 1962(d)*. There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an "act to effect the object of the conspiracy." § 371. The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371". *(Salinas v. United States, 522 U.S. 52, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)*. "A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense….The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Id.* "So, conspiracy to violate subsection (c) requires proof that the defendant knew about and agreed to facilitate "the conduct of an enterprise's affairs through a

pattern of racketeering activity." (*United States v. Larios-Villatoro, No. 16-20194 (5th Cir. Nov. 1, 2018)*

In the present case Plaintiff has no obligation to prove conspiracy since Defendants Yelp Inc. and Jeremy Stoppelman were engaged in the pattern of racketeering activity themselves, by committing various wire fraud, by deliberately not fulfilling Plaintiff's request to close her business page and leaving it open for future attacks by the Enterprise, by extorting money from the Plaintiff to close her business page. Defendants knew very well that Plaintiff is persecuted because of her speech, national origin, ancestry but chose to join the Enterprise in damaging her reputation and finances by committing multiple acts of fraud. Since Plaintiff successfully established a conduct of the enterprise through a pattern of racketeering activity, she has no obligation to show conspiracy since its already clear that Defendants were engaged in it.

**D. Plaintiff successfully showed several patterns of racketeering activity committed by the Defendants.**

1. Plaintiff successfully showed that Defendants were engaged in the pattern of racketeering activity by committing wire fraud.

*See analysis under Arguments Section B of the present Opposition.*

2. Defendants were engaged in the pattern of racketeering activity by terrorizing civilian population into the needs of Armenian Enterprise (terrorism).

"….the term "international terrorism" means activities that—

OPPOSITION TO DEFENDANTS YELP INC. AND JEREMY STOPPELMAN'S MOTION FOR DISMISSAL PURSUANT TO F.R.C.P. RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(B) appear to be intended—

(i) to intimidate or coerce a civilian population;

(ii) to influence the policy of a government by intimidation or coercion; or

(iii) to affect the conduct of a government by mass destruction, assassination or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." *18 USCS § 2331*

Chapter 113 B (Sections 2331 - 2339D ) of RICO refers terrorism to predicate acts. *18 USCS § 2331- 2339D.*

Plaintiff pleaded enough facts both in her Complaint and in the present Opposition on how Defendants ANCA and ANCAWR are related to the terrorist groups, especially ARF. Plaintiff also pleaded enough facts showing that ARF operates not only in the United States, but also internationally with its offices in Armenia and other countries. Plaintiff pleaded enough facts showing how ARF was responsible for commission of certain terror acts throughout the history both in the United States and abroad, and that Defendants ANCA and ANCAWR are governed by ARF. Plaintiff pleaded enough facts showing that smear campaigns are organized by Defendants ANCA and ANCAWR to terrorize people into their needs. In fact, Defendants ANCA and ANCAWR needed Plaintiff's disbarment and damaged reputation so that nobody in the public believes her opinion, since they couldn't stop her from speaking - this is particularly why they needed Defendants Yelp Inc. and Jeremy Stoppelman to engage into fraudulent activity of tarnishing her reputation, Defendants Yelp Inc. and Jeremy Stoppelman became a part of the horrible terror network, and they can't now claim that their actions were "innocent editorial reviews", their acts were deliberate, intentional and malicious.

**E. Defendants Yelp Inc. and Jeremy Stoppelman have no protection of Section 230 of CDA because they allowed copyright infringement and invasion of Plaintiff' Privacy Rights.**

Section 230 (e)(2) of CDA specifically excludes application of the section on Intellectual Property Law. It states specifically " No effect on intellectual property law. Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." *47 USCS § 230.* *"*We therefore hold that the intellectual property exception contained in § 230(e)(2) encompasses claims pertaining to an established intellectual property right under federal law, like those inherent in a patent, copyright, or trademark." *(Enigma Software Grp. USA, LLC v. Malwarebytes, Inc., 946 F.3d 1040 (2019)*

Defendant Yelp inc. was informed that people were placing in the Plaintiff's business account inappropriate pictures of her, they took her business picture from the internet and by the way of multiple manipulations distorted it and placed on Yelp's platform. One of those pictures was placed as a main profile picture *(See Exh. I )* was inappropriately distorted and was in fact obscene. However, Yelp Inc. didn't remove this picture for quite significant period of time. For about two or three months this picture was displayed as a main profile picture of her business on the platform to horribly damage, intimidate and harass her. Yelp Inc. now claims that it has a right to edit reviews in good faith and may allow whatever it wishes to stay on its platform. By allowing copyright infringement of the plaintiff on her own picture and invasion of her privacy rights Defendant Yelp Inc. and Jeremy Stoppelman can't claim now protection of Section 230 of CDA.

**F. Defendants Yelp Inc. and Jeremy Stoppelman do not have protection of Section 230 of CDA because they were not publishers, but content creators.**

"Notwithstanding that broad construction of section 230, "an interactive computer service provider only has immunity if it is not also the information content provider—that is, someone 'responsible, in whole or in part, for the creation or development' of the content at issue." *(Wozniak v. YouTube, LLC, 319 Cal. Rptr. 3d 597, 100 Cal.App.5th 893 (Cal. Ct. App. 2024)*  "Passively displaying content 'created entirely by third parties' renders the operator only a service provider with respect to that content." *Id.*  "But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider." *Id.* "Thus, a website may be immune from liability for some of the content it displays to the public but be subject to liability for other content.'" *Id.* A website creates or develops content "by making a material contribution to its creation or development." *(Kimzey v. Yelp, Inc. (9th Cir. 2016) 836F.3d 1263, 1269 (Kimzey).)* "A "material contribution"does not refer to "merely ... augmenting the content generally, but to materially contributing to its alleged unlawfulness." *(Wozniak v. YouTube, LLC, 319 Cal. Rptr. 3d 597, 100 Cal.App.5th 893 (Cal. Ct. App. 2024).*

At least on two occasions Yelp Inc.' staff contributed to the creation of the defamatory content about the Plaintiff. On June 21, 2023,  Defendants placed in Plaintiff's account a formerly removed review as a new one with past dated comment of the Plaintiff under them, ¶ 5,  Declaration of Aynur Baghirzade, *See also Exh. J.*  The same Yelp Inc. did on October 10, 2023, when it placed formerly removed review of someone named Dav M. into Plaintiff's account. *See Exh. J.* Formerly removed reviews appeared as new with new date but with old dated comments under them. Third party couldn't place its formerly removed review in such a way at the platform, it was clearly done by Yelp Inc.'s staff, and now arguing that Yelp Inc. was engaged only in editorial activity is absolutely baseless. Yelp Inc. contributed to the defamatory content and was a content creator, therefore Section 230 of CDA does not shield Yelp Inc. or Jeremy Stoppelman from defamation and other causes of action pleaded in the FAC.

1

2

3    **G. Defendants Yelp Inc. and Jeremy Stoppelman do not have protection of Section**

4    **230 of CDA because they violated their own TOS.**

5

6    "A state claim may not be barred by the CDA where "the duty the defendant allegedly

7    violated springs from a contract—an enforceable promise—not from any non-contractual con-

8    duct or capacity of the defendant" as a publisher." *(Prager University v. Google LLC,85 Cal.*

9    *App. 5th 1022; 301 Cal. Rptr. 3d 836 (2022).*

10

11    Section 14 of Yelp Inc.'s TOS makes it clear that the user can terminate the Terms at any

12    time by closing its account. TOS is a contract in terms of the federal and state law between user

13    and interactive computer provider. Yelp Inc. violated this promise under the contract when back

14    in January, 2024, refused to close Plaintiff's account, left it open with the intent to further harass

15    plaintiff by allowing Enterprise to place there fake negative reviews. TOS has no provision that

16    Plaintiff had to pay an invoice in order for her account to be closed by Defendant. Besides, vio-

17    lating its own TOS Yelp Inc. also was engaged in extortion.

18

19

20    **H. Defendants Yelp inc. and Jeremy Stoppelman do not have protection of Section**

21    **230 of CDA because they acted not in good faith as it was required by the Statute and by**

22    **their own TOS.**

23

24

25    "Congress expressly provided that the CDA aims "to preserve the vibrant and competitive

26    free market that presently exists for the Internet and other interactive computer services" and to

27    "remove disincentives for the development and utilization of blocking and filtering

28    technologies." *§ 230(b)(2)-(3)*. Congress said it gave providers discretion to identify objection-

able content in large part to protect competition, not suppress it." *Id.* In other words, Congress wanted to encourage the development of filtration technologies, not to enable software developers to drive each other out of business." *(Enigma Software Grp. USA, LLC v. Malwarebytes, Inc., 946 F.3d 1040, 1040 (2019 ).*"The implied promise of good faith and fair dealing requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *(Avidity Partners, LLC v. State, 221 Cal.App.4th 1180, 165 Cal. Rptr. 3d 299 (Cal. Ct. App. 2014)* "..in a promissory estoppel case, as in any other contract case, the duty the defendant allegedly violated springs from a contract—an enforceable promise—not from any non-contractual conduct or capacity of the defendant." *(Calise v. Meta Platforms, Inc., 103 F.4th 732 (9th Cir. 2024).* Section 230 c (2)(a) of CDA states: "No provider or user of an interactive computer service shall be held liable on account any action voluntarily taken ***in good faith*** to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected."*47 USCS § 230.* Section 7 B (ii) of Yelp Inc.'s TOS requires that every user has to make a representation that he will not "post any fake or defamatory review, trade reviews with others, or compensate someone or be compensated to post, refrain from posting, or remove a review."

Yelp Inc. and its founder Jeremy Stoppelman didn't act in good faith when they kept defamatory reviews on Plaintiff's business account while diligently removing all positive reviews of her clients. Besides, the positive reviews removed by Yelp Inc. contrary to its TOS were not "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable" - Yelp inc. and Jeremy Stoppelman had no justification in doing so. Defendants Yelp Inc. and Jeremy Stoppelman acted with open malice when they didn't close Plaintiff's account despite her request and in contrary with their own TOS. Both Defendants ignored that based on their own

TOS they had to act with good faith, instead their actions were intentional, malicious and aimed to destroy Plaintiff's business and harass her emotionally and psychologically. As it was outlined before in this Opposition both Defendants were engaged in terrorism by "intimidating and coercing civilian population" to the needs of the Armenian Enterprise.

## I. Plaintiff's Claim for Conspiracy Pursuant to Section 1 of the Sherman & Clayton Act was Sufficiently Pleaded in The Complaint.

"In the context of antitrust conspiracy claims, plaintiffs may meet their burden by alleging parallel conduct among competitors and certain "plus factors" suggesting a conspiracy." *(Frost v. LG Elecs., Inc.,801 Fed. Appx. 496, 497 (9th Cir. 2020).* " The RICO conspiracy statute, simple in formulation, provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b),or (c) of this section." 18 U.S.C. § 1962(d). There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an "act to effect the object of the conspiracy." § 371. The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371". *(Salinas v. United States, 522 U.S. 52, 118 S. Ct. 469 (1997).*

Plaintiff pleaded enough facts suggesting conspiracy in her Complaint. Defendants Yelp Inc. and Jeremy Stoppelman have to read carefully General Allegations part of the Complaint to make a decision whether there was a conspiracy or not. Besides, actions of Defendants Yelp Inc. and Jeremy Stoppelman were identical to the actions of Defendants Google LLC and Alphabet Inc. - they all were engaged in the similar acts showing that there was a conspiracy. I would suggest Defendants to read all facts regarding Defendants Google LLC and Alphabet Inc. as well.

Moreover, Plaintiff has already established conspiracy under RICO *(See analysis in section C of this Opposition)*.

**K.  Plaintiff has pleaded enough facts showing that Defendants Yelp Inc. was a place of public accommodation.**

"Places of public accommodation" are limited to actual, physical places and structures, and thus cannot include chat rooms, which are not actual physical facilities but instead are virtual forums for communication provided by AOL to its members." *(Noah v. AOL Time Warner Inc., 261 F. Supp. 2d 532 (E.D. Va. 2003)*. In addition, § *2000a(b)(4)* emphasizes the importance of physical presence by referring to any "establishment ... which is physically located within" an establishment otherwise *covered, or "within ... which" an otherwise covered establishment "is physically located." Id.* "While the case law concerning places of public accommodation under the ADA is more abundant than that under Title II, it is not entirely uniform. Yet, a detour into the parallel ADA cases is instructive and ultimately supports the conclusion that "places of public accommodation" must consist of, or have a clear connection to, actual physical facilities or structures." *Id.*

Conclusions of Defendants Yelp Inc. and Jeremy Stoppelman's Counsel that the concept of the "places of public accommodation" do not apply to online Platforms are factually and legally wrong. Court didn't recognize as places of public accommodation chat rooms - the rooms, where people gather to chat and share their ideas. Yelp Inc. is not a chat room, it is a platform for the business establishments, consumers do not chat at Yelp Inc. platform, they rate performance and products of the businesses, businesses also can advertise themselves and get an online pres-

ence at Yelp Inc. platform. Moreover, many of those business establishments are physical businesses with physical location, Yelp Inc. itself has two physical addresses.

**L.  Plaintiff pleaded enough facts in her complaint to establish violation of  the California Business and Professional Code, Section 16720, et seq. and Defendants allegations that conspiracy was not established are baseless.**

"Since it is often difficult to show direct evidence of a combination or conspiracy, concerted action may be inferred from circumstantial evidence of the defendant's conduct and course of dealings. *(Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 671 (9th Cir. 1980).*

Facts provided by the Plaintiff infer conspiracy. Defamatory reviews were placed in Plaintiff's account at Yelp platform every time people were unhappy with her tweets, afterwards Yelp Inc. left the most vicious reviews in her account despite her complaints. Another platform responsible for online business ratings and appearance - Google LLC and Alphabet Inc. were manipulating her business account to defraud the public about her services, kicked her business account into unverified status several times, placed a Denmark law firm's business account not present in San Diego in Google search results for the name of her law firm, in the similar manner didn't remove defamatory reviews from her account and advised her over the phone that "she is better to close her account". Besides, as  Plaintiff explained in Section C of Arguments part of this Opposition she successfully established conspiracy under RICO.

**M. Plaintiff has pleaded enough facts to establish Unfair Competition and Defendants' references to First Amendment rights are invalid, as the speech at Defendants' platform was commercial and in any case unprotected speech.**

1. Speech at Defendants' platform was a commercial speech

"To determine whether speech is commercial, the Third Circuit requires courts to assess whether the speech (i) is an advertisement, (ii) refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech." (*Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1017 (3dCir. 2008)*. "The Supreme Court held that although the pamphlets did not expressly propose a commercial transaction, they were nonetheless properly classified as commercial speech based on the following attributes: the pamphlets were a form of advertising, they referred to specific commercial products, and they were distributed by the manufacturer for economic purposes." *(Jordan v. Jewel Food Stores, Inc., 743 F.3d 509 (7th Cir. 2014)*

Three defamatory reviews, which Yelp Inc. and Jeremy Stoppelman intentionally left in Plaintiff's business account, were commercial speech. They all allege that they were clients of the Plaintiff and they didn't get the service or were provided with a bad one, they all have recommendations to other consumers not to use services of the Plaintiff. In doing so, all these reviews were advertisements, referred to specific product or service and were economically motivated. Moreover, Defendants were engaged themselves in distributing commercial speech when they decided to place into Plaintiff's account formerly deleted reviews of the users with new date and Plaintiff's past dated comments under them, their actions therefore were not merely editorial.

## 2. Speech at Defendants' Platform was a defamatory, harassing and obscene speech

"criminal harassment" is unprotected where it "constitutes true threats or speech that is integral to proscribable criminal conduct." *(United States v. Sryniawski, 48 F.4th 583 (8th Cir. 2022).* Intimidation in the constitutionally proscribable sense of the word is a type of true threat," where the speaker intends to place the victim "in fear of bodily harm or death." *Id.* The government does not maintain that Sryniawski's e-mails contained a true threat against Parris or his family, but suggests three categories of harassing speech that are unprotected: speech integral to criminal conduct, defamatory speech, and obscenity." *Id.* "Speech is only actionable as defamation if it "implies the allegation of undisclosed defamatory facts." *(Leighty v. Spokane Cnty., 2:24-CV-0165-TOR (E.D. Wash. Jul. 16, 2024).* "But Prager's theory of UCL liability for fraudulent conduct is not subject to section 230 immunity, in that the act that would give rise to liability is not the exercise of publishing discretion itself, but defendants' misrepresentations regarding their exercise of that discretion—that is, misrepresentations about the character of defendants' service." *(Prager Univ. v. Google LLC, 85 Cal. App. 5th 1022, 301 Cal. Rptr. 3d 836, (2022).*

Reviews placed at Defendants' platform were defamatory, they suggested facts, which have never happened, some reviews implied true threats - "We will come after you", some were obscene - Plaintiff's profile picture was manipulated and kept for a quite long time at the Defendants' platform in order to harass and intimidate the Plaintiff. Plaintiff's requests to remove them were greeted with complete ignorance and rejection. Plaintiff's phone number was also ultimately blocked by the Defendants. Therefore, Defendants have no protection of 1st Amendment Rights!

1

2

## N.  Plaintiff pleaded enough facts on discrimination under Unruh Act

3

4      "The Unruh Civil Rights Act's purpose is "to secure to all persons equal access to public

5    accommodations 'no matter'" the personal characteristics. *(Harris v. Capital Growth Investors*

6    *XIV, 52 Cal.3d 1142, 278 Cal. Rptr. 614, 805 P.2d 873 (Cal. 1991)*. It is intended to eradicate ar-

7    bitrary, invidious discrimination in business establishments, and stand "as a bulwark protecting

8    each person's inherent right to 'full and equal' access to 'all business establishments." (*Angelucci*

9    *v. Century Supper Club, 41 Cal.4th 160, 59 Cal. Rptr. 3d 142, 158 P.3d 718 (Cal. 2007)*. "To

10   state a claim under the Unruh Civil Rights Act, a plaintiff must allege the defendant is a business

11   establishment that intentionally discriminates against and/or denies plaintiff full and equal treat-

12   ment of a service, advantage, or accommodation based on plaintiff's protected status." *(Liapes v.*

13   *Facebook, Inc., 95 Cal.App.5th 910, 313 Cal. Rptr. 3d 330 (Cal. Ct. App. 2023)*. "Intentional dis-

14   crimination requires "'willful, affirmative misconduct.'" *(Koebke v. Bernardo Heights Country*

15   *Club, 36 Cal.4th 824, 31 Cal. Rptr. 3d 565, 115 P.3d 1212 (Cal. 2005)*.

16

17

18      As it was discussed in this Opposition before Defendants do not have protection of Sec-

19   tion 230 of CDA on many grounds, they actions towards Plaintiff were deliberate malicious at-

20   tempt to destroy her business. Defendants were engaged in multiple wire fraud to achieve this

21   purpose and acted in furtherance of the racketeering activity together with other Enterprise

22   members. Complaint pleads a lot of predicate acts showing a clear intent and motive of the En-

23   terprise to destroy Plaintiff. Complaint also pleads a lot of facts showing how Plaintiff belongs to

24   the protected class under Unruh Act, and how Enterprise persecuted other members of the pro-

25   tected class in the past, it shows that Defendants were well informed about the situation and

26   chose to stay with perpetrators despite her arguments. Complaint also pleaded enough facts

27   showing how Defendants joined Enterprise and primarily were engaged in harassing and dis-

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

criminating against her. Plaintiff successfully established cause of action for discrimination under Unruh Act.

**O. Plaintiff pleaded enough facts for Civil Harassment and her claims are not barred by First Amendment as the speech at Defendants' platform was unprotected speech**

"…criminal harassment" is unprotected where it "constitutes true threats or speech that is integral to proscribable criminal conduct." *(United States v. Sryniawski, 48 F.4th 583 (8th Cir. 2022).* Intimidation in the constitutionally proscribable sense of the word is a type of true threat," where the speaker intends to place the victim "in fear of bodily harm or death." *Id.* The government does not maintain that Sryniawski's e-mails contained a true threat against Parris or his family, but suggests three categories of harassing speech that are unprotected: speech integral to criminal conduct, defamatory speech, and obscenity." *Id.* "Speech is only actionable as defamation if it "implies the allegation of undisclosed defamatory facts." *(Leighty v. Spokane Cnty., 2:24-CV-0165-TOR (E.D. Wash. Jul. 16, 2024).* "But Prager's theory of UCL liability for fraudulent conduct is not subject to section 230 immunity, in that the act that would give rise to liability is not the exercise of publishing discretion itself, but defendants' misrepresentations regarding their exercise of that discretion—that is, misrepresentations about the character of defendants' service." *(Prager Univ. v. Google LLC, 85 Cal. App. 5th 1022, 301 Cal. Rptr. 3d 836, (2022).*

It is hilarious how Yelp Inc. now appeals to First Amendment and claims that it is a public forum. However, Yelp Inc. didn't keep at the Plaintiff's account speech of the "concerned public" that she is a racist, that she is biased and so on, Yelp Inc. deleted all reviews about her alleged character and kept only those, where people claimed that they were her customers and she took their money and didn't provide a service. Yelp Inc. kept those reviews after her account

OPPOSITION TO DEFENDANTS YELP INC. AND JEREMY STOPPELMAN'S MOTION FOR DISMISSAL PURSUANT TO F.R.C.P. RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

was shelled multiple times by unidentified gang of people, after it was put on notice that she does not know those people, after some identical reviews were immediately taken down by other plat-forms - AVVO and BBB. Defendant Yelp for comparison can look into Plaintiff's Avvo account and try to find there those reviews. Mysteriously, only Yelp Inc. 'editorial" decisions allowed those reviews. Some of those reviews were true threat, which were kept by Yelp Inc. despite Plaintiff's numerous complaints, claiming that 'they will come after her", some were obviously obscene - her photos were manipulated and distorted and placed as her business' profile picture in violation of Plaintiff's copyright and privacy rights, Plaintiff was also deprived the opportuni-ty to remove those photos herself. Her requests to close her account immediately were ignored by Yelp Inc. and in return she was blackmailed to pay a past due invoice, which has never been sent to her despite her requests. If Defendant Yelp Inc. and Jeremy Stoppelman think that they can harass businesses owners to regulate their political speech, then we have to be very con-cerned about our 1st Amendment rights. People unhappy with Plaintiff's tweets could complain on her to Twitter, block her on Twitter, write their opinion in Twitter, but coming to her business page and claiming that they were her customers and she robbed them out of their money is not something which 1st Amendment protects. Defendants were engaged in targeted harassment in order to force Plaintiff into silence on the request of the Armenian Enterprise.

### P. Plaintiff pleaded enough facts for IIED and NIED

" A cause of action for intentional infliction of emotional distress exists when there is (1) an extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of probability of causing, emotional distress; (2) the plaintiff's suffering of extreme and emotional distress, and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. A defendant's conduct is outrageous when it is so extreme as to

exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged with in realization that the injury will result." *(Hughes v. Pair, 46 Cal.4th 1035, 1050-51 (2009)*. "We have repeatedly recognized that the negligent causing of emotional distress is not an independent tort, but the tort of negligence. The traditional elements of duty, breach of duty, causation, and damages apply. Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability. *(Burgess v. Superior Court, 2 Cal.4th 1064, 9 Cal. Rptr. 2d 615, 831 P.2d 1197 (Cal. 1992)*.

As it was analyzed before Defendants do not have protections of Section 230 of CDA because they are sued under criminal law. They engaged in content creation by sending to the plaintiff formerly removed reviews with her own past dated comments under them, they violated their own TOS by refusing to close Plaintiff's account and keeping it open to harassment and bullying, they completely ignored good faith requirement under their contract with Plaintiff and under Statute *(See analysis under Section G of the present Opposition)* . Since they don't have protection of section 230 of CDA they are liable for both IIED and NIED. Their actions were outrageous, malicious, and intentional.

**R. Plaintiff is not bared by Defendants' TOS, because Defendants violated their own TOS and in any case racketeering activity is not governed by TOS.**

*See analysis under Section G of the present Opposition*.

**V. CONCLUSION**

Based on the foregoing, Plaintiff Aynur Baghirzade requests the Court grant her motion and deny Defendants' motion to dismiss Plaintiff's FAC with prejudice.

DATED: September 25, 2024

PLAINTIFF: Aynur Baghirzade

*Aynur Baghirzade*