AYNUR BAGHIRZADE
1968 S. Coast Highway #2429
Laguna Beach, CA 92651
Phone: 619-630-6646
Email: contact@aynurlawyers.com

*AYNUR BAGHIRZADE, IN PRO SE*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYNUR BAGHIRZADE, | Case No.: 3:24-CV-01077-RSH-MMP |
|         Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS ARMENIAN NATIONAL COMMITTEE OF AMERICA, ARAM HAMPARIAN AND ARMENIAN NATIONAL COMMITTEE OF AMERICA WESTERN REGION'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES** |
|         v. | |
| ARMENIAN NATIONAL COMMITTEE OF AMERICA, et al., | |
| | |
| | / Filed concurrently with Declaration of Aynur Baghirzade, Exhibit A, Request for Judiciary Notice, Proposed Order / |
| | |
| | Presiding Judge: Hon. Robert Huie |
| | Magistrate Judge: Hon. Michelle M. Petit |

# TABLE OF CONTENTS

**I.**    **INTRODUCTION** …………………………………………………………12

**II.**   **FACTUAL AND PROCEDURAL BACKGROUND**…………………..12

**III.**   **LEGAL STANDARD FOR MOTION TO DISMISS**…………………16

     1.   Ninth Circuit is Hostile to 12 (b)(6) Motion for Failure to State Claim

     2. Plaintiff pleaded a short and plain statements of the claims for 21 Defendants she has…………………………………………………..17

     3. Plaintiff's claims are based on facts and are not merely conclusory, and in any case conclusory statements under Twombly are allowed as soon as they put on notice another party. …………………………………………….18

     4. Defendants' arguments that Plaintiff lumps all Defendants together without any relationship to each other fail, as Plaintiff successfully established a pattern of racketeering activity by showing that Enterprise is after her business, reputation and income…………………………………19

**IV.**   **ARGUMENTS**

     **A. Plaintiff successfully established existence of the associated in fact Enterprise with the common purpose to leave Plaintiff with no business,**

**income, to damage her reputation and career as well as harass and intimidate her**………………………………………………………20

**B. Plaintiff successfully established that Defendants gained control over Plaintiff's business and she suffered injury distinct from the injury from predicate acts.**………………………………………………………23

**C. Plaintiff has no burden under RICO statute to prove conspiracy once pattern of racketeering activity is established contrary to allegations of Defendants.**………………………………………………………24

**D. Plaintiff successfully pleaded short and plain statements to establish claim under 15 U.S.C. § 1 Et Seq., Plaintiff was not required to plead with specificity claims not included under Rule 9 (b) of F.R.C.P., and each of Plaintiff's claim shall be read together with other parts of FAC in compliance with Rule 10 (c) of F.R.C.P. as Plaintiff incorporated by reference each and every paragraph in her FAC**………………………26

**E. Plaintiff successfully pleaded short and plain statements to establish claim under California Business and Professions Code Section 16720 Et Seq., Plaintiff was not required to plead with specificity claims not included under Rule 9 (b) of F.R.C.P., and each of Plaintiff's claim shall be read together with other parts of FAC in compliance with Rule 10 (c) of F.R.C.P. as Plaintiff incorporated by reference each and every paragraph in her FAC**………………………………………………28

**F.  Plaintiff successfully pleaded short and plaint statements to establish claim under California Business & Professions Code § 17200 Et Seq**..29

**G. Plaintiff successfully pleaded short and plain statements to establish claim under California Code of Civil Procedure 527.6. , Harassment**..30

*1. Plaintiff was not required to establish civil conspiracy as she successfully established conspiracy under RICO statute, and RICO Statute supersedes any state law in this regard*……………………………………………….32

*2.  Defendants' attempts to put on Plaintiff heightened pleading requirement under Rule 9 (b) of F.R.C.P in terms of stating harassment claim in FAC and totally ignoring Rule 10 (c) of F.R.C.P. allowing incorporation by reference in the pleadings fail as contradicting to Law. Plaintiff successfully pleaded short and plain statements to show harassment*………………………….32

*3. Plaintiff pleaded short and plain statements in her FAC giving Defendants a notice that their speech was not a constitutionally protected speech, Plaintiff was not bound by heightened pleading requirement under Rule 9 (b) of F.R.C.P.  while pleading Harassment, and other parts of her FAC were incorporated by reference into her Harassment claim*…………………….34

*4.  Defendants' claim that their speech was a political speech fails as their speech was a targeted harassment made with actual malice to disbar Plaintiff, to damage her reputation and business and had no relationship to politics, Plaintiff also wasn't a politician or a candidate running for the office*…………………………………………………………………….35

**H. Plaintiff was not bound by heightened pleading standard of defamation claims under California State Law because she brought her claim in a federal court**……………………………………………36

1. As defamation claim is brought before Federal Court there is no heightened requirement for pleading defamation cases. Federal Law overrides State Law requirement for heightened pleading standard for defamation cases………………………………………………….36

*2. Since Rule 8 (a) of F.R.C.P. requires only pleading short and plain statements to put Defendants on notice, Plaintiff considers all other allegations of Defendants with regards to her Defamation claim as lacking any legal basis, and therefore defective*………………………………….38

**I. Plaintiff pleaded short and plain statements putting Defendants on notice on her claim for malicious prosecution**…………………………39

**J. Plaintiff pleaded short and plain statements putting Defendants on notice on her claims for IIED and NIED**………………………40

*1. Plaintiff pleaded enough facts to put Defendants on notice that their speech was not a political speech.*……………………………….40

*2. Contrary to Defendants' allegations, Plaintiff pleaded enough facts to put Defendants on notice that their conduct was extreme and outrageous*……41

*3. Contrary to Defendants' allegations, Plaintiff pleaded short and plain statements to establish a claim for NIED*………………………………… 42

**V. CONCLUSION** …………………………………………………44

**TABLE OF AUTHORITIES**

*CASES:*

*Allstate Ins. Co. v. Benhamou,*
190 F. Supp. 3d 631, 648 (S.D. Tex. 2016)…………………………………..21

*Allstate Ins. Co. v. Plambeck,*
802 F.3d 665, 671 (5th Cir. 2015)……………………………………………21

*Allstate Ins. Co. v. Seigel,*
*312 F. Supp. 2d 260, 273 (D. Conn. 2004)*……………………………..…….23

*Angermeir v. Cohen,*
14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014)*…………………………….....18

*Apex Oil Co. v. DiMauro,*
822 F.2d 246, 252 (2d Cir. 1987)……………………………………….26

*Ashcroft v. Iqbal,*
556 U.S. 662, 663-64 (2009)……………………………………………17

*Auster Oil Gas,*
Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985)…………………………16

*Barmapov v. Amuial,*
986 F.3d 1321, 1324 (11th Cir. 2021)……………………………………19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)…17, 18, 19, 29, 33

*Bleau v. Greater Lynn Mental Health Retardation,*
    371 F. Supp. 2d 1, 2-3 (D. Mass. 2005)……………………………………..36

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,*
    113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000)……………………………..21

*Cochran v. Cochran,*
    65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540, 543 (1998)……………..41

*Collins v. Waters,*
    92 Cal. App. 5th 70, 73, 308 Cal. Rptr. 3d 326, 329 (2023)…………..33, 35

*Conley v. Gibson,*
    355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)……………16

*Earls v. N. Carolina Jud. Standards Comm'n,*
    703 F. Supp. 3d 701, 723 (M.D.N.C. 2023)……………………………..41

*Elsner v. Uveges,*
    34 Cal. 4th 915, 939, 102 P.3d 915, 928 (2004)…………………………..43

*Gibson v. United States,*
    781 F.2d 1334, 1337 (9th Cir. 1986)……………………………………16

*Gilligan v. Jamco Development Corporation,*
    108 F.3d 246, 248-49 (9th Cir. 1997)……………………………………..16

*Golick v. State of California,*
    82 Cal. App. 5th 1127, 1138, 299 Cal. Rptr. 3d 229, 238 (2022)……..42, 43

*Governor Gray Davis Com. v. Am. Taxpayers All.,*
    *102 Cal. App. 4th 449, 458, 125 Cal. Rptr. 2d 534, 541 (2002)*……………35

*Hall v. City of Santa Barbara,*
    833 F.2d 1270, 1274 (9th Cir. 1986)……………………………………..16

*In re Nat. W. Life Ins. Deferred Annuities Litig.,*
    635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009)……………………..20, 21, 22

*Jaffe v. Stone,*
    18 Cal. 2d 146, 150, 114 P.2d 335, 338 (1941)…………………………..40

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988, 1003 (9th Cir. 2018)……………………………………..29

*MacDonald v. Joslyn,*
    275 Cal. App. 2d 282, 289, 79 Cal. Rptr. 707, 711 (Ct. App. 1969)………39

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)………………………..38

*Moldea v. New York Times Co.,*
    22 F.3d 310, 313 (D.C. Cir. 1994)………………………………………..39

*Odom v. Microsoft Corp.,*
    486 F.3d 541, 555 (9th Cir. 2007)……………………………………………21

*Okeke v. Biomat USA, Inc.,*
    927 F. Supp. 2d 1021, 1027 (D. Nev. 2013)………………………………37

*Scheur v. Rhodes,*
    416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)…………..16

*Sedima, S.P.R.L. v. Imrex Co.,*
    473 U.S. 479, 500, 105 S. Ct. 3275, 3287, 87 L. Ed. 2d 346 (1985)……..20

*Sheldon Appel Co. v. Albert & Oliker,*
    47 Cal. 3d 863, 871, 765 P.2d 498, 501 (1989)……………………………39

*Sutliff, Inc. v. Donovan Companies, Inc.,*
    727 F.2d 648, 653 (7th Cir. 1984)…………………………………………23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007)..30, 31

*White v. Fraternal Order of Police,*
    909 F.2d 512 (D.C. Cir. 1990)………………………………………………38

*United Artists Corp. v. United Artist Studios LLC,*
    No. CV 19-828 MWF-MAA, 2020 WL 4369778…………………………31

*United States v. Applins,*
    637 F.3d 59, 82 (2d Cir. 2011)…………………………………………25, 32

*United States v. Elliott,*

    571 F.2d 880, 903 (5th Cir.1978)……………………………………….25

*United States v. Feldman,*

    853 F.2d 648 (9th Cir.1988)…………………………………………..21

*United States v. Jacobson,*

    691 F.2d 110, 112 (2d Cir.1982)……………………………………….23

*United States v. Larios-Villatoro,*

    741 F. App'x 269 (5th Cir. 2018)……………………………………….25

*United States v. Satterfield,*

    548 F.2d 1341, 1344 (9th Cir. 1977)…………………………………….19

*United States v. Turkette,*

    *452 U.S. 576, 576–77, 101 S. Ct. 2524, 2525, 69 L. Ed. 2d 246 (1981)*.....21

***STATUTES:***

California Business & Professions Code, § 16720…………………………….28
California Business & Professions Code, § 1720……………………….29, 30
California Code of Civil Procedure, § 527.6……………………….30, 31, 43, 44
Federal Rules of Civil Procedure, § 8…………………….12, 16,17, 19, 35, 38, 43
Federal Rules of Civil Procedure, § 9 ……………..18, 26, 28, 30, 32, 34, 37, 43
Federal Rules of Civil Procedure, §10……………………..19, 26, 28, 29, 30, 33
Federal Rules of Civil Procedure, § 12(b)6……………………………………16
15 U.S.C. § 1 …………………………………………………….26, 27
18 U.S.C. §§ 1961-68……………………….12, 18, 20, 21, 23, 24, 27, 30, 32

# I. INTRODUCTION

Defendants Armenian National Committee of America (ANCA), Aram Hamparian, Armenian National Committee of America Western Region filed another motion to dismiss following tradition of other Defendants in this case, alleging that 59 pages for roughly 21 Defendants are too much, that's why Plaintiff's FAC does not comply with a "short and plain statement " requirements under Rule 8 (a) of the Federal Rules of Civil Procedure, that Plaintiff failed to show existence of the "enterprise" - argument, which deserves a Nobel Prize, that Plaintiff alleges conspiracies without showing any evidence, that Defendants' attacks on Plaintiff were political speech and many more. Defendants are clearly unaware about RICO statute and its requirements, they probably do not know or pretend that they do not know what is a predicate act and why Plaintiff was referring in FAC on other instances of their Clients' illegal activity or illegal activity of other people related to them. Additionally, Plaintiff has never claimed in her FAC that Google and Yelp placed a dead rat in her garage - derogatory language in the pleadings and false accusations are not something court would appreciate.  As further analysis will show all allegations of Defendants have no grounds, they filed a frivolous motion to take Plaintiff's and Court's time, and in fact force Plaintiff to repeat in this Motion all positions of her FAC concerning them, the motion is a complete waste of everybody's time and as such should be dismissed with prejudice.

# II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her complaint in June 21, 2024, after being targeted by Defendants for her speech, and after experiencing ongoing harassment,

intimidation, death, eviction and other threats as well as entertaining long term difficulties with getting cases from the referral organizations - long before she was targeted by Defendants for her speech. As Plaintiff outlined in her FAC she became a target of Defendants from approximately 2021, since the time she moved to the United States.

Further, Plaintiff filed her FAC on August 15, 2024, and served Defendants.

In her FAC, Plaintiff made statements that "Plaintiff upon information and facts believes that DEFENDANTS ANCA and ANCAWR are either governed or have significant ties with Armenian Revolutionary Federation ("Dashnaktsutyun" or "ARF"),¶¶ 38, 39, 40, 41, FAC. She further referred in her FAC to the research paper prepared by the Terrorism Analysis branch in coordination with FBI in 1984 titled "Global Terrorism: The Justice Commandos of the Armenian Genocide", which stated that "terrorism was at inception of ARF",¶ 38, FAC. The document was further added as an Exhibit A in Plaintiff's opposition to Defendants Yelp inc., and Jeremy Stoppelman's motion to dismiss (Docket No. 53, ESF page No. 429-450), Plaintiff therefore incorporates this document here. Additionally, as Plaintiff in her FAC made a statement that upon information and facts she believes that Defendants ANCA and ANCAWR are either governed or have significant ties with Armenian Revolutionary Federation, ¶ 38, FAC, she also incorporates here another document she enclosed before as an Exhibit B to her opposition to Defendants Yelp Inc. and Jeremy Stoppelman's motion to dismiss (Docket No. 53, ESF page No. 451- 45), where in their research letter prepared by the Citizens for Responsibility and Ethics in Washington, they cited evidence that Defendants are agents, and in fact inseparable part of ARF (Docket No. 53, ESF page No.454 - 456). Plaintiff also in her FAC made statements that "Armenia's official ideology is built on Tsegakron, the nationalistic (fascist) ideology established by former Nazi collaborator G. Njdeh, whose enormous monuments are erected everywhere in

Armenia.", ¶ 192, FAC. Plaintiff hereby adds here as an Exhibit A an Appendix to Congressional Records, A 2074, where Congressman Frank E. Hook for the state of Michigan back in 1945 offered his article about how ARF corrupted U.S. political system, gave some evidence on its financial sources, offered evidence on co-operation of ARF with Nazis and even getting subsidies from them, openly named this foreign political party "fascist". Article is a very valuable source of information describing how dashnaks persecuted their opponents in the United States, including Armenians, who refused cooperating with them, what type of military strict system they have inside of their organization and how they operate. In this Article, Congressman in fact describes the methods, which Plaintiff faced personally. For instance, Article states that "Archibishop Leon Tourian, Primate of the Armenian Church in North and South America, refused to speak at Armenian day at the Chicago fair unless the Dashnag tricolor was removed… From then the infuriated ARF press denounced the archbishop as a traitor and a Soviet agent… Hairenik began printing letters threatening his life", then Congressman gives samples of those letters: "He is going to be sorry for it, and very soon", "He will get his share, I am sure", "Until Tourian is punished ruthlessly, the bones of our martyrs will not rest in their places". Then, Congressman states that "Hairenik stepped up its tempo by printing a letter which offered a reward: I will gladly give $ 100 if something is done to teach Tourian a lesson". In December 1933, while celebrating Christmas mass in the Holy Cross Church in New York, the Archbishop was murdered by a gang of Dashnak assassins in a favorite dashnak manner: a butcher knife plunged deep in his groin.

Plaintiff, by bringing this Article (Plaintiff so far didn't refer to any foreign sources, only to American) wants to show the parallels between of how Archibishop was threatened and intimidated in 1933 and what Plaintiff experienced after Defendants maliciously published distorted and completely false

news about her - she was getting the same type of threats, only this time the threats were real, openly putting her on notice that she will be killed. People who sent her these threats didn't even try to act as Hairenik, they were open in intimidating and harassing Plaintiff about her death.  Now, Defendants play an innocent card, filed a motion where they try to persuade court that Plaintiff couldn't establish an Enterprise (!), couldn't establish a pattern of racketeering activity, failed in stating her claims, lumped a lot of unrelated Defendants to this case - sounds like a dark joke in a dark horror movie. Defendants are wrong - we are dealing with a terror organization which deeply corrupted the entire U.S. system to achieve its goals, and the most horrific part of it is that they are foreign funded organization, and since they managed corrupting Google, we don't even know whether information we share in our gmail accounts is safe or not, and where this information potentially goes. After having troubles with Google, Plaintiff switched to foreign email accounts as she was not sure that Google didn't give an access to Defendants to her emails and other sensitive information, since she noticed that somehow Defendants knew about her way more than she shared in public. Article of Congressman Frank E. Hook shows that since 1933 nothing changed, only this time we have more "sophisticated" methods how Dashnaks terrorize people by targeting their businesses, their income, their reputation - they still kill people but do it in a different way, and in fact record of those being in ARF leadership shows that they still attempt to bomb people and embassies. We have a terror group trying to establish its own rules - not respecting American Laws, not respecting U.S. Constitution, not respecting anybody, ready on everything by all means to achieve what they want. And this group under a mask of "Armenan genocide", pretending to be a sheep, tries to build a KKK style system for the people like Plaintiff in the United States by doing everything to outcast them from businesses, universities, career opportunities, income, in fact proving to be unmanageable and very

dangerous wolf - it is not surprising that Plaintiff got messages of being a target because she is a "Niggar" or a "Jew", this is who they really are - Njdeh pure Aryan race worshippers (See Exhibit A).

## II. LEGAL STANDARD FOR MOTION TO DISMISS

### 1. _Ninth Circuit is hostile to 12(b)(6) Motions for Failure to State a Claim._

The Ninth Circuit is particularly hostile to motions to dismiss for failure to state a claim. "The federal rules require only a "a short and plain statement of the claim showing that the pleader is entitled to relief." _Fed.R.Civ.P 8 (a)_. The Rule 8 standard contains "a powerful presumption against rejecting pleading for failure to state a claim." _Auster Oil Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985); see also Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986)_ ("It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.").

The Supreme Court has explained that 'it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." _Scheur v. Rhodes, 416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90_ (1974)). In reviewing the sufficiency of a complaint, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." _Gilligan v. Jamco Development Corporation, 108 F.3d 246, 248-49 (9th Cir. 1997)._

Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." _Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986)_ (quoting _Conley v._

*Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).).* Under Federal Rules of Civil Procedure 8 (a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations are not required, *Twombly, 550 U.S., at 555, 127 S.Ct. 1955*, but the Rule does not call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its place", *id., at 570, 127 S.Ct. 1955*. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the plaintiff is entitled to relief for the misconduct alleged. *Id., at 556, 127 S.Ct. 1955*. Two working principles underlie *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id., at 555, 127 s.ct. 1955*. A court considering the motion to dismiss may begin by identifying the allegations that, because they are mere conclusions, are not entitled to assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief. *Ashcroft v. Iqbal, 556 U.S. 662, 663-64 (2009)*.

### *2. Plaintiff pleaded a short and plain statements of the claims for 21 Defendants she has.*

Plaintiff pleaded a short and plain statements of the claims. Defendants' allegations that Plaintiff's FAC on 59 pages does not comply with a "short and plain statements' requirements under *Fed.R.Civ.P 8 (a)* is a nonsense, since Defendants are only 3 out of 21 other Defendants sued in this Court. 59 pages for 21 Defendants does not make even 3 pages for each Defendant, Plaintiff tried to

make it as short as possible and Plaintiff is not responsible that she has to fight enormous enterprise Defendants formed against her.

### *3. Plaintiff's claims are based on facts and are not merely conclusory, and in any case conclusory statements under Twombly are allowed as soon as they put on notice another party.*

"In ...complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity." Instead, "Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Angermeir v. Cohen, 14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014).* The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading,  ... so the happenstance that a complaint is 'conclusory,' whatever exactly that overused lawyers' cliche means, does not automatically condemn it". *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 590, 127 S. Ct. 1955, 1985, 167 L. Ed. 2d 929 (2007).* "Under the notice system of pleading established by the Rules of Civil Procedure, ... the ancient distinction between pleading 'facts' and 'conclusions' is no longer significant". *Id.* "The federal rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties" *Id.*

Defendants' allegations that Plaintiff's 59 pages FAC is "missing facts" are false and nothing more than an attempt to mislead the court. Facts about Defendants were sufficiently pleaded and contrary to Defendants' allegations they are not scattered all along the FAC. General Allegations part of FAC sufficiently

pleaded facts about Defendants, ¶¶ 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, FAC and none of these facts has any relationship to Twitter accounts contrary to Defendants' allegations. Plaintiff also satisfied requirements under *Twombly* "to state a claim to relief that is plausible on its place", and was not required to give a detailed information of all facts, leave alone to present any evidence in support of her claims at the time of drafting a complaint.

*4. Defendants' arguments that Plaintiff lumps all Defendants together without any relationship to each other fail, as Plaintiff successfully established a pattern of racketeering activity by showing that Enterprise is after her business, reputation and income.*

"Charges against multiple defendants may not be joined merely because they are similar in character, and even dissimilar charges may be joined against multiple defendants if they arise out of the same series of transactions constituting an offense or offenses." *United States v. Satterfield, 548 F.2d 1341, 1344 (9th Cir. 1977).* "A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Barmapov v. Amuial, 986 F.3d 1321, 1324 (11th Cir. 2021). "*Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* "Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id.*

Defendants' pleading obsession is nothing more than to take Court's and Plaintiff's time in a futile attempt to dismiss the case and avoid liability for their actions. Plaintiff, as she mentioned before, sufficiently pleaded enough facts in her

FAC - see ¶¶  29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, FAC. She also followed the standards of Rule 10(b) by stating her claims and defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. In terms of the joining Defendants, it is clear from all facts and circumstances Plaintiff raised in her FAC, that Enterprise is after her career, license, income and normal life in the United States, that's why Enterprise corrupted Yelp (platform for business ratings), corrupted Google (platform similar to Yelp) and corrupted all referral organizations where Plaintiff was a member. What other arguments Defendants need to accept that there is a strong reason why Plaintiff joined all Defendants in one lawsuit ? Additionally, Defendants pretend that they are unaware what RICO statute stands for, what is an enterprise under RICO and what constitutes a predicate act. Defendants' Motion to Dismiss is simply a waste of Court's and Plaintiff's time.

## III. ARGUMENTS

**A. Plaintiff successfully established existence of the associated in fact Enterprise with the common purpose to leave Plaintiff with no business, income, to damage her reputation and career as well as harass and intimidate her.**

"RICO is to 'be liberally construed to effectuate its remedial purposes." *Sedima, 473 U.S. at 497, 105 S.Ct. 3275 (quoting Pub. L. 91–452, § 904(a), 84 Stat. 947)." In re Nat. W. Life Ins. Deferred Annuities Litig., 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009).* "RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals

associated in fact although not a legal entity." *Plambeck*, *802 F.3d at 673 (quoting 18 U.S.C. § 1961(4)) (*internal quotation marks omitted). Accordingly, a RICO enterprise can be either a legal entity or an association-in-fact." *Allstate Ins. Co. v. Benhamou, 190 F. Supp. 3d 631, 648 (S.D. Tex. 2016).* "A corporate entity may be held liable ... where it associates with others to form an enterprise that is sufficiently distinct from itself. In this regard we have noted that a section 1962(c) claim may be sustained where there is only a partial overlap between the RICO person and the RICO enterprise and that a defendant may be a "RICO 'person' and one of a number of members of the RICO 'enterprise,' "). *Id.* "The section describes two separate categories of associations that come within the purview of an "enterprise"—the first encompassing organizations such as corporations, partnerships, and other "legal entities," and the second covering "any union or group of individuals associated in fact although not a legal entity." *United States v. Turkette, 452 U.S. 576, 576–77, 101 S. Ct. 2524, 2525, 69 L. Ed. 2d 246 (1981).* "Multiple corporations or other legal entities can, when working in concert either overtly or covertly, form an association-in-fact RICO enterprise." *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000).* "An associated-in-fact enterprise must have "a common purpose of engaging in a course of conduct." *In re Nat. W. Life Ins. Deferred Annuities Litig., 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009).* "The common purpose element, however, does not require the enterprise participants to share all of their purposes in common. *See, e.g., Odom,* 486 F.3d at 552 (finding a single common purpose sufficient). And all members of the enterprise need not be directly working with all other members of that enterprise. *See United States v. Feldman,* 853 F.2d 648 (9th Cir.1988). "What RICO does require as a showing of common purpose is 'proved by evidence of an ongoing organization, formal or informal, and evidence

that the various associates function as a continuing unit." *In re Nat. W. Life Ins. Deferred Annuities Litig., 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009).*

Plaintiff successfully established existence of the enterprise. Plaintiff sued in the same lawsuit Google, Yelp (responsible for business ratings), referral organizations (responsible to send to the Plaintiff cases for her business), and Plaintiff sued Defendants, who primarily targeted her career and license by making multiple defamatory tweets in social media, harassing her with disbarment, placing those news under her name in Google Search - all Defendants in Plaintiff's lawsuit are united with common purpose not to provide Plaintiff with business, leave her with no income, destroy her reputation and career as well as harass and intimidate her. Plaintiff didn't sue anybody, who is outside of the goal to impact her business, reputation and income, that's why blaming Plaintiff in "lumping" Defendants into this lawsuit has no grounds. Plaintiff also, contrary to Defendants' arguments, didn't cite only the Law in her FAC about enterprise, she named enterprise several times, named it "a big Armenian Enterprise", ¶¶ 61, 74, 122, 133, 134, 144, 148, 159, 162, 313, FAC, she also specifically showed that Defendants used similar harassment and fraudulent tactics to defraud her and leave her with no business, ¶¶ 64, 65, 66, 67, 68, 72, 73, 74, 116, 120, 128, 130, 132, 136, 137, FAC. She also showed in FAC that Defendants for their purposes use Armenians Enterprise employed by all Defendants, some of Armenians who are sued in this lawsuit hold managerial positions in this Enterprise, others will be identified and joined through the discovery process,¶¶ 133, 144, 162, FAC., Plaintiff also experienced problems at referral organizations every time when Armenian clients were referred to her,¶¶ 121, 122, 123, 124, FAC. Allegations that Aram Hamparian was named only once has no grounds, as Plaintiff showed in FAC that Aram Hamparian is an Executive Director for Defendant ANCA and named him several times - ¶¶ 151, 159, 163,

FAC., or generally referred to him as Defendants or Defendant ANCA, which assumes Defendant Aram Hamparian too.   As Aram Hamparian is an Executive officer for Defendant ANCA, and as such holds a managerial position at this organization, and therefore, was primarily involved, was an initiator and perpetrator of intentionally damaging Plaintiff's reputation and   business in compliance with his organization's hate agenda, Defendants failed to establish that Plaintiff couldn't show the existence of the Enterprise.

**B. Plaintiff successfully established that Defendants gained control over Plaintiff's business and she suffered injury distinct from the injury from predicate acts.**

"A plaintiff cannot recover under § 1962(b) unless he alleges a distinct injury caused not by predicate acts but by the defendant's acquisition or maintenance of an interest in or control of an enterprise." *Allstate Ins. Co. v. Seigel, 312 F. Supp. 2d 260, 273 (D. Conn. 2004).* "The complaint also alleges that the defendants acquired control of Sutliff by means of the fraud. As control within the meaning of the statute need not be formal—need not be the kind of control that is obtained, for example, by acquiring a majority of the stock of a corporation—see *United States v. Jacobson,* 691 F.2d 110, 112 (2d Cir.1982) (per curiam), this is a good allegation under section 1962(b)" *Sutliff, Inc. v. Donovan Companies, Inc., 727 F.2d 648, 653 (7th Cir. 1984).*

Plaintiff has successfully established that Defendants gained control over her business by engaging in racketeering activity of mail & wire fraud, by placing fraudulent content about her in a social media, by placing defamatory news under Plaintiff's name in Google Search with the intent to defraud the public about

professional ethics and reputation of the Plaintiff, by conspiring with Google and placing in Google search results information about Denmark law firm for the Plaintiff's law firm results in San Diego and Orange county area, by engaging their agents to continuously post the same type of defamatory news about Plaintiff in Google results. Plaintiff was injured as a result of such actions of Defendants, Plaintiff's clients were confused and mislead, Denmark Law firm's results in the google search for the Plaintiff almost for sure made potential clients to doubt authenticity of Plaintiff's business and its presence in Southern California, confused them in terms of the area of her practice and the ownership of the business. Besides, in terms of the 'distinct injury" from the injury from predicate acts, defamation is not a predicate act and was sufficiently pleaded by the Plaintiff in FAC, see ¶¶ 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245 of FAC. Plaintiff also showed that she suffered a distinct injury by pleading harassment, intentional infliction of emotional distress, negligent infliction of emotional distress, malicious prosecution - none of them are predicate acts. Plaintiff also asked for a leave of court to file her second amended Complaint (SAC), where her claim under 18 U.S.C. 1962 (b) was revised. She is adding new tort - invasion of privacy by placing in false light, which is not a predicate act too, and therefore constitutes a distinct injury. Defendants failed in their argument that Plaintiff couldn't establish a claim under 18 U.S.C. 1962 (b).

**C. Plaintiff has no burden under RICO statute to prove conspiracy once pattern of racketeering activity is established contrary to allegations of Defendants.**

"A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense….The partners in the

criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Id.* "So, conspiracy to violate subsection (c) requires proof that the defendant knew about and agreed to facilitate "the conduct of an enterprise's affairs through a pattern of racketeering activity." (*United States v. Larios-Villatoro, No. 16-20194 (5th Cir. Nov. 1, 2018).* "In *United States v. Elliott, 571 F.2d 880, 903 (5th Cir.1978)* Court highlighted the importance of predicate racketeering acts because they can prove the agreement: Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable.")", *United States v. Applins*, 637 F.3d 59, 82 (2d Cir. 2011).

    In the present case Defendants were engaged in the series of wire and mail fraud by primarily attacking Plaintiff's business, reputation and career. Every tweet made by them about Plaintiff was aimed to push the State Bar of California to disbar her,¶ 64, FAC. They maliciously and intentionally distorted and cut off her tweets to make the public to believe in the nonsense they spread about Plaintiff, they placed or ordered their agents to place all those information under Plaintiff's name in Google results, they published multiple derogatory and false news about Plaintiff with the purpose to damage her reputation and business, in the similar way Google and Yelp were publishing defamatory content about Plaintiff, refused to address any of her concerns and in fact harassed her in the similar way as Defendants, at the same time almost all referral organizations in California suddenly forgot about rules of the State Bar of California, started sending Plaintiff fake referrals, referrals not in her area of practice, harassed her multiple times with patent referrals while she was not even a member of IP panel, two judges acted completely inadequately - while one was delaying Plaintiff's case as much as

possible, another judge refused all her motions for continuance - apparently, with the purpose to damage her reputation and business. Defendants think that all of this was a mere coincidence, that there is no pattern, that suddenly all people working for the organizations, which were supposed to help Plaintiff's business, one day lost their minds - well, nice argument but it is hardly believable.

**D. Plaintiff successfully pleaded short and plain statements to establish claim under 15 U.S.C. § 1 Et Seq., Plaintiff was not required to plead with specificity claims not included under Rule 9 (b) of F.R.C.P., and each of Plaintiff's claim shall be read together with other parts of FAC in compliance with Rule 10 (c) of F.R.C.P. as Plaintiff incorporated by reference each and every paragraph in her FAC.**

"…conduct as consistent with permissible conduct as with an illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987) "There must be some evidence that "tends to exclude the possibility that the defendants were acting independently." *Id.* "Thus, evidence of parallel conduct alone cannot suffice to prove an antitrust conspiracy. A plaintiff "should present direct or circumstantial evidence that reasonably tends to prove that the defendants 'had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Id.* "Since mere parallel behavior can be consistent with independent conduct, courts have held that a plaintiff must show the existence of additional circumstances, often referred to as "plus" factors, which, when viewed in conjunction with the parallel acts, can serve to allow a fact-finder to infer a conspiracy." *Id.* "Such circumstances might include a common motive to conspire or a high level of interfirm communications." *Id.*

Plaintiff is a lawyer barred in the State of California. Lawyers are prohibited from sharing their fees with non lawyers for referrals, the only way how they can pay for referrals and get cases is via referral organizations. Almost all referral organizations in the State of California acted unethically and unprofessionally when they had to send cases to Plaintiff, moreover, they acted in the similar way, were engaged in pretty much similar pattern of wire & mail fraud and harassment. Plaintiff also pleaded enough facts showing that referral organizations conspired with each other not to send normal cases to Plaintiff, see ¶¶ 112, 115, 116, 118, 119, 120, 121, 126, 127, 128, 130, 131, 132, 135, 136, 137, 138, 139, 140, 141, 142 of FAC. Plaintiff also pleaded enough facts showing that Defendants maliciously and intentionally distorted her tweets and placed defamatory and disparaging content under her name, she also showed in her FAC that every time she was referred an Armenian client, she then stopped getting referrals or was harassed with inadequate referrals for quite continuous period of time. Plaintiff pleaded enough facts to show that Defendants Google and Yelp acted in tandem with Defendants to disparage her reputation, to maintain fake reviews on their platforms, to damage her business and mislead Plaintiff's clients as to the authenticity of Plaintiff's business, ¶¶ 58, 59, 60, 64, 65, 66, 67, 68, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80. One has to be really blind not to see that there is a common scheme and plan to ruin Plaintiff's business, reputation and career. In Defendants' opinion all of this was just a mere coincidence and it is normal what Plaintiff experiences, which is not. Moreover, Plaintiff successfully established conspiracy under RICO statute 1962 (d) (See analysis under Section C of the present Opposition). As to the facts concerning Defendants and conspiracy under 15 U.S.C. § 1 Et seq. each paragraph of Plaintiff's claim starts with "PLAINTIFF hereby incorporates by reference each and every paragraph, as if fully set forth

herein", and conspiracy between all Defendants was mentioned multiple times in FAC, ¶¶ 178, 167, 168, 169, 170, 171, 172, 173, 144, FAC .

**E. Plaintiff successfully pleaded short and plain statements to establish claim under California Business and Professions Code Section 16720 Et seq., Plaintiff was not required to plead with specificity claims not included under Rule 9 (b) of F.R.C.P., and each of Plaintiff's claim shall be read together with other parts of FAC in compliance with Rule 10 (c) of F.R.C.P. as Plaintiff incorporated by reference each and every paragraph in her FAC.**

Defendants' allegations that Plaintiff didn't plead enough facts as to this cause of action towards Defendants is an attempt to rewrite Federal Rules of Civil Procedure, specifically impose on Plaintiff an obligation of heightened pleading standard for those claims, where Defendants know that they are most vulnerable and they will lose. Rule 9(b) of F.R.C.P. has no requirement to plead with specificity of when, how and who did what in order to give a notice of her claim under California Business and Professions Code Section 16720 Et Seq., it is enough for the Plaintiff to plead short and plain statements, so that to give notice of her claims to Defendants. By engaging in multiple pleading accusations towards Plaintiff Defendants simply waste Plaintiff's and Court's time and resources. Every paragraph, every claim in Plaintiff's FAC starts with "PLAINTIFF hereby incorporates by reference each and every paragraph, as if fully set forth herein". Defendants clearly didn't read FAC carefully or pretend that they didn't read it. As to the discriminatory policy used by Defendants they need to read ¶¶ 38, 39, 40, 41 of FAC, where Plaintiff specifically mentioned that Defendants are either related or affiliated with ARF, that ARF was responsible for commission of multiple atrocities both in Azerbaijan and Turkey, that terrorism was an important tactic of

ARF since its inception, see also Docket No. 53, ESF page No. 429-450, that Defendants regularly organize smear campaigns against people in order to destroy their careers, ¶¶ 29, 31, 32, 33, 34 , that Defendants have a policy to destroy those people's career and life in the United States, whose views they do not like, ¶ 31. What else Defendants needed Plaintiff to plead, the mere absence of those statements particularly under cause of action does not make it to fail as a matter of law and pleading all facts under each causes of action would make Plaintiff's FAC on hundreds and thousands pages - very unreasonable and difficult for Court and parties to read, also under *Twombly* Plaintiff was not required to give detailed information on all facts in her pleading.

**F. Plaintiff successfully pleaded short and plaint statements to establish claim under California Business & Professions Code § 17200 Et Seq.**

Section 17200 et seq. of California Business and Professional Code defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising …" "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." *Rule 10 (c) of F.R.C.P.* Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).* "..courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v.*

*Makor Issues & Rts., Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007).*

Defendants' allegations that Plaintiff failed in pleading her claim for this cause of action are legally and factually wrong, because Plaintiff pleaded all facts about Defendants' fraudulent actions in FAC in details, and all claims incorporated by reference all other parts of FAC. Defendants want a Court to make a decision based on how Plaintiff pleaded claims separately from the rest of her complaint, which would be a direct violation of Rule 10 (c) of F.R.C.P and other federal court decisions on the matter. Additionally, Plaintiff pleaded with specificity all wire and mail fraud committed by Defendants in compliance with requirements of Rule 9 (g) of F.R.C.P. ¶¶ 29, 31, 32, 33, 34, 35, 51, 53, 64, 65, 66, 67,68, 69, 71, 72, 73, 74 and etc, FAC. Also, since RICO statute is involved, Plaintiff attributes to Defendants all other mail & wire fraud committed by other Defendants as acts of one conspirator are attributable to the acts of another. Nothing in Plaintiff's FAC shall be considered separately from what Defendants actually did as all Defendants acted as one big enterprise. Defendants failed to claim that Plaintiff couldn't establish her claim under California Business & Professions Code § 17200 Et Seq.

**G. Plaintiff successfully pleaded short and plain statements to establish claim under California Code of Civil Procedure § 527.6, Harassment.**

"Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Code Civ. Proc. § 527.6(b)(3). "Course of conduct" is a "pattern of conduct composed of a series of acts over a period of time, however short,

evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email. *Id.* § 527.6(b)(1). Additionally, the harassment "must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." *Id.* § 527.6(b)(3). The statute exempts "constitutionally protected activity.' " *Id.* § 527.6(b)(1). *United Artists Corp. v. United Artist Studios LLC, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *8 (C.D. Cal. Oct. 17, 2019).*

Plaintiff pleaded short and plain statements giving a notice to the Defendants that their actions constituted harassment. Plaintiff was continuously harassed by Defendants and by their agents for about 2 years now, and directly by Defendants for the last year. The most horrible harassment was during the months of January and February this year, when Defendants non stop were tagging State Bar twitter account, demanding her immediate disbarment, publicly making false news about Plaintiff, published her photos with their logo on them blaming her in calling for genocide, placed this nonsense under her name in Google Search. Now, they argue that it was a constitutionally "protected" speech, that publicly calling for disbarment of the lawyer is a normal thing to do, that placing photos of Plaintiff with their logo in news without her permission and with violation of her privacy rights also a Constitutionally protected speech. As further analysts will show Defendants are wrong.

*1. Plaintiff was not required to establish civil conspiracy as she successfully established conspiracy under RICO statute, and RICO Statute supersedes any state law in this regard.*

"Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable.", *United States v. Applins, 637 F.3d 59, 82 (2d Cir. 2011).*

Defendants are inseparable part of Armenian Revolutionary Federation, very well known by persecution of the people of the same background as Plaintiff,¶¶ 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, FAC. Defendants organized the similar type of smear campaigns against other representatives of the nation/ethnicity Plaintiff belongs in the past,¶¶ 29, 30, 31, 32, 33, 34, FAC. Defendants for about two months harassed Plaintiff in social media - specifically Twitter by placing non-stop defamatory statements about her, tagging State Bar of California's twitter account and demanding her disbarment,¶ 224, FAC. After Defendants made those tweets, Plaintiff's emails, social media accounts, phone were flooded with threats, including death threats,¶ 225, FAC. Plaintiff also asks for judicial notice of the Congress record she attached here as Exhibit A to show how exactly ARF acted in the past while persecuting its opponents, and how it first threatened and then killed Archibishop Tourian back in 1933. As Plaintiff successfully showed a pattern of racketeering activity she does not need to prove agreement under civil conspiracy.

*2. Defendants' attempts to put on Plaintiff heightened pleading requirement under Rule 9 (b) of F.R.C.P in terms of stating harassment claim in FAC and totally*

_ignoring Rule 10 (c) of F.R.C.P. allowing incorporation by reference in the_
_pleadings fail as contradicting to Law. Plaintiff successfully pleaded short and_
_plain statements to show harassment._

Plaintiff considers it annoying both for herself and for the Court to be forced in fact to repeat her statements in FAC in this motion. Plaintiff stated in her FAC that from approximately January 2024 till end of February 2024, for about two months Defendants ANCA and ANCAWR continuously made defamatory statements about PLAINTIFF in Twitter, Instagram, Reddit and other Platforms by taking her single tweet out of context, distorting, manipulating it and blaming Plaintiff that she called for the genocide of Armenians, which was a complete lie,¶ 64, FAC. This is a statement of fact - it shows when, how, where and what wrong was done by Defendants. The same is true about defamation, Plaintiff was not bound by heightened pleading rule for defamation cause of action in California courts, because she brought her lawsuit in federal court. This part of FAC is incorporated into Harassment claim, because harassment claim starts with "Plaintiff hereby incorporates by reference each and every paragraph, as if fully set forth herein".,¶ 222, FAC. Plaintiff does not understand why she has to repeat in this motion certain portions of her FAC as if Defendants didn't have a chance to read it. Additionally, Plaintiff was not required to plead in her FAC all facts under _Twombly_. (" The Federal Rules of Civil Procedure establish a system of notice pleading rather than fact pleading... so the happenstance that a complaint is 'conclusory,' whatever exactly that overused lawyers' cliche means, does not automatically condemn it". _Bell Atl. Corp. v. Twombly, 550 U.S. 544, 590, 127 S. Ct. 1955, 1985, 167 L. Ed. 2d 929 (2007)._ "Under the notice system of pleading established by the Rules of Civil Procedure, ... the ancient distinction between pleading 'facts' and 'conclusions' is no longer significant". _Id._ "The federal rules

do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties" *Id.* ). Plaintiff pleaded enough facts to give Defendants a fair notice of harassment claim.

*3. Plaintiff pleaded short and plain statements in her FAC giving Defendants a notice that their speech was not a constitutionally protected speech, Plaintiff was not bound by heightened pleading requirement under Rule 9 (b) of F.R.C.P. while pleading Harassment, and other parts of her FAC were incorporated by reference into her Harassment claim.*

"Actual malice is a term of art in defamation law. If you, with actual malice, publish falsehoods about a public figure, you forfeit the constitutional protection." *Collins v. Waters, 92 Cal. App. 5th 70, 73, 308 Cal. Rptr. 3d 326, 329 (2023), as modified on denial of reh'g (June 5, 2023), review denied (Aug. 9, 2023).* "At trial, a public figure plaintiff like Collins must establish actual malice by clear and convincing evidence. In the context of a special motion to strike, however, plaintiffs instead must establish only a probability they can produce clear and convincing evidence of actual malice." *Id.*

Defendants' allegations that Plaintiff didn't give in her FAC enough information to give them a notice that their speech was unprotected is false. Plaintiff gave enough information in her FAC that Defendants made their statements by distorting and cutting off her tweets, by tagging State Bar of California Twitter account and demanding her disbarment, that they targeted her in her professional capacity as a lawyer, that they placed defamatory news and tweets under her name in Google Search to maliciously damage her reputation, career and license,¶¶ 64, 233, 234, 235, 236, 237, 238, 239, FAC. This all gives Defendants a

good notice that their speech was unprotected  as it was made with actual malice, that it was an invitation for their community to attack Plaintiff personally, and those attacks immediately followed, that Plaintiff was getting death threats follow ing their news immediately. Under Rule 8 (a) of F.R.C.P. Plaintiff was required only to plead short and plain statements to give a notice, she was not required to plead detailed facts. Additionally, Plaintiff is not even required to establish an actual malice as Plaintiff was neither a public official, nor a public figure.

*4.  Defendants' claim that their speech was a political speech fails as their speech was a targeted harassment made with actual malice to disbar Plaintiff, to damage her reputation and business and had no relationship to politics, Plaintiff also wasn't a politician or a candidate running for the office.*

"The federal constitutional guarantee of free speech has its fullest and most urgent application in the conduct of political campaigns. Those engaged in political debate are entitled not only to speak responsibly, but also to speak foolishly and without moderation." *Collins v. Waters, 92 Cal. App. 5th 70, 73, 308 Cal. Rptr. 3d 326, 329 (2023), as modified on denial of reh'g (June 5, 2023), review denied (Aug. 9, 2023).* "The making of a political campaign contribution is a type of political speech." *Governor Gray Davis Com. v. Am. Taxpayers All., 102 Cal. App. 4th 449, 458, 125 Cal. Rptr. 2d 534, 541 (2002).*

Plaintiff wasn't a politician, she was not running for the office in the United States or Azerbaijan, she wasn't targeted during her election campaign. Instead, she was targeted because she is a lawyer, Defendants demanded her disbarment, not her resignation as a politician. Lawyers are not elected in California or in the United States, they take a bar exam and get a license to practice Law. Additionally,

Plaintiff didn't make any statement by using her business account, she was tweeting in her personal account - targeting her business and her professional license because of her political speech is indicative of the intent and malice to damage her. In comparison with Dr. Oz, whom Defendants targeted while he was running for the U.S. Senate, Defendants have no constitutional protections here. Additionally, their speech served as an invitation for an attack on Plaintiff, which immediately followed. Plaintiff was brutally attacked by horrible tweets, emails, calls, messages. Plaintiff pleaded these facts in her FAC, see ¶¶, 233, 234, 235, 236, 237, 238, 239, FAC.

**H. Plaintiff was not bound by heightened pleading standard of defamation claims under California State Law because she brought her claim in a federal court.**

*1.* *As defamation claim is brought before Federal Court there is no heightened pleading requirement. Federal Law overrides State Law requirement for heightened pleading standard for defamation cases.*

"This reference to the primacy of Rules 8 and 9 implies that no such heightened pleading requirement for defamation claims brought in federal court exists. This reference, in effect, overrules the holdings of Dorn and Chiara that state such a heightened pleading standard exits. This finding is consistent with the First Circuit's general embrace of the proposition that no special pleading is required unless a specific provision of federal law or a Rule provides for it." *Bleau v. Greater Lynn Mental Health Retardation, 371 F. Supp. 2d 1, 2-3 (D. Mass. 2005).* "Courts have not looked with favor upon heightened pleading requirements for defamation because defamation is not included within the categories covered

by Federal Rule of Civil Procedure 9" *Okeke v. Biomat USA, Inc., 927 F. Supp. 2d 1021, 1027 (D. Nev. 2013).* "To the extent heightened pleading requirements have come into play, they have entered through Rule 9(g)'s requirement that special damages be pleaded with specificity. However, special damages are presumed (and thus not subject to Rule 9(g)) when the plaintiff alleges defamation per se." *Id.* "If the defamatory communication imputes a 'person's lack of fitness for trade, business, or profession,' or tends to injure the plaintiff in his or her business, it is deemed defamation per se and damages are presumed." *Id.* "Aside from the pleading of special damages, there are no heightened pleading requirements for defamation claims, and there is reason to be skeptical of a contrary interpretation of *Flowers.* " *Id.*

Defendants probably are unaware that the lawsuit is brought before federal court, not before state court, and as such there is no heightened pleading requirement for defamation. Plaintiff appreciates that Defendants try to strike the most sensitive part of FAC, on which they will most probably be found liable, but the claim against them is not brought before California court, and as such Plaintiff had no requirement to plead when, how, and what was tweeted by the Defendants, because Plaintiff gave enough information in FAC about what happened. In her First Amended Complaint (FAC) Plaintiff pleaded that "From approximately January, 2024, till the end of February, 2024, for about two months, DEFENDANTS ANCA and ANCAWR continuously made defamatory statements about PLAINTIFF in Twitter, Instagram, Reddit and other Platforms by taking her single tweet out of context, distorting, manipulating it and blaming PLAINTIFF that she called for the genocide of Armenians, which was a complete lie.", ¶ 64, FAC. What is not clear in this statement ? Pleading gives enough notice that Defendants made 1) multiple statements, that 2) these statements were defamatory, that 3) they blamed her in calling for genocide, that 4) the statements were made

on different platforms and that 5) Defendants did it by manipulating and distorting her tweet. If Defendants were so much concerned about nature of the tweets, their counsels could request for them from Defendants instead of losing time on writing this motion and taking Court's and Plaintiff's time. Moreover, Defendants actions were ongoing, they didn't stop only at harassing and defaming her in Twitter, after Plaintiff filed her complaint they made multiple other defamatory statements and placed them under Plaintiff's name in Google Search. Plaintiff added some of the statements to her Second Amended Complaint when she requested for leave of court on October 2, 2024, to file it, but she is still investigating some other statements and identify potential other Defendants to join, as attacks on her are ongoing and continuous.

_2. Since Rule 8 (a) of F.R.C.P. requires only pleading short and plain statements to put Defendants on notice, Plaintiff considers all other allegations of Defendants with regards to her Defamation claim as lacking any legal basis, and therefore defective ._

Plaintiff identified defamatory statement when pleaded her facts, Plaintiff identified that Defendants blamed her publicly in "calling for the genocide of Armenians",¶ 64, FAC. Plaintiff put Defendants on notice that their statements were false, ¶¶ 64, 233, 234, 235, 236, 237, FAC. Plaintiff put on notice Defendants that their claims were not opinion, as they based their statements on false facts that Plaintiff called for the genocide, ¶¶ 64, 233, 234, 235, 236, 237, FAC ("As we stated in our initial opinion, the Supreme Court's decision in *Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)*, and this court's decision in *White v. Fraternal Order of Police,909 F.2d 512 (D.C. Cir. 1990)*, make clear that there is no wholesale exemption from liability in defamation for

statements of "opinion." Instead, statements of opinion can be actionable if they imply a provably false fact, or rely upon stated facts that are provably false." *Moldea v. New York Times Co., 22 F.3d 310, 313 (D.C. Cir. 1994).* Plaintiff put Defendants on notice that their speech was not privileged and in any case was made with actual malice,¶¶ 64, 233, 234, 235, 236, 237, FAC. Plaintiff again emphasizes that Defendants' motion is nothing more than a futile attempt to take everybody's, including Court's time.

## I. Plaintiff pleaded short and plain statements putting Defendants on notice on her claim for malicious prosecution.

"Under the governing authorities, in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice." *Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863, 871, 765 P.2d 498, 501 (1989).* "A voluntary dismissal of a civil action or proceeding by the plaintiff therein is not ordinarily considered a dismissal 'on technical grounds' within the meaning of the Jaffe opinion. Such a voluntary dismissal, though expressly made 'without prejudice,' is a favorable termination which will support an action for malicious prosecution." *MacDonald v. Joslyn, 275 Cal. App. 2d 282, 289, 79 Cal. Rptr. 707, 711 (Ct. App. 1969).* "It is not enough, however, merely to show that the proceeding was dismissed. The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the

malicious and unfounded charge of crime against an innocent person.", Jaffe v. Stone, 18 Cal. 2d 146, 150, 114 P.2d 335, 338 (1941).

Plaintiff again faces another attempt of the Defendants to rewrite the law in their favor. Law says nothing about that dismissed cases can't be actionable by the victims for malicious prosecution purposes, it only put a burden on the party to show that dismissal was indicative that the person was without fault. Expressing opinion by the lawyer in her personal Twitter account is not criminal. If Defendants didn't like her tweets they could simply block her, but they didn't - instead they cut Plaintiff's tweet from the rest of her other tweets, maliciously took a picture of it, placed it in internet, tagged State Bar account and demanded her disbarment. They did it intentionally with malicious purpose to damage her reputation, business, deprive her of her license and subject her to horrible harassment. They placed their own complaint they made to the Bar in Twitter under "Dark day for the State Bar of California" slogan after the complaint got dismissed. Plaintiff pleaded enough facts suggesting Defendants' malice, lack of probable cause, and other elements of the tort of malicious prosecution,  ¶¶ 250, 251, 252,64, 233, 234, 235, 236, 237, FAC.

**J. Plaintiff pleaded short and plain statements putting Defendants on notice on her claims for IIED and NIED.**

*1. Plaintiff pleaded enough facts to put Defendants on notice that their speech was not a political speech.*

*"*In short, the Supreme Court's First Amendment jurisprudence defines core political speech as the discussion of public issues and the exchange of ideas for bringing about political and social change and reserves the highest level of

protection for such speech." *Earls v. N. Carolina Jud. Standards Comm'n, 703 F.*
*Supp. 3d 701, 723 (M.D.N.C. 2023).*

Targeting U.S. attorney' s bar license and claiming that she called for
genocide and that's why must be disbarred while maliciously cutting off Plaintiff's
tweets, distorting and manipulating them is not a political speech. Defendants
didn't discuss with Plaintiff genocide in Somali or somewhere else, they
continuously harassed her for more than two years through their different agents
and primarily on constant basis for about two months, threatening her with
disbarment. Disbarment of the lawyer serves no political interest, additionally
Plaintiff was neither a politician, nor a public figure. Plaintiff pleaded enough facts
to put Defendants on notice that their speech was not political (as the speech was
about Plaintiff in her professional capacity as a lawyer) and the speech was  done
with actual malice. See ¶¶ 64, 233, 234, 235, 236, 237, FAC.

*2. Contrary to Defendants' allegations, Plaintiff pleaded enough facts to put*
*Defendants on notice that their conduct was extreme and outrageous.*

"The tort of intentional infliction of emotional distress is comprised of three
elements: (1) extreme and outrageous conduct by the defendant with the intention
of causing, or reckless disregard of the probability of causing, emotional distress;
(2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's
injuries were actually and proximately caused by the defendant's outrageous
conduct." *Cochran v. Cochran, 65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540,*
*543 (1998).*

Calling publicly for attorney's disbarment for two months non - stop in social media by tagging Plaintiff's and State Bar of California's accounts, by maliciously distorting Plaintiff's tweets, by publishing multiple outrageously false news under her name in Google Search, by using Plaintiff's photos and putting there their own logo without her consent - all this, while different people were sending her simultaneously death threats is outrageous conduct and is not a petty oppressions and insults, ¶¶ 64, 233, 234, 235, 236, 237, 256, 257, 258 FAC. As to other people's relationship to Defendants I would advise them to read what is a pattern of racketeering activity before trying to distort law and mislead Court. Terrorism is a predicate act, Defendants are related to ARF. Many death threats Plaintiff received were made from the names of the well known terrorists in order to intimidate and threaten Plaintiff even more, some of the threats were coming from the names of well known Nemesis operation terrorists, or terrorists who achieved their "glory" in Karabakh by killing and torturing innocent people and kids. These threats followed immediately after Plaintiff was targeted in their news by Defendants, they followed 1st time too after Simon Maghikyan, who is presented as Defendants' Community Development Coordinator targeted her in Twitter, ¶¶ 51, 53, FAC. Defendants' own community members were also targeted for their speech after they criticized Defendants for being a Russian agent, ¶¶ 64, 233, 234, 235, 236, 237, FAC.

### 3. Contrary to Defendants' allegations, Plaintiff pleaded short and plain statements to establish a claim for NIED

"As a general principle, a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *Golick v. State of California, 82 Cal. App. 5th*

*1127, 1138, 299 Cal. Rptr. 3d 229, 238 (2022),* <u>review denied</u> *(Nov. 30, 2022).* However, a "duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if "the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Id.* "In fact, a breach of a legal duty, or a duty imposed by law, comes within the very definition of negligence; and, if such be the proximate cause of an injury, it constitutes actionable negligence.' *Elsner v. Uveges, 34 Cal. 4th 915, 939, 102 P.3d 915, 928 (2004).*

Defendants' contentions that Plaintiff didn't plead duty of care and breach of that duty are legally and factually wrong. First, Plaintiff pleaded "DEFENDANTS ANCA and ANCAWR owed the duty of care to the reasonable person and could act with tact not to endanger the life and mental condition of the PLAINTIFF, but they went forward with absolutely outrageous conduct of harassment for about two months on a daily basis.",¶ 303, FAC. Then she pleaded cause of action for harassment, which was incorporated to her NIED claim by reference, ¶¶ 310, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, FAC. Then she pleaded "DEFENDANTS ANCA and ANCAWR breached their duty of care to the PLAINTIFF, and subjected her to significant emotional distress, anxiety, shock and panic. DEFENDANTS ANCA and ANCAWR are liable for damages to PLAINTIFF in the amount to be set at trial.",¶ 304, FAC. As all portions of FAC were incorporated by reference by Plaintiff, including her cause of action for NIED, Defendants needed to read the entire FAC as one, not separate claims in FAC from the rest of FAC, they had to follow requirements of Rule 10 (c) of the F.R.C.P. Also, under Rule 8 (a) of F.R.C.P. Plaintiff was required to plead short and plain statements to give Defendants a notice, she was not required to plead who, where, how, and when did what under heightened standards of Rule 9 (g) of F.R.C.P. Section 527.6 of California Code of Civil Procedure defines harassment as

"unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Code Civ. Proc. § 527.6(b)(3). There was no legitimate purpose in Defendants' actions when back in January - February, 2024 and before that too via their agents and employees they harassed her with disbarment publicly by tagging her account and account of the State Bar of California and then sent her death threats, and then placed defamatory news and outrageously deformed pictures of Plaintiff in Google search results under her name. Defendants violated their duty of care under California Code of Civil Procedure, Section 527.6. Moreover, they violated their duty towards their own community too, because they increased the chances of Plaintiff being not only attacked in social media, but being physically attacked too. All people who attacked Plaintiff in social media and via emails and phone calls could be liable for harassment after investigation is complete and they are identified, and could be given restraining orders by Court as well. Defendants put the future of those people under risk too.

## V. CONCLUSION

Based on foregoing, Plaintiff Aynur Baghirzade requests the court grant her motion and deny Defendants' motion to dismiss Plaintiff's FAC with prejudice.

DATED: October 20, 2024

PLAINTIFF: Aynur Baghirzade

By: *Aynur Baghirzade*