NATALIE J. MORGAN, State Bar No. 211143
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real
San Diego, CA  92130-3002
Telephone:   (858) 350-2300
Facsimile:    (866) 974-7329
Email:         nmorgan@wsgr.com

NICHOLAS E. HAKUN, (Admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1700 K Street NW, Fifth Floor
Washington, DC  20006-3814
Telephone:   (202) 973-8800
Facsimile:    (866) 974-7329
Email:         nhakun@wsgr.com

Attorneys for Defendants
GOOGLE LLC AND ALPHABET INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SAN DIEGO DIVISION

| | |
|---|---|
| AYNUR BAGHIRZADE,<br><br>            Plaintiff,<br><br>    v.<br><br>ARMENIAN NATIONAL<br>COMMITTEE OF AMERICA, et al.,<br><br>            Defendants. | Case No.: 3:24-CV-01077-RSH-MMP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT BY DEFENDANTS GOOGLE LLC AND ALPHABET INC.**<br><br>Date:   December 30, 2024<br>Time:  TBD<br><br>Before:  Before: Judge Robert S. Huie |

# TABLE OF CONTENTS

**Page**

I.   BACKGROUND ........................................................................................... 1

   A.   RICO Claims (Counts 1-3) ............................................................... 5

   B.   Restraint on Competition Claims (Counts 4, 6, & 7) .......................... 5

   C.   Denial of Public Accommodation Civil Rights Claims (Counts 5 & 8) ................................................................................................. 5

   D.   State Law Harassment and Torts Claims (Counts 9, 10, 12, & 13) ...... 6

II.  LEGAL STANDARD .................................................................................. 7

III. ARGUMENT ............................................................................................. 7

   A.   Section 230 Bars Plaintiff's Claims Against Google .......................... 8

      1.   Plaintiff's RICO Claims (Counts 1-3) are Barred by Section 230 ............................................................................. 10

      2.   Plaintiff's Denial of Public Accommodation Claims (Counts 5 & 8) Improperly Attempt to Hold Google Liable for its Role as a Publisher ........................................... 11

      3.   Plaintiff's State Law Harassment and Torts Claims (Counts 9, 10, 12, & 13) Attempt to Impose Liability on Google for Statements Made by Co-Defendants .................. 12

      4.   Section 230 Also Applies to Plaintiff's Restraint on Competition Claims (Counts 4, 6, & 7) ............................... 13

   B.   Plaintiff Fails to Plead Sufficient Facts to State a Valid Claim Against Google ........................................................................... 14

      1.   Because Plaintiff's RICO Claims (Counts 1-3) Fail to Properly Establish an Enterprise, they are Improperly Pled .... 14

      2.   Plaintiff's Restraint on Competition Claims (Counts 4, 6, & 7) Fail to Implicate Google and are Also Improperly Pled ....................................................................................... 16

      3.   Plaintiff's Denial of Public Accommodation Claims (Counts 5 & 8) are Vague and Conclusory and thus are Improperly Pled ..................................................................... 18

      4.   Plaintiff's State Law Harassment and Torts Claims (Counts 9, 10, 12, & 13) Fail to Establish, Among Other Things, that Google Willfully or Intentionally Acted Against the Plaintiff ............................................................... 19

   C.   Further Amendment Would be Futile ............................................. 22

1    CONCLUSION..................................................................................................23

CONCLUSION..................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................ 1, 7, 14, 16

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ...................................................... 9, 11, 12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. *passim*

*Bennett v. Google, LLC*,
    882 F.3d 1163 (D.C. Cir. 2018) ............................................................... 9, 11

*Black v. Google Inc.*,
    No. 10-02381 CW, 2010 WL 3222147 (N.D. Cal. Aug. 13,2010),
    *aff'd*, 457 F. App'x 622 (9th Cir. 2011) ......................................................... 23

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016),
    *aff'd*, 700 F. App'x 588 (9th Cir. 2017) ........................................................ 22

*Clegg v. Cult Awareness Network*,
    18 F.3d 752 (9th Cir. 1994) ......................................................................... 18

*Cochran v. NYP Holdings, Inc.*,
    58 F. Supp. 2d 1113 (C.D. Cal. 1998)
    *aff'd*, 210 F.3d 1036 (9th Cir. 2000) ............................................................ 21

*Coffee v. Google, LLC*,
    No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) ............ 22

*DM Rsch., Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) ......................................................................... 16

*Doan v. Singh*,
    617 F. App'x 684 (9th Cir. 2015) ................................................................ 15

*Dworkin v. Hustler Mag., Inc.*,
    668 F. Supp. 1408 (C.D. Cal. 1987),
    *aff'd*, 867 F.2d 1188 (9th Cir. 1989) ........................................................... 20

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) ............................................................. 10, 21-22

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ........................................................... 9, 12, 13

*Fyk v. Facebook, Inc.*,
    No. C 18-05159 JSW, 2019 WL 11288576 (N.D. Cal. June 18, 2019) ........ 22

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) .......................................................................... 20

*Gilbert v. Sykes*,
    147 Cal. App. 4th 13 (2007) ......................................................................... 20

*Ginsberg v. Google Inc.*,
    586 F. Supp. 3d 998 (N.D. Cal. 2022) ..................................................... 12, 22

*Goddard v. Google, Inc.*,
    No. C 08-2738 JF (PVT), 2008 WL 5245490
    (N.D. Cal. Dec. 17, 2008)............................................................................. 13

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ........................................................................... 10

*Google LLC v. Equustek Sols. Inc.*,
    No. 5:17-cv-04207-EJD, 2017 WL 5000834
    (N.D. Cal. Nov. 2, 2017) .............................................................................. 10

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ........................................................................ 19

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................................................... 17

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021).......................................................................... 20

*Hicks v. PGA Tour, Inc.*,
    897 F.3d 1109 (9th Cir. 2018) ...................................................................... 16

*Hughes v. Pair*,
    46 Cal. 4th 1035 (2009) ................................................................................ 21

*Johnson v. Arden*,
    614 F.3d 785 (8th Cir. 2010) .......................................................................... 8

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...................................................................... 17

*Khan v. Twitter, Inc.*,
    No. 23-cv-00816-LB, 2023 WL 4315539
    (N.D. Cal. July 2, 2023) ................................................................................. 7

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .................................................................... 11

*L.W. v. Snap Inc.*,
    675 F. Supp. 3d 1087 (S.D. Cal. 2023) .......................................................... 8

*Lancaster v. Alphabet Inc.*,
    No. 15-cv-05299-HSG, 2016 WL 3648608 (N.D. Cal. July 8, 2016) .... 10, 22

*Lawler v. Montblanc N. Am., LLC*,
    704 F.3d 1235 (9th Cir. 2013)...................................................................... 21

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020),
    *aff'd*, 851 F. App'x 723 (9th Cir. 2021) .................................................. 12, 18

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*,
    48 Cal. 3d 583 (1989) ............................................................................ 21

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ............................................................ 13

*Munson v. Del Taco, Inc.*,
    46 Cal. 4th 661 (2009) ........................................................................... 19

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    795 F.3d 1124 (9th Cir. 2015) ............................................................... 16

*Obado v. Magedson*,
    2014 WL 3778261 (D.N.J. July 31, 2014),
    *aff'd*, 612 F. App'x 90 (3d Cir. 2015) .................................................. 13

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ................................................................. 14

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ................................................................. 8

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ............................................................................. 22

*Rice v. U.S. Supreme Court*,
    No. C 03-05582 CRB, 2003 WL 22999539 (N.D. Cal. Dec. 17, 2003) ....... 22

*Rosado v. eBay Inc.*,
    53 F. Supp. 3d 1256  (N.D. Cal. 2014) ................................................. 17

*Schild v. Rubin*,
    232 Cal. App. 3d 755 (1991) ................................................................. 19

*Shymatta v. Microsoft Corp.*,
    150 F. App'x 637 (9th Cir. 2005) .......................................................... 17

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990),
    *cert. denied*, 499 U.S. 961 (1991) ...................................................... 20

*United States v. Turkette*,
    452 U.S. 576 (1981) ............................................................................... 15

*Unsworth v. Musk*,
    No. 2:18-CV-08048-SVW-JC, 2019 WL 4543110
    (C.D. Cal. May 10, 2019) ...................................................................... 20

*White v. Square, Inc.*,
    7 Cal. 5th 1019 (2019) ........................................................................... 19

*Yuksel v. Twitter, Inc.,*
    No. 22-cv-05415-TSH, 2022 WL 16748612 (N.D. Cal. Nov. 7, 2022) ....... 10

*Zeran v. Am. Online,*
    129 F.3d 327 (4th Cir. 1997) ................................................................. 8

**STATUTES**

18 U.S.C. § 1961(4) ..................................................................................... 15

18 U.S.C. § 1962 ........................................................................................... 5

47 U.S.C. § 230 ...................................................................................*passim*

Cal. Bus. & Prof. Code § 16721 ......................................................... 16, 17

Cal. Bus. & Prof. Code § 17200 ................................................................ 17

Cal. Civ. Code P. § 527.6 ...............................................................6, 19, 20

Cal. Civ. Code § 51 (Unruh Civil Rights Act) ....................................*passim*

15 U.S.C. (Sherman Act) ....................................................................*passim*

**RULES**

Fed. R. Civ. P. 8 ..................................................................................... 1, 7

Fed. R. Civ. P. 9 ................................................................................. 17, 18

**MISCELLANEOUS**

5 C. Wright & A. Miller, Federal Practice and Procedure § 1216 (3d
    ed.2004) ................................................................................................ 14

Plaintiff is an Azerbaijani citizen who resides in and operates a law practice around San Diego, California. Plaintiff is also in an ongoing dispute with a slew of Armenian entities and individuals, which she believes is related to a longstanding conflict between the Republic of Azerbaijan and the Republic of Armenia. She brings this suit primarily to sue those entities and individuals for defamatory content they allegedly posted about her online. Plaintiff sues not only those alleged defamers but also Alphabet Inc. and Google LLC (collectively, "Google") and Yelp Inc. ("Yelp"), which were nothing more than the platform upon which Plaintiff and her alleged antagonists engaged in their war of words.

Plaintiff alleges that Google and Yelp, among other defendants including the Orange County Bar Association, are in cahoots with her antagonists and that, through undefined and speculative means, are operating a racketeering organization and cartel designed to destroy plaintiff's career. Plaintiff's vague and untenable claims against Google all fail to meet Rule 8 pleading standards under *Iqbal* and *Twombly*. Most importantly, however this plethora of claims is pled or phrased, Google is protected from liability for hosting, disseminating, and failing to remove content from its website under 47 U.S.C. § 230 (Section 230 of the Communications Decency Act).

## I.    BACKGROUND

Plaintiff operates a law firm under the name of ACCURA LAW FIRM, previously the Law Offices of Aynur Baghirzade. *See* Second Am. Compl. (ECF No. 96, "SAC") ¶ 1. Plaintiff speculates that defendants Armenian National Committee of America ("ANCA") and Armenian National Committee of America Western Region ("ANCAWR") are either "governed or have significant ties with the Armenian Revolutionary Federation." *See id.* ¶ 50. Plaintiff alleges that due to her Azerbaijani background and critical views on ANCA, she is being targeted by Defendants ANCA and ANCAWR. *See id.* ¶¶ 61, 189.

Defendant Google operates an automated search engine that assists users in finding information on the internet. Google allows businesses to create profiles on its platform, which are known as Google Business Profiles. *See id.* ¶ 109. Google also operates YouTube, which is a popular online video hosting platform where content creators may upload videos free of charge.

Plaintiff sued Google, along with the other defendants, on June 21, 2024. After issues serving the defendants, Plaintiff filed her first amended complaint on August 15, 2024. ECF No. 12. Plaintiff moved for leave to file her second amended complaint on October 2, 2024, which was granted by the Court on November 15, 2024. ECF No. 93.[1]

In her SAC, Plaintiff alleges that Defendants ANCA and ANCAWR continually made attempts to "disbar" Plaintiff using a network of like-minded people, whom Plaintiff speculates work for U.S. companies like Google. SAC ¶¶ 101, 186, 297. She refers to this network as the "Armenian Enterprise." *See id.* ¶¶ 42, 62-64. For example, Plaintiff alleges Defendants ANCA and ANCAWR, with unspecified help from Google, added a "tweet" that Plaintiff "called for genocide" to search results for Plaintiff's name to ensure that searching her name yielded results "to disbar" her. *Id.* ¶ 101. Plaintiff asserts that Google, under orders of the "Armenian Enterprise," placed ANCA and ANCAWR's defamatory statements on the internet in an attempt to ensure these statements would appear when someone searched Plaintiff's name, thus causing her damage to her "reputation" as well as "substantial emotional distress." *Id.* ¶¶ 102-03, 188, 297. Plaintiff further alleges that her own tweets opposing Defendant ANCA's opinions do not appear in search

---

[1] Plaintiff's SAC adds two defendants associated with Google: Google CEO Sundar Pichai, and Google subsidiary YouTube, LLC. Her claims against them substantially overlap with those against Alphabet Inc. and Google LLC, and are incurably deficient for substantially the same reasons. Neither have been served with a Summons and Complaint.

1  results, supposedly due to the sinister influence of the "Armenian Enterprise." *See*

2  *id.* ¶ 104.

3      All of Plaintiff's claims against Google stem from her unhappiness with how

4  she appears on the internet. She claims that Google, through its free Search, Business

5  Profile, and YouTube services, and as part of what she calls the "Armenian

6  Enterprise," intentionally sought to defame her and her law practice.[2]

7      Plaintiff alleges that Google needlessly insisted on verifying her location and

8  intentionally ignored her requests for help when setting up her Google Business

9  Profile. SAC ¶¶ 106-07. Specifically, on April 15, 2024, Plaintiff changed the name

10  of her law firm to ACCURA LAW and attempted to make this change on her Google

11  Business Profile. *See id.* ¶ 106. As part of this process, Google allegedly asked for a

12  video verification of her location. *Id.*[3] Plaintiff refused to verify her account because,

13  in her words, "she does not want [her real location] to be known." *See id*. Instead,

14  she contacted Google and set up a meeting with a representative on or around April

15  15, 2024. *See id.* ¶ 107. During the meeting, a Google representative allegedly asked

16  Plaintiff to present a license and business cards for her business account to verify

17  her business. Plaintiff challenged Google's authority to check her registration and

18  claimed she "doesn't even need a license to provide a service." *Id*. She then claims

19  that Google refused to "hear her" during this meeting. *Id.* Plaintiff summarily

20

21  _____

22  [2] Plaintiff's use of the term "Enterprise" is an empty label being used to associate
    Google and other defendants in her RICO allegations. As discussed below, there are
23  no plausible allegations that any such enterprise or conspiracy exists.

24  [3] Individual profiles on Google Business Profiles are created by the businesses
25  themselves, but Google checks certain details. *See generally*
    https://support.google.com/business/answer/7107242?hl=en ("To update your
26  business name and other info on Google, you must first verify your business.");
    https://support.google.com/business/answer/14271705?hl=en ("You can verify your
27  business with a video upload that captures key details. The video helps us confirm
28  that you represent the business.").

1   concludes that Google's "refusal" to overlook its verification policy is part of
2   Google's involvement in the Armenian Enterprise. *See id.* ¶¶ 106-10.

3        On or around May 2, 2024, Plaintiff allegedly searched on Google for
4   "ACCURA LAW" and found a business page for Accura Advokatpartnerselskab, a
5   large corporate law firm in Denmark with no alleged connection to Defendants. SAC
6   ¶ 108. It is unclear from Plaintiff's complaint whether the search also showed her
7   business page. Plaintiff again surmises that this is an "organized campaign of the
8   [Armenian Enterprise] working together with DEFENDANT GOOGLE" in an
9   attempt to "damage her business." *Id.* Further, as of May 25, 2024, Plaintiff's Google
10  Business Profile listing allegedly appeared in search results on her phone but not on
11  her computer, which she claims is an attempt by Google to confuse Plaintiff's
12  clients. *Id.* ¶ 109. She claims that Google's staff "was doing everything to delay the
13  process" and "to ensure that Plaintiff's business gets damaged as much as possible"
14  in an attempt to make her potential clients question her law firm's legitimacy. *Id.*
15  ¶¶ 110, 115.

16       Plaintiff additionally alleges that on or around June 22, 2024, her Google
17  account was "shelled with negative reviews of the people claiming that they were
18  her clients." SAC ¶ 112. Plaintiff states that Google refused to take down the
19  reviews, despite her attempting to report the "fake reviews," and her account was
20  made unverified again. *Id.* ¶¶ 112-14. Upon reporting fake reviews to Google,
21  Plaintiff allegedly received multiple emails from Google, leading her to conclude
22  that her business activity on Google is "under constant control and watch by the
23  ENTERPRISE not to allow her business to grow." *Id.* ¶ 114.

24       Finally, Plaintiff states that on or around July 30, 2024, she began recording
25  videos about immigration law and posting them on her YouTube channel for Accura
26  Law. SAC ¶ 111. Plaintiff alleges that after her first video received 326 views, the
27  number of views "stopped counting," "which could only mean that DEFENDANT
28  Youtube stopped showing her video." *Id.* No further explanation is provided, nor

does Plaintiff identify her YouTube channel or the URLs of the affected videos. Plaintiff asserts that the video view count issue is also evidence of "a common scheme and plan of the single big Enterprise to damage her business and punish her for her speech," and that any complaints to YouTube were ignored because of Google's ownership of the platform. *Id.*

Based on these allegations, despite a lack of factual support, Plaintiff asserts the following claims against Defendants, including Google.

## A.    RICO Claims (Counts 1-3)

In Counts 1-3, Plaintiff claims that all Defendants engaged in racketeering and control of enterprise in violation of 18 U.S.C. § 1962(b-d). SAC ¶¶ 215-44. Plaintiff suggests, without basis, that Google is somehow a part of the Armenian Enterprise because it allowed the other defendants' statements to appear on Google. She summarily claims this also constitutes wire fraud, which serves as the sole predicate for her RICO claims. But the SAC fails to explain how or why Google allegedly participated in an enterprise or conspiracy against Plaintiff. *Id.* ¶¶ 215-44.

## B.    Restraint on Competition Claims (Counts 4, 6, & 7)

In Count 4, Plaintiff claims that all Defendants conspired in restraint of trade in violation of the Sherman and Clayton Acts. SAC ¶¶ 245-50. In Counts 6 and 7, Plaintiff also accuses all Defendants of prohibited restraints on competition under California's Business and Professions Code through conspiring against the Plaintiff "to destroy her business." *Id.* ¶¶ 268-85. But her theories are improper bases for antitrust claims. Indeed, beyond conclusory statements that Google committed some type of fraud, this claim is based solely on the premise that Google took down or de-prioritized Plaintiff's content online, thus supposedly "excluding her from [the] normal flow of referrals." *Id.* ¶¶ 277, 281.

## C.    Denial of Public Accommodation Civil Rights Claims (Counts 5 & 8)

In Counts 5 and 8, Plaintiff alleges all Defendants, except ANCA and

ANCAWR, operate places of public accommodation, which failed to accommodate her business, in violation of both § 2000(a) of the Civil Rights Act and California's Unruh Civil Rights Act. SAC ¶¶ 251-67, 286-92. Plaintiff claims that Google is a place of public accommodation because it is open to businesses to register and receive reviews but that Google instead "acted as private clubs, because they became arms and ears" of ANCA and ANCAWR and hindered her ability to properly register her business and receive reviews online. SAC ¶¶ 255, 257. Plaintiff also alleges that she was targeted because of her "sex, race, color, religion, ancestry, national origin, [and] citizenship" in violation of California law. *Id.* ¶ 288. As will be discussed, Section 230 bars claims against service providers for allegedly removing individuals from their sites. Plaintiff cannot circumvent this by calling Google a "place of public accommodation."

### D.    State Law Harassment and Torts Claims (Counts 9, 10, 12, & 13)[4]

In Count 9, Plaintiff accuses all Defendants of engaging in harassment in violation of California's Civil Code of Procedure § 527.6. SAC ¶¶ 293-302. Plaintiff claims that other Defendants harassed her by ordering the Armenian Enterprise, allegedly working for Google, to place their social media content to appear under Plaintiff's name when searched on Google in order to harm her reputation and business and cause "substantial emotional distress." *Id.* ¶ 297.

In Count 10, Plaintiff claims that Google defamed her by publishing allegedly defamatory content at the instruction of the Armenian Enterprise and by refusing to delete defamatory content. SAC ¶¶ 303-17. To the extent any defamatory content was published on Google, Section 230 bars Plaintiff's claim.

In Counts 12 and 13, Plaintiff accuses all Defendants of both intentional and negligent infliction of emotional distress despite only including specific allegations about ANCA, ANCAWR, Aram Hamparian, and Armen Sahakyan's conduct. SAC

---

[4] Plaintiff's eleventh and fourteenth causes of action specifically exclude Google.

¶¶ 326-40. Plaintiff alleges that the other Defendants similarly harmed her business and damaged her reputation by acting in conspiracy with ANCA and ANCAWR to place false information online. *Id.* ¶¶ 332, 338. These claims apply to Google only in that it allegedly allowed the other defendants to put allegedly false information online.

## II. LEGAL STANDARD

Only a complaint that states "enough facts to state a claim to relief that is plausible on its face" satisfies the *Twombly-Iqbal* test. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)). The Court must determine whether the specific facts alleged by Plaintiff give rise to a "plausible claim for relief" in light of the Court's "judicial experience and common sense." *Id.* at 679. Fanciful, fantastical, and/or delusional allegations should be disregarded. *Khan v. Twitter, Inc*., No. 23-cv-00816-LB, 2023 WL 4315539, at *1 (N.D. Cal. July 2, 2023).

## III. ARGUMENT

Plaintiff claims Google is part of an "Armenian Enterprise" committed to ruining her reputation. This is fanciful. Similarly absurd are the allegations that Google is in a racketeering organization with these individuals and is conspiring to violate the Sherman Act. Plaintiff's allegations of a sweeping conspiracy to harm her business and interfere with her law practice simply fail to meet the *Iqbal* "plausibility" test.

Plaintiff's grievance is about allegedly defamatory statements made about her online by other defendants, with Google caught in the crossfire because it did not take down or otherwise moderate that content. This is a heartland case for immunity

under Section 230 of the Communications Decency Act of 1996 ("Section 230" or the "CDA"), which bars all of Plaintiff's claims.

## A. SECTION 230 BARS PLAINTIFF'S CLAIMS AGAINST GOOGLE.

Section 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute expressly preempts any state law claims that run afoul of this directive, providing that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." *Id*. § 230(e)(3). "Read together, these provisions bar plaintiffs from holding [Internet service providers] legally responsible for information that third parties created and developed." *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010). "The majority of federal circuits have interpreted the CDA to establish broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1094 (S.D. Cal. 2023) (quoting *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)) (dismissing both federal and state law claims under Section 230).

As the Fourth Circuit explained shortly after the statute was passed, "[t]he amount of information communicated via interactive computer services is [] staggering," making it "impossible for service providers to screen each of their millions of postings for possible problems." *Zeran v. Am. Online*, 129 F.3d 327, 331 (4th Cir. 1997). If online services could be sued for hosting third-party content, they would be forced to investigate each and every notice of potentially harmful third-party content on their platforms. "Although this might be feasible for the traditional print publisher, the sheer number of postings on interactive computer services would create an impossible burden in the Internet context." *Id*. at 333.

1    "Another important purpose of § 230 was to encourage service providers to
2    self-regulate the dissemination of offensive material over their services" without fear
3    that their efforts would create a legal duty to ensure that no bad content would ever
4    appear—precisely the type of impossible duty that Plaintiff seeks to impose on
5    Google in this case. *Zeran*, 129 F.3d at 331. To avoid imposing this impossible duty
6    on service providers, Congress decided that only those who ***originally*** create or
7    develop content on the Internet may be sued in connection with such content; service
8    providers like Google who host, display, or link to that content are immune from
9    such claims. This "means only that, if [plaintiff] takes issue with [a third-party's]
10   post, her legal remedy is against [the third party] himself as the content provider, not
11   against Google as the publisher." *Bennett v. Google, LLC,* 882 F.3d 1163, 1168
12   (D.C. Cir. 2018).

13       This law protects service providers even where, like here, Plaintiff launches a
14   scattershot complaint with causes of action ranging from defamation to RICO
15   conspiracies. "[A]ny activity that can be boiled down to deciding whether to exclude
16   material that third parties seek to post online is perforce immune under section 230."
17   *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (quoting *Fair Hous.*
18   *Council v. Roommates.com, LLC,* 521 F.3d 1157, 1170-71 (9th Cir. 2008)). "[W]hat
19   matters is not the name of the cause of action—defamation versus negligence versus
20   intentional infliction of emotional distress—what matters is whether the cause of
21   action inherently requires the court to treat the defendant as the 'publisher or
22   speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02.

23       Section 230 recognizes only a handful of exceptions. Prosecutorial
24   enforcement of federal criminal laws is outside the ambit of immunity, as are civil
25   claims for violation of the Electronic Communications Privacy Act, sex trafficking
26   laws, and federal intellectual property rights. *See* 47 U.S.C. §§ 230(e)(1), (2), (4),
27   and (5). None of these exceptions applies here.

28

To establish "[i]mmunity from liability" under Section 230, the defendant must be "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (cleaned up). All three criteria are met here.

"[T]here is no question that Google, through its products" like Search, Business Profile, and YouTube, "is a 'provider' of an 'interactive computer service.'" *Google LLC v. Equustek Sols. Inc.*, No. 5:17-cv-04207-EJD, 2017 WL 5000834, at *2 (N.D. Cal. Nov. 2, 2017); *Lancaster v. Alphabet Inc.*, No. 15-cv-05299-HSG, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) ("The Court finds, and Plaintiff appears to concede, that YouTube and Google are 'interactive computer services.'"); *see also Dyroff*, 934 F.3d at 1097 ("Websites are the most common interactive computer services.").

Plaintiff's suit is a classic attempt to impose liability on Google based on its role as a publisher of third-party content. She has included over a dozen claims in her SAC such as intentional and negligent infliction of emotional distress, defamation, harassment, denial of a public accommodation, unfair competition, and restraints on competition. But the allegations all center around Plaintiff's displeasure with content published about her online and Google's alleged de-prioritization of her content.

### 1. Plaintiff's RICO Claims (Counts 1-3) are Barred by Section 230.

Plaintiff's RICO and RICO conspiracy claims should be barred by Section 230. *See Gonzalez v. Google LLC*, 2 F.4th 871, 890 (9th Cir. 2021) ("Courts have consistently held that § 230(e)(1)'s limitation on § 230 immunity extends only to criminal prosecutions, and not to civil actions based on criminal statutes."); *Yuksel v. Twitter, Inc.*, No. 22-cv-05415-TSH, 2022 WL 16748612, at *5 (N.D. Cal. Nov. 7, 2022) ("Although Section 230(e)(1) provides a carve-out from its protections for federal criminal prosecutions, 47 U.S.C. § 230(e)(1), it does not provide any

1  exception from Section 230 immunity for civil claims premised upon federal
2  criminal statutes—including civil RICO claims.").

3      As discussed below in Section III.B.1, Plaintiff uses the phrase "Armenian
4  Enterprise" to invent a RICO conspiracy where none exists. Her issues are with the
5  online statements of ANCA and ANCAWR. Even assuming the facts underlying
6  these allegations, Google (a provider of an interactive computer service) acted only
7  as a publisher of those entities' content and is clearly protected from liability by
8  Section 230.

9      **2. Plaintiff's Denial of Public Accommodation Claims (Counts 5 & 8)
10      Improperly Attempt to Hold Google Liable for its Role as a
       Publisher.**

11

12      Plaintiff's denial of public accommodation claims allege that Google failed to
13  provide Plaintiff equal access to its platforms. To the extent Plaintiff is upset with
14  how her Google Business Profile is presented or how many views her YouTube
15  videos receive, this is protected publisher conduct. Here, the content at issue was not
16  created by YouTube or another co-defendant, but by "another information content
17  provider," *Bennett*, 882 F.3d at 1166—the Plaintiff herself.

18      In seeking to impose liability on YouTube or Google for allegedly limiting
19  the reach of her videos or business profile, Plaintiff seeks to hold Google liable as a
20  publisher. Plaintiff's theory implicates "a publisher's traditional editorial
21  functions—such as deciding whether to publish, withdraw, postpone, or alter
22  content." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) (citation
23  omitted). Publication "involves reviewing, editing, and deciding whether to publish
24  or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102
25  (citation omitted) ("[A] publisher reviews material submitted for publication,
26  perhaps edits it for style or technical fluency, and then decides whether to publish
27  it.").

28

"[R]estricting postings," in particular, "falls within a publisher's traditional functions." *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 954–55 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *see also, e.g.*, *Barnes*, 570 F.3d at 1105 ("[Section 230] shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties."). Google's immunity would extend even to a decision to remove her content from YouTube or its Business Profile service entirely. Courts routinely hold that Section 230 protects a service's decisions to "withdraw," "exclude," "monitor[], screen[], and delet[e]" content. *Klayman*, 753 F.3d at 1359. (internal quotation marks omitted). As the Ninth Circuit sitting *en banc* held, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Roommates.com, LLC*, 521 F.3d at 1170-71.

Regardless of how the plaintiff alleges her claims, her displeasure is with how content is promoted on Google. This is protected publisher conduct. Thus, her denial of public accommodations claims cannot proceed. *See e.g., Barnes*, 570 F.3d at 1102–03 (holding the "removal of the indecent profiles that [plaintiff's] former boyfriend posted on Yahoo's website ... is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove"); *Ginsberg v. Google Inc.,* 586 F. Supp. 3d 998, 1004–05 (N.D. Cal. 2022) (holding that failure to remove an application from Google's Play Store "boils down to deciding whether to exclude material ... that a third party seeks to place … online").

### 3. Plaintiff's State Law Harassment and Torts Claims (Counts 9, 10, 12, & 13) Attempt to Impose Liability on Google for Statements Made by Co-Defendants.

Plaintiff's state law harassment and torts claims are barred by Section 230 because they attempt to impose liability on Google for statements made by co-defendants. Plaintiff's primary complaints are about how ANCA, ANCAWR, and

others published defamatory statements on the internet that damaged her "reputation," her business, and caused her "substantial emotional distress." SAC ¶¶ 102-03, 188, 297.

Section 230 bars such suits, including claims against platforms like Google for negligent publication that cause harm to third parties. *See Barnes*, 570 F.3d at 1101; *see e.g., Goddard v. Google, Inc.*, No. C 08-2738 JF (PVT), 2008 WL 5245490, at *5 (N.D. Cal. Dec. 17, 2008) (dismissing claims that Google failed to protect consumers from fraudulent ads appearing on its platform, because such claims "would hold Google responsible for third-party content"); *see also, e.g.*, *Roommates.com*, 521 F.3d at 1171-72 (dismissing claims that website "failed to review each user-created profile to ensure that it wasn't defamatory," which "is precisely the kind of activity for which Congress intended to grant absolution with the passage of section 230"). The same outcome is warranted here.

### 4. Section 230 Also Applies to Plaintiff's Restraint on Competition Claims (Counts 4, 6, & 7).

Antitrust claims such as Plaintiff's are also barred on Section 230 grounds. *See Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019) (affirming district court's dismissal of a complaint based in part on violation of the Sherman Act as "barred by § 230 of the Communications Decency Act"). "[W]hat matters is not the name of the cause of action," but "whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1101-02. "Once CDA immunity applies, providers are immune from 'any' claim arising out of content originating from a third party, regardless of the theory underlying the cause of action." *Obado v. Magedson*, 2014 WL 3778261, at *4 (D.N.J. July 31, 2014) (citing 47 U.S.C. § 230(e)(3)), *aff'd*, 612 F. App'x 90 (3d Cir. 2015).

Here, there is no coherent antitrust claim against Google because Plaintiff's supposed antitrust conspiracy focuses on her theory that the defendant Orange

1    County Bar Association and its co-defendants are "excluding PLAINTIFF from the
2    market" of legal services in Orange County, California. *See* SAC ¶ 249. Google has
3    no role in that story beyond insinuations of conspiracy—"bare assertions, much like
4    the pleading of conspiracy in *Twombly*," that are not entitled to the presumption of
5    truth. *Iqbal*, 556 U.S. at 681.

6                    *                    *                    *

7         In sum, as to Google, the SAC must be dismissed because Section 230 bars
8    all of Plaintiff's claims.

9    **B.    PLAINTIFF FAILS TO PLEAD SUFFICIENT FACTS TO STATE
10            A VALID CLAIM AGAINST GOOGLE.**

11        Even if Section 230 did not immunize Google against Plaintiff's various
12    causes of action, Plaintiff's SAC must still be dismissed because she has failed to
13    state any of her claims with sufficient allegations to pass the basic *Iqbal-Twombly*
14    pleading standard.

15        **1.    Because Plaintiff's RICO Claims (Counts 1-3) Fail to Properly
16                Establish an Enterprise, they are Improperly Pled.**

17        To plead a RICO claim, there must either be a conspiracy or an enterprise. *See*
18    *Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir. 2007). Plaintiff has alleged
19    neither. As stated above, these claims are merely an attempt to circumvent Section
20    230 immunity.

21        Allegations of a conspiracy must be sufficient "to raise a right to relief above
22    the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller,
23    Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) ("[T]he pleading
24    must contain something more ... than ... a statement of facts that merely creates a
25    suspicion [of] a legally cognizable right of action")). The plaintiff must provide
26    "enough factual matter (taken as true) to suggest that an agreement was made.
27    Asking for plausible grounds to infer an agreement does not impose a probability
28

1  requirement at the pleading stage; it simply calls for enough fact to raise a reasonable
2  expectation that discovery will reveal evidence of illegal agreement." *Id*. at 555-56.

3          Similarly, to establish a substantive RICO claim, Plaintiff must plead the
4  existence of an "enterprise" within the meaning of 18 U.S.C. § 1961(4). "An
5  enterprise may be a legal entity, or it may be an association-in-fact." *Doan v. Singh*,
6  617 F. App'x 684, 685–86 (9th Cir. 2015) (citing 18 U.S.C. § 1961(4)). While "an
7  associated-in-fact enterprise under RICO does not require any particular
8  organizational structure, separate or otherwise," *Odom*, 486 F.3d at 551, the
9  complaint must describe "'a group of persons associated together for a common
10  purpose of engaging in a course of conduct[ ]' ... [and] must provide both 'evidence
11  of an ongoing organization, formal or informal,' and 'evidence that the various
12  associates function as a continuing unit.'" *Id*. at 552 (quoting *United States v.
13  Turkette*, 452 U.S. 576, 583 (1981)).

14          In the SAC, Plaintiff summarily claims that Google, along with the other
15  defendants, were part of a RICO enterprise and Sherman Act conspiracy that she
16  refers to as the "Armenian Enterprise." But she has failed to state plausible claims
17  because there is nothing in the SAC to even remotely suggest that Google conspired
18  with any other defendant at any time for *any* purpose. Nor does she point to any legal
19  entity or coherently plead that Google is part of an association-in-fact with the other
20  defendants. For instance, Plaintiff alleges merely that "upon information and facts .
21  . . that Armenian Enterprise working for DEFENDANT GOOGLE does everything
22  to place any defamatory information under her name to appear in Google Search,"
23  and that she "believes that DEFENDANT GOOGLE in the similar way as
24  DEFENDANT YELP became a part of the Armenian Enterprise to deliberately
25  damage her business and confuse her clients." *See e.g.,* SAC ¶ 108 (RICO claims),
26  SAC ¶¶ 218-22 (antitrust claims). How Google "worked for" or "became a part of"
27  the Armenian Enterprise is devoid of specifics. In short, Plaintiff's use of the phrases
28  "enterprise" and "conspiracy" are a sham.

1    The Supreme Court has made clear that allegations of conspiracy more

2    detailed than Plaintiff's are nonetheless insufficient if they merely allege that

3    defendants acted in concert in ways consistent with a conspiracy. *See e.g., Twombly*,

4    550 U.S. at 550-52. Yet Plaintiff here has alleged far less than in the deficient

5    complaints in *Twombly* and *Iqbal*. "[T]erms like 'conspiracy,' or even 'agreement,'

6    … might well be sufficient in conjunction with a more specific allegation—for

7    example, identifying a written agreement or even a basis for inferring a tacit

8    agreement, ... but a court is not required to accept such terms as a sufficient basis for

9    a complaint." *DM Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir.

10   1999). In the absence of any more specific allegation against Google, Plaintiff's

11   conspiracy and RICO claims must fail.

12   **2.    Plaintiff's Restraint on Competition Claims (Counts 4, 6, &**

13   **7) Fail to Implicate Google and are Also Improperly Pled.**

14   As discussed above, Plaintiff's claims that Google acted in conspiracy with

15   the Armenian Enterprise are unsupported. A plaintiff must plausibly prove that a

16   conspiracy exists to establish a Sherman Act claim. *See Name.Space, Inc. v. Internet*

17   *Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015).

18   Plaintiff has not properly defined the market, as is required, *Hicks v. PGA Tour, Inc*.,

19   897 F.3d 1109, 1120 (9th Cir. 2018) (stating that, at the motion to dismiss stage, a

20   plaintiff "must plead a relevant market to state an antitrust claim under the Sherman

21   Act. . ."), or illustrated how Google coordinated with other Defendants. For the

22   reasons outlined above, Plaintiff has not sufficiently pled the existence of a

23   conspiracy. Plaintiff has therefore not provided evidence of any violation of the

24   Sherman or Clayton Acts as alleged in Count 4.

25   In Count 6, Plaintiff alleges that defendants, including Google, violated

26   § 16721 of the California Business and Professions Code by conspiring to destroy

27   Plaintiff's business, excluded her from normal flows of referrals, or created

28   problems for her business online. SAC ¶ 277. Under § 16721, no person may be

discriminated against on the basis of "a policy expressed in any document or writing that requires discrimination." Cal. Bus. & Prof. Code § 16721(b).

In addition to failing to make any specific allegations of discrimination, Plaintiff has not indicated that Google had "a policy expressed in any document or writing" related to discriminating against Plaintiff's business on the basis of a protected category. Cal. Bus. & Prof. Code § 16721; *see Shymatta v. Microsoft Corp.*, 150 F. App'x 637, 638 (9th Cir. 2005) (affirming summary judgment because Plaintiff "failed to raise a genuine issue of material fact as to whether Microsoft ha[s] 'a policy expressed in any document or writing'" related to discrimination). Plaintiff's vague assertions lack factual support and do not state a plausible claim for relief. *Twombly,* 550 U.S. at 555.

In Count 7, Plaintiff also alleges violation of the Unfair Competition Law. Under Section 17200 of the California Business and Professions Code, the Unfair Competition Law ("UCL"), a plaintiff must demonstrate that a business practice is "(1) unlawful, (2) unfair, or (3) fraudulent." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022). "Rule 9(b)'s particularity requirement applies to each of the three prongs of the UCL ('unlawful,' 'unfair,' and 'fraudulent') where. . . the claims are based on a 'unified course of fraudulent conduct.'" *Rosado v. eBay Inc*., 53 F. Supp. 3d 1256, 1265 (N.D. Cal. 2014) (edit in original); quoting *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009). Plaintiff's allegations trigger Rule 9(b).

Here, her claims are premised on fanciful assertions about Google's role in a RICO conspiracy, which as discussed above, fails to meet *any* pleading requirement, let alone the heightened standard of Rule 9(b). Plaintiff alleges that all Defendants "engaged in unfair competition" by "conspiring with each other to destroy" plaintiff's business by committing "mail & wire fraud." SAC ¶ 281. Specifically, these alleged frauds focus on numerous other Defendants sending Plaintiff "fake referrals." *Id.* ¶ 282. Google's involvement in this conduct is limited to allegedly

1    engaging in "wire & mail fraud" to "deceive [the] public" about Plaintiff's services
2    "with the intent" to damage her business. *Id.* ¶ 283.

3    Such allegations are conclusory—just like her RICO allegations—and fall
4    well below the requirements of Rule 9(b). Thus, the claim must be dismissed. *See*
5    *Focus 15, LLC v. NICO Corporation,* 2022 WL 2355537 (N. D. Cal., June 30, 2022)
6    (dismissing UCL claims premised on the same basis as RICO claims when the
7    plaintiff failed to meet heightened pleading standard).

8           **3.    Plaintiff's Denial of Public Accommodation Claims (Counts 5**
9           **& 8) are Vague and Conclusory and thus are Improperly**
            **Pled.**
10

11   Plaintiff's cause of action for denial of public accommodation under federal
12   law (Count 5) fails because the claim does not apply to online platforms like Google.
13   Title II of the Civil Rights Act prohibits discrimination in "any place of public
14   accommodation." 42 U.S.C. § 2000(a). Places of public accommodations include
15   "only places, lodgings, facilities and establishments open to the public." *Clegg v.*
16   *Cult Awareness Network*, 18 F.3d 752, 756 (9th Cir. 1994). Because the Civil Rights
17   Act is limited to physical facilities, the 9th Circuit has stated that "[t]o conclude
18   Google or YouTube were places of public accommodation under Title II 'would
19   obfuscate the term 'place' and render nugatory the examples Congress provides to
20   illuminate the meaning of that term.'" *Lewis v. Google LLC*, 851 F. App'x 723, 724
21   (9th Cir. 2021) (citing *Clegg*, 18 F.3d at 755-56).

22   Plaintiff alleges that Google is a place of public accommodation because
23   Google's activity affects interstate commerce and is open to businesses. SAC ¶ 255.
24   That is a nonsequitur. Furthermore, the case law directly contradicts these
25   statements. If that were the test, essentially every website would be a "place" of
26   public accommodation in contravention of the plain language of the statute. *See id.*

27   In Count 8, Plaintiff alleges violation of California's Unruh Civil Rights Act,
28   Cal. Civ. Code Section 51(b) *et. seq*, which protects individuals from "intentional

discrimination in public accommodations." *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (quoting *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 668 (2009)). Such discrimination must be willful and affirmative to violate the act. *Id.*

While California's law extends protection to visitors of online businesses, Plaintiff fails to articulate how "she has been the victim of the defendant's discriminatory act." *See White v. Square, Inc.*, 7 Cal. 5th 1019, 1025 (2019). Plaintiff makes vague allegations that Google chose to join the Armenian Enterprise in "damaging her business and reputation," but provides no plausible claims suggesting that Google intentionally discriminated against her. SAC ¶¶ 288-91. Thus, her claim under the Unruh Act must fail, as well.

### 4. Plaintiff's State Law Harassment and Torts Claims (Counts 9, 10, 12, & 13) Fail to Establish, Among Other Things, that Google Willfully or Intentionally Acted Against the Plaintiff.

Plaintiff's Count 9 claiming harassment in violation of California Civil Code of Procedure Section 527.6 does not establish facts demonstrating that Google has engaged in any form of harassment. To state a claim under Section 527.6, Plaintiff must allege, among other things, that the defendant engaged in a "a knowing and willful course of conduct entailing a pattern of a series of acts over a period of time, however short, evidencing a continuity of purpose" and that the conduct alleged to be harassment "serves no legitimate purpose." *Schild v. Rubin*, 232 Cal. App. 3d 755, 762 (1991) (internal quotations omitted).

Here, Plaintiff's core argument is that ANCA and ANCAWR harassed Plaintiff on social media, Yelp, and other internet services. *See* SAC ¶¶ 295-97. To the extent Google is involved, it is because Google's platform either hosted the other defendants' content or enabled the public to find that information online. This is business as usual for an internet service provider and serves a legitimate purpose. There is no intentional, knowing, or willful course of conduct aimed at Plaintiff.

1    Plaintiff does not attempt to address this issue with respect to Google. Thus, Plaintiff
2    fails to state a claim against Google under Section 527.6.

3          In Count 10, Plaintiff claims defamation, alleging that Google published
4    defamatory content and refused to delete defamatory content about Plaintiff. Under
5    California law, defamation "involves the intentional publication of a statement of
6    fact which is false, unprivileged, and has a natural tendency to injure or which causes
7    special damage." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir.
8    2021) (*quoting Gilbert v. Sykes*, 147 Cal. App. 4th 13, [22-23] (2007)).

9          If the statement is one of opinion, it is protected and cannot form the basis of
10    a defamation claim. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 n.2 (9th Cir.
11    1990), *cert. denied*, 499 U.S. 961 (1991). "Whether an allegedly defamatory
12    statement is one of opinion or fact is a question of law." *Gardner v. Martino*, 563
13    F.3d 981, 986 (9th Cir. 2009); *Dworkin v. Hustler Mag., Inc*., 668 F. Supp. 1408,
14    1415 (C.D. Cal. 1987) (explaining it "is for the court to decide [whether a statement
15    is actionable defamation] in the first instance as a matter of law."), *aff'd*, 867 F.2d
16    1188, 1193–94 (9th Cir. 1989). To decide whether the challenged speech is a
17    statement of opinion, the court considers "whether a reasonable factfinder could
18    conclude that the contested statement implies an assertion of objective fact." *Id*.
19    (citation omitted). "The more statements lack the formality and polish typically
20    found in documents in which a reader would expect to find facts, the more likely the
21    statements are nonactionable opinion." *Unsworth v. Musk*, No. 2:18-CV-08048-
22    SVW-JC, 2019 WL 4543110, at *16 (C.D. Cal. May 10, 2019).

23          Here, Plaintiff does not plausibly allege that Google published any defamatory
24    statements of fact. To the contrary, her own allegations suggest that the social media
25    posts made against Plaintiff were either statements of opinion or had no alleged
26    connection to Google. Plaintiff complains of rude comments made on popular social
27    media platforms. *See, e.g.,* SAC ¶ 65 (Twitter comments blaming Plaintiff for "using
28    inappropriate sign of wolf"); ¶ 79 (harassing messages and epithets transmitted via

Twitter, Instagram, Reddit, and "other Platforms"); ¶¶ 102, 104 (tweets appear in Google Search results). No reasonable reader would conclude that these social media posts were anything other than opinion. Thus, Plaintiff's defamation claim should be dismissed for failure to state a claim. *See, e.g.*, *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 (C.D. Cal. 1998) *aff'd*, 210 F.3d 1036 (9th Cir. 2000) (affirming dismissal of defamation claim based on opinion).

In Counts 12 and 13, Plaintiff alleges Google caused the intentional and negligent infliction of emotional distress. To state a claim for intentional infliction of emotional distress ("IIED") in California, Plaintiff must allege, among other things, that Google's conduct was extreme and outrageous. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (*quoting Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (emphasis added)). Conduct is outrageous when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community," and liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

To the contrary, nothing in the SAC alleges anything more than Google acting in the ordinary course of its business: generating search results and making normal content moderation decisions. These actions, on their face, fail to allege anything falling outside the bounds of what is tolerated in civilized society. Far from it. Thus, Plaintiff's allegations fail to establish that any conduct by Google could plausibly meet this threshold.

The negligent infliction of emotional distress ("NIED") is not an independent tort, but rather falls under the tort of negligence. To allege a claim of NIED, Plaintiff must allege that Google owed her a relevant duty, the same as for any claim of negligence. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). Internet companies do not owe such duties based only on their role serving websites to the public, operating a search engine that indexes plaintiff's website, or hosting plaintiff's videos. *See Dyroff v. Ultimate Software Grp., Inc.*, 934

F.3d 1093, 1101 (9th Cir. 2019) (holding that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content"); *see also Ginsberg*, 586 F. Supp. 3d at 1009 (holding that "Google does not owe a general duty to the public" for operating its Play Store). Rather, Plaintiff would have to allege a special relationship with Google. *See Potter v. Firestone Tire & Rubber Co*., 6 Cal. 4th 965, 985 (1993). Plaintiff's allegations suggest no such relationship. For this reason, and more generally because of her failure to plead NIED beyond the most conclusory assertions, this claim also fails.

For all these reasons, Plaintiff's SAC must be dismissed, as to Google, because she fails to plead sufficient facts to state a valid claim against Google.

### C.    FURTHER AMENDMENT WOULD BE FUTILE.

The SAC should be dismissed without leave to amend. The Court should not allow Plaintiff to amend again because it would be futile to allow Plaintiff to replead. Her SAC is filled with allegations of absurd grandeur: that Plaintiff is being targeted by an "Armenian Enterprise" involving insiders at companies like Google and Yelp. Plaintiff cannot contribute new plausible facts to an amended complaint, much less cure the many deficiencies in her pleadings. Claims like those in Plaintiff's SAC that are "so attenuated and unsubstantial as to be absolutely devoid of merit" should be dismissed with prejudice. *Rice v. U.S. Supreme Court*, No. C 03-05582 CRB, 2003 WL 22999539, at *2 (N.D. Cal. Dec. 17, 2003).

Moreover, because "§ 230(c)(1) of the CDA precludes" Plaintiff's claims "as a matter of law," "[a]ny amendment would be" inherently "futile," and Plaintiff's claims must therefore be "dismisse[d] . . . with prejudice." *Lancaster*, 2016 WL 3648608, at *3. Courts frequently dismiss claims with prejudice when the defendant is immune from liability under Section 230(c)(1). *See, e.g., Ginsberg*, 586 F. Supp. 3d at 1010 (dismissal with prejudice where claims barred by Section 230(c)(1)); *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986, at *14 (N.D. Cal. Jan. 10, 2022) (same); *Fyk v. Facebook, Inc*., No. C 18-05159 JSW, 2019 WL

1  11288576, at *3 (N.D. Cal. June 18, 2019); *Caraccioli v. Facebook, Inc.*, 167 F.

2  Supp. 3d 1056, 1067 (N.D. Cal. 2016) (same), *aff'd*, 700 F. App'x 588 (9th Cir.

3  2017); *Black v. Google Inc.*, No. 10-02381 CW, 2010 WL 3222147, at *4 (N.D. Cal.

4  Aug. 13, 2010), aff'd, 457 F. App'x 622 (9th Cir. 2011).

## CONCLUSION

6       For all these reasons, Plaintiff's SAC should be dismissed with prejudice, and

7  without leave to amend.

9                                 Respectfully submitted,

10  Dated: November 25, 2024        WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

12                            By:  *s/ Nicholas E. Hakun*

13                               Nicholas E. Hakun
(Admitted *Pro Hac Vice*)
E-mail: nhakun@wsgr.com

15                               Attorney for Defendants
GOOGLE LLC and ALPHABET INC.