1  AYNUR BAGHIRZADE
   1968 S. Coast Highway #2429
2  Laguna Beach, CA 92651
   Phone: 619-630-6646
3  Email: contact@aynurlawyers.com

4  *AYNUR BAGHIRZADE, IN PRO SE*

5

6

7            **UNITED STATES DISTRICT COURT**
8            **SOUTHERN DISTRICT OF CALIFORNIA**

9

10 AYNUR BAGHIRZADE,                    Case No.: 3:24-CV-01077-RSH-MMP

11                  Plaintiff,          **PLAINTIFF'S MOTION FOR
                                        DEFAULT JUDGMENT AGAINST
12       v.                             DEFENDANTS LEGALMATCH
                                        CALIFORNIA, A NEVADA
13 ARMENIAN NATIONAL                    DOMESTIC CORPORATION AND
   COMMITTEE OF AMERICA, et al.,        ESTRELLA SANCHEZ, AN
14                                      INDIVIDUAL; MEMORANDUM OF
                                        POINTS AND AUTHORITIES**

15

16

17                                      Presiding Judge: Hon. Robert Huie
                                        Magistrate Judge : Hon. Michelle M.
18                                      Petit

19

20

21

22

23

24

25

26

27

28

Plaintiff's Motion for Default Judgment          Case No.: 3:24-CV-01077-RSH-MMP

# I. INTRODUCTION

Plaintiff Aynur Baghirzade, pursuant to Rule 55(b) (2) of the Federal Rules of Civil Procedure, respectfully moves for the entry of default judgment against Defendants Legalmatch California, a Nevada Domestic Corporation (Legal Match), and Estrella Sanchez, an individual. Plaintiff brought this action on June 21, 2024, requesting for compensation of damages and injunctive relief. Service was effected on Defendants on September 18, 2024, such that the Defendants' deadline to file a responsive pleading was October 9, 2024 (ECF No. 76 and ECF No.61). Defendants failed to appear, answer, plead, or otherwise defend this action as required by the Federal Rules of Civil Procedure, and the Clerk of Court entered a default against Defendants on October 23, 2024 ( ECF No. 78).

For the reasons described below, entry of default judgment against Defendants is appropriate because the evidence establishes that Defendants were engaged in (1) Racketeering activity in violation of Sec. 1962 (c) et seq. of the Racketeer Influenced and Corrupt Organizations Act; (2) Control of the Enterprise conducting racketeering activity in violation of Sec. 1962 (b) et seq. of the Racketeer Influenced and Corrupt Organizations Act; (3) Conspiracy in violation of Sec. 1962 (d) et seq. of the Racketeer Influenced and Corrupt Organizations Act; (4) Conspiracy in restraint of trade or commerce in violation of the Sec. 1 et seq. of the Sherman & Clayton Act 15 U.S.C.; (4) Denial of Public Accommodation in Violation of Section 2000a of Civil Rights Act 42 U.S.C.; (5) Prohibited Restraints on competition in Violation of Sec. 16720, et seq. of California Business & Professional Code; (6) Unfair Competition in violation of Section 17200, et seq. of California Business and Professional Code; (7) Denial of Public Accommodation in violation of Sec. 51, et seq. of California Civil Code; (8) Harassment in violation of Sec. 527.6 of the Code of Civil Procedure; (9) Intentional Infliction of

2

Emotional Distress; (10) Negligent Infliction of Emotional Distress, as a result of which Plaintiff suffered significant damages, was deprived of the opportunity to get referrals in exchange for the subscription fee she paid to use the Defendants' services, was harassed with inadequate, useless and fake referrals sent to her with violation of the Rules of the State Bar of California and with the intent to cause her financial losses, to take her time, to harass and intimidate her and to leave her eventually with no business. Plaintiff is therefore entitled to damages for the losses she sustained in the amount as provided below or as will be determined by Court. Plaintiff also is entitled to injunctive relief requiring Defendants to accommodate Plaintiff, to stop any racketeering activity against her, to send her referrals in compliance with the requirements of the State Bar of California and to any other injunctive relief as the Court may find appropriate.

## II. STATEMENT OF FACTS

1. On June 21, 2024, Plaintiff filed a Complaint for damages and injunctive relief where Legal Match and Estrella Sanchez were listed among 21 Defendants.

2. On August 15, 2024, Plaintiff amended her Complaint, which was served on Defendants on September 18, 2024 (ECF No. 76 and 61).

3. First Amendment Complaint demonstrated that Plaintiff signed up for the Defendants's referral services on or around May 28, 2024, ¶ 140, FAC.

4. After signing up for the referral services with Legal Match, Plaintiff was given an access to her profile where she found that her address was a Rancho Cucamonga address and not the address Plaintiff provided to Defendants. Defendants couldn't know about her Rancho Cucamonga address unless they were in contact with Armenian Enterprise and it was a planned action to harass and

intimate her as well as to let her know that she will not be given a business from this referral company, ¶ 140, FAC.

5.    After Plaintiff signed up for Defendants' services she was flooded with fake referrals, useless referrals, referrals where prospective clients didn't speak the languages she spoke, referrals where people were looking for pro-bono services or for the services of immigration lawyers in other countries, ¶ 141, FAC. Plaintiff also encloses here her communication with her account manager about the quality of the referral services she received from Defendants, Exh. C1 - C11.

6.    In one of her emails Plaintiff asked Defendants not to send her referrals for the clients who committed multiple felonies and who illegally crossed the border several times, as these cases were mostly hopeless and as these were the cases she mostly got from the Defendants and she even warned Defendants that after her email she will consider any such referral an act of harassment. Defendant stopped sending any referrals to the Plaintiff, but soon thereafter renewed the process and  continued sending to her criminals with multiple felonies so that to make sure that Plaintiff has no business or get involved into malpractice issues,¶ 142, FAC, *See* Exh. C10.

7.    Defendants had to respond with any pleading to Plaintiff's FAC on or before October 9, 2024, but failed to do so and failed to appear in court.

8.    On October 23, 2024, clerk entered default against Defendants (ECF No. 78).

9.    On October 2, 2024, Plaintiff filed Second Amended Complaint, but this Complaint didn't add any new causes of actions against Defendants and didn't change the amount of damages requested, and nothing material was amended in the Complaint with regard to Defendants.

1

2

### III. LEGAL STANDARD

3

4   "…..the party must apply to the court for a default judgment. A default

5   judgment may be entered against a minor or incompetent person only if

6   represented by a general guardian, conservator, or other like fiduciary who has

7   appeared…..The court may conduct hearings or make referrals—preserving any

8   federal statutory right to a jury trial—when, to enter or effectuate judgment, it

9   needs to: (A) conduct an accounting; (B) determine the amount of damages;(C)

10  establish the truth of any allegation by evidence; or (D) investigate any other

11  matter." "Factors which may be considered by courts in exercising discretion as to

12  the entry of a default judgment include: (1) the possibility of prejudice to the

13  plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the

14  complaint, (4) the sum of money at stake in the action; (5) the possibility of a

15  dispute concerning material facts; (6) whether the default was due to excusable

16  neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

17  favoring decisions on the merits." *Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th

18  Cir. 1986).* "Local Rule 55–1 requires that a party moving for default judgment

19  submit a declaration (1) indicating when and against which party default has been

20  entered; (2) identifying the pleading as to which default has been entered; (3)

21  indicating whether the defaulting party is an infant or incompetent person, and if

22  so, whether that person is represented by a general guardian, committee,

23  conservator or other representative; (4) stating that the Service Members Civil

24  Relief Act, 50 App. U.S.C. § 521, does not apply; and (5) affirming that notice has

25  been served on the defaulting party, if required by Rule 55(b)(2)." *Landstar

26  Ranger, Inc. v. Parth Enterprises, Inc., 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010).*

27  "Once a party's default has been entered, the factual allegations of the complaint,

28  except those concerning damages, are deemed to have been admitted by the non-

Plaintiff's Motion for Default Judgment          Case No.: 3:24-CV-01077-RSH-MMP

responding party. *See* Fed.R.Civ.Proc. 8(b)(6); see also, e.g., *Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir.1977) (stating the general rule that "upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true")" *Id. "*If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the "amount and character" of the relief that should be awarded. 10A Wright, Miller, & Kane, *supra,* § 2688, at 63; *Crawford,* 226 F.R.D. at 394 (district court has "wide latitude" and discretion in determining the amount of damages to award upon default judgment, quoting *James v. Frame,* 6 F.3d 307, 310 (5th Cir.1993))." *Id.*

### A. Default was entered against Defendants Legalmatch California, a Nevada Domestic Corporation, and Estrella Sanchez, an individual.

Clerk entered default against Defendants Legalmatch California, a Nevada Domestic Corporation, and Estrella Sanchez, an individual on October 23, 2024 (ECF No. 78).

### B. Defendants' Default was entered as to Plaintiff's First Amended Complaint.

Defendants failed to appear and answer or otherwise plead as to the Plaintiff's First Amended Complaint, and Plaintiff's subsequently filed Second Amended Complaint didn't add any additional causes of actions or didn't increase the amount of damages in regard to Defendants.

### C. Defendants are not minors or incompetent persons.

The defaulting parties - Legalmatch California Inc., a California Corporation is not a minor or incompetent person. Another Defendant - Estrella Sanchez is an employee of Legalmatch California Inc., who worked as an Account Manager and

was responsible for the referrals coming to Plaintiff's account, is not, to the best of Plaintiff's knowledge, a minor or incompetent person.

### D. Service Members Civil Relief Act, 50 App. U.S.C. § 521, does not apply.

To the best of Plaintiff's knowledge, Service Members Civil Relief Act, 50 App. U.S.C. § 521, does not apply in case of Defendants.

## IV.  ARGUMENTS

*1. Plaintiff is entitled to treble of damages for Defendants' violation of Section 1962 (c), Section 1962 (b) and Section 1962 (c) of 18 U.S.C. of Racketeering Influence Corrupt Organizations Act.*

"any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c)." *Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 265, 112 S. Ct. 1311, 1316, 117 L. Ed. 2d 532 (1992).* "In 18 U.S.C. § 1964(c), RICO provides a private right of action for treble damages to "any person injured in his business or property by reason of a violation," as pertinent here, of § 1962(c), which makes it "unlawful for any person employed by or associated with" a qualifying enterprise "to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity," including "mail fraud," § 1961(1)(B)." *Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 128 S. Ct. 2131, 2133, 170 L. Ed. 2d 1012 (2008).*

Defendants were engaged in multiple acts of wire fraud with the intent to leave Plaintiff with no business by sending her fake referrals, hopeless referrals (referrals for the criminals who committed multiple felonies and illegally crossed

the border several times), referrals where people were looking for an immigration attorney in other countries, referrals for the people speaking languages Plaintiff didn't speak., ¶ 141, See Exh. C1 - C11.  Since the time Plaintiff joined Defendants' referral service, she didn't retain any client and despite her objections, Defendants continued sending her fraudulent leads. The instances of wire fraud listed in Plaintiff's Exhibits to this motion do not reflect all fraudulent acts of Defendants, since many of them were not sent to Plaintiff's email and are still in the application, to which Plaintiff now has no access. Defendants also by their fraudulent acts acquired control over Plaintiff's business by not allowing her to earn any income, by taking her money and intentionally harassing her with inadequate leads, intentionally causing her emotional distress with the intent to dry her both emotionally and financially. Defendants committed these acts in conspiracy with other members of Armenian Enterprise, and thus shall compensate Plaintiff in the amount of treble of Plaintiff's damages which is equivalent to $ 10, 000, 000. Plaintiff also is entitled to injunctive relief requiring Defendants to stop racketeering activity against her and ensure that she is getting normal referrals according to the Contract she has with Defendants and in compliance with the Rules of the State Bar of California.

*2. Plaintiff is entitled to treble of damages for Defendants' conspiracy in restraint of trade or commerce in violation of the Section 1 et seq. of the Sherman & Clayton Act 15 U.S.C.*

" The Act, 15 U.S.C.A. § 15, provides that one injured in his business or property by reason of anything forbidden in the anti-trust laws may sue and recover threefold the damages sustained. The statutes were intended to advance the public welfare by promoting free competition and preventing undue restriction of trade

8

and commerce." *Nw. Oil Co. v. Socony-Vacuum Oil Co., 138 F.2d 967, 970 (7th Cir. 1943). "On the other hand, while actual injury is required to seek treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15, a plaintiff may bring an antitrust action seeking prospective injunctive relief under section 16 of the Clayton Act for conduct violating the Sherman Act without suffering an actual injury." Kruman v. Christie's Int'l PLC, 284 F.3d 384, 397 (2d Cir. 2002), abrogated by F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 124 S. Ct. 2359, 159 L. Ed. 2d 226 (2004).*

Defendants acted in conspiracy with other Defendants to intentionally outcast Plaintiff from business, leave her with 0 income, to make sure that her business does not participate in the competition, that it is out of trade and commerce, and thus contributed to unfair competition, restriction of trade and commerce. Thus, Plaintiff has to be compensated for the damages she directly suffered as a result of Defendants' actions in the amount of $ 5, 000, 000. Plaintiff is also entitled to injunctive relief against Defendants requiring them to accommodate Plaintiff and stop anti-trust violations by excluding Plaintiff's business from normal flow of trade and commerce.

**3. Plaintiff is entitled to injunctive relief against Defendants requiring them to accommodate Plaintiff and stop discrimination against her because of her race, ethnicity, national origin, religion and etc.**

"Section 2000a–3(a) provides that an aggrieved person may institute a civil action for preventive relief, including an injunction. The Supreme Court has held that damages are not recoverable under Title II. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 401–2, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)."

*Brown v. Harner, No. 1:15-CV-83 JVB, 2015 WL 2340608, at \*2 (N.D. Ind. May 13, 2015)*

Plaintiff is entitled to injunctive relief requiring Defendants to accommodate her and stop any discrimination against her because of her race, national origin, ethnicity, religion and etc.

**4. Plaintiff is entitled to treble of damages for Defendants' violation of Sec. 16720, et seq. of California Business & Professional Code, Prohibited Restraints on Competition.**

"In addition to establishing a public cause of action (enforced by the State Attorney General), the Cartwright Act gives a private right to sue for damages and treble damages to *each person* who suffers harm. West's Ann.Cal.Bus. & Prof.Code §§ 16750 *et seq.* (1987). The plain language of the Cartwright Act demonstrates that the California legislature intended to vindicate *individual* rights through private causes of action." *Borgeson v. Archer-Daniels Midland Co., 909 F. Supp. 709, 717 (C.D. Cal. 1995).* "While treble damages are punitive in nature, and therefore a portion of the Fifth Circuit's discussion of punitive damages would apply to them with equal force, the Cartwright Act gives plaintiffs a *specific right to these damages*. The fact that treble damages are guaranteed distinguishes the instant case from the Fifth Circuit case, in which punitives were left to the discretion of the court or jury. " *Id.*

Defendants intentionally and deliberately went into conspiracy with members of Armenian Enterprise and excluded Plaintiff's business from the normal flow of commerce on the orders from Armenian Enterprise, thus both

10

Plaintiff's Motion for Default Judgment          Case No.: 3:24-CV-01077-RSH-MMP

creating a trust and discriminating against her because of her race, national origin, ethnicity, religion and etc. Defendants thus decided to monopolize business and exclude Plaintiff from the normal flow of commerce just because she didn't live up to the fascist, radical expectations of the Enterprise. As a result of Defendants' trust Plaintiff couldn't retain any client up to the present moment and was forced eventually to give up to respond to any phone number or email provided to her via the referral service. Thus, Defendants are liable to compensate Plaintiff in the treble of her damages, which shall be in the amount of $ 5, 000, 000.

**5. Plaintiff is entitled to restitution and injunctive relief for Defendants' violation of Section Section 17200, et seq. of California Business and Professional Code, Unfair Competition.**

"Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition. (*Kwikset Corp. v. Superior Court, supra,* 51 Cal.4th at p. 326, 120 Cal.Rptr.3d 741, 246 P.3d 877.)" *Zhang v. Superior Ct., 57 Cal. 4th 364, 372, 304 P.3d 163, 168 (2013).* " Remedies for private individuals bringing suit under the UCL are limited to restitution and injunctive relief." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *20 (N.D. Cal. Aug. 30, 2017) (citing *Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567 AHM AGRX, 2009 WL 5184422, at *2 (C.D. Cal. Dec. 21, 2009) ). "A court awarding restitution under the UCL has "very broad discretion to determine an appropriate remedy as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired." *Astiana v. Kashi Co., 291 F.R.D. 493, 506 (S.D. Cal. 2013).* "Restitution under the UCL is consistently awarded with the goal of "restoring" to plaintiffs money wrongfully taken as a result of defendant's unlawful, unfair or fraudulent practices. *See Korea Supply Co. v.*

Plaintiff's Motion for Default Judgment          Case No.: 3:24-CV-01077-RSH-MMP

*Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1147-48, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003). California law "requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 938–39 (9th Cir.1999).* "The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Id.* at 939." *Copart, Inc. v. Sparta Consulting, Inc., 339 F. Supp. 3d 959, 998–99 (E.D. Cal. 2018).*

Plaintiff was deceived as to the genuine intent of the Defendants to provide her with fair services. Before joining their service she had a long conversation over the phone with managers of Legal Match, including Estrella Sanchez, and she was assured that the quality of the services will be good. However, this was not a case. Defendants defrauded Plaintiff by constantly sending her fake referrals, referrals which for sure would not turn into real leads, she was even sent clients who were looking for lawyers in Canada and other countries.  From May, 2024 till present time Plaintiff couldn't retain any client by using services provided by the Defendants, and thus, Plaintiff is entitled to restitution in the amount of $ 600 she paid for the services of the Defendants to become their member (*See Exh. A2*) and injunctive relief requiring Defendants to provide to Plaintiff referrals in accordance with the Rules of the State Bar of California.

**6. Plaintiff is entitled to treble of actual damages for each offense committed by the Defendants  in violation of Section 51 et seq. of California Civil Code,  Unruh Act, as well as to other damages.**

"Unlike the ADA, the Unruh Act allows for recovery of monetary damages. A plaintiff may recover actual damages for each and every offense "up to a

Plaintiff's Motion for Default Judgment          Case No.: 3:24-CV-01077-RSH-MMP

maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)[.]" *Cal. Civ. Code § 52(a)*. "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 731 (citing *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000))." *Schutza v. Cuddeback, 262 F. Supp. 3d 1025, 1029 (S.D. Cal. 2017). Unruh Act* further states: "(b) Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following: (1) An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages. (2) A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney. An action for that penalty brought pursuant to Section 51.7 shall be commenced within three years of the alleged practice. *Cal. Civ. Code § 52 (West)*

Defendants were engaged in intentional, deliberate discrimination against Plaintiff because of her race, national origin, ethnicity, immigration status, religion and etc. as they acted on the orders from Armenian Enterprise to defraud Plaintiff and leave her with no business. Defendants were engaged in multiple acts of wire fraud to damage Plaintiff and thus must compensate Plaintiff in the treble of actual damages for each such offense. Some of the offenses of Defendants are fixed in her emails to Defendants, but many of them are kept in her application she used for the referrals to which she does not have any access now and information from which is not available to her since Defendants didn't appear in this Court. Plaintiff therefore is entitled to compensation of $ 5, 000, 000 for such damages, as to the present

Plaintiff's Motion for Default Judgment          Case No.: 3:24-CV-01077-RSH-MMP

day Defendants continue their fraudulent activity and denied her a public accommodation by forcing her eventually to give up their services.

### 7. Plaintiff is entitled to injunctive relief against Defendants for Harassment in accordance with Section 527.6 of California Code of Civil Procedure.

"California Code of Civil Procedure § 527.6 governs restraining orders based on civil harassment ... and subsection (u) of this code provides that petitioners may pursue other civil remedies.")." *Pardo-Pena v. Spector, No. 2:20-CV-03562-MAA, 2021 WL 6496732, at \*13 (C.D. Cal. Nov. 3, 2021)*. "Section 527.6 has also made clear since its inception that utilizing this specialized civil procedure does not "preclude a plaintiff's right to utilize other existing civil remedies." (Stats. 1978, ch. 1307, § 2, subd. (j), p. 4296; see § 527.6, subd. (w).) "The quick, injunctive relief provided by section 527.6 'lies only to prevent threatened injury' — that is, future wrongs" — and "is not intended to punish the restrained party for past acts of harassment." (*Yost*, *supra*, 51 Cal.App.5th at p. 520, 265 Cal.Rptr.3d 175, quoting *Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332, 85 Cal.Rptr.2d 86.)" *Olson v. Doe, 12 Cal. 5th 669, 678, 502 P.3d 398, 403 (2022).*

Plaintiff therefore is entitled to injunctive relief against Defendants requiring them to stop harassing Plaintiff.

### 8. Plaintiff is entitled to compensation of both economic and non-economic losses as a result of Defendants' Intentional Infliction of Emotional Distress.

1

2      "Damages for intentional infliction of emotional distress may be recovered

3  for both economic losses, which include "reasonable compensation for any

4  financial loss suffered by the plaintiff which was proximately caused by emotional

5  distress," and non-economic losses such as damages for "humiliation, anxiety, and

6  mental anguish."  *Massie v. Gov't of Democratic People's Republic of Korea, 592*

7  *F. Supp. 2d 57, 76 (D.D.C. 2008).*

8

9      As a result of Defendants' actions Plaintiff suffered both economic and

10 emotional damages. In terms of economic losses - they are quite obvious, since

11 Defendants didn't provide her with the referrals, depriving her of any income, by

12 taking her money and giving nothing in return, which by itself is extreme and

13 outrageous conduct. Plaintiff also suffered emotional damages as undoubtedly it

14 was utterly stressful for her to communicate with Defendants and still get no result,

15 to wait for referrals and get zero income or no real lead, to lose her time by writing

16 and calling to people only to find out that phone numbers were fake and emails

17 never been answered, or they were answered by people obviously having no intent

18 to form with her any attorney-client relationship, lying that they can't speak or

19 understand English while they perfectly did. The entire scheme targeting Plaintiff's

20 business and her earnings was undoubtedly extreme and outrageous to cause her

21 significant emotional distress, and thus, Defendants shall compensate Plaintiff for

22 her economic losses and pain and suffering in the amount of $ 3, 000, 000.

23

24     ***9. Plaintiff is entitled to damages for Negligent Infliction of Emotional***

25 ***Distress caused by Defendants.***

26

27

28

Plaintiff's Motion for Default Judgment          Case No.: 3:24-CV-01077-RSH-MMP

1      "In its decisions addressing the direct victim theory, the California Supreme

2   Court has emphasized that "there is no independent tort of negligent infliction of

3   emotional distress." (*Potter v. Firestone Tire & Rubber Co., supra,* 6 Cal.4th 965,

4   984, 25 Cal.Rptr.2d 550, 863 P.2d 795 (*Potter* ); *Burgess, supra,* 2 Cal.4th at p.

5   1072, 9 Cal.Rptr.2d 615, 831 P.2d 1197; *Christensen v. Superior Court* (1991) 54

6   Cal.3d 868, 884, 2 Cal.Rptr.2d 79, 820 P.2d 181; *Marlene F. v. Affiliated*

7   *Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588, 257 Cal.Rptr. 98, 770

8   P.2d 278.) Instead, "the tort is negligence, a cause of action in which duty to the

9   plaintiff is an essential element." (*Potter, supra,* 6 Cal.4th at p. 984, 25 Cal.Rptr.2d

10  550, 863 P.2d 795.)".  *Gu v. BMW of N. Am., LLC, 132 Cal. App. 4th 195, 204, 33*

11  *Cal. Rptr. 3d 617, 623 (2005). "*However, "there is no duty to avoid negligently

12  causing emotional distress to another, ..." (*Potter, supra,* 6 Cal.4th at p. 984, 25

13  Cal.Rptr.2d 550, 863 P.2d 795.) Thus, "unless the defendant has assumed a duty to

14  plaintiff in which the emotional condition of the plaintiff is an object, recovery is

15  available only if the emotional distress arises out of the defendant's breach of some

16  other legal duty and the emotional distress is proximately caused by that breach of

17  duty." (*Id.* at p. 985, 25 Cal.Rptr.2d 550, 863 P.2d 795; *Erlich v. Menezes* (1999) 21

18  Cal.4th 543, 555, 87 Cal.Rptr.2d 886, 981 P.2d 978.) A legal duty "may be imposed

19  by law, be assumed by the defendant, or exist by virtue of a special relationship."

20  *Id.* "Under well-established common law principles, a negligent tortfeasor is

21  generally liable for all damage of which his negligence is a proximate cause; stated

22  another way, in order to recover damages sustained as a result of an indivisible

23  injury, a plaintiff is not required to prove that a tortfeasor's conduct was the sole

24  proximate cause of the injury, but only that such negligence was a proximate

25  cause."  *Am. Motorcycle Assn. v. Superior Ct., 20 Cal. 3d 578, 586, 578 P.2d 899,*

26  *904 (1978).*

27

28

Plaintiff's Motion for Default Judgment          Case No.: 3:24-CV-01077-RSH-MMP

Defendants had a duty to provide to Plaintiff referrals in accordance with the Rules of the State Bar of California and in accordance with the contract they signed with Plaintiff, Defendants also had an obligation under Section 527, et seq. of California Code of Civil Procedure to refrain from any actions which could harass Plaintiff and cause her emotional distress. Defendants disregarded their obligations under the Law and under the contract, they kept sending to Plaintiff non-stop fraudulent and fake referrals not only to deprive her of her income, but also to emotionally harass and intimidate her. As a result, Plaintiff suffered significant emotional distress, developed panic attacks, anxiety and eventually was forced not to respond to any referrals sent to her by Defendants so that not traumatize herself even more. Defendants shall compensate damages suffered by Plaintiff as a proximate result of their actions in the amount of $ 3, 000, 000.

### 10. Plaintiff is entitled to the awards of punitive damages

"A plaintiff is never entitled to punitive damages as a matter of right; an award of punitive damages requires clear and convincing evidence of fraud, malice, or oppression. When punitive damages are sought by default judgment, the court must have independent evidence to support the award because punitive-damages-worthy conduct alleged in a complaint is not regarded as admitted by default." *Alutiiq Int'l Sols., LLC v. OIC Marianas Ins. Corp., 149 F. Supp. 3d 1208, 1215 (D. Nev. 2016).* "Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means. *See Black & Decker, Inc. v. All Spares, Inc.,* 2010 WL 3034887, *3 (D.Ariz. Aug. 3, 2010)". *HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 947–48 (D. Ariz. 2013).* "Plaintiff's burden in 'proving up' damages on a motion for default judgment is relatively lenient. If

Plaintiff's Motion for Default Judgment                    Case No.: 3:24-CV-01077-RSH-MMP

proximate cause is properly alleged in the complaint, it is admitted upon default. Injury is established and plaintiff need only prove that the compensation sought relates to the damages that naturally flow from the injuries pled." *Id*. "In determining damages, the court can rely on the declarations submitted by the plaintiff." *Id*. "The plaintiff must provide evidence of its damages, and the damages "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c); *see also Freemyer v. Kyrene Village II, LLC*, 2011 WL 42681, *3 (D.Ariz. Jan. 6, 2011)." *Id*.

Plaintiff requested for punitive damages in her First Amended Complaint, ¶ 4, Prayer for Relief, FAC. Defendants were engaged in multiple acts of fraud by sending to Plaintiff fraudulent referrals with the intent to harm her business and leave her with no income, Defendants did it maliciously in conspiracy with other members of the Armenian Enterprise, the referrals sent to Plaintiff by Defendant were also aimed to cause her extreme emotional distress, to make her suffer emotionally and mentally, to discriminate against her because of her race, ethnicity, national origin, religion and etc. Grant of punitive damages are expressly stated in Laws for many causes of actions Plaintiff raised against Defendants in her FAC - "Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following: An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.", *Cal. Civ. Code § 52 (West)*, " because punitive damages are recoverable for intentional infliction of emotional distress, Defendant is also not entitled to summary adjudication of the prayer for punitive damages. *See Lackner v. North*,

Plaintiff's Motion for Default Judgment                    Case No.: 3:24-CV-01077-RSH-MMP

135 Cal.App.4th 1188, 1212, 37 Cal.Rptr.3d 863 (2006) ("Because punitive damages are imposed 'for the sake of example and by way of punishing the defendant' ( [Cal. Civ.Code,] § 3294, subd. (a)), they are typically awarded for intentional torts such as ... intentional infliction of emotional distress")." *Washington v. California City Correction Ctr., 871 F. Supp. 2d 1010, 1032 (E.D. Cal. 2012),* "The district court erred in dismissing the appellants' punitive damages claim for the negligent infliction of emotional distress." *Miller v. Fairchild Indus., Inc., 885 F.2d 498, 511 (9th Cir. 1989), as amended on denial of reh'g and reh'g en banc (Sept. 19, 1989).* "Under California law, a defendant's "conscious disregard" of a plaintiff's rights justifies the award of punitive damages. *See* California Civil Code §§ 3294(a) and 3294(c) (punitive damages may be awarded where the defendant acted with "malice"; malicious conduct includes "conduct which is carried on by the defendant with conscious disregard of the rights or safety of others"). *See also Petersen v. Superior Court,* 31 Cal.3d 147, 181 Cal.Rptr. 784, 791, 642 P.2d 1305, 1312 (1982) ("the law in California ha[s] evolved in the area of punitive damages to the point where a finding of defendant's conscious disregard of the safety or rights of others will support an award of punitive damages")".

Plaintiff therefore is entitled to punitive damages in the amount of $ 500,000 or in any other amount determined by Court.

***11. Plaintiff is entitled to pre-judgment and post-judgment interest rate on the amount of damages she sustained.***

"Under federal law, "the rate of prejudgment interest is the Treasury Bill rate as defined in 28 U.S.C. § 1961 unless the district court finds on substantial evidence that a different prejudgment interest rate is appropriate." *United States v. Gordon*, 393 F.3d 1044, 1058 n.12 (9th Cir. 2004); *see also W. Pac. Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blankenship v. Liberty Life Assurance Co.*, 486 F.3d 620, 628 (9th Cir. 2007).

Plaintiff is entitled to pre-judgment and post-judgment interest rate on the amount of damages she sustained. Plaintiff paid $ 600 membership fee to join Defendants' services, furthermore she paid $ 405 for the lawsuit she initiated in this Court, she paid for the Service of Process on Defendants $ 95 in total, she sustained actual damages by getting fraudulent and fake referrals and staying without job. The current Treasury Bill rate is 4, 43 %. Therefore, Plaintiff is entitled to pre-judgment interest rate on her actual damages in the amount of interest rate provided since the time when she first paid for her membership (May 28, 2024).

**V. CONSLUSION**

Considering all foregoing Plaintiff asks Court to conduct hearing and award Plaintiff damages in general amount of $ 31, 500, 600 or in any other amount

Plaintiff's Motion for Default Judgment                    Case No.: 3:24-CV-01077-RSH-MMP

Court will find appropriate, including any punitive damages and pre-judgment interest rate, as well as issue necessary injunctions against Defendants.

Dated: November 25, 2024

By: _____

Aynur Baghirzade, Plaintiff

Plaintiff's Motion for Default Judgment                Case No.: 3:24-CV-01077-RSH-MMP