Leah A. Plaskin Lorenz, Bar No. 228008
KLINEDINST PC
501 West Broadway, Suite 1100
San Diego, California 92101
(619) 400-8000/FAX (619) 238-8707
llorenz@klinedinstlaw.com

Attorneys for Defendants LOS ANGELES
COUNTY BAR ASSOCIATION, SETH
CHAVEZ, and COCO SU

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYNUR BAGHIRZADE, an individual,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ARMENIAN NATIONAL COMMITTEE OF AMERICA, a Non - Profit Corporation; et al,<br><br>　　　　Defendants. | Case No. 24CV1077 RSH MMP<br><br>**DEFENDANTS LOS ANGELES COUNTY BAR ASSOCIATION, SETH CHAVEZ, AND COCO SU'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:　　　January 6, 2025<br>Judge:　　Hon. Robert S. Huie<br>Courtroom: 3B<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

1

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................ 1

II.    FACTUAL BACKGROUND ............................................... 2
   A.   LACBA's SmartLaw Lawyer Referral Service ("LRS") ............................. 2
   B.   Overview of Allegations in the SAC ................................. 2

III.   LEGAL STANDARD ......................................................... 4

IV.    PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO STATE A
       CLAIM AGAINST ALL LACBA DEFENDANTS ........................................ 4
   A.   Every Claim Plaintiff Alleges Against LACBA is Barred by the Statutory
        Scheme Governing Certified Lawyer Referral Services ................................. 5
   B.   Plaintiff Cannot State RICO Claims Against LACBA ............................... 8
      1.   Plaintiff's allegations do not state a claim for violations of 18 U.S.C. §
           1962(c) ....................................................................... 9
      2.   Plaintiff's allegations do not state a claim for violations of 18 U.S.C. §
           1962(b) ....................................................................... 12
      3.   Plaintiff's allegations do not state a claim for violations of 18 U.S.C. §
           1962(d) ....................................................................... 12

   C.   Plaintiff's Restraint of Trade Claims Fail as a Matter of Law .................... 13
      1.   There are no violations of the Sherman or Clayton Acts ........................... 13
      2.   There are no violations of the Business & Professions Code ...................... 15
      3.   There are no allegations of unfair competition ................................. 16

   D.   LACBA Did Not Discriminate Against Plaintiff and is Not a Place of Public
        Accommodation ................................................................ 18

   E.   There is no Plausible Claim for Harassment ..................................... 19

   F.   Plaintiff Has Not and Cannot Sufficiently Plead Emotional Distress .......... 21

V.     PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF MUST BE
       DISMISSED PURSUANT TO FEDERAL RULES OF CIVIL
       PROCEDURE, RULE 12(b)(1) ................................................. 22

VI.    FURTHER LEAVE TO AMEND WILL BE FUTILE .................................... 25

VII.   CONCLUSION ................................................................ 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. Aguirre*
  No. 06-CV-1451 H (POR) 2008 .................................................................... 7

*Aerotec Int'l, Inc. v. Honeywell Int'l*, Inc.
  836 F.3d 1171, 1178 (2016) ...................................................................... 14

*Alan Neuman Prods., Inc. v. Albright*
  862 F.2d 1388, 1392-1393 (1988) ............................................................ 10

*AmerisourceBergen Corp. v. Dialysist W., Inc.*
  465 F.3d 946, 951 (9th Cir. 2006) ............................................................ 25

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*
  204 Cal.App.4th 1, 20 (2012) .................................................................. 16

*Ashcroft v. Iqbal*
  556 U.S. 662, 678 (2009) .......................................................................... 4

*Aversano v. Greenberg Traurig, LLP*
  753 F.Supp.2d 1063 (C.D. Cal. 2010) ...................................................... 11

*B.C. v. Plumas Unified Sch. Dist.*
  192 F.3d 1260, 1264 (9th Cir. 1999) ........................................................ 17

*Balistreri v. Pacifica Police Dep't,*
  901 F.2d 696 (9th Cir. 1990) ..................................................................... 4

*Bates v. United Parcel Serv., Inc.*
  511 F.3d 974, 985 (9th Cir. 2007) ............................................................ 23

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544, 555 (2007) ................................................................... 4, 15

*Blake v. Dierdorff*
  856 F.2d 1365, 1370 (1988) ..................................................................... 10

*Brantley v. NBC Universal, Inc.*
  675 F.3d 1192, 1198 (9th Cir. 2012) ........................................................ 16

*CALID, Inc. v. Apple, Inc.*
  85 F.4th 948 (9th Cir. 2023). ................................................................... 14

*Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
  20 Cal.4th 163 (1999) .............................................................................. 17

*Chodos v. W. Publ'g Co.*
  292 F.3d 992, 1003 (9th Cir. 2002) .......................................................... 25

*City of Los Angeles v. Lyons*
  461 U.S. 95, 111 (1983) ........................................................................... 17

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

*Copperweld Corp. v. Independence Tube Corp.*
  467 U.S. 752, 775 (1984) ............................................................................ 14

*Daniel v. Paul*
  395 U.S. 298, 307 (1969) ............................................................................ 18

*Davidson v. Kimberly-Clark Corp.*
  889 F.3d 956, 967 (9th Cir. 2018) .............................................................. 24

*Davis v. Pacific Bell*
  2002 U.S. Dist. LEXIS 29150, *11 ............................................................ 16

*Dehoog v. Anheuser-Busch Inbev/AS/NV*
  899 F.3d 758, 762 (2018) ............................................................................ 14

*Dimidowich v. Bell & Howell*
  803 F.2d 1473, 1478 (1986) ........................................................................ 15

*Electric Props. E., LLC v. Marcus & Millichap Co.*
  751 F.3d 990 (2014) .................................................................................... 10

*Ellis v. J.P. Morgan Chase & Co.*
  950 F. Supp. 2d 1062, 1071 (N.D. Cal. 2013) ............................................ 23

*Facebook, Inc. v. Power Ventures, Inc.*
  2009 U.S. Dist. LEXIS 103662 .................................................................. 15

*FTC v. Qualcomm Inc.*
  969 F.3d 974, 992 (2020) ............................................................................ 14

*G.H.I.I. v. MTS, Inc.*
  147 Cal.App.3d 256 266 (1983) .................................................................. 15

*GreenCycle Paint, Inc. v. PaintCare, Inc.*
  2016 US. Dist. LEXIS 47960 ...................................................................... 16

*H.J., Inc. v. Northwestern Bell Tel. Co.*
  492 U.S. 229 (1989) .................................................................................... 11

*Hardie v. Nat. Collegiate Athletic Ass'n*
  97 F.Supp.3d 1163, 1169 (S.D. Cal. 2015) ................................................ 19

*Hegelson v. American Int'l Grp., Inc.*
  44 F. Supp. 2d 1091, 1095 (1999) .............................................................. 21

*Heisen v. Pacific Coast Bldg. Prods.*
  1994 U.S. App. LEXIS 14332 .................................................................... 14

*Howard v. Am. Online Inc.*
  208 F.3d 741, 751 (2000) ............................................................................ 12

*Hughes v. Pair*
  46 Cal.4th 1035, 1050-1051 (2009) ...................................................... 21, 22

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

*In re Complex Asbestos Litig.*
  232 Cal.App.3d 572, 586 (1991) ............................................................................ 7

*In re Netflix Anitrust Litig.*, 506 F.Supp. 2d 308, 320
  (N.D. Cal. June 14, 2007) ...................................................................................... 16

*Jackson v. LegalMatch.com*
  42 Cal.App.5th 760,772 (2019) ......................................................................... 5, 21

*Koebke v. Bernardo Heights Country Club*
  (2005) 36 Cal.4th 824 ............................................................................................ 19

*Korea Supply Co. v. Lockheed Martin Corp.*
  63 P.3d 937, 946 (Cal. 2003) ................................................................................. 17

*Leite v. Crane* Co.
  749 F.3d 1117, 1121 (9th Cir. 2014) ..................................................................... 23

*Living Designs, Inc. V. E.I. Dupont de Nemours & Co.*
  431 F.3d 353 (2005) ................................................................................................. 8

*Marlene F. v. Alliance Psychiatric Med. Clinic, Inc.*
  48 Cal.3d 583, 588 (1989) ..................................................................................... 22

*Marolda v. Symantec Corp.*
  672 F.Supp.2d 922, 1003 (N.D. Cal. 2009) ........................................................... 17

*Martinez v. San Diego County Credit Union*
  50 Cal.App.5th 1048, 1059 (2020) ........................................................................ 19

*MH Pillars Ltd. v. Realini*
  2018 WL 1184877, at *7 ........................................................................................ 12

*Moore v. Kayport Package Exp., Inc.*
  885 F.2d 531, 541 (1989) ....................................................................................... 10

*Mostowfi v. i2 Tel. Int'l, Inc.*
  267 F.App'x 621, 623 (2008) ................................................................................. 11

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*
  795 F.3d 1124, 1131, n. 5 (2015) ........................................................................... 15

*Newman v. Piggie Park Enterp., Inc.*
  390 U.S. 400, 402 (1968) ....................................................................................... 19

*Noah v. AOL Time Warner, Inc.*
  261 F.Supp. 2d 532, 541 (E.D. Va. 2003) ............................................................. 18

*Odom v. Microsoft Corp.*
  486 F.3d 541, 552 (2007) ....................................................................................... 10

*Potter v. Firestone Tire & Rubber Co.*
  6 Cal.4th 965, 984 (1993) ...................................................................................... 22

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Case No. 24CV1077 RSH MMP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

*Puri v. Khalsa*
 674 F.App'x 679, 687 (2017) .................................................................. 12

*Ransom v. CubeSmart*, No.
 2024 WL 607426, at *4 ........................................................................... 18

*Reves v. Ernst & Young*
 507 U.S. 170, 182 (1993) ........................................................................ 10

*Schild v. Rubin*
 232 Cal.App.3d 755, 762 (1991). ........................................................... 20

*Sedima, S.P.R.L. v. Imrex Co.*
 473 U.S. 479, 497 (1985) ........................................................................ 11

*Spackman v. Good*
 245 Cal.App.2d 518, 530 (1966) ............................................................ 22

*Starr v. Baca*
 652 F.3d 1202 (9th Cir. 2011) .................................................................. 4

*U.S. Concord, Inc. v. Harris Graphics Corp.*
 757 F.Supp. 1053, 1056 (1991) .............................................................. 12

*United States v. Marine Bancorporation, Inc.*
 418 U.S. 602, 618 (1974) ................................................................. 11, 14

*Walker v. Geico Gen. Ins. Co.*
 2007 U.S. Dist. LEXIS 10652 ................................................................ 15

*Whisnant v. U.S.*
 400 F.3d 1177, 1179 (9th Cir. 2005) ...................................................... 23

*White v. Lee*
 227 F.3d 1214, 1242 (9th Cir. 2000) ...................................................... 23

*Williams v. Cal. C.R. Dep't,*
 2024 U.S. Dist. LEXIS 151905, *14 ....................................................... 18

*Zhang v. Sup. Ct.*
 304 P.3d 163, 167-168 (Cal. 2013) ........................................................ 17

**Statutes**
15 U.S.C. §§ 1, 12 ................................................................................... 13
18 U.S.C. section 1962(d) ....................................................................... 12
Bus. & Prof. Code § 17203 ..................................................................... 17
Bus. & Prof. Code § 6155(a)(1) ........................................................... 5, 6
Bus. & Prof. Code § 6155(d) ..................................................................... 6
Bus. & Prof. Code § 6155(f)(6) ........................................................... 6, 21
Bus. & Prof. Code Section 17200 ........................................................... 13
Cal. Bus. & Prof. Code § 6155(f) ....................................................... 5, 17
Cal. Bus. & Prof. Code § 6155(f)(1) ........................................................ 5
Cal. Bus. & Prof. Code Section 16720 .................................................... 13
Cal. Civ. Code § 43.95 .............................................................................. 8
Cal. State Bar Rules 3.801(B); 3.823(A); (C) 3.824, 3.826 ................... 21
Civil Code Section 41 ............................................................................. 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Civil Rights Act (42 U.S.C. § 2000a) ................................................................. 18
Code Civ. Proc. § 527.6(b)(3). .......................................................................... 20
FRCP, Rule 12(b)(1) ........................................................................................... 23

**Rules**

Rules of Prof. Conduct, Rule 5.4 ......................................................................... 6
Rules of Prof. Conduct, Rule 8.4.1 ............................................................... 6, 17
Rules of the State Bar of Cal. 3.820-3.829 ................................................... 5, 17
Rules of the State Bar of Cal., Title 5 .................................................................. 6

# I.    **INTRODUCTION**

Plaintiff Aynur Baghirzade's Second Amended Complaint ("SAC") alleges a wide-ranging conspiracy by approximately thirty defendants – most of whom who have no connection to one another – to harm Plaintiff's business (as an attorney) and her reputation. Despite its length at 74 pages and 355 paragraphs, Plaintiff's SAC is short on facts, especially with respect to Defendants the Los Angeles County Bar Association ("LACBA") and its current and former Directors for LACBA's Lawyer Referral Service, SmartLaw ("LRS"), Seth Chavez and Coco Su (collectively, "LACBA" or the "LACBA Defendants"). Plaintiff alleges eleven claims against LACBA – for alleged RICO violations (based on 18 U.S.C. section 1962, subparts (b), (c), and (d)); restraints on trade and competition (based on the Sherman, Clayton, and Unruh Acts); unfair competition; denial of public accommodations and discrimination; harassment; and negligent and intentional infliction of emotional distress – yet fails to plead sufficient facts to support any of those claims. Plaintiff, instead, concludes that because LACBA, through its LRS, would not screen out referrals from potential Armenian clients and did not give her the quality and quantity of referrals she wanted, LACBA is liable to her. But, Plaintiff refuses to acknowledge that: (1) certified lawyer referral services, like the LRS, must comply with required rules and standards, including rules that prohibit discrimination on the basis of race, religion, or national origin; (2) potential clients receiving referrals decide whether or not they want to hire the lawyers; and (3) certified referral services exist for the benefit of the public, not the lawyers referred to the public. Plaintiff's unhappiness with the referrals she received does not constitute any legal wrongdoing, let alone RICO violations, restraints of trade, discrimination, unfair competition, harassment, or infliction of emotional distress.

Plaintiff has now had numerous opportunities to allege her claims, yet the SAC still fails to assert actionable claims against LACBA. Plaintiff's conclusions, insinuations, and conspiracy theories fall far short of her pleading requirements, and

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1    do not and cannot allege any plausible theory of liability against the LACBA

2    Defendants. As a matter of law, Plaintiff's allegations are insufficient to state any

3    claim against the LACBA Defendants. As such, all of the claims against the

4    LACBA Defendants should be dismissed without leave to amend.

5         To the extent that any of Plaintiff's claims survive the Motion to Dismiss,

6    Plaintiff's requests for injunctive relief should be dismissed due to lack of standing

7    pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1), as she is no longer

8    a member of the LRS and is not receiving, or entitled to receive, any referrals from

9    LACBA.

10   **II.    FACTUAL BACKGROUND**

11        **A.    LACBA's SmartLaw Lawyer Referral Service ("LRS")**

12        LACBA runs the LRS, which is a nonprofit service that allows members of

13   the public find qualified attorneys. The LRS is certified by the State Bar of

14   California and the American Bar Association, and must follow the rules and

15   requirements that govern certified lawyer referral services. [Dkt. 96: SAC, ¶ 256

16   (admitting that LACBA is certified by the State Bar of California as a referral

17   service); Request for Judicial Notice ("RJN"), Exs. A-B.]

18        **B.    Overview of Allegations in the SAC**

19        Plaintiff is a citizen of the Azerbaijan Republic, and, as Plaintiff notes,

20   Azerbaijan has had longstanding conflict with Armenia. [Dkt. 96, ¶¶ 39-45.]

21   According to Plaintiff, Defendants the Armenian National Committee of America

22   ("ANCA") and Armenian National Committee of America Western Region

23   ("ANCAWR") organized smear campaigns against, and harass and defame, those of

24   Azerbaijani and Turkish origin, including Plaintiff, so as to damage their reputation,

25   income, and well-being. [*Id*., ¶ 42, 46, 61-64.] Plaintiff claims she has become a

26   target "of [the] Armenian Enterprise trying to silence her," and that an Armenian

27   Enterprise "employed by all DEFENDANTS," and the State Bar of California,

28   provided Plaintiff's confidential information to others to harass and intimidate her

1  and to harm her business and reputation. [*Id.*, ¶¶ 62- 64.][1]

2  Plaintiff further alleges that in or around November 2022, she joined

3  LACBA's LRS. [Dkt. 96, ¶ 158.] She did not renew her membership for 2024 (nor

4  did she allege that she is a current member of the LRS). [Declaration of Stanley

5  Bissey, ¶ 2.] According to Plaintiff, LACBA's alleged wrongdoings include

6  charging her credit card twice – with the intent to defraud her – and initially not

7  sending her emails about referrals; sending Plaintiff referrals that were not in her

8  practice area, were for people who were already represented, were for clients

9  speaking languages Plaintiff did not speak, or were for clients who asked for pro-

10  bono services; sending Plaintiff fake business litigation referrals; harassing Plaintiff

11  with "inadequate referrals"; and sending Plaintiff referrals for Armenian clients.

12  [*Id.*, ¶¶ 158-162.] Plaintiff then requested that LACBA not send her referrals for

13  Armenian clients, and was told that she had to opt out from the online referrals or

14  get suspended. [*Id.*, ¶ 163.] Plaintiff opted out of online referrals and the number of

15  referrals decreased. She was told that was due to a low rotation in immigration and

16  business litigation panels. [*Id.*, ¶ 164.]

17  Plaintiff also claims she had problems getting CLE certificates from LACBA;

18  her account was suspended; and she had to pay referral fees immediately. [Dkt. 96, ¶

19  167-168.] It was at that moment she was sure LACBA was a part of the Armenian

20  Enterprise trying to harm her. [*Id.*, ¶¶ 165-168.] Thereafter, holds were removed

21  from her account, but Plaintiff still did not receive referrals. [*Id.*, ¶¶ 169-170.][2]

22

23  _____

[1] Plaintiff's SAC alleges many unconnected events, and attempts to tie them into an
24  overarching conspiracy to harm her, without alleging facts demonstrating that the
defendants worked or conspired together. In addition to her claims that various Armenian
25  organizations were working to destroy Plaintiff's business, Plaintiff alleges that various
Defendants plotted against her by planting rats, cockroaches, and flies in her home and
26  garage; moved her car so it would get towed; and harassed her with an eviction notice
27  meant for someone else [Dkt. 96, ¶¶ 190-194, 203-214.]

[2] LACBA is not the only referral service that allegedly wronged inadequate referrals.
28

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

III. **LEGAL STANDARD**

Dismissal is proper when a plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P., Rule 12. Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), overruled on other grounds. Although a court must accept factual allegations in a complaint as true, it need not accept labels, conclusions, or a mere recitation of elements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft*, at p. 679; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (to be entitled to a presumption of truth, a complaint cannot just recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and enable an opposing party to effectively defend itself). The allegations in a complaint must also meet a standard of plausibility. *Ashcroft*, at p. 679. If plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*. In summary, dismissal pursuant to Rule 12(b)(6) is proper where the plaintiff fails to set forth "a cognizable legal theory" and/or "sufficient facts." *Balistreri*, *supra*, at p. 699. That is the situation here.

Moreover, to the extent any of Plaintiff's claims survive the Rule 12(b)(6) challenge, Plaintiff's requests for injunctive relief should be dismissed for lack of standing, under FRCP, Rule 12(b)(1).

IV. **PLAINTIFF'S ALLEGATIONS ARE INSUFFICIENT TO STATE A**

---

Plaintiff has complaints about every referral service she worked with, and alleges that the Orange County Bar Association ("OCBA"), Attorney Search Network, LegalShield, Nolo, and Legal Match made sure she did not get cases from referrals sent to her; did not send her enough referrals; referred her to an Armenian person; sent referrals for the wrong practice area; and/or sent her fake leads. [Dkt. 96, ¶¶ 147-149152, 156-157, 172-173, 176, 176, 178-179, 180-185.]

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## CLAIM AGAINST ALL LACBA DEFENDANTS

Plaintiff's SAC must be dismissed, in its entirety, against all LACBA Defendants because Plaintiff has not, and cannot, allege an actionable claim against the LACBA Defendants. Plaintiff has now had three opportunities to state a claim against LACBA and has repeatedly demonstrated that she is unable to do so.

With respect to the LACBA individual defendants – Coco Su and Seth Chavez – Plaintiff has not alleged any basis for individual liability against them and the claims against them should be dismissed with prejudice.

### A.    Every Claim Plaintiff Alleges Against LACBA is Barred by the Statutory Scheme Governing Certified Lawyer Referral Services

LACBA is not legally required to provide Plaintiff with referrals that meet her preferences. Plaintiff's assertions to the contrary are based on her misunderstanding, or disregard, of the purpose of lawyer referral services, and on her belief that the primary purpose of referral services is to build her book of business and benefit her rather than the public. As such, Plaintiff believes she can sue referral services for not giving her the volume and quality of business she desires. That is not the case, and there is no legal support for Plaintiff's position. California Business & Professions Code section 6155 regulates lawyer referrals services to ensure they "exist for the true benefit of the public." *Jackson v. LegalMatch.com*, 42 Cal.App.5th 760,772 (2019). To benefit the public, referral services are regulated to ensure referrals are made to qualified attorneys in relevant geographic areas. Cal. Bus. & Prof. Code § 6155(f)(1).

In order to further ensure that they serve the public, all referral services are required to register with the State Bar and operate in conformity with rules adopted by the California Supreme Court. Bus. & Prof. Code § 6155(a)(1). Thus, LACBA is registered with the State Bar and must comply with the required rules and standards. *See e.g.*, Rules of the State Bar of Cal., Rules 3.820-3.829, 3.800-3.808, Rules of Prof. Conduct, Rule 5.4; Rules of the State Bar of Cal., Title 5; Bus. & Prof. Code §

6155(a)(1), (f); RJN Exs. A-B. Members of referral services, like Plaintiff was at one time, must also "comply with all applicable professional standards, rules, and regulations." Bus. & Prof. Code § 6155(f)(6).

Through this action, Plaintiff attempts to have her personal preferences – such as her desire to avoid working with Armenians – trump the applicable rules that both she and LACBA must comply with. That, however, is not permissible. The rules LACBA is required to follow to remain a certified referral service prohibit LACBA from discriminating on the basis of race, religion, or national origin. Rules of Prof. Conduct, Rule 8.4.1 (prohibiting lawyers from discriminating against, or permitting discrimination against, persons on the basis of any protected characteristic, including national origin and ethnicity, in "refusing to accept the representation of any client"; Rules of the State Bar of Cal., Rule 3.826 (confirming that a referral cannot discriminate on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, general expression, sexual orientation, age, military and veteran status, or other category of discrimination.") Plaintiff, too, cannot discriminate against potential clients based on their race, religion, or national origin. Rules of Prof. Conduct, Rule 8.4.1.

Regarding the alleged impact of inadequate or insufficient referrals on Plaintiff's business, the California Legislature has found, again, that requirements, such as those that attorneys meet reasonable participation requirements and the provision of the minimum standards imposed by the Supreme Court, "are in the public interest and do not constitute an unlawful restraint of trade or commerce." Bus. & Prof. Code § 6155(d). As such, LACBA is further barred from excluding certain groups of people from referrals sent to attorneys. *Id.*, § 6155 (f) (3) (the rules also address requirements in order to increase – not decrease – "access to the justice system for all Californians").

Despite all of the above, and with no factual or legal support, Plaintiff claims

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

LACBA is liable to her for failing to screen out all Armenian clients, for referring her to clients who did not hire her, and for not giving her enough referrals. [Dkt. 96, ¶¶ 159, 162-164.] In other words, Plaintiff wants LACBA to discriminate against potential clients who are Armenian, and has asked LACBA to do so by determining whether potential clients are Armenian – which would likely involve asking potential clients what their backgrounds are – and then not sending her such referrals. [*Id.*, ¶¶ 162-164.] That simply cannot be done. Taking it one step further, Plaintiff seeks to hold LACBA liable for refusing to violate the rules governing referral services and discriminating against Armenian clients. [*Id.*, ¶¶ 162-163.] There, again, is no basis for such liability. And if Plaintiff does not want to represent Armenians, Plaintiff is free to turn down referrals to such cases.

Even if there were not State Bar Rules and Rules of Professional Conduct that prohibit what Plaintiff is demanding LACBA do, allowing members of lawyer referral services to dictate the types of clients that can or cannot be referred to them is a slippery slope. Referral services would be faced with a variety of demands for personal preferences, which may include preferences based on ethnicity and origin, religion, and sexual orientation. Further, referral services would be forced to ask potential clients invasive and inappropriate questions to determine if they fell into unwanted categories.

With respect to the number of referrals that turned into clients for Plaintiff, clients have the ability to choose the attorneys they hire. *See e.g.*, RJN, Ex. C (The State Bar of California; Information Re: Using a Certified Lawyer Referral Service) (potential clients "will not be obligated to hire the lawyer referred to [them]"); *Aaron v. Aguirre*, No. 06-CV-1451 H (POR) 2008 WL 2812179, *4 (S.D. Cal. July 21, 2008 (noting that the client "possesses the ultimate authority to choose the client's attorney"); *In re Complex Asbestos Litig.*, 232 Cal.App.3d 572, 586 (1991) (recognizing clients' right to counsel of their choice). LACBA is not liable because potential clients referred by the LRS – as they are free to do – opted not to hire

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1    Plaintiff.[3]

2         Moreover, there is no authority, and no contract between LACBA and

3    Plaintiff, that suggests, much less confirms, there was an agreement to provide

4    Plaintiff with a certain quality or number of referrals, or that guaranteed how many

5    potential clients would hire Plaintiff. Consequently, Plaintiff has no viable claims

6    based on the types of referrals she received from the LRS, and no actionable claims

7    altogether that she has or can assert against any LACBA defendant.

8         **B.    Plaintiff Cannot State RICO Claims Against LACBA**

9         In her first through third claims, Plaintiff attempts to allege various RICO

10   violations. A RICO claim requires (1) conduct (2) of an enterprise (3) through a

11   pattern (4) of racketeering activity (i.e., predicate acts) (5) causing injury to

12   plaintiff's business or property. *Living Designs, Inc. V. E.I. Dupont de Nemours &*

13   *Co.*, 431 F.3d 353, 361 (9th Cir. 2005). Here, the elements required to state a claim

14   for RICO violations do not exist, and have not and cannot accurately be alleged. All

15   of the RICO claims Plaintiff alleges against LACBA fail because LACBA was not

16   involved in an enterprise, much less racketeering activity.

17        Despite having several opportunities to plead her claims already, and the

18   inclusion of 355 paragraphs of allegations in the SAC, the SAC does not clearly

19   _____

20   [3] In addition, Plaintiff's claims against LACBA fail because, with respect to referrals,
     LACBA is immune from liability. Cal. Civ. Code § 43.95. Plaintiff's claims against
21   LACBA arise from the referral of potential clients to her as a part of LACBA's LRS, and
     concern the nature of those referrals. [Dkt. 96, ¶¶ 159-164, 166-170, 220, 231, 239, 255-
22   256, 282, 289, 301, 332, 338.] Certified lawyer referral services, like LACBA's LRS, are
     immune from monetary liability "for referring any member of the public to any
23   professional member of the society or service." *Id.* Here, Plaintiff seeks to hold LACBA
     liable for the referrals it provided to her. She complains about referrals she received, and
24   asserts that LACBA is liable for referring her to cases: (1) from Armenian clients, (2)
     outside of Plaintiff's practice areas, (3) for clients speaking other languages, and (4) for
25   clients seeking pro bono services. [*Id.*, ¶ 159.] The purpose of Civil Code section 43.95 is
     to maximize the public benefit from professional referral services, to regulate referral
26   services due to the potential for abuse, and to ensure that the services exist for the true
     benefit of the public. *See* Civ. Code § 43.95, Notes re: 2011 Amendments. Plaintiff's
27   claims rely on an improper assumption that referral services are to benefit the lawyer
     members, and not the public, and her complaints about the referrals she received are not
28   actionable.

identify the purported RICO enterprise that any of the LACBA Defendants are alleged to be conducting or their pattern of acts, or how any of the LACBA Defendants were a part of it. Instead, Plaintiff merely assumes that all defendants were somehow part of an enterprise that harmed Plaintiff. But, there are no facts demonstrating that the LACBA Defendants are an enterprise (affecting interstate commerce). Rather, the general allegations lump all defendants together.

Further, there are no additional facts Plaintiff can allege to cure this defect. The crux of LACBA's allegedly wrongful conduct is: (1) not providing Plaintiff with sufficient referrals, and (2) purportedly discriminating against Plaintiff by not agreeing to violate the State Bar Act and Rules of Professional Conduct and screen out all Armenian clients.[4] Agreeing to screen out potential Armenian clients – and not what LACBA actually did (by refusing to do so) – would have been discriminatory. If the receipt of referrals to Armenian clients truly caused Plaintiff to fear for her life, Plaintiff was free to leave the LRS or turn down referrals. Further, as previously discussed, Plaintiff has not alleged any contractual, or other, obligation by LACBA to provide Plaintiff with the types of referrals she wants, a certain number of referrals, or a certain quality of referrals and, thus, LACBA has engaged in no wrongdoing by following the applicable rules for certified referral services.

### 1. Plaintiff's allegations do not state a claim for violations of 18 U.S.C. § 1962(c)

To state a claim for violation of 18 U.S.C. section 1962(c) (the first claim in the SAC), a RICO plaintiff must allege the existence of a RICO enterprise and a pattern of racketeering activity. *Odom v. Microsoft Corp*., 486 F.3d 541, 552 (9th

---

[4] Plaintiff also claims that LACBA improperly charged her credit card and its system did not properly send her emails. It is unclear how these alleged errors caused Plaintiff harm, especially because "this situation was cured" [Dkt. 96, ¶ 158], or how such alleged conduct constitutes RICO violations or any of the other wrongdoings Plaintiff alleges in her claims against LACBA.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Cir. 2007). The pattern of racketeering activity must be the proximate cause of harm to the plaintiff. *Electric Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). One is not liable under section 1962(c) unless one has participated in the operation or management of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 182 (1993). To do so, one must have some part in directing those affairs. *Id.* at 179. Also, a RICO plaintiff must alleges facts supporting each element with specificity and must identify the individual actions of *each* defendant sufficient to constitute a pattern of racketeering. *Blake v. Dierdorff*, 856 F.2d 1365, 1370 (9th Cir. 1988); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-1393 (9th Cir. 1988) (dismissing RICO claims where the allegations of predicate acts were "entirely general," and "no specifics of times, places, or nature of the allegations communications were pleaded). Plaintiff's SAC fails to allege these required elements.

Further, Plaintiff references an "Armenian Enterprise," but does not describe exactly what it is or how LACBA – which has no ties to the Armenian community – is a part of the enterprise. Moreover, the SAC does not allege a common purpose of the alleged enterprise. The only purpose of LACBA's referral program is to connect clients who need representation with lawyers. There is nothing improper about that and it is entirely unclear how LACBA's referral program is connected to, and in an enterprise with, the various Armenian organizations Plaintiff has sued (or associated with Yelp, Google, Greystar America Inc., and Kia America Inc.). Nor are there any facts demonstrating that LACBA was even in touch with the other referral services about Plaintiff, much less part of an enterprise with them.

Next, Plaintiff has not alleged any conduct by LACBA that constitutes racketeering activity. Such activity "consists of acts that are indictable under certain specified provisions of Title 18 of the United States Code, including mail and wire fraud." *Aversano v. Greenberg Traurig, LLP*, 753 F.Supp.2d 1063 (C.D. Cal. 2010);

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

*Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 497 (1985) ("'racketeering activity' consists of no more and no less than commission of a predicate act" under the RICO statute). 18 U.S.C. Section 1961(1) lists predicate acts, including murder; kidnapping; arson; robbery; bribery; counterfeiting; extortion; mail, wire, and financial institution fraud; obstruction of justice; tampering with witnesses; laundering money; and trafficking. Even if Plaintiff's conclusions about LACBA were true (which they are not), LACBA's allegedly wrongful conduct does not constitute racketeering activity, let alone a continuing pattern of racketeering activity. *H.J., Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229 (1989) (to prove a pattern of racketeering activity, the plaintiff must prove the racketeering predicates are related and that they "amount to or pose a threat of continued criminal activity.") The intent behind continuity is that "RICO reach activities that amount to or threaten long-term criminal activity." *Id*. at 243, n. 4. Indeed, Plaintiff is no longer a member of the LRS and, thus, is not the subject of or privy to LACBA's conduct, and there are no allegations concerning LACBA's involvement in actual or potential criminal activity.

Also, although Plaintiff concludes that LACBA's conduct was fraudulent, there are no specific allegations that establish how LACBA's allegedly fake referrals, harassing referrals, and referrals for other practice areas or jurisdictions constitute fraud (as required by Federal Rules of Civil Procedure 8 and 9(b)). *See also Mostowfi v. i2 Tel. Int'l, Inc*., 267 F.App'x 621, 623 (9th Cir. 2008 (RICO fraud claims must be pled with the particularity required by Rule 9(b)). [Dkt. 96, ¶¶ 158, 159, 220, 231, 239.] "[T]he plaintiff must allege 'the who, what, when, where, and how of the misconduct charged,' including what is false and misleading about a statement, and why it is false." *Puri v. Khalsa*, 674 F.App'x 679, 687 (9th Cir. 2017). Plaintiff did not, and cannot, do that.

**2.    Plaintiff's allegations do not state a claim for violations of 18 U.S.C. § 1962(b)**

The claim based on 18 U.S.C. section 1962(b) (i.e., the second claim) fails for similar reasons. In addition, there, a plaintiff must allege that the defendant's activity led to its control or acquisition over a RICO enterprise, and an injury to plaintiff resulting from the defendant's control or acquisition of a RICO enterprise. *MH Pillars Ltd. v. Realini*, 2018 WL 1184877, at *7 (N.D. Cal. Mar. 7, 2018). Thus, with this claim, the injury must be from LACBA's alleged acquisition or control of an interest in a RICO enterprise, separate from an injury flowing from the racketeering itself. *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp. 1053, 1056 (N.D. Cal. 1991). Plaintiff has not alleged any such acquisition or control by any LACBA defendant.

**3.    Plaintiff's allegations do not state a claim for violations of 18 U.S.C. § 1962(d)**

Next, the claim based on 18 U.S.C. section 1962(d) (i.e., the third claim) has not been properly alleged. Section 1962(d) provides that it is unlawful for a person to conspire to violate provisions of section 1962, subdivisions (a), (b), or (c). To establish such a claim, a plaintiff must allege an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses. *Howard v. Am. Online Inc*., 208 F.3d 741, 751 (9th Cir. 2000). The SAC does not include allegations that LACBA violated RICO, let alone that it engaged in a conspiracy with others to do so. It is difficult to determine (1) what each defendant's role was in the alleged conspiracy (and impossible to determine LACBA's role); (2) the manner in which each defendant participated in the conspiracy, and (3) what claims Plaintiff contend arise from each defendant's conduct.

Finally, to the extent LACBA did not give Plaintiff any referrals at all, it is unclear how that represents a predicate offense or any kind of a conspiracy to

Case No. 24CV1077 RSH MMP

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  constitute a RICO violation.

2      In closing, Plaintiff's RICO claims lack the required specificity; do not

3  demonstrate causation; do not plausibly state that an enterprise that included

4  LACBA was responsible for the alleged wrongdoing; and do not demonstrate

5  racketeering activity by LACBA. The allegations are conclusory, yet fail to allege

6  with specificity how LACBA's conduct constitutes RICO violations.

7      **C.      Plaintiff's Restraint of Trade Claims Fail as a Matter of Law**

8      Plaintiff's fourth, sixth and seventh claims against LACBA – for conspiracy

9  in restraint of trade (in violation of the Sherman and Clayton Acts); restraints on

10  competition in violation of Cal. Bus. & Prof. Code Section 16720; and unfair

11  competition in violation of Bus. & Prof. Code Section 17200 – lack factual and legal

12  support, and fail as a matter of law. Here, the allegations against LACBA are

13  minimal and insufficient.

14      **1.      There are no violations of the Sherman or Clayton Acts**

15      Turing first to conspiracy in restraint of trade, based on violations of the

16  Sherman and Clayton Acts, the Sherman and the Clayton Acts are aimed to promote

17  fair competition. The Sherman Act prohibits anticompetitive behaviors such as price

18  fixing, bid rigging, and monopolization, and the Clayton Act prohibits

19  anticompetitive mergers and acquisitions, unfair business practices, and price

20  discrimination. 15 U.S.C. §§ 1, 12, *et seq*. The SAC does not allege or demonstrate

21  that LACBA engaged in any of that conduct. LACBA is a referral service that

22  makes no guarantees regarding the number or quality of referrals, cannot force

23  potential clients to hire Plaintiff, and in no way restrained Plaintiff's ability to seek

24  out and obtain business.

25      Plaintiff concludes that all defendants conspired to exclude her "from the

26  market [which] is clearly a restraint on trade." [Dkt. 96, ¶ 249.] But, there are no

27  allegations that LACBA actually conspired with anyone, let alone engaged in

28  conduct that excluded Plaintiff from "the market." And, with respect to LACBA,

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

13

Case No. 24CV1077 RSH MMP

Plaintiff fails to clearly identify "the market." Instead, she references the OCBA's monopolization of the legal market "in the hands of Orange County lawyers," and, thereafter, with respect to all defendants, refers to a vague exclusion from "the market." [*Id*., ¶¶ 248-249.] Accurately defining the market is a threshold step in an antitrust case, and the failure to define the relevant market is a fundamental defect. *See e.g.*, *FTC v. Qualcomm Inc*., 969 F.3d 974, 992 (9th Cir. 2020); *Coronavirus Reporter; CALID, Inc. v. Apple, Inc*., 85 F.4th 948, 944-945 (9th Cir. 2023); *United States v. Marine Bancorporation, Inc*., 418 U.S. 602, 618 (1974).

Turning to Plaintiff's specific complaints about the Sherman and Clayton Acts, the SAC references Section 1 of the Sherman Act and Section 7 of the Clayton Act. Section 1 of the Sherman Act does not prohibit all unreasonable restraints of trade, but only restraints effected by a contract, combination, or a conspiracy. *Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752, 775 (1984). Thus, Plaintiff must prove the existence of an agreement that was an unreasonable restraint of trade. *Aerotec Int'l, Inc. v. Honeywell Int'l*, Inc., 836 F.3d 1171, 1178 (9th Cir. 2016). Further, there must be an anticompetitive impact on the market as a whole, and not just on an individual plaintiff, because antitrust laws were enacted for "the protection of competition." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962); *Heisen v. Pacific Coast Bldg. Prods*., 1994 U.S. App. LEXIS 14332, at *3-5 (9th Cir. June 9, 1994) (a plaintiff's antitrust action based on the Sherman Act was dismissed where he alleged harm to his own entry into a commercial market and not harm to competition in the market as a whole). Plaintiff's action concerns the impact on her, and not on the legal market as a whole.

As for Section 7 of the Clayton Act, it, again, prohibits business acquisitions whose effect may be to lessen competition or to create a monopoly in a relevant market. *Dehooq v. Anheuser-Busch Inbev/AS/NV*, 899 F.3d 758, 762 (9th Cir. 2018). Plaintiff failed to allege facts to demonstrate that LACBA had an agreement with anyone, was involved in a conspiracy with anyone, acquired businesses, or that its

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  actions restrained trade. *Twombly*, *supra*, 550 U.S. at 556 (blanket assertions of

2  conspiracy do not suffice). Instead, LACBA provided Plaintiff with referrals, which

3  is not a restraint of trade.

4          **2.      There are no violations of the Business & Professions Code**

5          There are no facts alleged – or that can be alleged – against LACBA to

6  support Plaintiff's sixth claim for prohibited restraints on competition in violation of

7  Bus. & Prof. Code Section 16720. Section 16720 is part of the Cartwright Act, and

8  courts require "a high degree of particularity in the pleading of Cartwright Act

9  violations." *Facebook, Inc. v. Power Ventures, Inc*., 2009 U.S. Dist. LEXIS 103662,

10 2009 WL 3429568, at *2 (N.D. Cal. Oct. 22, 2009). To establish a claim under the

11 Cartwright Act, one must establish the formation and operation of a conspiracy;

12 illegal acts done pursuant thereto; and damage proximately caused by such acts.

13 *Walker v. Geico Gen. Ins. Co.*, 2007 U.S. Dist. LEXIS 10652, at *14 (E.D. Cal.,

14 Feb. 12, 2007).

15         It is not enough to include conclusory allegations that actions were the result

16 of a conspiracy; a **plaintiff must allege facts that make the conclusion plausible**.

17 *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124,

18 1131, n. 5 (9th Cir. 2015). Also, section 16720 pertains to a trust, which is a

19 combination of capital, skill, or acts by two or more persons to restrict trade or

20 commerce; prevent competition in manufacturing, making, transportation, sale or

21 purchase of merchandise, produce, or any commodity; or fix prices. Section 16720

22 applies only where there is proof of "a combination of resources of two or more

23 independent entities for the purpose of restraining competition and preventing

24 market competition." *G.H.I.I. v. MTS, Inc*., 147 Cal.App.3d 256, 266 (1983).

25 Section 16720 does not address unilateral conduct. *Dimidowich v. Bell & Howell*,

26 803 F.2d 1473, 1478 (9th Cir. 1986); *Davis v. Pacific Bell*, 2002 U.S. Dist. LEXIS

27 29150, *11 (N.D. Cal. Oct. 2, 2002) (the Cartwright Act (section 16720) is intended

28 to prohibit restraint on trade effected by businesses working together as equal anti-

competitive actors or where one coerced business entity carries out an anti-competitive scheme of the other); *In re Netflix Antitrust Litig.*, 506 F.Supp. 2d 308, 320 (N.D. Cal. June 14, 2007) (Cartwright Act claims are dismissed where a complaint makes "conclusory allegations of a combination and does not allege with factual particularity that separate entities maintaining separate and independent interests combined for the purpose to restrain trade"); *GreenCycle Paint, Inc. v. PaintCare, Inc.*, 2016 US. Dist. LEXIS 47960, * 15 (N.D. Cal. Apr. 8, 2016) (parallel action is not, by itself, sufficient to prove the existence of a conspiracy).)

Here, there are no allegations that LACBA worked with others to restrain trade. Plaintiff's conclusions – with no factual support – that LACBA conspired with others to harm her fall far short of her pleading requirements.

In addition, the Cartwright Act is about the protection of competition, not competitors. *Asahi Kasei Pharma Corp. v. CoTherix, Inc*., 204 Cal.App.4th 1, 20 (2012). "[P]laintiffs must plead an injury to competition beyond the impact on the plaintiffs themselves." *Brantley v. NBC Universal, Inc*., 675 F.3d 1192, 1198 (9th Cir. 2012).) Like the fourth claim, Plaintiff complains about injury to herself and no injuries have or can be alleged "to competition."

In sum, the allegations do not demonstrate that the LACBA Defendants combined resources with another entity to restrain trade; formed and operated a conspiracy; engaged in illegal acts; and caused damage.

### 3.    There are no allegations of unfair competition

Finally, with respect to the seventh claim for unfair competition, according to Plaintiff, LACBA conspired with other defendants to destroy her business, "and by committing multiple acts of mail & wire fraud DEFENDANTS in fact promote[d] unfair competition," and sent Plaintiff fake referrals [Dkt. 96, ¶¶ 281-282.] Despite Plaintiff's conclusions, the allegations do not demonstrate that LACBA engaged in unfair competition; conspired with others; committed acts of mail and wire fraud (what did LACBA mail or wire that pertains to Plaintiff?); or that she suffered injury

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

as a result of LACBA's actions. *Marolda v. Symantec Corp.*, 672 F.Supp.2d 922, 1003 (N.D. Cal. 2009).

Plaintiff is suing LACBA for complying with the rules and regulations that certified lawyer referral services are obligated to follow (i.e., for refusing to violate those rules by screening out Armenian clients). Both the Rules of the State Bar and the Rules of Professional Conduct – which LACBA must comply with – prohibit referral services from discriminating against persons based on any protected characteristic, including national original and ethnicity. Rules of the State Bar of Cal., Rule 3.826; Rules of Prof. Conduct, Rule 8.4.1; Cal. Bus. & Prof. Code § 6155(f). LACBA is not and cannot be liable for unfair competition for adhering to statutory requirements. *See e.g.*, *Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 182, 184 (1999) (if the Legislature permits certain conducts, or considers a situation and decides no action should lie, courts cannot override that determination).

Further, the only remedies available to a private plaintiff under California's Unfair Competition Law ("UCL") are the equitable remedies of injunction and restitution. Bus. & Prof. Code § 17203; *Zhang v. Sup. Ct.*, 304 P.3d 163, 167-168 (Cal. 2013).) The SAC does not demonstrate that there is any appropriate injunctive relief available, especially because Plaintiff is no longer a part of LACBA's LRS. (See Section V.) To have standing to obtain prospective relief, there must exist "a sufficient likelihood that [plaintiff] will be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). There are no facts alleged demonstrating that is the case. The SAC also does not demonstrate grounds for restitution, and neither compensatory nor punitive damages are available under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 946 (Cal. 2003).

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

### D.   LACBA Did Not Discriminate Against Plaintiff and is Not a Place of Public Accommodation

In her fifth claim, based on violations of the Civil Rights Act (42 U.S.C. § 2000a), and her eighth claim, based on the Unruh Civil Rights Act, Plaintiff alleges that LACBA is a place of public accommodation that failed to accommodate her because it is open to lawyers to provide them with referrals if they satisfy certain standards. [Dkt. 96, ¶¶ 254-255.] With absolutely no facts to support her claims, Plaintiff asserts that LACBA discriminated against her and somehow joined with ANCA and ANCWR – organizations LACBA has no connection with – to prosecute her. [*Id.*, ¶ 185.]

The "overriding purpose" of 42 U.S.C. Section 2000a is to remove "the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307 (1969). "A Section 2000a claim is not viable unless the property to which the plaintiff has been denied access is 'a place of public accommodation' as defined by the statute." *Williams v. Cal. C.R. Dep't*, No. 2:24-cv-06606-Sb (GJS), 2024 U.S. Dist. LEXIS 151905, *14 (C.D. Cal. Aug. 22, 2024).

LACBA's LRS is not a place of public accommodation; it is a lawyer referral service. 42 U.S.C. § 2000a(b) (public accommodations include inns, hotels, motels; restaurants or other facilities selling food; and theaters, concert halls, stadiums or other places of entertainment); Dkt. 96, ¶¶ 257-258 (Defendants were acting as private clubs). "The statute's plain language is clear: a place of public accommodation must provide lodging, sell food for consumption, exhibit entertainment, or contain or be located within an establishment that offers one of these services…" *Ransom v. CubeSmart*, No. 5:23-cv-1502-LCB, 2024 WL 607426, at *4 (N.D. Ala. Jan. 9, 2024); *Noah v. AOL Time Warner, Inc*., 261 F.Supp. 2d 532, 541 (E.D. Va. 2003) (public accommodations are limited to actual, physical places and structures). The LRS is none of these. Moreover, Plaintiff has not alleged that

she was accessing the LRS' office, had ever been to the LRS' physical office, or was denied required accommodations by LACBA.

In addition, a plaintiff alleging a violation of Section 2000a must allege facts demonstrating discriminatory intent. *Hardie v. Nat. Collegiate Athletic Ass'n*, 97 F.Supp.3d 1163, 1169 (S.D. Cal. 2015). There are no such allegations with respect to LACBA.

Lastly, individual plaintiffs cannot recover damages for claims brought under Section 2000a and can only obtain injunctive relief. *Newman v. Piggie Park Enterp., Inc.*, 390 U.S. 400, 402 (1968). As discussed earlier, Plaintiff is not a member of the LRS and, with respect to LACBA, is not subject to a real or immediate threat of harm. Thus, she does not have standing to seek injunctive relief. (See Section V.)

As for the ninth claim for violations of Civil Code Section 41 (the Unruh Act), such claims concern a violation of the Americans with Disabilities Act ("ADA") or denial of access to a business establishment based on intentional discrimination. *Martinez v. San Diego County Credit Union*, 50 Cal.App.5th 1048, 1059 (2020); *Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 853-854 (absent an ADA violation, the Unruh Act requires allegations supporting "willful, affirmative misconduct" with the specific intent "to accomplish discrimination on the basis of [a protected trait].") Here, there are no allegations concerning a violation of the ADA, and there are no allegations that Plaintiff entered LACBA's business establishment and was denied accommodations there, or anywhere else, let alone that LACBA intentionally discriminated against Plaintiff based on anything (including a protected trait). Thus, the fifth and eighth claims fail as a matter of law.

### E.    There is no Plausible Claim for Harassment

Plaintiff's ninth claim for harassment in violation of California Code of Civil Procedure Section 527.6 is not supported by the facts or the law. Harassment is defined as "unlawful violence, a credible threat of violence, or a knowing and

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Code Civ. Proc. § 527.6(b)(3). "The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." *Id*. Thus, to state a claim for harassment, a plaintiff must allege: "(1) a knowing and willful course of conduct entailing a pattern of a series of acts over a period of time, however short, evidencing a continuity of purpose; (2) directed at a specific person; (3) which seriously alarms, annoys, or harasses the person; (4) which serves no legitimate purpose; (5) which would cause a reasonable person to suffer substantial emotional distress and actually causes substantial emotional distress to the plaintiff; and (6) which is not a constitutionally protected activity." *Schild v. Rubin*, 232 Cal.App.3d 755, 762 (1991).

The SAC contains no allegations supporting a claim of unlawful harassment against LACBA. Cal. Code Civ. Proc. § 527.6(b)(3). Plaintiff simply concludes that all defendants harassed her "by sending her referrals she continuously asked [them] not to send her, sending her the referrals not in her area of practice, [and] illegally and discriminatively suspending her membership while she was an active member of the Bar." [Dkt. 96, ¶ 301.] Plaintiff does not allege that LACBA engaged in unlawful violence, made credible threats of violence, or engaged in a knowing and willful course of conduct that both seriously alarmed, annoyed, or harassed Plaintiff *and* that served no legitimate purpose.

Sending referrals – which is the (legitimate) purpose of LACBA's LRS – does not constitute harassment. And Plaintiff cannot have it both ways. By sending referrals – the very purpose of Plaintiff becoming a member of the LRS – LACBA is allegedly harassing Plaintiff, yet Plaintiff also claims LACBA is liable to her for not sending her enough referrals. [See Dkt. 96, ¶¶ 162, 164, 166, 169, 289.] Further, the fact that Plaintiff was an active member of the Bar has no bearing on whether

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

she was or could be suspended from a lawyer referral service. There are a multitude of requirements a member of LACBA's LRS, and the LRS, must meet. [Bus. & Prof. Code § 6155 (f)(6); Cal. State Bar Rules 3.801(B) and 3.823(A) and (C), 3.824, 3.826.] Next, if Plaintiff's membership was suspended, she was not being harassed (and certainly is not being harassed now). Moreover, earlier, Plaintiff alleged that she was told that, with respect to her request that LACBA not send referrals for potential Armenian clients, she had to opt out from online referrals or get suspended. [Dkt. No. 96, ¶ 163.] It, again, is unclear how that is harassment.

And, to the extent Plaintiff is upset with the quality of the referrals she received that also is not harassment. Again, referrals were the purpose of Plaintiff's involvement in the LRS and Plaintiff requested that LACBA's LRS send her referrals. Regardless, as mentioned earlier, certified lawyer referral services exist to benefit the public, not the attorneys to whom the public is referred. *Jackson*, *supra*, 42 Cal.App.5th at 772. Further, LACBA cannot control how prospective clients behave or whether their inquiries will result in an attorney-client relationship.

### F.     Plaintiff Has Not and Cannot Sufficiently Plead Emotional Distress

The alleged failure to provide Plaintiff with referrals, or sending her referrals she did not like and was not interested in accepting, or even could not accept, does not constitute infliction of emotional distress. The intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") claims (twelfth and thirteenth claims) require severe or extreme emotional distress and extreme and outrageous conduct by a defendant, with the intent of causing, or reckless disregard of the probability of causing, emotional distress, and actual and proximate causation of the emotional distress. *Hughes v. Pair*, 46 Cal.4th 1035, 1050-1051 (2009).

Here, there are no facts demonstrating the requisite outrageous conduct or emotional distress. *Hegelson v. American Int'l Grp., Inc.*, 44 F. Supp. 2d 1091, 1095 (S.D. Cal. 1999) (conduct must be "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). There are no facts, rather than conclusions, that any defendant intentionally sent Plaintiff fake leads or harassed her with cases outside of her practice area or that, even if they did, such acts constitute extreme and outrageous conduct. Indeed, they do not.

There are also no allegations that LACBA caused Plaintiff to suffer severe or extreme emotional distress. Severe emotional distress has a high bar and means "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes*, *supra*, at 1051 (also explaining that a court may dismiss such claims as a matter of law if the conduct alleged is insufficiently outrageous, particularly where the conduct alleged amounts to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). In addition, there are no facts to show that any alleged distress was caused by LACBA's conduct or that LACBA's conduct was undertaken for the purpose of causing the resulting harm. *Spackman v. Good*, 245 Cal.App.2d 518, 530 (1966). Rather, Plaintiff simply lumps the LACBA Defendants in with all of the Defendants.

As for NIED, a claim for NIED is not an independent action; rather, it is the tort of negligence with the traditional elements of duty, breach of duty, causation, and damages. *Potter v. Firestone Tire & Rubber Co*., 6 Cal.4th 965, 984 (1993). The LACBA Defendants did not owe Plaintiff a duty to provide her with referrals. *Marlene F. v. Alliance Psychiatric Med. Clinic, Inc*., 48 Cal.3d 583, 588 (1989) (whether a defendant owes a duty of care is a question of law).

Because Plaintiff has not and cannot allege facts to support claims for emotional distress, such claims should be dismissed with prejudice.

## V.   Plaintiff's Claims for Injunctive Relief Must be Dismissed Pursuant to Federal Rules of Civil Procedure, Rule 12(b)(1)

If any of Plaintiff's claims survive the Motion to Dismiss, her requests for

injunctions against LACBA, with respect to the first through third, ninth, and tenth claims, and in Paragraphs 5 and 8-10 of her Prayer, should be dismissed under FRCP, Rule 12(b)(1) for lack of Article III standing. Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal for lack of subject matter jurisdiction. Under Rule 12(b)(1), a federal court is to first determine its jurisdiction over the dispute. See *Bates v. United Parcel Serv., Inc*., 511 F.3d 974, 985 (9th Cir. 2007); *Ellis v. J.P. Morgan Chase & Co*., 950 F. Supp. 2d 1062, 1071 (N.D. Cal. 2013).

A defendant may move to dismiss for lack of standing and, thus, lack of subject matter jurisdiction, under Rule 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A Rule 12(b)(1) motion may be either facial, limited to the allegations in the complaint, or factual, including material outside of the complaint. *Id.* Unlike a facial attack, where a court must accept the jurisdictional allegations in the complaint as true, *see e.g.*, *Whisnant v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005), in considering a factual attack, a court may consider evidence including declarations, and the party opposing the motion has the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). This motion is a factual attack.

Plaintiff seeks injunctive relief in the SAC – in addition to monetary relief – to force LACBA to accept her as a member on Plaintiff's terms (i.e., "to provide public accommodation to PLAINTIFF on equal terms"); to provide her with referrals "in compliance with the Rules of the State Bar of California"[5]; and to stop using the referral system "to harass PLAINTIFF and leave her with no business." [Dkt. 96, Prayer, ¶¶ 8-10.]

Plaintiff lacks standing to pursue these claims because she is not a member of

---

[5] It is unclear (1) what Plaintiff contends the Rules of the State Bar of California require LACBA to do with respect to referrals; (2) which specific rules LACBA allegedly violated; and (3) how LACBA violated those rules. The alleged failure to provide Plaintiff with the type and volume of referrals that Plaintiff desired is not a violation of any rule.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  the LRS at this time (nor has she alleged that she is still a member or that she is

2  trying to become a member). *See* Declaration of Stanley Bissey, ¶ 2; SAC. As such,

3  Plaintiff lacks a critical component of Article III standing to assert a claim for

4  injunctive relief: a threat of actual and imminent, and not conjectural or

5  hypothetical, injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,

6  967 (9th Cir. 2018). Because Plaintiff is not a current member of the LRS, and has

7  not alleged that she is, there is no actual and imminent threat of injury to Plaintiff

8  from LACBA's allegedly harmful, discriminatory, and insufficient referrals.

9  Plaintiff's allegations further demonstrate that there is no actual or imminent threat

10  of injury because Plaintiff admits that she eventually stopped receiving referrals.

11  [Dkt. 96, ¶¶ 166, 169.]

12        Lastly, because, as discussed in Section A above, Plaintiff wants LACBA to

13  discriminate against potential clients who are Armenian, she could not be a member

14  of the LRS again. To be a member of the LRS, Plaintiff would be required to

15  comply with the State Bar Act and the Rules of Professional Conduct. [RJN, Ex. D:

16  LRS Rules of Operation, § 7.2(f); see also §§ 5.1(c) (all referrals "shall be made

17  without regard to race, color, age, religion, national origin, gender, sexual

18  orientation, or disability") and 5.2(e) (requiring registrants of LRS to handle referred

19  clients "without regard to the Client's race, color, age, religion, national origin,

20  gender, sexual orientation, or disability").] As previously mentioned, the Rules of

21  Professional Conduct also prohibit discrimination against others based on national

22  original and ethnicity, including by refusing to accept the representation of a client.

23  Cal. R. of Prof. Conduct 8.4.1(a). [Dkt. 96, ¶¶ 162-163.] In violation of all of these

24  rules, Plaintiff confirmed she asked that LACBA not send "referrals for Armenians"

25  and, thus, she confirmed that she cannot be a member of the LRS. [*Id.*] Without

26  membership in the LRS, Plaintiff cannot establish standing to pursue injunctive

27  relief.

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## VI. <u>FURTHER LEAVE TO AMEND WILL BE FUTILE</u>

A district court need not grant leave to amend where an amendment is futile. *AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946, 951 (9th Cir. 2006). When a court has already granted a plaintiff leave to amend, discretion in deciding subsequent motions to amend is broad. *Chodos v. W. Publ'g Co*., 292 F.3d 992, 1003 (9th Cir. 2002).

Plaintiff has already filed a Complaint, First Amended Complaint, and the SAC. [Dkt. 1, 12, 96.] Given the allegations against LACBA, and the nature of Plaintiff's claims, further amendment would be futile. LACBA cannot be liable for adhering to the rules that govern certified lawyer referral services, is immune from liability, and did not engage in RICO violations, restrain trade, or discriminate against, or fail to accommodate, Plaintiff in any way. All of Plaintiff's claims against LACBA are based on the misguided premise that certified referral services exist to serve their attorney members, and guarantee that members will receive the type and number of referrals they desire. That is not how it works and Plaintiff's dissatisfaction with the referrals she received, or did not receive, does not support any claim against LACBA.

## VII. <u>CONCLUSION</u>

For all of the foregoing reasons, the LACBA Defendants' Motion to Dismiss should be granted, and Plaintiff's Second Amended Complaint should be dismissed against the LACBA Defendants without leave to amend.

KLINEDINST PC

DATED: December 2, 2024       By: _____

Leah A. Plaskin Lorenz
Attorneys for Defendants LOS ANGELES
COUNTY BAR ASSOCIATION, SETH
CHAVEZ, and COCO SU