1  Dick A. Semerdjian (SBN 123630)
   Chad M. Thurston (SBN 339151)
2  **Schwartz Semerdjian Cauley Schena & Bush LLP**
   101 West Broadway, Suite 810
3  San Diego, CA 92101
   Telephone No. 619.236.8821
4  Facsimile No. 619.236.8827
   Email:     das@sscelaw.com
5              chad@sscelaw.com

6  Attorneys for Defendants
   ARMENIAN NATIONAL COMMITTEE OF AMERICA,
7  ARAM HAMPARIAN and ARMENIAN NATIONAL COMMITTEE
   OF AMERICA WESTERN REGION

8

9                 **UNITED STATES DISTRICT COURT**

10          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  AYNUR BAGHIRZADE, an individual, | Case No. 3:24-cv-1077 RSH MMP |
| 13                     Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ARMENIAN NATIONAL COMMITTEE OF AMERICA, ARAM HAMPARIAN AND ARMENIAN NATIONAL COMMITTEE OF AMERICA WESTERN REGION'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| 14  v. | |
| 15  ARMENIAN NATIONAL COMMITTEE OF AMERICA, a Non-Profit | |
| 16  Corporation; ARAM HAMPARIAN, an individual; ARMENIAN NATIONAL | |
| 17  COMMITTEE OF AMERICA WESTERN REGION, a California | |
| 18  Nonprofit Public Benefit Corporation; YELP Inc., a Delaware Stock | [Fed. R. Civ. P. 12(b)(6)] |
| 19  Corporation; JEREMY STOPPELMAN, an individual; GOOGLE LLC, a | **PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT** |
| 20  Delaware Limited Liability Company; ALPHABET Inc., a Delaware Stock | |
| 21  Corporation; ORANGE COUNTY BAR ASSOCIATION; a California Nonprofit | |
| 22  Mutual Benefit Corporation; TRUDY LEVINDOFSKE, an individual; TERESA | Date:        January 6, 2025 |
| 23  VUKI, an individual; LOS ANGELES COUNTY BAR ASSOCIATION, a | Judge:       Hon. Robert S. Huie |
| 24  California Nonprofit Mutual Benefit Corporation; SETH CHAVEZ, an | |
| 25  individual; COCO SU, an individual; ATTORNEY SEARCH NETWORK, a | Magistrate:     Hon. Michelle M. Pettit |
| 26  California Stock Corporation; JAKE BALOIAN, an individual; Nolo, a | |
| 27  California Stock Corporation; MH SUB I, LLC, a Delaware Limited Liability | |
| 28  Company; LEGALMATCH | |

CALIFORNIA, a Nevada Domestic Corporation; ESTRELLA SANCHEZ, an individual; DOES 1 THROUGH 300, inclusive,

Defendants.

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 9

II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS ..................................... 9

III.    LEGAL STANDARD ........................................................................... 11

IV.     LEGAL ARGUMENT ......................................................................... 12

     **A.**    Plaintiff's Claims Should Be Dismissed For Failing To Provide A Short And Plain Statement .................................. 12

     **B.**    Plaintiff's First, Second, And Third RICO Claims Fail Because She Has Neither Plausibly, Nor Specifically Alleged Fraud. ......................................................................... 13

     **C.**    Plaintiff's Claim Under 15 U.S.C. § 1 *Et Seq*. Fails As A Matter Of Law. ........................................................ 15

     **D.**    Plaintiff's Claim Under California Business And Professions Code Section 16720 *Et Seq*. Fails As A Matter Of Law. ..................................................................... 16

     **E.**    Plaintiff's Claim Under California Business & Professions Code § 17200 *Et Seq*. Fails As A Matter Of Law. .................................................................................. 17

     **F.**    Plaintiff's Harassment Claim Fails As A Matter of Law. ................. 18

          1.    Plaintiff Fails To Plausibly Allege A Conspiracy To Harass Her. ............................................................ 18

          2.    Plaintiff's Allegations Against ANCA Defendants Fail To Satisfy *Twombly* ........................ 19

          3.    Plaintiff Has Failed To Assert The Sixth Element Of A Harassment Claim. ........................................ 20

     **G.**    Plaintiff's Defamation Cause Of Action Fails As A Matter Of Law. ..................................................................... 21

          1.    Plaintiff Did Not Identify A Defamatory Statement ....................................................................... 22

          2.    Plaintiff Has Not Successfully Pleaded Falsity. .......... 22

          3.    Plaintiff Has Not Pleaded That ANCA Defendants' Statements Were Of Fact. ..................... 23

          4.    Plaintiff Has Not Alleged That ANCA Defendants' Speech Was Unprivileged, And It Was .......................................................................... 23

**H.**     Plaintiff's Malicious Prosecution Claim Fails As A
Matter Of Law. .......................................................................... 24

**I.**      Plaintiff's IIED And NIED Claims Fail As A Matter Of
Law. ........................................................................................... 25

     1.     Plaintiff's IIED And NIED Claims Fail Because
They Are Predicated Upon ANCA Defendants'
Free Speech. ................................................................... 25

     2.     Plaintiff's IIED Claim Because She Has Not
Pleaded Extreme and Outrageous Conduct. ......................... 25

     3.     Plaintiff's NIED Claim Fails As A Matter Of
Law. ................................................................................ 26

**J.**      Plaintiff's Invasion Of Privacy Claim Fails As A Matter
Of Law. ...................................................................................... 27

**K.**     Further Amendment Would be Futile. ...................................... 28

V.     CONCLUSION ........................................................................... 29

1

# **TABLE OF AUTHORITIES**

2

## **Cases**

3

*Adams v. PNC Bank, N.A.*,
    2014 WL 7388124, at *4 (N.D. Cal., Dec. 29, 2014) ...................................27

4

*Adams v. Superior Ct.*,
5
    2 Cal.App.4th 521, 528 (1992)......................................................................24

6

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ...............................................................................11

7

*Assoc.d Gen'l Contractors v. Metro. Water Dist.*,
8
    159 F.3d 1178, 1181 (9th Cir. 1998)..............................................................11

9

*Aulson v. Blanchard*,
    83 F.3d 1, 3 (1st Cir. 1996) ............................................................................28

10

*Bell Atlantic Corp. v. Twombly*,
11
    550 U.S. 544, 555 (2007) ..............................................11, 12, 15, 16, 17, 18, 19

12

*Bly-Magee v. California*,
    236 F.3d 1014, 1019 (9th Cir. 2001) ..............................................................17

13

*Brenneman v. State of California*,
14
    208 Cal.App.3d 812, 817 (1989).....................................................................27

15

*City of Indus. v. Filmore*,
    198 Cal.App.4th 191, 211–12 (2011)..............................................................18

16

*Cooper v. Pickett*,
17
    137 F.3d 616, 627 (9th Cir. 1997) ..................................................................17

18

*Crouch v. Trinity Christian Center of Santa Ana, Inc.*,
    39 Cal.App.5th 995, 1007 (2019)....................................................................26

19

*D and D Greek Rest., Inc. v. Great Greek Franchising, LLC*,
20
    2021 WL 4456063, at *2 (C.D. Cal., May 19, 2021).....................................12

21

*DM Rsch., Inc. v. College of Am. Pathologists*,
    170 F.3d 53, 56 (1st Cir. 1999) ......................................................................15

22

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
23
    751 F.3d 990, 997 (9th Cir. 2014)...................................................................13

24

*Eisenberg v. Alameda Newspapers, Inc.*,
    74 Cal.App.4th 1359, 1385, fn. 13 (1999) .....................................................27

25

*GetFugu, Inc. v Patton Boggs LLP*,
26
    220 Cal.App.4th 141,155 (2013).....................................................................22

27

*Gilbert v. Sykes*,
    147 Cal.App.4th 13, 32 (2007)........................................................................21

28

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229, 237 (1989) ...........................................................14

*Hagans v. Levine*,
    415 U.S. 528, 536–37 (1974) ....................................................28

*Huggins v. Longs Drug Stores California, Inc.*,
    6 Cal.4th 124, 129 (1993) .........................................................27

*Hughes v. Pair*,
    46 Cal.4th 1035, 1051 (2009) ...................................................26

*Huntingdon Life Services, Inc. v. Stop Huntingdon Animal Cruelty
    USA, Inc.*,
    129 Cal.App.4th 1228, 1247 (2005) ..............................21, 24, 25

*In re WellPoint, Inc.*,
    865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ...........................14

*Jackson v. Mayweather*,
    10 Cal.App.5th 1240, 1264 (2017) ............................................27

*J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*,
    247 Cal.App.4th 87, 97 (2016) ..................................................21

*Kahn v. Bowser*,
    232 Cal.App.3d 1599, 1612 (1991) ...........................................21

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120, 1125 (9th Cir. 2009) .........................................17

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042, 1047 (9th Cir. 2008) .........................................11

*Khan v. Twitter, Inc.*,
    No. 23-cv-00816-LB, 2023 WL 4315539, at *1 (N.D. Cal.
    July 2, 2023) ..............................................................................12

*Lebbos v. State Bar*,
    165 Cal.App.3d 656, 670 (1985) ...............................................24

*Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*,
    48 Cal.3d 583, 588 (1989) .........................................................27

*Marolda v. Symantec Corp.*,
    672 F.Supp.2d 992, 1003 (N.D. Cal. 2009) ..............................17

*McGarry v. Univ. of San Diego*
    154 Cal.App.4th 97, 112 (2007) .........................................21, 22

*McHenry v. Renne*,
    84 F.3d 1172, 1177 (9th Cir. 1996) ...........................................12

*Medical Marijuana, Inc. v. Project CBD.com*,
    46 Cal.App.5th 869, 888 (2020) .........................................21, 22

6

*MH Pillars Ltd. v. Realini,*
    2018 WL 1184847, at *7 (N.D. Cal. Mar. 7, 2018) ........................................ 14

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1, 20 (1990) .................................................................................. 21

*Morse v. Frederick,*
    551 U.S. 393, 403 (2007) ................................................................. 20, 23, 25

*Myles v. United States,*
    47 F.4th 1005, 1014 (2022) ......................................................................... 24

*Potter v. Firestone Tire & Rubber Co.,*
    67 Cal.4th 965, 1001 (1993) ........................................................................ 26

*Price v. Operating Eng'rs Local Union No. 3,*
    195 Cal.App.4th 962, 970 (2011) ................................................................. 27

*Rockridge Trust v. Wells Fargo, N.A.,*
    985 F.Supp.2d 1100, 1156–57 (N.D. Cal. 2013) ......................................... 18

*Sanders v. Walsh,*
    219 Cal.App.4th 855, 862 (2013) ................................................................ 21

*Schild v. Rubin,*
    232 Cal.App.3d 755, 762 (1991) ............................................................ 18, 20

*Simo v. Union of Needletrades, Indus. & Textile Emps., Southwest*
    *Dist. Council,*
    322 F.3d 602, 621 (2003) ............................................................................ 26

*Stanard v. Nygren,*
    658 F.3d 792, 799–800 (7th Cir. 2011) ....................................................... 12

*Steinley v. Health Net, Inc.,*
    2018 WL 6985318, at *5 (C.D. Cal., Dec. 4, 2018) ..................................... 12

*Virginia v. Black,*
    538 U.S. 343, 365 (2003) ....................................................................... 20, 23

*Vogel v. Felice,*
    127 Cal.App.4th 1006, 1021 (2005) ............................................................ 22

*Watson v. Weeks,*
    436 F.3d 1152, 1157 (9th Cir. 2006) ........................................................... 11

**<u>Statutes</u>**

California Code of Civil Procedure section 527.6 ............................................... 18

Federal Rule of Civil Procedure 8 ........................................................ 9, 12, 18

Federal Rule of Civil Procedure 9 ............................................ 9, 13, 15, 17, 18

Federal Rule of Civil Procedure 12 .................................................................. 11

1  <u>**Other Authorities**</u>

2  California Business and Professions Code section 16720 ..........................................16

3  California Business and Professions Code section 16721 ..........................................16

4  California Business and Professions Code section 16727 ..........................................16

5  California Business and Professions Code section 17200 ..........................................17

6  <u>**Constitutional Provisions**</u>

7  15 U.S.C. § 1 ..............................................................................................................15

## I.    INTRODUCTION

Plaintiff's seventy-four (74) page, 355 paragraph Second Amended Complaint ("SAC") is the antithesis of a "short and plain statement" and fails to satisfy even the most basic federal pleading standards.  *See, e.g.,* Fed. R. Civ. P. 8(a)(2), 8(d)(1).  Moreover, the entire SAC is premised upon the covert actions of a whimsical "Armenian Enterprise" and fails to plausibly allege sufficient facts to support any of the claims for relief asserted against Defendants Armenian National Committee of America ("ANCA"), Aram Hamparian, and the Armenian National Committee of America Western Region ("ANCAWR") (collectively "ANCA Defendants").[1]  Additionally, Plaintiff's RICO claims fail to satisfy the requirements of Federal Rule of Civil Procedure 9(b), which required her to plead fraud with particularity, and several other claims attempt to punish ANCA Defendants for engaging in constitutionally protected activity.

Plaintiff has taken one opportunity to amend her Complaint and has been granted a second one by this Court.  This is Plaintiff's third Complaint in this matter, and yet she has again failed to cure her pleading deficiencies present in the first two Complaints.  Because Plaintiff's SAC fails to state a single claim which is plausible on its face, and summarily accuses all Defendants of conspiring against her with no supporting facts, it should be dismissed with prejudice.

## II.    SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff's SAC attempts to plead a widespread conspiracy against her and her business, led by ANCA Defendants, Yelp, Google, multiple Bar Associations, various legal referral programs, and multiple other individual Defendants.

Plaintiff sued ANCA Defendants, along with several others, on June 21, 2024.  (ECF No. 1.)  She filed her First Amended Complaint on August 15, 2024.  (ECF

---

[1] Plaintiff's allegations against ANCA Defendants also include allegations against Armen Sahakyan, who is named in the Complaint.  This Motion to Dismiss specifically omits Mr. Sahakyan, who was never served by Plaintiff in this action.

No. 12.)  ANCA Defendants, along with several others filed motions to dismiss her First Amended Complaint.  Plaintiff moved for leave to file a SAC on October 2, 2024, and was granted leave to do so on November 15, 2024.  (ECF No. 93.)  On November 16, 2026, Plaintiff filed her SAC adding approximately eleven new defendants and one new cause of action.  (ECF No. 96.)

Once again, Plaintiff's SAC begins with her background as an Azerbaijani citizen living and working in San Diego, California, as well as several pages describing a history of incidents between Armenia and Azerbaijan ranging back to 1976.  (SAC ¶¶ 36–60.)  These initial paragraphs appear to be generally unrelated to Plaintiff's claims.  Plaintiff then describes her activity on social media, consistently posting about the Armenian-Azerbaijani conflict since 2020, and how she was "harassed" on Twitter by "various Armenian account user" as a reaction to her posts.  (SAC ¶¶ 64–65.)  She identifies one user, Simon Maghakyan, who she alleges harassed her online, and attempts to pin the blame of his posts on ANCA Defendants because Maghakyan has spoken at past ANCA events.  (SAC ¶ 65.)  Other than Plaintiff's unsupported assertions that ANCA bears responsibility for Maghakyan's posts, the rest of Plaintiff's claims appear to be centered around Twitter users in general.  (SAC ¶¶ 64–71.)

Plaintiff's conspiracy theory also extends to Defendants Yelp and Google and alleges that they refused to take down defamatory reviews (SAC ¶¶ 72–75) and manipulated search results for her law firm, intending to harm her business in collaboration with an alleged "Armenian Enterprise."  (SAC ¶¶ 72–81.)

Plaintiff's allegations also accuse her former employer (SAC ¶¶ 85–90), the Orange County Bar Association (SAC ¶¶ 99–116), the Los Angeles County Bar Association (SAC ¶¶ 117–128), and various other attorney referral services (SAC ¶¶ 129–144) of conspiring to send her sham referrals in an attempt to destroy her business.

In sum, Plaintiff's SAC mimics her First Amended Complaint's vague, general, and flawed conspiracy allegations against defendants. As to ANCA Defendants, Plaintiff's SAC is her attempt to hold two Armenian organizations responsible for the acts of separate individuals on Twitter and elsewhere who expressed disdain towards her political views and statements. Plaintiff's SAC seems to allege that the acts of any Armenian are attributable to ANCA Defendants—this is obviously untrue, and more importantly, implausible. Her SAC fails to cure the deficiencies present in her FAC, and it must be dismissed with prejudice.

## III. LEGAL STANDARD

Federal Courts should dismiss claims where the pleader "fail[s] to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6). "[C]onclusory allegations of law and unwarranted inferences" are insufficient. *Assoc.d Gen'l Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). A complaint must state "evidentiary facts which, if true, will prove [the claim]," *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008), otherwise it will be dismissed. *See Watson v. Weeks*, 436 F.3d 1152, 1157 (9th Cir. 2006). The pleading must also allege facts, and it is the plaintiff's obligation to provide the grounds of his entitlement to relief which requires more than just labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must also provide enough detail to give the defendant fair notice of what the claim is and what grounds support it. *Twombly*, 550 U.S. at 555. However, a plaintiff cannot just throw around legal conclusions, "a formulaic recitation of the elements of a cause of action will not do. *Id.* The court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. Fanciful, fantastical, and/or delusional allegations should be

1  disregarded. *Khan v. Twitter, Inc.*, No. 23-cv-00816-LB, 2023 WL 4315539, at *1

2  (N.D. Cal. July 2, 2023).

3  **IV.   LEGAL ARGUMENT**

4      **A.    Plaintiff's Claims Should Be Dismissed For Failing To Provide A
            Short And Plain Statement.**

5

6      Federal Rule of Civil Procedure Rule 8(a)(2) requires only that a plaintiff

7  provide a "short and plain statement of the claim showing that the pleader is entitled

8  to relief" and "give the defendant fair notice of what the. . . claim is and the grounds

9  upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and

10  citations omitted). To form a defense, a defendant must know what he is defending

11  against; that is, he must know the legal wrongs he is alleged to have committed and

12  the factual allegations that form the core of the claims asserted against him."

13  *Stanard v. Nygren*, 658 F.3d 792, 799–800 (7th Cir. 2011).

14      Plaintiff's SAC is replete with accusations against an "Armenian Enterprise,"

15  which she claims is constituted by, *inter alia*, every single Defendant listed in her

16  SAC. Plaintiff fails, in all her claims, to specifically point out how each of the

17  thirty-one named Defendants (and 289 DOES) are liable for each cause of action. *D*

18  *and D Greek Rest., Inc. v. Great Greek Franchising, LLC*, 2021 WL 4456063, at *2

19  (C.D. Cal., May 19, 2021) (citing *Steinley v. Health Net, Inc.*, 2018 WL 6985318, at

20  *5 (C.D. Cal., Dec. 4, 2018) ("'Generally, "[u]ndifferentiated pleading against

21  multiple defendants is improper" because it fails to give each defendant notice of the

22  specific allegations and claims that pertain to it.'"). The SAC provides no specific

23  statements or actions against ANCA Defendants, and is, instead, the undifferentiated

24  pleading against multiple defendants that *Steinley* held was improper.

25      Dismissal is appropriate where the "very prolixity of the complaint ma[kes] it

26  difficult to determine just what circumstances were supposed to have given rise to

27  the various causes of action." *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir.

28  1996) (affirming the dismissal of a complaint that was "argumentative, prolix,

12

Case No. 3:24-cv-1077 RSH MMP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ARMENIAN NATIONAL
COMMITTEE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

replete with redundancy and largely irrelevant.").  Dismissal of Plaintiff's SAC here is appropriate, as her scattered and unspecific allegations, premised upon an underlying conspiracy involving all Defendants, make it difficult for Defendants to ascertain what conduct gave rise to her causes of action.

**B.    Plaintiff's First, Second, And Third RICO Claims Fail Because She Has Neither Plausibly, Nor Specifically Alleged Fraud.**

A RICO claim requires the Plaintiff to prove that Defendants participated in "(1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity ... [and] the conduct must be (5) the proximate cause of harm to the victim." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).  To adequately allege the existence of an enterprise, plaintiffs must plead that the enterprise has (i) a common purpose, (ii) a structure or organization, and (iii) longevity necessary to accomplish the purpose. *Id.*  Where acts are predicated on fraud, a plaintiff must plead with "particularity" the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).

Here, as is the pattern with all her causes of action, Plaintiff lumps together Defendants and refers to this group as "the Armenian Enterprise" (a "network of Armenians working for the U.S. companies") and states that "DEFENDANTS are enterprises, whose/which activities affect interstate and foreign commerce."  (SAC ¶¶ 42, 218.)  Beyond this legal conclusion and her vast, barebone allegations that all Defendants have conspired against her, Plaintiff's SAC does not identify a specific structure or organization, any longevity of such Armenian Enterprise, or any pattern of activity attributable to all Defendants.  As Google points out, "Plaintiff's use of the term 'Enterprise' is an empty label being used to associate Google and other defendants in her Rico allegations.  As discussed below, there are no plausible allegations that any such enterprise or conspiracy exists."  (Google's Mot. to Dismiss SAC, ECF No. 97, at 3, fn. 2.)  Her three RICO causes of action function not as legitimate claims, but rather, as Plaintiff's opportunity to raise all her

grievances—including her car's repossession, threats received on Twitter, a rat in her garage, and lack of clients—and blame them on a group for which she harbors clear disdain: Armenians.  (SAC ¶ 195, 224 77, 108.)

Plaintiff's SAC suggests, without basis, that ANCA Defendants are part of the "Armenian Enterprise" because Simon Maghakyan, someone who has spoken at ANCA's events in the past, filed a State Bar Complaint against her.  Plaintiff failed to allege a connection (other than being Armenian) between Maghakyan and ANCA Defendants, and failed to allege a pattern of behavior between the two; her allegations appear to stem from a singular incident.  Having failed to properly allege all elements of a conspiracy, Plaintiff naturally has also failed to allege an injury to her "resulting from a defendant's control or acquisition of a RICO enterprise."  *MH Pillars Ltd. v. Realini*, 2018 WL 1184847, at *7 (N.D. Cal. Mar. 7, 2018) (citations omitted).  Additionally, where a plaintiff alleges RICO claims against many defendants, they must allege "at least two predicate acts by *each* defendant" and must show continuity in the pattern of racketeering.  *In re WellPoint, Inc.,* 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (emphasis in original); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237 (1989).  Plaintiff's SAC does not meaningfully allege two predicate acts as to each ANCA Defendant, nor does it plausibly allege a continuity of racketeering behavior.  Instead, it alleges a slew of conclusory allegations of placing defamatory content about Plaintiff online and coordinating with a fictional Armenian Enterprise to ruin her business and career, masked as a well-developed conspiracy pleading.

Plaintiff's first three causes of action, even if taken as true, do not allege a pattern of continuous activity threatening long-term criminal conduct.[2]  Posting online is not criminal.  Her causes of action fail to assert a single RICO claim, and

---

[2] "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct."  *H.J. Inc.,* at 242.

1  are neither plausible, nor particular or specific, as required by Rule 9(b).

2  Accordingly, Plaintiff's first three cause of action terminally fail and should be

3  dismissed.

4        **C.**    **Plaintiff's Claim Under 15 U.S.C. § 1 *Et Seq*. Fails As A Matter Of Law.**

5

6        A Sherman Antitrust Section One claim "requires a complaint with enough

7  factual matter (taken as true) to suggest that an agreement was made . . . an

8  allegation of parallel conduct and a bare assertion of conspiracy will not suffice.

9  Without more, parallel conduct does not suggest conspiracy, and a conclusory

10  statement of agreement at some unidentified point does not supply facts adequate to

11  show illegality.  Hence, when allegations of parallel conduct are set out in order to

12  make a Section 1 claim, they must be placed in a context that raises a suggestion of

13  a preceding agreement, not merely parallel conduct that could just as well be

14  independent action." *Twombly*, 550 U.S. at 556–57.  "An allegation of parallel

15  conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets

16  the complaint close to stating a claim, but without some further factual enhancement

17  it stops short of the line between possibility and plausibility of 'entitle[ment] to

18  relief.'"  *Id.* at 557; *see also DM Rsch., Inc. v. College of Am. Pathologists*, 170 F.3d

19  53, 56 (1st Cir. 1999)  ("[T]erms like "conspiracy," or even "agreement," are

20  border-line: they might well be sufficient in conjunction with a more specific

21  allegation. . . but a court is not required to accept such terms as a sufficient basis for

22  a complaint.").

23        Here, Plaintiff's SAC lacks specific allegations as to the conduct of ANCA

24  Defendants.  Rather, it alleges a general conspiracy among all Defendants ("the

25  Armenian Enterprise") to exclude her from the market by ruining her business.

26  Other than her vague allegations of conspiracy, Plaintiff fails to include any facts

27  suggesting parallel conduct between Defendants, any context to raise a suggestion of

28  a preceding agreement between Defendants, or any factual enhancements to support

her claim.  As *Twombly* clarified, her bare allegations of conspiracy and conclusory statements cannot support a claim under the Sherman Act.  Because she has failed to plead a claim under Section 1, Plaintiff's fourth cause of action must be dismissed.

### D.    Plaintiff's Claim Under California Business And Professions Code Section 16720 *Et Seq.* Fails As A Matter Of Law.

Plaintiff's sixth cause of action is brought under California Business and Professions Code section 16720 *et seq.*, specifically, sections 16721 and 16727. Section 16721(a) prohibits the exclusion of any person in California from business transactions "on the basis of any policy. . . that requires discrimination against that person. . . ." Cal. Bus. & Prof. Code § 16721(a).  Subsection (b) states that no person in California "shall require another person to be excluded, or be required to exclude another person, from a business transaction on the basis of a policy . . . that requires discrimination against that other person. . . ." Cal. Bus. & Prof. Code § 16721(b).  Subsection (c) declares that any violation of sections (a) or (b) is a conspiracy against trade.  Cal. Bus. & Prof. Code § 16721(c).  Finally, section 16727 prohibits any lease or sale of goods where a contract or price fixture has the effect of substantially lessening competition or creates a monopoly in any line of trade or commerce.  Cal. Bus. & Prof. Code § 16727.

As to this sixth cause of action, Plaintiff's SAC does not mention even one of the four ANCA Defendants.  Rather, it alleges that "All other Defendants" violated section 1672 by "conspiring" to destroy her business and "excluding her from normal flow of referrals or creating problems" for her online business.  (SAC ¶ 277.)  As to ANCA Defendants, it alleges nothing more.  Plaintiff's SAC does not allege how ANCA Defendants either (a) excluded her from business transactions based on a discriminatory policy, (b) required another person to exclude Plaintiff from a transaction based on a discriminatory policy, (c) or engaged in any lease or sale of goods with a price fixture that created a monopoly.  Plaintiff's allegations are

merely "labels and conclusions," lacking any evidentiary support. *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's sixth cause of action should be dismissed.

### E.  Plaintiff's Claim Under California Business and Professions Code § 17200 *Et Seq.* Fails As A Matter Of Law.

"To state a claim under the UCL, a plaintiff must plead that: (1) defendant engaged in one of the practices prohibited by the statute; and (2) plaintiff suffered actual injury in fact as a result of defendant's actions." *Marolda v. Symantec Corp.*, 672 F.Supp.2d 992, 1003 (N.D. Cal. 2009). "While fraud is not a necessary element of a successful UCL claim, when fraud is alleged, the heightened pleading standard of Rule 9(b) applies. *Id.* at 1004 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). Federal Rule of Civil Procedure 9(b) demands that the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong'." *Kearns*, 567 F.3d at 1120 (citing *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001); *see also Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted) ("Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged.").

As to ANCA Defendants, Plaintiff's SAC contains only conclusory allegations of conspiracy and fraud, thus failing to satisfy *Twombly's* basic pleading standard, and simultaneously invoking a heightened pleading standard under Rule 9(b), which it cannot satisfy. Plaintiff's SAC states that ANCA Defendants are engaged in "fraudulent business practices," have conspired to destroy her businesses, and have committed "multiple acts of mail & wire fraud" and worked together with the Armenian Enterprise to deceive the public about her services "with the intent to ruin and damage her business and reputation." (SAC ¶ 281.) Yet, Plaintiff does not allege why the business practices were fraudulent, what constituted the alleged fraud, or what business practices Defendants engaged in.

The SAC provides no who, what, where, when, or how of the misconduct alleged. Such a barebones accusation lacking any specific facts or conduct cannot meet the pleading standards of either Rule 8 or 9(b). Accordingly, Plaintiff's claim must be dismissed.

### F.    Plaintiff's Harassment Claim Fails As A Matter of Law.

Plaintiff's harassment claim fails to allege a conspiracy against ANCA Defendants, does not meet *Twombly* pleading requirements, omits the sixth element of a harassment claim.

"The elements of unlawful harassment, as defined by the language in section 527.6, are as follows: (1) 'a knowing and willful course of conduct' entailing a 'pattern' of 'a series of acts over a period of time, however short, evidencing a continuity of purpose'; (2) 'directed at a specific person'; (3) 'which seriously alarms, annoys, or harasses the person'; (4) 'which serves no legitimate purpose'; (5) which 'would cause a reasonable person to suffer substantial emotional distress' and 'actually cause[s] substantial emotional distress to the plaintiff'; and (6) which is not a '[c]onstitutionally protected activity.'" *Schild v. Rubin*, 232 Cal.App.3d 755, 762 (1991) (citing Cal. Code Civ. Proc. § 527.6).

### 1.    Plaintiff Fails To Plausibly Allege A Conspiracy To Harass Her.

"Civil conspiracy is not an independent tort. Instead, it is a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F.Supp.2d 1100, 1156–57 (N.D. Cal. 2013) (citing *City of Indus. v. Filmore*, 198 Cal.App.4th 191, 211–12 (2011). "The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *Filmore*, 198 Cal.App.4th at 212.

First, Plaintiff's SAC pleads no specific instances of identifiable conduct against ANCA Defendants; rather, it again alleges that all Defendants were acting as part of a conspiracy to harass her. (SAC ¶¶ 295–300.) The only specific allegation against ANCA Defendants is that they called for her disbarment on social media platforms and "encouraged their community to attack her" and that she believes they stalk her address, business location, and bank information. (SAC ¶ 295.) Plaintiff does not specify how ANCA Defendants encouraged their community to attack her, nor the facts supporting Plaintiff's belief that she is being stalked. Nowhere in these allegations does Plaintiff identify the formation of a group of two or more persons acting together to harm her. Both allegations are conclusory and insufficient to satisfy basic pleading standards.

All other allegations are attributed to ANCA Defendants' "different agents," (SAC ¶ 295) "people [Plaintiff] didn't know," "unidentified numbers," (SAC ¶ 296) and "the Armenian Enterprise working for DEFENDANT GOOGLE." (SAC ¶ 297.) Plaintiff's skeptical allegations fail to properly allege or identify any agreement between Defendants to harass her. Without facts specifically identifying any relationship or connection between Defendants (other than simply being Armenian), Plaintiff cannot expect the Court to hold ANCA Defendants accountable for the acts of unidentified individuals and members of this so-called "Armenian Enterprise."

## 2. Plaintiff's Allegations Against ANCA Defendants Fail To Satisfy *Twombly*.

The only allegations in Plaintiff's harassment claim attributed specifically to ANCA Defendants are not distinct, unambiguous, or definite. Plaintiff states that ANCA and Defendants "placed defamatory content about the PLAINTIFF with the purpose to harass, intimidate and cause her substantial emotional distress. . . [and] called for her disbarment in all those platforms, tagged different people, [and] encouraged their community to attack her." (SAC ¶ 295.) This is a formulaic

19

recitation of the elements of a harassment claim. Moreover, these allegations lack specificity and facts—not once does Plaintiff even identify the "defamatory content" that Defendants supposedly posted, just as she failed to do in her FAC. Plaintiff's belief that ANCA Defendants "continuously stalk her address, business location, bank information, and social media accounts" is similarly devoid of specific facts supporting such a belief. Plaintiff has failed to amend her Complaint such that it includes facts that would put ANCA Defendants on notice of what conduct they are expected to defend.

### 3. Plaintiff Has Failed To Assert The Sixth Element Of A Harassment Claim.

The sixth element of a harassment claim requires showing that Defendant was not engaged in a constitutionally protected activity. *See Schild*, 232 Cal.App.3d at 762. Plaintiff here has neither asserted that Defendants' conduct was not a constitutionally protected activity, nor that the public forum criterion is unsatisfied.

The only allegations in Plaintiff's ninth cause of action attributed solely to ANCA Defendants include placing defamatory content about the Plaintiff online and calling for her disbarment. (SAC ¶ 295.) As Plaintiff's General Allegations maintain, the alleged disputes between her and ANCA Defendants are premised on the parties' opposing views regarding Armenia and Azerbaijan—a political debate. (*See generally* SAC ¶¶ 36–214.) Without more specific allegations, ANCA Defendants assume that such defamatory content concerns the Armenian-Azerbaijan conflict, and thus is constitutionally protected political speech. *See Morse v. Frederick*, 551 U.S. 393, 403 (2007) (quoting *Virginia v. Black*, 538 U.S. 343, 365 (2003) (plurality opinion) ("Political speech, of course, is 'at the core of what the First Amendment is designed to protect.'").

Additionally, ANCA Defendants' alleged speech took place in a public forum: online via "social media accounts." (SAC ¶ 295.) ANCA Defendants' alleged statements are thus entitled to the Constitutional protections available in a

public forum like the internet.  *See Huntingdon Life Services, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1247 (2005) (citations omitted) ("Statements on [Defendants'] Web site are accessible to anyone who chooses to visit the site, and thus they 'hardly could be more public.'").

Not only has Plaintiff failed to successfully plead all elements of a plausible harassment claim, but also, even a successful pleading by here would fail because the conduct at issue is political speech in a public forum.

### G. Plaintiff's Defamation Cause Of Action Fails As A Matter Of Law.

Plaintiff's cause of action for defamation (1) does not identify a defamatory statement, (2) does not successfully plead falsity, (3) does not plead that the statement was fact and not opinion, and (4) alleges defamation against constitutionally privileged speech.

To successfully plead a defamation claim, a Plaintiff must successfully assert that defendants published: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *J-M Manufacturing Co., Inc. v. Phillips & Cohen LLP*, 247 Cal.App.4th 87, 97 (2016); *Medical Marijuana, Inc. v. Project CBD.com*, 46 Cal.App.5th 869, 888 (2020) (citing *Kahn v. Bowser*, 232 Cal.App.3d 1599, 1612 (1991) ("The general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint."); *Gilbert v. Sykes*, 147 Cal.App.4th 13, 32 (2007) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)) (emphasis in original) ("There can be no recovery for defamation without a falsehood. . . . Thus, to state a defamation claim that survives a First Amendment challenge, plaintiff must present evidence of a statement of fact that is *provably false*."); *Sanders v. Walsh*, 219 Cal.App.4th 855, 862 (2013) (citing *McGarry v. Univ. of San Diego* 154 Cal.App.4th 97, 112 (2007)) ("Because the statement must contain a provable falsehood, courts distinguish between statement of fact and statements of opinion for purposes of defamation liability."); *GetFugu, Inc. v Patton Boggs LLP*, 220

21

Cal.App.4th 141,155 (2013) (citing *McGarry*, 154 Cal.App.4th at 112) ("Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected.").

### 1.    Plaintiff Did Not Identify A Defamatory Statement.

Plaintiff failed to identify a single defamatory statement made against her by ANCA Defendants.  Her SAC states that ANCA Defendants made "multiple false statements" on several accounts and on their website that she is "racist and many other claims and accusations," and manipulated *Plaintiff's own tweet* where she "called for the genocide of Armenians."  (SAC ¶ 304.)  Plaintiff has failed to amend her Complaint such that it specifically identifies a defamatory statement.  She has not pleaded or attempted to plead a verbatim statement. Rather, she has lumped an alleged series of posts into one single, general allegation.

### 2.    Plaintiff Has Not Successfully Pleaded Falsity.

Next, Plaintiff has failed to successfully allege that statements made by ANCA Defendants were false.  Plaintiff alleges ANCA Defendants turned Plaintiff's own tweet into a falsity by "manipulat[ing]" it, "isolat[ing] it from all her other tweets," and taking it "out of context."  (SAC ¶ 304.)  She also asserts that ANCA Defendants falsely reported that Plaintiff's tweet "called for the genocide of Armenians," yet she fails to provide any context, information, or other tweets to help ANCA Defendants understand the context out of which Plaintiff's tweet was taken.  (SAC ¶ 304.)  "Minor inaccuracies do not amount to falsity so long as the 'substance, the gist, the sting, of the libelous charge be justified.'  Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Medical Marijuana, Inc.*, 46 Cal.App.5th at 889 (citing *Vogel v. Felice*, 127 Cal.App.4th 1006, 1021 (2005)).  Without more context, ANCA Defendants are left wondering what other possible effect such a tweet made by Plaintiff, herself, could

22

Case No. 3:24-cv-1077 RSH MMP
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ARMENIAN NATIONAL
COMMITTEE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1    have on the mind of readers.  Thus, Plaintiff attempted, once again, to plead falsity,

2    but by including no concrete facts, no other statements, and no context, she failed.

### 3.    Plaintiff Has Not Pleaded That ANCA Defendants' Statements Were Of Fact.

4

5    Further, nowhere in Plaintiff's SAC does she assert that ANCA Defendants'

6    alleged statements were statements of fact, or that they were not opinions.  Any

7    statement "demand[ing] her disbarment" is a statement of opinion, given the parties'

8    history of political disputes and disagreements generously outlined in the General

9    Allegations, and is thus constitutionally protected.  Any statement regarding

10   Plaintiff "call[ing] for the genocide of Armenians," is also necessarily a statement of

11   opinion per ANCA Defendants' political views about Armenia.  Finally, any

12   statement that Plaintiff "is a racist" is also a statement of opinion; no reasonable

13   reader would conclude these social media posts were anything other than opinion.

14   Thus, Plaintiff has failed to plead that ANCA Defendants made a statement of fact,

15   and her general allegations strongly suggest that any statement made by ANCA

16   Defendants was a political opinion.

### 4.    Plaintiff Has Not Alleged That ANCA Defendants' Speech Was Unprivileged, And It Was.

18

19   Finally, even if Plaintiff had pleaded a defamatory, false, and factual

20   statement, such a statement by ANCA Defendants would still not entitle her to relief

21   because such alleged speech is privileged as a constitutionally protected activity.  As

22   stated above, the only allegations in Plaintiff's tenth cause of action attributed solely

23   to ANCA Defendants include placing defamatory content about the Plaintiff online

24   and calling for her disbarment.  (SAC ¶ 304–305.)  Again, Plaintiff's SAC clarifies

25   that her disagreements with ANCA Defendants stem from their opposing political

26   views regarding Armenia and Azerbaijan.  Thus, the allegedly defamatory content

27   concerns ANCA Defendants' political speech, which is privileged.  *See Morse*, 551

28   U.S. at 403; *Black*, 538 U.S. at 365.  Further, because Plaintiff's claim is based on

online posts, the speech she attempts to punish was made in a public forum.  *See Huntingdon Life Servs., Inc.*, 129 Cal.App.4th at 1247.  Plaintiff has failed to plead that ANCA Defendants' statement was not privileged and has failed to allege facts indicating that it was, in fact, not.

In sum, Plaintiff's SAC fails to plausibly allege four elements of defamation: a defamatory statement, falsity, fact, and privilege—which renders her tenth cause of action incurably defunct.  Plaintiff's tenth cause of action must be dismissed.

### H.    Plaintiff's Malicious Prosecution Claim Fails As A Matter Of Law.

"A plaintiff must plead and prove three elements to establish the tort of malicious prosecution: a prosecution (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice."  *Myles v. United States*, 47 F.4th 1005, 1014 (2022); *Adams v. Superior Ct.*, 2 Cal.App.4th 521, 528 (1992) ("The tort of malicious prosecution requires the initiation of a full-blown action ...; subsidiary procedural actions within a lawsuit such as an application for a restraining order or for a lien will not support a claim of malicious prosecution."); *Lebbos v. State Bar*, 165 Cal.App.3d 656, 670 (1985) ("Further, "[i]nvestigations which do not lead to initiation of proceedings before an official body or administrative board having the power to take action adversely affecting legally protected interests of the accused are not a sufficient basis upon which to found an action for malicious prosecution.").

Plaintiff's entire tenth cause of action is premised upon a State Bar complaint filed against her by "people of the presumably Armenian descent."  (SAC ¶ 321.) Nowhere in her SAC does she specifically allege that ANCA Defendants commenced a prosecution or a legal action against her.  Plaintiff also does not plead that such an action was pursued to a legal termination favorable to ANCA Defendants.  Quite the opposite, she pleads the State Bar complaint was "dismissed."  (SAC ¶ 322.)  Further, Plaintiff does not plead that ANCA Defendants

acted with malice or with a lack of probable cause.  Plaintiff's claim is predicated on a dismissed State Bar complaint fails to plead all elements of malicious prosecution.  Her eleventh cause of action must be dismissed.

## I.    Plaintiff's IIED And NIED Claims Fail As A Matter Of Law.

Plaintiff's twelfth and thirteenth causes of action for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"), respectively, fail because (1) the "conduct" alleged in both claims is founded on ANCA Defendants' engagement in constitutionally protected activity and (2) Plaintiff has not plead all elements of each claim.

### 1.    Plaintiff's IIED And NIED Claims Fail Because They Are Predicated Upon ANCA Defendants' Free Speech.

Plaintiff alleges that ANCA Defendants posted "defamatory content about the PLAINTIFF," stated that her actions constituted "moral turpitude," and called for her disbarment.  (SAC ¶¶ 328, 335.)  Any such speech is political because Plaintiff's alleged quarrels with ANCA Defendants concerned their political opinions regarding Armenia and Azerbaijan.  Political speech is constitutionally protected, especially when made in a public forum, like the internet.  *Morse*, 551 U.S. at 403; *Black*, 538 U.S. at 365; *Huntingdon Life Servs., Inc.*, 129 Cal.App.4th at 1247.  Thus, all conduct alleged against ANCA Defendants in the SAC involves constitutionally protected activity and cannot form the basis for an IIED or NIED claim.

### 2.    Plaintiff's IIED Claim Because She Has Not Pleaded Extreme and Outrageous Conduct.

To successfully allege IIED, a Plaintiff must plead (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard for the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct."  *Simo v.*

25

*Union of Needletrades, Indus. & Textile Emps., Southwest Dist. Council*, 322 F.3d 602, 621 (2003); *Potter v. Firestone Tire & Rubber Co.*, 67 Cal.4th 965, 1001 (1993) ("Outrageous conduct is conduct that is intentional or reckless and so extreme as to exceed all bounds of decency in a civilized community."); *Crouch v. Trinity Christian Center of Santa Ana, Inc.*, 39 Cal.App.5th 995, 1007 (2019) (citing *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009) ("Liability for IIED does not extend to "'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'")).

Plaintiff's SAC asserts that ANCA Defendants "placed defamatory content about the PLAINTIFF in the social media," stated that her actions constituted "moral turpitude," and called for her disbarment. (SAC ¶ 327.) Calling for an attorney's disbarment is not so extreme as to exceed the bounds of decency in a civilized community. Indeed, if it was, the State Bar of California would not make the opportunity to submit an attorney complaint available to the general public. Rather, the alleged conduct that amounts to petty oppressions and insults, which *Crouch* clarifies are not extreme enough for IIED.

Any other conduct alleged by Plaintiff stems from the actions of "[v]arious people" calling her phone, "people" sending her death threats and spam mail, and "some Congressmen of the Armenian Nationality." (SAC ¶¶ 327–28.) These actions are attributable to unknown others and Plaintiff has failed to plausibly allege facts connecting such acts to ANCA Defendants. Such actions, while reprehensible if true, are not plausibly alleged against ANCA Defendants such as to hold them responsible for its effects. Plaintiff's IIED claim fails and must be dismissed.

### 3.    Plaintiff's NIED Claim Fails As A Matter Of Law.

Plaintiff's cause of action for NIED also fails because she has not pleaded the elements of duty and breach. "Negligent infliction of emotional distress is a form of negligence, to which the elements of duty, breach, causation, and damages apply. The existence of a duty is a question of law." *Huggins v. Longs Drug Stores*

1  *California, Inc.*, 6 Cal.4th 124, 129 (1993) (citing *Marlene F. v. Affiliated*

2  *Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 588 (1989)); "A general allegation of

3  the existence of a duty is insufficient; a plaintiff "must specifically allege the

4  applicable statute or regulation."" *Brenneman v. State of California*, 208

5  Cal.App.3d 812, 817 (1989); *Adams v. PNC Bank, N.A.*, 2014 WL 7388124, at *4

6  (N.D. Cal., Dec. 29, 2014) ("Without any duty, there can be no breach, and thus no

7  negligence claim.").

8      Plaintiff's SAC asserts that ANCA Defendants "owed the duty of care to the

9  [Plaintiff]," and "breached their duty of care to the Plaintiff." (SAC ¶¶ 337.)

10  Beyond this conclusory allegation, Plaintiff has not specifically alleged any

11  applicable statute or regulation establishing ANCA Defendants' duty to her. There

12  is not one. Having failed to allege a duty, Plaintiff also cannot successfully maintain

13  the elements of breach, causation, or damages. Thus, Plaintiff's NIED claim must

14  be dismissed.

15      **J.      Plaintiff's Invasion Of Privacy Claim Fails As A Matter Of Law.**

16      "False light is a species of invasion of privacy, based on publicity, that places

17  a plaintiff before the public in a false light that would be highly offensive to a

18  reasonable person, and *where the defendant knew or acted in reckless disregard to*

19  *the falsity of the publicized matter and the false light in which the plaintiff would be*

20  *placed.*" *Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1264 (2017) (quoting *Price*

21  *v. Operating Eng'rs Local Union No. 3*, 195 Cal.App.4th 962, 970 (2011) (emphasis

22  added). "Indeed, '[w]here a false light claim is coupled with a defamation claim,

23  the false light claim is essentially superfluous, and stands or falls on whether it

24  meets the same requirements as the defamation cause of action.'" *Jackson*, 10

25  Cal.App.5th at 1264 (quoting *Eisenberg v. Alameda Newspapers, Inc.*, 74

26  Cal.App.4th 1359, 1385, fn. 13 (1999)).

27      Here, Plaintiff's false light claim is based on the same underlying facts as her

28  defamation claim—that ANCA Defendants used Plaintiff's own statements and

posted them online, concluding that she was calling for the genocide of Armenians, projecting her as a "racist" attorney, and posting her photo along with her own Tweet. (SAC ¶¶ 342–345.)  This claim suffers from the same fatal defects as Plaintiff's defamation claim:  Defendants' posts were not false; rather, they expressed opinions about Plaintiff's posts, and they all involved political speech about the Armenian-Azerbaijani conflict.  Moreover, to assert that ANCA Defendants acted in reckless disregard to the falsity of the publicized matter and the false light in which Plaintiff would have been placed is simply untrue.  One cannot reasonably say that posting someone's own Tweet on social media displays reckless disregard for the falsity of a post.  Nor can one say the same about posting someone's photo online.  Plaintiff's claim here fails for the same reasons as her defamation claim.

### K.    Further Amendment Would be Futile.

Plaintiff's SAC should be dismissed without leave to amend.  Plaintiff's allegations are vague, incoherent, and whimsical.  This court need not "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).  Plaintiff's SAC, just like her First Amended Complaint, is replete with such unsupportable conclusions, vague allegations, and unspecific accusations.  Mort importantly, her claims, which all appear to stem from the insidious acts of an imagined "Armenian Enterprise" are so attenuated and unsubstantial that they are devoid of merit; federal courts lack the power to entertain such claims.  *See Hagans v. Levine*, 415 U.S. 528, 536–37 (1974).  Finally, Plaintiff amended her Complaint once and then this Court granted her leave to amend a second time.  Three Complaints later and she still fails to plausibly allege claims beyond mere skepticism and a learned paranoia of Armenians.  Plaintiff has already demonstrated the futility of allowing her to replead.  The SAC should be dismissed without leave to amend.

## V.    CONCLUSION

For all the above reasons, ANCA Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Second Amended Complaint, in its entirety, without leave to amend.

Dated:  December 2, 2024                    SCHWARTZ SEMERDJIAN CAULEY SCHENA & BUSH LLP


                                            By:  /s/ Dick A. Semerdjian
                                                 Dick A. Semerdjian
                                                 Chad M. Thurston
                                                 Attorneys for Defendants
                                                 ARMENIAN NATIONAL
                                                 COMMITTEE OF AMERICA, ARAM
                                                 HAMPARIAN and ARMENIAN
                                                 NATIONAL COMMITTEE OF
                                                 AMERICA WESTERN REGION