ADRIANOS FACCHETTI, ESQ. (S.B.N. 243213)
LAW OFFICES OF ADRIANOS FACCHETTI, P.C.
4444 W. Riverside Drive, Suite 308,
Burbank, CA 91505
Telephone:   (626) 793-8607
Facsimile:   (626) 793-7293
Email:       adrianos@facchettilaw.com

Attorney for Defendants
YELP INC. AND JEREMY STOPPELMAN

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYNUR BAGHIRZADE, an individual,<br><br>         Plaintiff,<br><br>    v.<br><br>ARMENIAN NATIONAL COMMITTEE OF AMERICA, et al.<br><br>         Defendants. | CASE NO. 24CV1077 RSH MMP<br><br>YELP INC. AND JEREMY STOPPELMAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DISMISSAL OF SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. RULE 12(b)(6);<br><br>[Filed concurrently with Notice of Motion; Declarations of Sarah Curl and Adrianos Facchetti; Proposed Order]<br><br>Date:    01/06/2025<br>Place:   3B-3rd Floor (Rm#: 3142)<br>Judge:   Hon. Robert S. Huie<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

# TABLE OF CONTENTS

Table of Contents ............................................................................................... i-ii

Table of Authorities .......................................................................................... iii-v

Memorandum of Points and Authorities ................................................................ 1

I.     INTRODUCTION .................................................................................... 1

II.    PROCEDURAL HISTORY .................................................................... 2

III.   THE ALLEGATIONS AND INCORPORATED DOCUMENTS......2-5

     A.    The Parties. ............................................................................... 2

     B.    Pertinent Allegations of the SAC ............................................ 4

     C.    Yelp's ToS, Which are Incorporated by Reference in the SAC ... 6

IV.   LEGAL STANDARD................................................................................5-6

V.    ARGUMENT ....................................................................................... 6-18

     A.    Section 230 Bars All of Baghirzade's Causes of Action As To Yelp And Stoppelman .................................................................. 11

     B.    Plaintiff's SAC Fails to State Sufficient Facts to State A Valid Claim As to Yelp or Stoppelman ............................................... 10-16

          1.    Plaintiff's Claims under Section 1962 (b)-(d) are Entirely Devoid of Any Fact ....................................................... 10

          2.    Plaintiff's Claim for Conspiracy Pursuant to Section 1 of the Sherman & Clayton Act is Conclusory and Should Be Dismissed ......................................................................... 10

          3.    Plaintiff's Cause of Action for a Denial of a Public Accommodation Fails .................................................... 11

          4.    The California Business and Professions Code § 16720 Related Allegations Are Mere Conclusions and Should Be Discounted .................................................................. 11

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

5.    Plaintiff's UCL Claim is Conclusory and Barred by the First Amendment ............................................................... 12

6.    Plaintiff's Unruh Act Cause of Action is Also Devoid of Any Facts .......................................................................... 12

7.    Plaintiff's Cause of Action for Civil Harassment is Barred by the First Amendment ............................................... 13

8.    Plaintiff's Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress Claims Should be Dismissed ................................................................. 14

C.    Plaintiff's Causes of Action and Requested Relief Are Precluded By Yelp's ToS ..................................................... 16

D.    Granting Leave to Amend Would be an Exercise in Futility ... 17

VI.    CONCLUSION ......................................................................... 18

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ...................................... 5

*Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012) ............................................... 6

*Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ................................................. 6

*United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) ............... 6

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). ................................... 6

*Hassell v. Bird*, Cal.5th 522, 535, 538 (2018) ............................................................ 6

*Hassell v. Yelp, Inc.*, 139 S. Ct. 940 (Jan. 22, 2019) ................................................ 6

*Barrett v. Rosenthal*, 40 Cal.4th 33, 56 (2006) ........................................................ 6

*Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997 ........................... 7

*Delfino v. Agilent Technologies, Inc.,* 145 Cal.App.4th 790, 804-05 (2006) .......... 7

*Kimzey v. Yelp Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) ...................................... 7

*Price v. Gannett Co.*, No. 2:11-cv-00628, 2012 WL 1570972, at *2 (S.D.W.Va. May 1, 2012) .............................................................................................................. 7

*Green v. Am. Online (AOL)* (3d. Cir. 2003) 318 F.3d 465, 471 .......................... 8-10

*Cross v. Facebook*, 14 Cal.App.5th 190, 201-202 (2017) ......................................... 8

*Hupp* v. Freedom Communications, 221 Cal.App.4th at 398, 405 (2013) ............... 8

*Sikhs for Justice, Inc. v. Facebook, Inc.*, 144 F.Supp3d 1088 1094, 1095 (N.D. Cal. 2015) .................................................................................................................... 8, 17

*Medytox Solutions, Inc. v. Investorshub.com, Inc.,* 152 So. 3d 727, 731 (Fla. App. 2014) ........................................................................................................................... 8

*Al-Ahmed v. Twitter, Inc.* 2022 WL 4352712 (9th Cir. July 7, 2022) ..................... 9

*King v. Facebook, Inc.,* 2021 WL 5279823, at *3 (N.D. Cal. Nov. 12, 2021) ......... 9

*Lewis v. Google LLC*, 461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) ...................................................................................................... 9

-iii-

*Levitt v. Yelp!*, Case No. C10-1321, 2011 WL 5079526, at *2 (N.D. Cal. Oct. 26, 2011).........................................................................................9

*Kathleen R. v. City of Livermore* (2001) 87 Cal.App.4th 684, 698.........................9

*Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) .................................................10

*Beck v. Prupis*, 529 U.S. 494, 505-06 (2000)..........................................................10

*Frost v. LG Electronics, Inc.*, 801 F. App'x 496 (9th Cir. 2020)............................11

*Lewis v. Google LLC*, 461 F.Supp.3d 938, 956 (N.D. Cal. 2020), *aff'd,* 85 1 F.App'x 723 (9th Cir. 2021))....................................................................................11

*Doscher v. Timberland Reg'l Library*, 3:22-cv-05340-RJB, 10 (W.D. Wash. Sep. 28, 2022) ..................................................................................................................11

*Marsh v. Anesthesia Services Medical Group, Inc.*, 200 Cal.App.4th 480, 493 (2011)........................................................................................................................12

*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 343 ....................................................................................................................12

*United States v. United Foods* (2001) 533 U.S. 405, 409 ......................................13

*accord IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020)...............12

*White v. Square, Inc.*, 7 Cal. 5th 1019, 1024-1025 (2019).....................................13

*Martin v. City of Struthers, Ohio* (1943) 319 U.S. 141, 143 .................................13

*Van Nuys Publishing Co. v. City of Thousand Oaks* (1971) 5 Cal.3d 817, 8211....13

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1126 (9th Cir. 2014) ......................................13

*Bonni v. St. Joseph Health System*, 11 Cal.5th 995, 1024 (2021). ........................14

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) ...................................14

*Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009) ................................................14

*Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007)...........................................14

*Christensen v. Superior Court*, 54 Cal.3d 868, 879 (1991)....................................15

*Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 923 (1980).....................15

*Burgess v. Superior Court*, 2 Cal.4th 1064, 1076 (1992) ......................................15

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

*Murphy v. Twitter, Inc.*, 60 Cal.App.5th 12, 35 (2021) (quoting *Cohen v. Five Brooks Stable*, 159 Cal.App.4th 1476, 1485 (2008) .................................................. 17

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016) ......................................... 17

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) .................... 17

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003) .............. 18

*Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) ......... 18

*Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) .................... 18

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiff Aynur Baghirzade's ("Plaintiff") Second Amended Complaint ("FAC")—like her First Amended Complaint—is a baseless attempt to hold defendants Yelp Inc. ("Yelp") and its CEO and co-founder Jeremy Stoppelman ("Stoppelman") liable for alleged user-generated content, and for Yelp's editorial decisions relating to the content. At its core, the SAC relies on claims that are entirely barred by Section 230 of the Communications Decency Act ("Section 230"), which grants website operators, like Yelp, broad immunity from liability for third-party content and protects their editorial decisions. This immunity applies across the board, encompassing all of Plaintiff's claims as to Yelp and Stoppelman—whether styled as RICO violations, defamation, false light, or any other theory attempting to hold them legally liable for others' content.

Moreover, Plaintiff's allegations fail to meet the basic pleading standards under Rule 12(b)(6). The SAC is riddled with vague and conclusory statements, lacking any specific facts to support a plausible legal claim. As to Yelp, allegations of market exclusion, diverted referrals, conspiracies, or harm from third-party user reviews are speculative at best and unsupported by any alleged facts. And the SAC barely mentions Stoppelman at all—eight times in a 74-page complaint—and offers no coherent theory of liability against him.

Additionally, Plaintiff pleads and incorporates by reference Yelp's Terms of Service ("ToS"), which can be properly considered in this Motion to Dismiss, and which foreclose the causes of action against Yelp and Stoppelman. By creating a Yelp business account, Plaintiff accepted these terms and waived any right to pursue these claims. Given the immunity conferred by Section 230, the lack of any alleged factual basis for Plaintiff's claims, Yelp's ToS, and the futility of further

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

amendment of any complaint against Yelp and Stoppelman, the SAC should be dismissed without leave to amend under Rule 12(b)(6).

## II.    PROCEDURAL HISTORY

On June 21, 2024, Plaintiff filed a Complaint against Yelp and Stoppelman, alleging various causes of action, arising from their role as a website operator. (*See* Dkt. #1).

On August 15, 2024, Plaintiff filed a First Amended Complaint, alleging the same causes of action with the addition of a claim for invasion of privacy. The First Amended Complaint closely mirrored the allegations in the Complaint. (Dkt. #12).

On November 16, 2024, Plaintiff filed a Second Amended Complaint (Dkt. #96). In regard to defendants Yelp and Stoppelman, the allegations in this version of the complaint are identical in substance to the First Amended Complaint.

Yelp's counsel met and conferred by telephone with Plaintiff on November 25, 2024. Yelp's counsel has satisfied the meet and confer requirement. *Id*., ¶ 6.

## III.    THE ALLEGATIONS AND INCORPORATED DOCUMENTS

### A.    The Parties

Plaintiff alleges that she does business as a law firm (previously the Law Offices of Aynur Baghirzade and later ACCURA LAW FIRM), providing legal services in Orange, San Diego, and Los Angeles counties in the State of California. *See* SAC, ¶ 1.

Plaintiff alleges that Yelp is a "Delaware Stock Corporation" with headquarters in San Francisco, and that Stoppelman is an "Executive Director" of Yelp. SAC, ¶¶ 6-7.

### B.    Pertinent Allegations of the SAC

Plaintiff alleges that various third-party individuals posted defamatory reviews on Yelp about her business, falsely claiming to have been her clients. *See*

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

SAC, ¶¶ 65, 71-72. Plaintiff alleges that, between April and June 2023, she notified Yelp of these allegedly defamatory reviews, asserting that the individuals who posted them were never her clients and that the reviews were part of a coordinated smear campaign intended to destroy her business. *Id*., ¶ 72. For instance, Plaintiff alleges that on May 26, 2023, a user identified as E. Kerimli, posted a review that was critical of Plaintiff's business practices. *Id*. Plaintiff complained to Yelp and requested its removal. *Id*. According to Plaintiff, Yelp declined, stating that the review appeared to comply with the platform's guidelines and reflected the user's personal experience. *Id*., ¶ 73. Yelp explained that, under such circumstances, it permits users to stand by their reviews. *Id*.

Plaintiff alleges that, by allowing these reviews to remain, Yelp effectively "gave its platform" to third parties to "harass and persecute her" because of her national origin, religion, color, ancestry, and political views. *See* SAC, at ¶ 73. Plaintiff claims that this conduct violates Yelp's "policy," which purportedly requires the removal of reviews posted by non-clients. *Id*. Additionally, Plaintiff asserts that certain reviews previously removed at her request "appeared back" on her business page, which she believes is evidence of a conspiracy to damage her business. *Id*. at ¶ 74. Without providing an alleged factual basis, Plaintiff further alleges that Yelp was used by third parties to suppress businesses owned by individuals who do not recognize the Armenian Genocide, to drive those businesses to ruin, and that these actions are part of an organized scheme to bully and harass business owners. *Id*. at ¶ 75.

Around February 6, 2024, Plaintiff alleges that another user, identified as Solomon S., posted a defamatory review about her business on Yelp's website. *Id*. at ¶ 95. Plaintiff requested its removal, but Yelp declined. *Id*. Plaintiff also alleges that, simultaneously, Yelp removed positive third-party reviews about her business to "ensure that [Plaintiff] has a poor rating." *Id*.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

Plaintiff further alleges that on April 30, 2024, another third-party user, H.G., posted a defamatory review on Yelp's website, accusing her of "stealing his money." SAC, ¶ 96. Plaintiff again asked Yelp to remove the review, and again, Yelp refused. *Id*. Plaintiff also claims that previously removed reviews, along with her "old comments," began reappearing on the Yelp page for her business once more. *Id*.

On January 17, 2024, Plaintiff requested that Yelp close the Yelp business page for her business and to remove all reviews of her business. *Id.* at ¶ 97. Plaintiff alleges that, on February 9, 2024, Yelp responded that it would not close Plaintiff's page until she paid past-due amounts for advertisements she had purchased from Yelp.[1] *Id*. Plaintiff contends that this refusal violated Yelp's "terms and conditions" and further demonstrated a conspiracy with other defendants to harm her business. *Id*. Plaintiff also alleges that Yelp prevented her from editing or contributing information on the Yelp business page. *Id.* at ¶ 100.

## C.    Yelp's ToS, Which are Incorporated by Reference in the SAC

Plaintiff alleged in her FAC that she has a Yelp business account. Dkt. No. 12 at ¶¶ 55, 65. And in her SAC, she alleges that Yelp violated its "terms and conditions." *See* SAC, at ¶ 97. To create her Yelp business account, Plaintiff agreed to Yelp's ToS. *See* Declaration of Sarah Curl ("Curl Decl."), ¶¶ 14-16.

---

[1] Though it makes no difference to resolution of this motion, Plaintiff appears to be conflating (1) her Yelp business account with (2) the publicly accessible Yelp business page relating to her law firm, which are two different things. While her business account can be closed (assuming Plaintiff has paid any outstanding balance(s) for advertising services she owed), Yelp does not "close" or take down Yelp business pages under these circumstances. It's important (and a legal right) for consumers to be able to find and share helpful information about great local businesses on Yelp. And as stated in Yelp's ToS, the purchase of advertising or other paid features from Yelp does not enable businesses to alter reviews or impact whether, where, or how reviews appear on Yelp. *Id*., at ¶ 20.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

1      Plaintiff also agreed to Yelp's ToS each time she logged into her Yelp business

2      account. *Id.*, at ¶ 16.

3           Yelp's ToS, applicable at the time of Plaintiff's most recent login, states

4      that, "[w]e are under no obligation to enforce the Terms on your behalf against

5      another user. While we encourage you to let us know if you believe another user

6      has violated the Terms, **we reserve the right to investigate and take appropriate**

7      **action at our sole discretion**." *Id.*, at ¶ 19. (emphasis supplied). Furthermore,

8      Yelp's ToS state that Yelp is not "liable to [users] for any personal injury, loss or

9      damage that arise from an such third party's actions or omissions." *Id*. Under

10     Section 12(C) of the ToS, a user's sole and exclusive remedy "in case of

11     dissatisfaction with the Service, related services, or any other grievance" is the

12     "termination and discontinuance of access to" Yelp's service. *Id.* Finally, Section 2

13     of the Additional Terms for Business Accounts of Yelp's ToS, which Plaintiff also

14     agreed to, specifically references Section 230 as a limitation of liability for

15     interactive computer services like Yelp for their "role in publishing third party

16     Content, including consumer reviews." *Id.*

17    **IV.   LEGAL STANDARD**

18           Under Rule 8(a), a complaint must contain a "short and plain statement of

19     the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a

20     complaint fails to do this, the defendant may move to dismiss it under Rule

21     12(b)(6). *Id.*, Rule 12(b)(6). "To survive a motion to dismiss, a complaint must

22     contain sufficient factual matter, accepted as true, to 'state a claim that is plausible

23     on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A

24     claim is plausible on its face "when the plaintiff pleads factual content that allows

25     the court to draw the reasonable inference that the defendant is liable for the

26     misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to

27     relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

28

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO
F.R.C.P. RULE 12(b)(6)

555 (2007). Thus, there must be "more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility'" that the plaintiff is entitled to relief. *Id*.

In ruling on a motion to dismiss for failure to state a claim, a court should follow a two-pronged approach: (1) first, discount conclusory statements, which are not presumed to be true; and then, assuming any factual allegations are true, (2) determine "whether they plausibly give rise to entitlement to relief." *See id*. at 679; *see also Chavez v. U.S*., 683 F.3d 1102, 1108 (9th Cir. 2012). In making this determination, a "court may consider evidence on which the complaint 'necessarily relies, if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). *See also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## V.    ARGUMENT

### A.    Section 230 Bars *All* of Baghirzade's Causes of Action As To Yelp And Stoppelman

Section 230 "confers[s] broad immunity on Internet intermediaries" for claims arising from the publication of third-party content in "a strong demonstration of legislative commitment to the value of maintaining a free market for online expression." *See Hassell v. Bird*, Cal.5th 522, 535, 538 (2018) (stating that Section 230 immunity is "broad"), *cert. denied sub nom*., *Hassell v. Yelp, Inc.*, 139 S. Ct. 940 (Jan. 22, 2019), *quoting Barrett v. Rosenthal*, 40 Cal.4th 33, 56 (2006). Specifically, Section 230 provides that: "no provider or user of an

interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 also separately states that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with" the Communications Decency Act. 47 U.S.C. § 230(c)(3). The immunity under Section 230 applies where: (1) the defendant is a provider of an interactive computer service; (2) the information alleged to be harmful was provided by another information content provider; and (3) the plaintiff seeks to treat the defendant as a publisher. *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *Delfino v. Agilent Technologies, Inc.,* 145 Cal.App.4th 790, 804-05 (2006). Each of the requirements under Section 230 is satisfied here.

First, "[t]here is no doubt that Yelp is a 'provider or user of an interactive computer service' within the meaning of section 230(c)(1))." *Hassell*, 5 Cal.5th at 540; *Kimzey v. Yelp Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (holding that Yelp is an interactive service provider under Section 230). As for Stoppelman, he is apparently only named in the SAC because of his alleged role as "an Executive Director" of Yelp. Dkt. 96 at ¶ 7. Based on Plaintiff's allegations, for purpose of Section 230 he is both a provider and user of an interactive computer service. The first element is satisfied.

Second, neither Yelp nor Stoppelman developed or created the challenged content. Plaintiff alleges that Simon Maghakyan (SAC, ¶ 242:3-9), E. Kerimli (¶ 72:14-25), Solomon S. (*id.*, ¶ 95:23-28), H.G. (*id.*, ¶ 96:6-15), and other third-party users—*not* Yelp—created the content at issue. *See, e.g.*, *Price v. Gannett Co.*, No. 2:11-cv-00628, 2012 WL 1570972, at *2 (S.D.W.Va. May 1, 2012) (dismissing action against Topix.com based on allegedly defamatory posts because "Plaintiffs have admitted in the complaint that the unknown individuals provided the statements, not Topix"). Therefore, Plaintiff cannot demonstrate that Yelp or

1   Stoppelman acted as an "information content provider" with respect to the

2   challenged content. The second element of Section 230 immunity is met.

3         Third, all of Plaintiff's claims against Yelp and Stoppelman seek to hold

4   them responsible as the publishers or speakers of third-party content based on

5   Yelp's editorial decisions related to the contents and the maintenance of its

6   platform. Plaintiff alleges that the content is defamatory (SAC, at ¶ 242), and that:

7   (1) Yelp refused to remove content provided by other Yelp users, (*id*. at ¶ 72); (2)

8   Yelp declined to close the Yelp business page for her business and remove all

9   reviews of her business (*id*. at ¶ 97); and (3) Yelp prevented her from contributing

10  her own content to the Yelp platform. *Id*. at ¶ 100.

11        The decision of what, if anything, to remove, however, is "quintessentially

12  related to a publisher's role," and "numerous courts have held the CDA bars claims

13  based on a failure to remove content posted by others." *Green v. Am. Online

14  (AOL)*, 318 F.3d 465, 471 (3d. Cir. 2003); *see also Cross v. Facebook*, 14

15  Cal.App.5th 190, 201-202 (2017); *Hupp v. Freedom Communications*, 221

16  Cal.App.4th at 398, 405 (2013) (Section 230 barred breach of contract claim based

17  on newspaper's decision not to remove comments on website); *Sikhs for Justice,

18  Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-95 (N.D. Cal. 2015); *Medytox

19  Solutions, Inc. v. Investorshub.com, Inc.,* 152 So. 3d 727, 731 (Fla. App. 2014)

20  ("An action to force a website to remove content on the sole basis that the content

21  is defamatory is necessarily treating the website as a publisher, and is therefore

22  inconsistent with section 230); *Zeran,* 129 F.3d at 330 ("[L]awsuits seeking to hold

23  a service provider liable for its exercise of a publisher's traditional editorial

24  functions—such as deciding whether to publish, withdraw, postpone or alter

25  content—are barred."); *Kimzey*, 836 F.3d at 1263 (holding Yelp was immune

26  under Section 230 because RICO and other claims arose from third-party content.

27

28

Additionally, courts have held that Section 230 provides immunity for claims that are based on a website's decision to suspend or deactivate an account, just like Plaintiff's claim that Yelp prevented her from contributing content to or editing information on the Yelp business page for her business. *Al-Ahmed v. Twitter, Inc.* 2022 WL 4352712 (9th Cir. July 7, 2022) (concluding that Section 230 barred claims against Twitter based on plaintiff's account suspension); *King v. Facebook, Inc.,* 2021 WL 5279823, at *3 (N.D. Cal. Nov. 12, 2021) (dismissing claims based upon "disabling" plaintiff's account); *Lewis v. Google LLC*, 461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (holding that Section 230 provides immunity to Google for terminating user accounts and removing videos, because such actions are considered editorial decisions).

To the extent that Plaintiff claims Yelp republished certain critical reviews provided by other Yelp users and removed "positive" reviews from other Yelp users or content that Plaintiff provided, those decisions are also protected editorial discretion under Section 230. *Levitt v. Yelp!*, Case No. C10-1321, 2011 WL 5079526, at *2 (N.D. Cal. Oct. 26, 2011) (holding that "removing certain reviews and publishing others or changing their order of appearance—falls within the conduct immunized by § 230(c)(1))," *affirmed on other grounds in Levitt*, 765 F.3d at 1123.

Finally, Section 230 bars claims for injunctive relief that would somehow force Yelp to remove third-party content. *Kathleen R. v. City of Livermore*, 87 Cal.App.4th 684, 698 (2001) ("claims for declaratory and injunctive relief are no less causes of action than tort claims for damages, and thus fall squarely within the section 230(e)(3) prohibition").

Because Section 230 provides Yelp and Stoppelman immunity for all of Plaintiff's claims, the Court can stop here. If it is inclined to look further, it would also find that the SAC fails against Yelp and Stoppelman for additional reasons.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

**B.**    **Plaintiff's SAC Fails to State Sufficient Facts to State A Valid Claim As to Yelp or Stoppelman**

**1.**    **Plaintiff's Claims under Section 1962 (b)-(d) are Entirely Devoid of Any Facts**

Plaintiff cannot use the RICO statute to create liability against Yelp and Stoppelman for Yelp's decision not to remove critical reviews about her business. Section 1962(c) requires participation in the operation or management of an enterprise through specific criminal acts, such as fraud or extortion. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Allowing third-party content to remain on Yelp's website does not qualify as such conduct. *Kimzey*, 836 F.3d at 1269. Moreover, Section 1962(b) requires acquiring or maintaining control over an enterprise through racketeering activity, which is not alleged here—there are no alleged facts indicating that either Yelp or Stoppelman sought control of the Plaintiff's business.

The conspiracy claim under Section 1962(d) also fails, as there are no alleged facts showing an agreement to engage in a pattern of racketeering activity. *Beck v. Prupis*, 529 U.S. 494, 505-06 (2000). Content moderation decisions, such as refusing to remove reviews or take down a Yelp business page, are not evidence of a RICO conspiracy. *Kimzey,* 836 F.3d at 1268. In the end, Plaintiff's allegations amount to mere conclusions and do not merit further legal analysis. *Iqbal*, 556 U.S. at 678 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**2.**    **Plaintiff's Claim for Conspiracy Pursuant to Section 1 of the Sherman & Clayton Act is Conclusory and Should Be Dismissed**

Plaintiff's claim under the Sherman Act and Clayton Act is woefully deficient. In conclusory fashion, she alleges a conspiracy to exclude her from the

market and divert referrals to other businesses—or to send her "referrals not in her area of practice." SAC ¶ 239. Yet there are no details regarding any agreement, coordination, or specific actions taken by the Defendants. *See Frost v. LG Electronics, Inc.*, 801 F. App'x 496 (9th Cir. 2020) (granting motion to dismiss pursuant to Rule 12(b)(6) for failure to establish a plausible claim under the Sherman Act).

Nor does she allege specifically that Yelp or Stoppelman engaged in any of these supposed acts.

Plaintiff's claim is fact-free and should be dismissed.

### 3. Plaintiff's Cause of Action for a Denial of a Public Accommodation Fails

Plaintiff cannot plead any denial of public accommodation claim against Yelp or Stoppelman. A claim under 42 U.S.C. Section 2000(a) of the Civil Rights Act does not apply to online platforms like Yelp or individuals like Stoppelman because they are not places of "public accommodation" as defined by the Civil Rights Act. *Lewis v. Google LLC*, 461 F.Supp.3d 938, 956 (N.D. Cal. 2020), *aff'd*, 85 1 F.App'x 723 (9th Cir. 2021) (holding that 42 U.S.C. § 2000a did not apply to YouTube because it is not a place of public accommodation under the Civil Rights Act); *Doscher v. Timberland Reg'l Library*, 3:22-cv-05340-RJB, 10 (W.D. Wash. Sep. 28, 2022) (dismissing plaintiff's ADA and related state claims as to individually named defendants because "individuals are not 'places of public accommodation.'").

This claim fails too.

### 4. The California Business and Professions Code § 16720 Related Allegations Are Mere Conclusions and Should Be Discounted

Plaintiff claims a conspiracy to destroy her business and exclusion from

referrals without providing specific alleged facts in support of the formation and operation of the conspiracy, a wrongful act, or any damage resulting from the alleged conspiracy. Such vague and unsupported assertions amount to mere legal conclusions, which are insufficient to state a plausible claim for relief. *Twombly*, 550 U.S. at 555; *see Marsh v. Anesthesia Services Medical Group, Inc.*, 200 Cal.App.4th 480, 493 (2011) ("California requires a 'high degree of particularity' in the pleading of Cartwright Act violations").

This claim, like the others, should be dismissed.

## 5.     Plaintiff's UCL Claim is Conclusory and Barred by the First Amendment

The First Amendment fully protects Yelp's publication of consumer reviews, which are noncommercial speech. *Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 343 ("Noncommercial speech is entitled to full First Amendment protection and is thus not actionable under Business & Professions Code §§ 17200 and 17500."). In this case, Plaintiff did not and cannot allege that the challenged review(s) or Yelp's editorial decisions regarding the reviews constitute commercial speech. *See United States v. United Foods* (2001) 533 U.S. 405, 409 ("commercial speech, [is] usually defined as speech that does no more than propose a commercial transaction"); *accord IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) (same).

In any event, Plaintiff cannot show that Yelp has done anything "unlawful, unfair, or fraudulent," or that it has engaged in any "unethical, oppressive, unscrupulous or injurious acts to consumers." *Bernardo*, at 351-55. Plaintiff's conclusory allegations cannot sustain this claim.

Therefore, this claim also does not survive.

## 6.     Plaintiff's Unruh Act Cause of Action is Also Devoid of Any Facts

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

Plaintiff's claim under the Unruh Act fares no better. To support this claim, Plaintiff was required to allege intentional discrimination by the defendant based on a protected characteristic, which resulted in the denial of full and equal access to the business's services or facilities. *White v. Square, Inc.*, 7 Cal. 5th 1019, 1024-1025 (2019). In this case, Plaintiff has not alleged any facts suggesting that Yelp or Stoppelman intentionally discriminated against her based on a protected characteristic under the Unruh Act. Nor did she allege any facts showing a denial of full and equal access to Yelp's services. To the contrary, this entire claim rests on the allegation that Yelp and Stoppelman refused to remove the "fraudulent reviews" despite her "numerous complaints," (SAC, *Id*., ¶ 290) which Section 230 bars.[2]

### 7. Plaintiff's Cause of Action for Civil Harassment is Barred by the First Amendment

The First Amendment and the California Constitution (art. 1, Sec. 2, subd. (a)) prohibit the enactment of laws abridging the freedom of speech. The right of freedom of speech is "broad" and includes the right to distribute information. *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943); *Van Nuys Publishing Co. v. City of Thousand Oaks*, 5 Cal.3d 817, 821 (1971); *see, e.g, Hupp,* 221 Cal.App.4th at 405 (concluding in the anti-SLAPP context that "[m]aintaining a forum for discussion of issues of public interest is a quintessential way to facilitate rights, and the [defendant] has no liability for doing so."); *see also Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1126 (9th Cir. 2014) ("Today, individuals can share their opinions with the entire world courtesy of a few taps on the keyboard. [Yelp] provides an online forum on which its users express opinions as to services ranging

---

[2] Even if Plaintiff's Unruh claim was premised on her allegations that Yelp prevented her from contributing content to the Yelp business page for her business, it would fail because those decisions, too, are insulated by Section 230, as explained in greater detail above.

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

1  from dog walkers to taco trucks.").

2       Conduct that is constitutionally protected cannot be enjoined under

3  California Code of Civil Procedure section 527.6. *Bonni v. St. Joseph Health*

4  *System*, 11 Cal.5th 995, 1024 (2021).

5       Plaintiff's claim for Civil Harassment and corresponding request for

6  injunctive relief is an attempt to prevent Yelp from exercising its First Amendment

7  right to maintain a forum for the discussion of public issues. In fact, an order

8  preventing Yelp from displaying consumer reviews on its platform would be an

9  unconstitutional prior restraint. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559

10  (1976) (prior restraints constitute "the most serious and the least tolerable

11  infringement on First Amendment rights.")

12       Furthermore, Plaintiff has failed to allege any facts to establish any of the

13  elements of this claim. This claim must be dismissed.

14       **8.**     **Plaintiff's Intentional Infliction of Emotional Distress and**

15                **Negligent Infliction of Emotional Distress Claims Should be**

16                **Dismissed**

17       "A cause of action for intentional infliction of emotional distress exists when

18  there is (1) extreme and outrageous conduct by the defendant with the intention of

19  causing, or reckless disregard of the probability of causing, emotional distress; (2)

20  the plaintiff's suffering severe or extreme emotional distress; and (3) actual and

21  proximate causation of the emotional distress by the defendant's outrageous

22  conduct. A defendant's conduct is outrageous when it is so extreme as to exceed all

23  bounds of that usually tolerated in a civilized community. And the defendant's

24  conduct must be intended to inflict injury or engaged in with the realization that

25  injury will result." *Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009). "Whether a

26  defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court[.]" *Berkley v. Dowds*, 152 Cal.

27  of law that must initially be determined by the court[.]" *Berkley v. Dowds*, 152 Cal.

28

App. 4th 518, 534 (2007). Here, the Intentional Emotional Distress ("IIED") cause of action fails to state *any* facts that Yelp and/or Stoppelman's alleged conduct rise to the level of "extreme and outrageous" conduct. Setting aside the applicability of Section 230, which dooms Plaintiff's claims, she simply has not and cannot allege any facts to support an IIED claim.

With regard to the Negligent Infliction of Emotional Distress ("NIED") claim, when a direct victim theory is alleged, as here, the California Supreme Court has allowed plaintiffs to bring NIED actions in *only* three types of factual scenarios, none of which applies here: (1) the negligent mishandling of corpses (*Christensen v. Superior Court*, 54 Cal.3d 868, 879 (1991)) (2) the negligent misdiagnosis of a disease that could potentially harm another, (*Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 923 (1980)) and (3) the negligent breach of a legal duty arising out of a special relationship. *Burgess v. Superior Court*, 2 Cal.4th 1064, 1076 (1992).

The first two scenarios are wholly irrelevant to the alleged facts in the FAC, and the third is inapplicable because there is no special relationship here. Plaintiff has not alleged any facts showing that Yelp or Stoppelman owed a duty to her, much less a cognizable duty. Therefore, the claim fails.

### 8.    Plaintiff's Defamation Claim is Devoid of Facts

Plaintiff alleges that Yelp "allowed defamatory content to appear on PLAINTIFF'S business profile knowing that it was shelled by multiple people at the same time and many of them were not her clients." *Id*. at ¶ 311. She also alleges that Yelp violated its own policies by refusing to remove the at-issue reviews and by "deleting all positive ones coming from the real clients." *Id*. at ¶ 312. However, Plaintiff has not alleged any facts, much less plausible facts, that Yelp or Stoppelman defamed her.

### 9.    Plaintiff's False Light Claim Is Also Baseless

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

1    Plaintiff's SAC adds a claim for false light, alleging that Yelp and
2  Stoppelman failed to remove an allegedly manipulated photograph of her.
3  However, the SAC concedes that this photograph was provided by a third party
4  (SAC ¶¶ 94, 315), making this claim subject to Section 230's protections.
5  Accordingly, Plaintiff has not alleged any plausible facts to state a false light
6  claim.

7    **C.    Plaintiff's Causes of Action and Requested Relief Are Precluded**
8         **By Yelp's ToS**

9    Plaintiff alleges that, by not removing the alleged defamatory reviews, Yelp
10  effectively "gave its platform" to third parties to "harass and persecute her"
11  because of her national origin, religion, color, ancestry, and political views. SAC,
12  at ¶ 73. Plaintiff claims that this conduct violates Yelp's policy, which purportedly
13  requires the removal of reviews posted by non-clients. *Id*. Plaintiff incorporates
14  these allegations by reference into all her causes of action.

15    However, Yelp's ToS—to which Plaintiff repeatedly agreed and
16  incorporated by reference in the SAC—expressly disclaims any duty to remove
17  reviews posted by third-parties on its website. Specifically, Yelp's ToS states that,
18  "[w]e are under no obligation to enforce the Terms on your behalf against another
19  user. While we encourage you to let us know if you believe another user has
20  violated the Terms, **we reserve the right to investigate and take appropriate**
21  **action at our sole discretion**." Curl Decl., ¶ 19 (emphasis supplied). Furthermore,
22  Yelp's ToS state that it is not "liable to [users] for any personal injury, loss or
23  damage that arise from an such third party's actions or omissions." *Id*. at ¶ 20.
24  Under Section 12(C) of the ToS, a user's sole and exclusive remedy is the
25  "termination and discontinuance of access to" Yelp's service. *Id*. at ¶ 22. Finally,
26  Section 2 of the Additional Terms for Business Accounts of Yelp's ToS, which
27  Plaintiff also agreed to, specifically references Section 230 as a limitation of
28

-16-

liability for interactive service like Yelp for their "role in publish third party Content, including consumer reviews." *Id.* at ¶ 23.

The applicable provisions in Yelp's ToS preclude Plaintiff's claims as to both Yelp and Stoppelman. Section 11 of the Yelp ToS defines "Yelp Entities" as "Yelp, its parents, subsidiaries, affiliates, any related companies, suppliers, licensors and partners, and the **officers**, directors, employees, agents, contractors and representatives of each of them." (emphasis supplied). *See* Curl Decl., ¶¶ 17, 21, Exhibit F. The applicable disclaimers and limitation of liability apply to the "Yelp Entities" and thus include Stoppelman, as Yelp's CEO. *Id.*

The above limitation of liability provision precludes the causes of action against Yelp and Stoppelman in the SAC. "Waivers of liability that are 'clear, unambiguous and explicit' bar claims that expressly fall within their scope." *Murphy v. Twitter, Inc.*, 60 Cal.App.5th 12, 35 (2021) (quoting *Cohen v. Five Brooks Stable*, 159 Cal.App.4th 1476, 1485 (2008). Such "[l]imitation of liability clauses have long been recognized as valid in California," and have been found to be "appropriate when one party is offering a service for free to the public." *Lewis,* 244 Cal. App. 4th at 125 (internal quotation omitted).

## D. Granting Leave to Amend Would be an Exercise in Futility

Although Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely" given, the 9th Circuit instructs "that liberality does not apply when amendment would be futile." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016). "An amendment is futile when no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (internal quotation marks omitted); *see also Sikhs for Just., Inc. v. Facebook, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (affirming district court's dismissal with prejudice because granting plaintiff "leave to amend its complaint would be futile" where plaintiff's claim was barred under Section 230).

MEMORANDUM OF POINTS AND AUTHORITIES ISO MTD OF SAC PURSUANT TO F.R.C.P. RULE 12(b)(6)

Section 230(c) immunity is quite robust and the doctrine bars any claims brought against a covered interactive computer service provider that "inherently require[] the court to treat the defendant as the 'publisher or speaker' of content provided by another." *See, e.g., Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003); *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (citation omitted).

Here, Plaintiff's core theory—underlying all claims against Defendants Yelp and Stoppelman in all iterations of her complaints—seeks to treat them as a "publisher or speaker" of third-party content. Plaintiff's SAC essentially rehashes the same allegations in the original Complaint and the FAC. *Compare* FAC ¶¶ 34, 51, 55:11-13, 57, 58, 60, 66, 67-68, 71 with the SAC ¶¶ 46, 69, 72-75, 94-97, 100, 312. It once again seeks to hold Defendants liable for critical reviews, which are third-party content. Plaintiff does not introduce any new facts that would circumvent Section 230 immunity.

Futility warrants denying leave to amend. *See, e.g., Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (affirming district court's denial of leave because amending the complaint would have been futile).

## VI.    CONCLUSION

Based on the foregoing, Yelp and Stoppelman request that the Court grant their motion and dismiss Plaintiff's SAC as to Yelp and Stoppelman in its entirety with prejudice.


DATED:      December 2, 2024

LAW OFFICES OF ADRIANOS FACCHETTI, P.C.

By:  /s/ Adrianos Facchetti
        Attorney for Defendants,
        YELP INC. and JEREMY STOPPELMAN

-18-