1  AYNUR BAGHIRZADE
2  1968 S. Coast Highway #2429
   Laguna Beach, CA 92651
3  Phone: 619-630-6646
   Email: contact@aynurlawyers.com
4
   *AYNUR BAGHIRZADE, IN PRO SE*
5

FILED

DEC 2 4 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

6
7
8          **UNITED STATES DISTRICT COURT FOR THE**
9            **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  AYNUR BAGHIRZADE, an individual, | )  Case No.: 24CV1077 RSH MMP |
| 12                  Plaintiff, | )  **OPPOSITION TO DEFENDANTS** |
| 13       vs. | )  **YELP INC. AND JEREMY** |
|  | )  **STOPPELMAN'S MOTION FOR** |
| 14  ARMENIAN NATIONAL COMMITTEE | )  **DISMISSAL PURSUANT TO F.R.C.P.** |
| 15  OF AMERICA, A NON-PROFIT | )  **RULE 12(B)(6); MEMORANDUM OF** |
|  CORPORATION, et al. | )  **POINTS AND AUTHORITIES** |
| 16 | ) |
| 17 | )  [Filed concurrently with Declaration of |
| 18                  Defendants. | )  Aynur Baghirzade; Exhibits and Proposed |
|  | )  Order] |
| 19 | ) |
| 20 | )  Presiding Judge: Hon. Robert Huie |
| 21 | ) |
| 22 | )  Magistrate Judge: Hon. Michelle M. Petit |
| 23 | ) |
| 24 | ) |

25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................11

II.   FACTUAL & PROCEDURAL BACKGROUND...........................................11

III.  LEGAL STANDARD FOR MOTION TO DISMISS......................................15

      1.   Ninth Circuit is Hostile to 12 (b)(6) Motion for Failure to State Claim...............15

IV.   ARGUMENTS

      A. SECTION 230 OF CDA IS UNCONSTITUTIONAL BOTH ON ITS FACE AND
      AS APPLIED TO PLAINTIFF'S CASE...................................................... 16

      B. DEFENDANTS YELP INC. AND JEREMY STOPPELMAN DO NOT HAVE
      PROTECTION OF SECTION 230 OF CDA BECAUSE THEY WERE CONTENT
      CREATORS.................................................................................. 21

      C. DEFENDANTS ARE LIABLE UNDER RICO STATUTE SECTION 1962 (b) -
      (d)............................................................................................. 23

      D. PLAINTIFF'S CLAIM FOR CONSPIRACY PURSUANT TO SECTION 1
      OF THE SHERMAN & CLAYTON ACT WAS SUFFICIENTLY PLEADED
      IN THE SAC................................................................................. 26

      E.  PLAINTIFF PLEADED ENOUGH FACTS SHOWING THAT DEFENDANTS
      YELP INC. WAS A PLACE OF PUBLIC ACCOMMODATION......................28

      F.  PLAINTIFF PLEADED ENOUGH FACTS IN HER COMPLAINT TO ESTAB
      LISH VIOLATION OF THE CALIFORNIA BUSINESS AND PROFESSIONAL
      CODE, SECTION 16720, ET SEQ., AND DEFENDANTS' ALLEGATIONS THAT
      CONSPIRACY WAS NOT ESTABLISHED ARE BASELESS. ......................29

G. PLAINTIFF PLEADED ENOUGH FACTS TO ESTABLISH UNFAIR COM
PETITION AND DEFENDANTS' REFERENCES TO FIRST AMENDMENT
RIGHTS ARE INVALID...................................................................30

H.  PLAINTIFF PLEADED ENOUGH FACTS ON DISCRIMINATION UNDER
UNRUH ACT.........................................................................32

I. PLAINTIFF PLEADED ENOUGH FACTS FOR CIVIL HARASSMENT AND
HER CLAIMS ARE NOT BARRED BY FIRST AMENDMENT.....................34

J. PLAINTIFF PLEADED ENOUGH FACTS FOR IIED AND NIED...............36

K. PLAINTIFF PLEADED ENOUGH FACTS TO ESTABLISH THAT DEFEN
DANTS DEFAMED HER..............................................................38

L. PLAINTIFF'S FALSE LIGHT CLAIM IS NOT BASELESS BECAUSE DE
FENDANTS DO NOT HAVE PROTECTION OF SECTION 230 OF CDA AS
THEY TARGETED HER FOR HER POLITICAL SPEECH...........................39

N. FURTHER AMENDMENTS OF THE SAC ARE JUSTIFIED.....................40

V. CONCLUSION ....................................................................40

1

# TABLE OF AUTHORITIES

2

3

*CASES:*

4

5

6    *Anderson v. TikTok, Inc.,*
            116 F.4th 180, 184 (3d Cir. 2024)...............................................22

7

8

9    *Angelucci v. Century Supper Club,*
            41 Cal.4th 160, 59 Cal. Rptr. 3d 142, 158 P.3d 718 (Cal. 2007).............33

10

11

12    *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett,*
            564 U.S. 721, 734, 131 S.Ct. 2806, 180 L.Ed.2d 664 (2011)................18

13

14

15    *Ashcroft v. Iqbal,*
            556 U.S. 662, 663-64 (2009)...................................................16

16

17

18    *Auster Oil Gas, Inc. v. Stream,*
            764 F.2d 381, 386 (5th Cir. 1985)..............................................15

19

20

21    *Bell Atl. Corp. v. Twombly,*
            550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..........15, 16, 27, 28

22

23

24

25    *Blair Foods, Inc. v. Ranchers Cotton Oil,*
            610 F.2d 665, 671 (9th Cir. 1980) ..........................................29

26

27

28    *Burgess v. Superior Court,*
            2 Cal.4th 1064, 9 Cal. Rptr. 2d 615, 831 P.2d 1197 (Cal. 1992).............37

*Calise v. Meta Platforms, Inc.,*
    103 F.4th 732 (9th Cir. 2024)...................................................

*City of Lakewood v. Plain Dealer Publishing Co.,*
    486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988).........20

*Conley v. Gibson,*
    *355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)*................15

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)...................27

*DiNapoli v. Yelp Inc.,*
    355 F. Supp. 3d 101 (D. Mass. 2019)............................................35

*Earls v. N. Carolina Jud. Standards Comm'n,*
    703 F. Supp. 3d 701, 721 (M.D.N.C. 2023)....................................18

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.,*
    946 F.3d 1040 (2019)...........................................................

*Facenda v. N.F.L. Films, Inc.,*
    542 F.3d 1007, 1017 (3dCir. 2008)............................................30

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 5*
    21 F.3d 1157, 1164 (9th Cir. 2008).........................................22, 24

*Frost v. LG Elecs., Inc.,*
    801 Fed. Appx. 496, 497 (9th Cir. 2020).......................................

*Fusaro v. Cogan,*
    930 F.3d 241, 248 (4th Cir. 2019).................................................18

*Gibson v. United States,*
    781 F.2d 1334, 1337 (9th Cir. 1986.............................................15

*Gilligan v. Jamco Development Corporation,*
    108 F.3d 246, 248-49 (9th Cir. 1997)........................................15

*Hall v. City of Santa Barbara,*
    833 F.2d 1270, 1274 (9th Cir. 1986)..........................................15

*Harris v. Capital Growth Investors XIV,*
    52 Cal.3d 1142, 278 Cal. Rptr. 614, 805 P.2d 873 (Cal. 1991)................33

*Houston v. Hill,*
    482 U.S. 451, 466–467, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).............18

*Hughes v. Pair,*
    46 Cal.4th 1035, 1050-51 (2009)..........................................35, 36

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,*
    No. 4:23-CV-05448-YGR, 2024 WL 4532937 (N.D. Cal. Oct. 15, 2024).23, 24

*Jordan v. Jewel Food Stores, Inc.,*
    743 F.3d 509 (7th Cir. 2014)..................................................30

*Kimzey v. Yelp, Inc.*
    836F.3d 1263, 1269 (9th Cir. 2016)................................................21

*Koebke v. Bernardo Heights Country Club,*
    36 Cal.4th 824, 31 Cal. Rptr. 3d 565, 115 P.3d 1212 (Cal. 2005)............33

*Kunz v. New York, 340 U.S. 290,*
    295, 71 S.Ct. 312, 315, 95 L.Ed. 280 (1951)................................20

*Levitt v. Yelp! Inc.,*
    765 F.3d 1123, 1126 (9th Cir. 2014)........................................18, 34

*Leighty v. Spokane Cnty.,*
    2:24-CV-0165-TOR (E.D. Wash. Jul. 16, 2024)........................31, 35

*Liapes v. Facebook, Inc.,*
    95 Cal.App.5th 910, 313 Cal. Rptr. 3d 330 (Cal. Ct. App. 2023)............33

*Marshall v. Goguen,*
    604 F. Supp. 3d 980, 993 (D. Mont. 2022)...................................25

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)........................27

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334, 347, 115 S. Ct. 1511, 1519, 131 L. Ed. 2d 426 (1995)........20

OPPOSITION TO DEFENDANTS YELP INC. AND JEREMY STOPPELMAN'S MOTION FOR DISMISSAL PURSUANT TO F.R.C.P. RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES

7                                          24CV1077 RSH MMP

*New York v. Ferber,*
    458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)................18

*Niemotko v. Maryland,*
    340 U.S. 268, 271, 71 S.Ct. 325, 327, 95 L.Ed. 267 (1951).................20

*Noah v. AOL Time Warner Inc.,*
    261 F. Supp. 2d 532 (E.D. Va. 2003)..........................................28

*Okeke v. Biomat USA, Inc.,*
    927 F. Supp. 2d 1021, 1027 (D. Nev. 2013)....................................38

*Pacific Care Health Sys., Inc. v. Book,*
    538 U.S. 401, 403, 123 S. Ct. 1531, 1534, 155 L. Ed. 2d 578 (2003).......40

*Polaris Amphitheater Concerts, Inc. v. City of Westerville,*
    267 F.3d 503, 509 (6th Cir. 2001)............................................20

*Prager University v. Google LLC,*
    85 Cal. App. 5th 1022; 301 Cal. Rptr. 3d 836 (2022)....................31, 36

*Scheur v. Rhodes,*
    416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)..............15

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,*
    502 U.S. 105, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991).................18

*Stuart v. Camnitz,*
    774 F.3d 238, 244 (4th Cir. 2014))...........................................18

*UMB Bank v. Guerin,*
    89 F.4th 1047 (8th Cir. 2024)..............................................................24

*United States v. Applins,*
    637 F.3d 59, 82 (2d Cir. 2011)...........................................................26

*United States v. Martin-Escobar,*
    622 F. Supp. 3d 1057, 1060 (N.D. Okla. 2022)...............................19

*United States v. Sawyer,*
    799 F.2d 1494, 1502 (11th Cir. 1986)...............................................24

*United States v. Stevens,*
    559 U.S. 460, 485, 130 S. Ct. 1577, 1594, 176 L. Ed. 2d 435 (2010).......19

*United States v. Sryniawski,*
    48 F.4th 583 (8th Cir. 2022)...............................................................31

*Wayne Johnson for Cong., Inc. v. Hunt,*
    2024 U.S. App LEXIS 2850, 2024 WL471938.................................24

*Wozniak v. YouTube, LLC,*
    319 Cal. Rptr. 3d 597, 100 Cal.App.5th 893 (Cal. Ct. App. 2024)...........21

***STATUTES:***

California Business & Professional Code, § 16720.....................................29

California Business & Professional Code, § 17200...................................30

California Civil Code, § 51..............................................................33

California Code of Civil Procedure, § 527.6 ............................................35

Fed.R.Civ.P 8 (a)........................................................................15

Fed.R.Civ.P 9(b)........................................................................38

Fed.R.Civ.P 12(b)6......................................................................15

*CONSTITUTIONAL POVISIONS:*

15 U.S.C. § 1.............................................................. 26

18 U.S.C. § 371........................................................... 27

18 U.S.C. § 1962.....................................................23, 24, 25, 26

42 U.S.C. § 2000a(b)(4)................................................... 28

47 U.S.C. § 223 or 231.................................................... 18

47 U.S.C. § 230...............................11, 16, 18, 19, 20, 22, 23, 38, 39, 40

# I. INTRODUCTION

Defendants Yelp Inc. and Jeremy Stoppelman in a fashionable manner and in a similar way as Defendants Google LLC and Alphabet Inc. claim that they have broad protection under Section 230 of Communication Decency Act (CDA) after they formed cartel, purposefully removed all positive reviews about Plaintiff except one, intentionally left in her account most vicious fake reviews coming from the people she has never known (after her account was shelled with negative reviews for about a month each time when people didn't like her free speech), purposefully left her Yelp account open when she instructed them to close it contrary to their own Terms of Service (TOS). Since Plaintiff was targeted for her free speech in her own personal Twitter account, moreover was targeted for her political speech, Section 230 of CDA shall not apply to her case. As facts, especially new ones, show Government stays behind Yelp's actions as it stood behind Defendants Google LLC and Alphabet Inc.'s actions making everything to shut down the speech which made them uncomfortable. Government in this case doesn't really need to reveal itself, it pushes forward platforms like Yelp, Google and Facebook (Plaintiff had also problems with her Facebook business advertisements) to claim later that there was no Government action and that platforms like Yelp are protected by Section 230 of CDA - very convenient indeed to control speeches of millions and millions of businessmen. Plaintiff therefore challenges Constitutionality of Section 230 of CDA as applied to her case and on its face as over-broad, vague and used by interactive online platforms as a prior restraint on 1st Amendment Speech. Plaintiff also believes that this type of "hunt" practice of people whose speech is disfavored is not the only case. As the case with Sacramento business shows Yelp was engaged in this type behavior for quite a long time feeling free under protection of Section 230 of CDA to do whatever it wants to do, ¶ 46, SAC.

## II. FACTUAL & PROCEDURAL BACKGROUND

In order to understand Why Yelp Inc. and Jeremy Stoppelman became involved into this cartel in a first place, it is necessary to understand why Defendant ANCA, ANCAWR and Aram Hamparian need to control free speech. In her SAC Plaintiff pleaded that while she was tweeting in her restricted Twitter account she wasn't bothered, but as soon as she lifted all restrictions from her account she noticed couple of defamatory reviews appearing in her Yelp Business account, ¶ 69, SAC. Further, Plaintiff pleaded in her SAC that she "believes that DEFENDANT ANCA lies to the public in the United States to manipulate public opinion and eventually use the system in the United States to achieve its strategic goal - genocide recognition, and ultimate partition and division of Turkey and Azerbaijan in order to create Great Armenia on those lands. PLAINTIFF believes that, since her tweets started destroying those lies she became a target of DEFENDANT ANCA.", ¶ 118, SAC. So, the control over people's First Amendment Rights is necessary for the cartel to achieve their goal - creation of Great Armenia and occupation of neighborhood lands. For this purpose ARF - the parent organization of Defendants ANCA and ANCAWR not only controlled the speech and killed their own people, but literally bombed and killed representatives of Turkish and Azerbaijani government members throughout the history to "raise the awareness" about Armenian genocide. Armenian genocide is nothing but the tool for ARF with its ultimate goal to build Great Armenia.  Plaintiff incorporated into her SAC a research paper prepared by the The Global Terrorism: Justice Commandos of Armenian Genocide. The paper was prepared by Terrorism Analysis Branch, Instability and Insurgency Center, Office of Global Issues, Information about the United States was provided and coordinated by the Federal Bureau of Investigation - ¶ 50, SAC. The research paper states, "the Justice Commandos of the Armenian Genocide" (JCAG) is a very efficient terrorist organization whose meticulous planning has allowed it to attack Turkish interests worldwide with virtual impunity. From its inception in 1975, JCAG has shunned connections to other terrorist groups or patron states…" . *See Exh. A.* Then the paper states "The Justice Commandos' parent organization, the Armenian

Revolutionary Federation (ARF), is in competition with the other major Armenian terrorist group, the Marxist Armenian Secret Army for the Liberation of Armenia (ASALA)"... *Id*. Further the paper gives a glimpse of the history of the Armenian terrorism. It states that 'Modeled on ***Russian*** nihilist organizations - which advocated the use of intimidation, terror, assassination - these paramilitary groups evolved into well-trained soldiery, influenced strongly by the revolutionary ideas promulgated by Russian social democrats', *Id*. ***Further the research paper articulates how ARF organized fedayihs and carried out operation Nemesis for the sake of Armenian genocide.*** It says that "while officially sanctioned by the ARF, these attacks were blood -feud killings carried out by Armenian assassins".... Killings happened worldwide, some of the most remarkable killings happened in California, including assassination of Turkish consul in Santa Barbara by Gourgen Yanikian, when the consul was lured into Biltmore hotel in Santa Barbara and then shot there back in 1973. *Id*.

Plaintiff further mentioned in her complaint that she is confused as to the incorporation status of Defendant ANCA , ¶ 2, SAC. In February 18, 2009, Citizens for Responsibility and Ethics in Washington D.C. sent their research letter to U.S. Attorney General and Commissioner of Internal Revenue in Internal Revenue Service, where they articulated that Defendants ANCA, ANCAWR as well as ARF are engaged in prohibited political activity by violating their non-profit status as well as by violating the Foreign Agents Registration Act, and by violating of the Lobbying Disclosure Act, *See Exh. B*. Though the purpose of the paper was to show that these organizations were engaged in lobbying activities without proper registration, the paper has a good evidence and facts showing what Defendants ANCA and ANCAWR present of themselves. It states "***Evidence suggests that ANCA is an agent, indeed an inseparable part, of ARF,*** yet it has failed to register under FARA or to make required disclosures in disseminating information.", *Id*.

Plaintiff also alleged in the complaint that DEFENDANTS ANCA and ANCAWR use DEFENDANT YELP platform to harass Azerbaijani and Turkish business owners, whose views they do not like in order to suppress their speech in the United States. YELP is also used against those business owners who dared not to recognize Armenian Genocide. Thus, presumably an Armenian account under the name goliath.the.great in the Instagram targeted a Sacramento business, because his owner openly suggested that he does not believe in Armenian genocide. Immediately afterwards, goliath.the.great using wire and with the intent to defraud public asked his community to leave this business "great reviews" on YELP. After getting multiple negative reviews in his business account the owner of the business, stressed and lost, apologized in Instagram. Goliath.the. great didn't stop on this business owner's apology, but asked him to donate to the Armenian genocide cause, which the latter did, and only afterwards all negative reviews were deleted from his business account, ¶ 46, SAC, *See also Exh. C* .

Particularly, Defendant Yelp Inc.'s staff was engaged primarily in defrauding public not as a publisher, but as a content creator by sending her at least two formerly removed fake reviews with new date but with Plaintiff's past dated comments under them, ¶¶ 96, *See also Exh. J*.

Defendant Yelp Inc's staff also violated its own Terms and Services ("TOS") when back in January 2024 refused to close her account despite her requests, intentionally left it open, after which another two fake reviews were placed in Plaintiff's account and were left there despite her protests, ¶ 97, SAC.

Defendant Yelp Inc. violated its own Terms and Conditions again when after her request to close her account they changed the name of her business without her permission from Law Offices of Aynur Baghirzade to the new Accura Law Firm, locked her account by not allowing her to make any changes and by constantly removing all positives reviews about her business to make sure that they satisfy demands of the Armenian Enterprise and her business has a poor rating, ¶ 99, 100, SAC.

## III. LEGAL STANDARD FOR MOTION TO DISMISS

### 1. <u>Ninth Circuit is hostile to 12(b)(6) Motions for Failure to State Claim</u>

The Ninth Circuit is particularly hostile to motions to dismiss for failure to state a claim. "The federal rules require only a "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P 8 (a)*. The Rule 8 standard contains "a powerful presumption against rejecting pleading for failure to state a claim." *(Auster Oil Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985); see also Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986)* ("It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.").

The Supreme Court has explained that 'it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *(Scheur v. Rhodes, 416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974))*. In reviewing the sufficiency of a complaint, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *(Gilligan v. Jamco Development Corporation, 108 F.3d 246, 248-49 (9th Cir. 1997)*.

Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *(Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)*.). Under Federal Rules of Civil Procedure 8 (a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations are not required, Twombly, 550 U.S., at 555, 127 S.Ct. 1955, but the Rule does not call for sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its place", id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the plaintiff is entitled to relief for the misconduct alleged. *Id.*, at 556*, 127 S.Ct. 1955.* Two working principles underlie Twombly. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id., at 555, 127 s.ct. 1955.* A court considering the motion to dismiss may begin by identifying the allegations that, because they are mere conclusions, are not entitled to assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief. *(Ashcroft v. Iqbal, 556 U.S. 662, 663-64 (2009).).*

Plaintiff pleaded short and plain statements to put Defendants on notice about her claims, and Defendants' motion to dismiss the SAC is unwarranted.

## IV. ARGUMENTS

### A. SECTION 230 OF CDA IS UNCONSTITUTIONAL BOTH ON ITS FACE AND AS APPLIED TO PLAINTIFF'S CASE.

#### *1. Section 230 of CDA is unconstitutional as Government is behind Defendants' acts and uses Section 230 of CDA as an illegal tool to punish Plaintiff's 1st Amendment speech.*

Plaintiff started experiencing problems on almost all online platforms except X - LinkedIn, Google, Facebook as soon as she was targeted for her speech by Defendants ANCA,

ANCAWR and Aram Hamparian. All these platforms for no apparent reason were requiring her to verify herself multiple times, kicking her account into unverified status to restrict her access to their services and using verification as an excuse to deny her the service. All these happened after Defendants ANCA, ANCAWR and Aram Hamparian targeted her for her speech in her Twitter (X) personal account. Banks suddenly also required her to verify herself and refused her a service because she handed them a green card. Somehow Plaintiff's driving license issued by the State happened to be more important than Plaintiff's green card issued by the federal government.  Police which had never stopped Plaintiff before started stopping her in vehicle every month (the most recent happened on December 20, 2024) for no reason, just to "verify" her. Finally, when on November 10, 2024, payments from her clients to her account were stopped by Square to "verify" her , on her question to Square representative what is going on she got a response that it is the Government which wants to verify her, See Declaration of Aynur Baghirzade.   Since Plaintiff sued in this case Defendants ANCA, ANCAWR, Aram Hamparian conducting "lobbying" and  "political activity" according to their own web-site (¶ 2, SAC), Plaintiff now claims that verification as well as other hell in this case was brought upon her by the Government and most probably by the members of the so called Armenian Caucus. The list of Congress representatives are given at website of ANCA at **https://anca.org/armenian-caucus/** - Judicial Notice is requested. Around  111 Congress representatives are in this list, including around 37 from the State of California. Whether these members were engaged in the illegal racketeering activity towards Plaintiff or not is the matter of the Discovery process and shall not be considered at the pleading stage. Moreover, facts Plaintiff has, suggests that Defendants ANCA, ANCAWR and Aram Hamparian use Congress for their illegal persecution of innocent U.S. residents not a first time, it is rather a well established practice for over long period of time and totally in compliance with their agenda to outcast people of certain ethnicities from all power positions and turn their life into turmoil. At the same time too broad interpretation of CDA by Courts releasing online platforms from liability even for their intentional acts opens up the door for cartels, gangs, bribery, conspiracy and encroachment on people's first Amendment

and other Constitutional rights. Defendants' acts and cases to this end only confirm that ! Defendants regularly engage in deceptive practices, manipulate reviews for the businesses in their system to multiply their profits, in this particular case they formed a cartel with other members of Armenian Enterprise to silence Plaintiff and punish her for her speech. *See case Levitt v. Yelp! Inc., 765 F.3d 1123, 1126 (9th Cir. 2014).* As there is a Government conduct behind Defendants' acts Plaintiff now claims that Section 230 of CDA shall not be applicable to her case."[R]egulations that discriminate against speech based on its content are presumptively invalid' and are usually subject to strict scrutiny." *Fusaro v. Cogan, 930 F.3d 241, 248 (4th Cir. 2019) (quoting Stuart v. Camnitz, 774 F.3d 238, 244 (4th Cir. 2014)).* Under strict scrutiny review, "such regulations must be 'necessary to serve a compelling state interest' and 'narrowly drawn to achieve that end.' " *Id.* (quoting Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991)). " Laws that burden political speech' are also generally subject to strict scrutiny." *Id.* at 248–49 *(quoting Ariz. Free Enter. Club's Freedom Club PAC v. Bennett, 564 U.S. 721, 734, 131 S.Ct. 2806, 180 L.Ed.2d 664 (2011))." Earls v. N. Carolina Jud. Standards Comm'n, 703 F. Supp. 3d 701, 721 (M.D.N.C. 2023), appeal dismissed, No. 23-2229, 2024 WL 4930587 (4th Cir. Jan. 17, 2024).* Therefore, Section 230 of CDA shall not apply to Plaintiff's case.

### 2. *Section 230 of CDA is unconstitutional on its face as over-broad and vague, thus giving online interactive platforms discretion to infringe upon people's 1st Amendment and other Constitutional rights whenever they want.*

"A party seeking to challenge the constitutionality of a statute generally must show that the statute violates the party's own rights. *New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).* "In determining whether a statute's overbreadth is substantial, we consider a statute's application to real-world conduct, not fanciful hypotheticals. See, *e.g., id.,* at 301–302, 128 S.Ct. 1830; see also *Ferber, supra,* at 773, 102 S.Ct. 3348; *Houston v.*

*Hill,* 482 U.S. 451, 466–467, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Accordingly, we have repeatedly emphasized that an overbreadth claimant bears the burden of demonstrating, "from the text of [the law] and from actual fact," that substantial overbreadth exists." *United States v. Stevens, 559 U.S. 460, 485, 130 S. Ct. 1577, 1594, 176 L. Ed. 2d 435 (2010).* "When considering an as-applied challenge to a criminal statute, there are two independent reasons why a statute could be found unconstitutionally vague. First, a statute is impermissibly vague "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Rodebaugh, 798 F.3d at 1295.* Second, a statute can be unconstitutionally vague "*if it authorizes or even encourages arbitrary and discriminatory enforcement.*" *United States v. Martin-Escobar, 622 F. Supp. 3d 1057, 1060 (N.D. Okla. 2022).*

Section 230 (c) (1) of CDA provides "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *47 U.S.C.A. § 230.* This part of the Statute is too over-broad and vague as it places too much discretion with the online interactive platforms to decide whether to remove the content or not. Thanks to this Section online interactive platforms like Yelp and Google feel free to manipulate third-party content on their platforms as they want, form cartels, take bribes, engage in extortions and later claim protection of this Section arguing that they have indulgence from the Congress. It is enough to looks at Yelp's reviews in this regard where people accuse Yelp in extorting money in exchange for good reviews. Multiple cases in court also confirm that Yelp is indeed engaged in dishonest business practice. The fact that these platforms can regulate a free speech of millions of business owners by manipulating third-party content placed about them on their platforms with malice and get away with it is horrifying.

### *3. Section 230 of CDA is unconstitutional as used by Defendants as a prior restraint on Plaintiff's 1st Amendment free speech.*

"When a law burdens core political speech, we apply "exacting scrutiny," and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest." See, *e.g., Bel-*

*lotti*, 435 U.S., at 786, 98 S.Ct., at 1421" *McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 347, 115 S. Ct. 1511, 1519, 131 L. Ed. 2d 426 (1995)*. "... lack of content-neutrality is not the only feature that identifies a system of prior restraint. A content-neutral regulation that "[places] unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988). ***In other words, when a regulation fails to place appropriate limits on the discretion of public officials to administer the law in a manner that is abusive of speech, the result should be no different than if the law had brazenly set out to discriminate on the basis of content.*** At stake is the risk that in the absence of "narrowly drawn, reasonable and definite standards for the officials to follow," the law invites opportunities for the unconstitutional suppression of speech." *Polaris Amphitheater Concerts, Inc. v. City of Westerville, 267 F.3d 503, 509 (6th Cir. 2001)* citing cases *Niemotko v. Maryland, 340 U.S. 268, 271, 71 S.Ct. 325, 327, 95 L.Ed. 267 (1951); Kunz v. New York, 340 U.S. 290, 295, 71 S.Ct. 312, 315, 95 L.Ed. 280 (1951).*

Section 230 (c) (1) of CDA places too much discretion with interactive online platforms by allowing in fact only to punish them in the case if it relates to their own content, and this is not always the case. Plaintiff's case shows that Defendants manipulated third -party content to place Plaintiff in a false light only later to claim that they were not a content creators. Defendants feel free not to remove the content when business owner's page is massively shelled with fake negative reviews, keep her manipulated photos on their platform as they wish, put extensive defamatory news about her in search results, remove all positive reviews about her business and leave only damaging and defamatory content - and when the Plaintiff wants to take them responsible they all claim immunity. ***Granting immunity to the interactive online platforms in this situation is in fact inviting them to abolish U.S. Constitution by making them the only authority in the country in terms of decision making on what speech is allowed and what speech is not allowed - it is how much horrifying it is. The Law must change.***

**B. DEFENDANTS YELP INC. AND JEREMY STOPPELMAN DO NOT HAVE PROTECTION OF SECTION 230 OF CDA BECAUSE THEY WERE NOT PUBLISHERS, BUT CONTENT CREATORS.**

### *I. Defendants' staff was primarily engaged in content creation.*

"Notwithstanding that broad construction of section 230, "an interactive computer service provider only has immunity if it is not also the information content provider—that is, someone 'responsible, in whole or in part, for the creation or development' of the content at issue." *(Wozniak v. YouTube, LLC, 319 Cal. Rptr. 3d 597, 100 Cal.App.5th 893 (Cal. Ct. App. 2024)* "Passively displaying content 'created entirely by third parties' renders the operator only a service provider with respect to that content." *Id.* "But as to content that it creates itself, or is "responsible, in whole or in part" for creating or developing, the website is also a content provider." *Id.* A website creates or develops content "by making a material contribution to its creation or development." *(Kimzey v. Yelp, Inc. (9th Cir. 2016) 836F.3d 1263, 1269 (Kimzey).)* "A "material contribution"does not refer to "merely ... augmenting the content generally, but to materially contributing to its alleged unlawfulness." *(Wozniak v. YouTube, LLC, 319 Cal. Rptr. 3d 597, 100 Cal.App.5th 893 (Cal. Ct. App. 2024).*

At least on two occasions Yelp Inc.' staff contributed to the creation of the defamatory content about the Plaintiff. On June 21, 2023, Defendants placed in Plaintiff's account a formerly removed review as a new one with past dated comment of the Plaintiff under them, ¶ 74, *See also Exh. J.* The same Yelp Inc. did on October 10, 2023, when it placed formerly removed review of someone named Dav M. into Plaintiff's account. *See Exh. J.* Formerly removed reviews appeared as new with new date but with old dated comments under them. Third party couldn't place its formerly removed review in such a way at the platform, it was clearly done by Yelp Inc.'s staff, and now arguing that Yelp Inc. was engaged only in editorial activity is absolutely baseless. Yelp Inc. contributed to the defamatory content and was a content creator, therefore

Section 230 of CDA does not shield Yelp Inc. or Jeremy Stoppelman from defamation and other causes of action pleaded in the SAC.

### *2. Defendants were speaking themselves on their Platform when they removed all positive reviews and left only selective negative reviews about Plaintiff's business.*

In the case *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F. 3d 1157, 1164 (9th Cir. 2008)* Court stated *"Roommate is not entitled to CDA immunity for the operation of its search system, which filters listings, or of its email notification system, which directs emails to subscribers according to discriminatory criteria. Roommate designed its search system so it would steer users based on the preferences and personal characteristics that Roommate itself forces subscribers to disclose."* "In *184 Moody v. NetChoice, LLC*, the Court considered whether state laws that "restrict the ability of social-media platforms to control whether and how third-party posts are presented to other users" run afoul of the First Amendment. —— U.S. ——, 144 S. Ct. 2383, 2393, 219 L.Ed.2d 1075 (2024). The Court held that a platform's algorithm that reflects "editorial judgments" about "compiling the third-party speech it wants in the way it wants" is the platform's own "expressive product"..." *Anderson v. TikTok, Inc., 116 F. 4th 180, 183–84 (3d Cir. 2024).* Court further concluded "Section 230 immunizes only information "provided by another" 47 U.S.C. § 230(c)(1), and here, because the information that forms the basis of Anderson's lawsuit—i.e., TikTok's recommendations via its FYP algorithm—is TikTok's own expressive activity, § 230 does not bar Anderson's claims." *Anderson v. TikTok, Inc., 116 F.4th 180, 184 (3d Cir. 2024).* "In interpreting the second and third prongs, the Court in its prior order focused on the analysis in *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1164 (9th Cir. 2008).* Roommates established a test for determining if a platform's actions in altering or presenting content constitutes development, namely, whether the platform provides "neutral tools" for the creation or dissemination of content, which does not destroy Section 230 immunity. Roommates.Com, 521 F.3d at 1172. However, if the

platform's conduct materially alters the content, enhancing its alleged illegality, the tool is not neutral, and Section 230 does not bar liability. Id. at 1174–75 ("Where it is very clear that the website directly participates in developing the alleged illegality ... immunity will be lost."). *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig., No. 4:23-CV-05448-YGR, 2024 WL 4532937, at \*15 (N.D. Cal. Oct. 15, 2024).*

Plaintiff pleaded in her SAC that Defendants removed all positive reviews about her business from her real clients by keeping only fake reviews from the people who have never applied for her services, ¶¶ 95, 96, 97. Moreover, they didn't keep reviews where people blamed her for her tweets, they kept particularly damaging and vicious fake reviews of the people claiming that they were her clients and she deceived them - thus Yelp significantly contributed to the content's illegality, in fact speaking on its Platform as the original content creator, and now Yelp can't claim protection of Section 230 of CDA, its immunity has been gone. Removing positive reviews was not also in good faith as it was required by section 230 (c) of CDA.

## C. DEFENDANTS ARE LIABLE UNDER RICO STATUTE SECTION 1962 (b) - (d) AS THEIR STAFF'S CRIMINAL ACTS SIGNIFICANTLY CONTRIBUTED TO THE UNLAWFULNESS OF THE CONTENT.

Defendants' acts of manipulating the reviews placed about Plaintiff in such a way as to leave only selective negative reviews and not allow positive ones, maliciously and intentionally keeping the reviews from unidentified fake accounts with most vicious accusations while not allowing positive reviews from her own clients and deleting them instantly, by constantly placing fake (already deleted) reviews back in her account with her back dated comments under them to harass and intimidate her (similarly as Armenian cartel did throughout her all experience) were not the content created by the third parties, *rather it was the content created by Defendants intentionally to place Plaintiff and her business in false light and leave her with no clients and no income - very much is compliance with acts of other members of the cartel."*A

violation of § 1962(c) requires to show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *(UMB Bank v. Guerin, 89 F.4th 1047 (8th Cir. 2024)*. 'We have said that the predicate acts of mail and wire fraud "occur when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in further-ance of that scheme." *(Wayne Johnson for Cong., Inc. v. Hunt, 2024 U.S. App. LEXIS 2850, 2024 WL 471938)*. "Under the mail and wire fraud statutes, a plaintiff only can show a scheme to de-fraud if he proves that some type of deceptive conduct occurred", *Id.* Such deceptive conduct includes "knowingly making false representations," "concealing material facts," and making statements "with reckless indifference to their truth or falsity." *(United States v. Sawyer, 799 F.2d 1494, 1502 (11th Cir. 1986)* . Additionally, claiming that Defendants were simply moderating content as the analysis above shows is far from the truth, Defendants by using discriminatory al-gorithms were engaged in significantly changing the original content of third parties to create their own content about Plaintiff with the sole purpose to damage Plaintiff's reputation and busi-ness. "In interpreting the second and third prongs, the Court in its prior order focused on the analysis in *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1164 (9th Cir. 2008)*. Roommates established a test for determining if a platform's actions in al-tering or presenting content constitutes development, namely, whether the platform provides "neutral tools" for the creation or dissemination of content, which does not destroy Section 230 immunity. Roommates.Com, 521 F.3d at 1172. However, if the platform's conduct materially al-ters the content, enhancing its alleged illegality, the tool is not neutral, and Section 230 does not bar liability. Id. at 1174–75 ("Where it is very clear that the website directly participates in de-veloping the alleged illegality ... immunity will be lost."). In re Soc. Media Adolescent Addic-tion/Pers. Inj. Prod. Liab. Litig., No. 4:23-CV-05448-YGR, 2024 WL 4532937, at *15 (N.D. Cal. Oct. 15, 2024). **If Defendants left untouched all reviews coming to the Plaintiff's account - both positive and negative her account would be of better condition than now, after Defen-dants maliciously removed all positive content and left only negative (and by the way not all, but only some vicious negative content) - Defendants created their own content which**

1    **significantly damaged Plaintiff's business, speech on Plaintiff's page is now their speech, it**

2    **is not a speech of third parties.**    Contrary to Defendants' allegations, they also successfully

3    gained a control over her business. Defendants (after Plaintiff's request) to close her page inten-

4    tionally changed the name of her business (for sure following requests from the Armenian cartel)

5    from Law Offices of Aynur Baghirzade to Accura Law Firm and Defendant Google also made

6    sure that Yelp reviews come first in Google searches for her business before reviews in Avvo and

7    other platforms (where mysteriously bad reviews do not appear). Plaintiff at this point lost any

8    control over her business, it was presented to the public as a business of the lawyer who is dis-

9    honest which in fact was not true. 'To state a substantive RICO claim under § 1962, a plaintiff

10   must allege: (1) that a "person" within the scope of the statute (2) has utilized a "pattern of racke-

11   teering activity" or the proceeds thereof (3) to infiltrate an interstate "enterprise" (4) by, *inter*

12   *alia*, acquiring or maintaining an interest in the enterprise through the pattern of racketeering ac-

13   tivity (§ 1962(b))' *Marshall v. Goguen, 604 F. Supp. 3d 980, 993 (D. Mont. 2022), appeal dis-*

14   *missed,* No. 22-35499, 2023 WL 4230375 (9th Cir. Apr. 7, 2023). Defendants by series of racke-

15   teering acts acquired an interest (a control) over Plaintiff's business by depriving her the right to

16   change anything about it, all her requests and pleas were denied. In the similar way, Defendants

17   are mistaken about the fact that Plaintiff failed to show conspiracy under Section 1962 (c) RICO.

18   First, Plaintiff successfully showed a pattern of racketeering activity through the series of Defen-

19   dants' acts, second she also showed the agreement - because Defendants knew that she was from

20   Azerbaijan, they knew that she is persecuted because of her origin, nationality, race, religion and

21   etc., they knew that her business account gets regularly shelled, sometimes with 50-60 fake re-

22   views per day which is impossible to get in one or couple of days for the business owner, they

23   knew that she wants to close her page, but they openly refused to do so to keep Plaintiff's busi-

24   ness page open for future attacks, moreover, they changed without her consent her business in-

25   formation and restricted her ability to make edit to her own account AFTER she requested them

26   to close her account. If closing the account was the only solution as Defendants claim - then why

27   they didn't follow their own TOS and left Plaintiff's account open ? What was the purpose to

keep Plaintiff's business account open to allow the gang of people to assault it regularly and harass the Plaintiff ? "Court highlighted the importance of predicate racketeering acts because they can prove the agreement: Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable.")", *United States v. Applins, 637 F.3d 59, 82 (2d Cir. 2011).* Defendants are liable under RICO statute's Section 1962 (b) - (d) for engaging in series of racketeering acts to damage business and reputation of Plaintiff.

### D. PLAINTIFF'S CLAIM FOR CONSPIRACY PURSUANT TO SECTION 1 OF THE SHERMAN & CLAYTON ACT WAS SUFFICIENTLY PLEADED IN THE SAC.

In a fashionable manner Defendants continue arguing that Plaintiff didn't plead enough facts to establish conspiracy under Sherman & Clayton Act, ignoring as other Defendants in this case Rule 10 (c) of F.R.C.P. allowing incorporation by reference anywhere in the pleading and that Plaintiff pleaded all facts under General Allegations part of her SAC because facts were overwhelming, interrelated and can't be pleaded separately from each another under each Cause of Action. Pleading facts under each Cause of action would make SAC unmanageable, lengthy and very difficult to read. Thus, Plaintiff pleaded in her SAC that Conspiracy against Trade and Commerce is pleaded against *all Defendants*. Further in her SAC she pleaded, "PLAINTIFF upon the information and facts she received alleges that DEFENDANT YELP's platform is used to suppress business owners, who do not recognize Armenian genocide, and generally to kill businesses of those business owners, who do not live up to the agenda and expectations of DEFENDANT ANCA. PLAINTIFF upon information and facts she received also alleges that DEFENDANT YELP is a part of Armenian Enterprise and is engaged in an organized crime of bullying and harassing businesses upon requests from the Armenian Enterprise. ", ¶ 75, SAC. Further, she pleaded in her SAC "On or around June 17, 2023, a Twitter account user under name Ray (@raydar07) tweeted that PLAINTIFF must understand that actions have consequences,

openly admitted that he is a representative of the "Armenian mafia" and proposed her a "deal" - to delete the Yelp reviews in exchange for the PLAINTIFF to delete her Twitter account or at his orders to delete the tweets he wants, adding that the PLAINTIFF will get "a special treatment". PLAINTIFF refused in either deleting her Twitter account or deleting her tweets. ", ¶ 76. " On or around January 17, 2024, PLAINTIFF sent an email to DEFENDANT YELP asking it to close her business page as she does not want to keep it open, and also asked to remove from the platform all reviews. On or around February 9, 2024, DEFENDANT YELP with the intent to defraud responded that they will not close her page.. PLAINTIFF believes that DEFENDANT YELP was in conspiracy with Armenian Enterprise for a quite a long time to damage her business, much longer time before fake reviews started appearing at her page. Plaintiff believes that Defendant YELP clearly kept her business page open in order to allow Armenian Enterprise to continue harassing her, and payment for the ad was just an excuse.", ¶ 97, SAC.  In General, Defendants can read all facts related to their conspiracy on trade restrictions against her business by reading relevant parts of General Allegation portion of her SAC, ¶¶ 65, 72, 73, 74, 75, 76, 95, 96, 97, 98, 99, 100. "Because § 1 of the Sherman Act "does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination, or conspiracy," *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)*, "[t]he crucial question" is whether the challenged anticompetitive conduct "stem[s] from independent decision or from an agreement, tacit or express," *Theatre Enterprises,* 346 U.S., at 540, 74 S.Ct. 257." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).* "..proof of a § 1 conspiracy must include evidence tending to exclude the possibility of independent action, see Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); and at the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently, see Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986)" *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)*. Defendants now want to claim that they kept inappropriate manipulated picture of her on their platform because it was independent act... They also refused from closing her Business page contrary to their TOS because it was an independent act. They deleted all positive reviews of Plaintiff from their platform and kept there fake reviews also because it was an independent act, especially after her page was massively shelled by Armenians. Nice approach, but hardly believable.

## E. PLAINTIFF PLEADED ENOUGH FACTS SHOWING THAT DEFENDANTS YELP INC. WAS A PLACE OF PUBLIC ACCOMMODATION.

"Places of public accommodation" are limited to actual, physical places and structures, and thus cannot include chat rooms, which are not actual physical facilities but instead are virtual forums for communication provided by AOL to its members." *(Noah v. AOL Time Warner Inc., 261 F. Supp. 2d 532 (E.D. Va. 2003)*. In addition, § *2000a(b)(4)* emphasizes the importance of physical presence by referring to any "establishment ... which is physically located within" an establishment otherwise *covered, or "within ... which" an otherwise covered establishment "is physically located." Id.* "While the case law concerning places of public accommodation under the ADA is more abundant than that under Title II, it is not entirely uniform. Yet, a detour into the parallel ADA cases is instructive and ultimately supports the conclusion that "places of public accommodation" must consist of, or have a clear connection to, actual physical facilities or structures." *Id.* Conclusions of Defendants Yelp Inc. and Jeremy Stoppelman's Counsel that the concept of the "places of public accommodation" do not apply to online Platforms are factually and legally wrong. Court didn't recognize as places of public accommodation chat rooms - the rooms, where people gather to chat and share their ideas. Yelp Inc. is not a chat room, it is a plat-

form for the business establishments, consumers do not chat at Yelp Inc. platform, they rate performance and products of the businesses, businesses also can advertise themselves and get an online presence at Yelp Inc. platform. Moreover, many of those business establishments are physical businesses with physical location, Yelp Inc. itself has two physical addresses.

**F. PLAINTIFF PLEADED ENOUGH FACTS IN HER COMPLAINT TO ESTABLISH VIOLATION OF THE CALIFORNIA BUSINESS AND PROFESSIONAL CODE. SECTION 16720, ET SEQ., AND DEFENDANTS' ALLEGATIONS THAT CONSPIRACY WAS NOT ESTABLISHED ARE BASELESS.**

"Since it is often difficult to show direct evidence of a combination or conspiracy, concerted action may be inferred from circumstantial evidence of the defendant's conduct and course of dealings. *(Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 671 (9th Cir. 1980).* In General, Defendants can read all facts related to their conspiracy on trade restrictions against her business by reading relevant parts of General Allegation portion of her SAC, ¶¶ 65, 72, 73, 74, 75, 76, 95, 96, 97, 98, 99, 100. Facts pleaded in other parts of her SAC were incorporated by reference according to Rule 10 (c) of F.R.C.P. All these facts show that Defendants were in open conspiracy with Defendants' ANCA and ANCAWR, and moreover, new facts Plaintiff has suggests that they probably followed the orders of so called Armenian Caucus in Congress, meaning that it was Government which using Yelp was trying to silence Plaintiff. Defamatory reviews were placed in Plaintiff's account at Yelp platform every time people were unhappy with her tweets, afterwards Yelp Inc. left the most vicious reviews in her account despite her complaints. Another platform responsible for online business ratings and appearance - Google LLC and Alphabet Inc. were manipulating her business account to defraud the public about her services, kicked her business account into unverified status several times, placed a Denmark law firm's

business account not present in San Diego in Google search results for the name of her law firm, in the similar manner didn't remove defamatory reviews from her account and advised her over the phone that "she is better to close her account", ¶¶ 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, SAC. Besides, as Plaintiff explained in Section C of Arguments part of this Opposition she successfully established conspiracy under RICO.

## G. PLAINTIFF PLEADED ENOUGH FACTS TO ESTABLISH UNFAIR COMPETITION AND DEFENDANTS' REFERENCES TO FIRST AMENDMENT RIGHTS ARE INVALID, AS THE SPEECH AT DEFENDANTS' PLATFORM WAS COMMERCIAL AND IN ANY CASE WAS UNPROTECTED SPEECH.

### 1. Speech at Defendants' platform was a commercial speech

"To determine whether speech is commercial, the Third Circuit requires courts to assess whether the speech (i) is an advertisement, (ii) refers to a specific product or service, and (iii) whether the speaker has an economic motivation for the speech." (*Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1017 (3dCir. 2008)*. "The Supreme Court held that although the pamphlets did not expressly propose a commercial transaction, they were nonetheless properly classified as commercial speech based on the following attributes: the pamphlets were a form of advertising, they referred to specific commercial products, and they were distributed by the manufacturer for economic purposes." *(Jordan v. Jewel Food Stores, Inc., 743 F.3d 509 (7th Cir. 2014)* Three defamatory reviews, which Yelp Inc. and Jeremy Stoppelman intentionally left in Plaintiff's business account, were commercial speech. They all allege that they were clients of the Plaintiff and they didn't get the service or were provided with a bad one, they all have recommendations to other consumers not to use services of the Plaintiff. In doing so, all these reviews were adver-

tisements, referred to specific product or service and were economically motivated. Moreover, Defendants were engaged themselves in distributing commercial speech when they decided to place into Plaintiff's account formerly deleted reviews of the users with new date and Plaintiff's past dated comments under them, their actions therefore were not merely editorial.

### 2. Speech at Defendants' Platform was a defamatory, harassing and obscene speech

"criminal harassment" is unprotected where it "constitutes true threats or speech that is integral to proscribable criminal conduct." *(United States v. Sryniawski, 48 F.4th 583 (8th Cir. 2022).* Intimidation in the constitutionally proscribable sense of the word is a type of true threat," where the speaker intends to place the victim "in fear of bodily harm or death." *Id.* The government does not maintain that Sryniawski's e-mails contained a true threat against Parris or his family, but suggests three categories of harassing speech that are unprotected: speech integral to criminal conduct, defamatory speech, and obscenity." *Id.* "Speech is only actionable as defamation if it "implies the allegation of undisclosed defamatory facts." *(Leighty v. Spokane Cnty., 2:24-CV-0165-TOR (E.D. Wash. Jul. 16, 2024).* "But Prager's theory of UCL liability for fraudulent conduct is not subject to section 230 immunity, in that the act that would give rise to liability is not the exercise of publishing discretion itself, but defendants' misrepresentations regarding their exercise of that discretion—that is, misrepresentations about the character of defendants' service." *(Prager Univ. v. Google LLC, 85 Cal. App. 5th 1022, 301 Cal. Rptr. 3d 836, (2022).* Reviews placed at Defendants' platform were defamatory, they suggested facts, which have never happened, some reviews implied true threats - "We will come after you", some were obscene - Plaintiff's profile picture was manipulated and kept for a quite long time at the Defendants' platform in order to harass and intimidate the Plaintiff. Plaintiff's requests to remove them were

greeted with complete ignorance and rejection. Plaintiff's phone number was also ultimately blocked by the Defendants. Therefore, Defendants have no protection of 1st Amendment Rights!

## H.   PLAINTIFF PLEADED ENOUGH FACTS ON DISCRIMINATION UNDER UNRUH ACT.

Again, as other Defendants did, Defendants Yelp Inc. and Jeremy Stoppelman pretend that Plaintiff didn't plead enough facts of intentional discrimination.  In her SAC Plaintiff pleaded "Azerbaijan, where the PLAINTIFF is originally from, has long standing - over 2 centuries conflict with neighborhood Armenia, violent clashes between two countries happen on a regular basis..", ¶ 39, SAC. She also pleaded "PLAINTIFF upon information and facts alleges that DEFENDANTS ANCA and ANCAWR use DEFENDANT YELP platform to harass Azerbaijani and Turkish business owners, whose views they do not like in order to suppress their speech in the United States.". YELP is also used against those business owners who dared not to recognize Armenian Genocide.", ¶ 46, SAC. She also pleaded "PLAINTIFF upon information and facts believes that DEFENDANTS ANCA and ANCAWR are either governed or have significant ties with Armenian Revolutionary Federation ("Dashnaktsutyun' or "ARF") - a national and socialist political party, which was founded in 1890 in Russian Empire. Dashnaktsutyun was used by Russian empire in its plans first to divide and occupy Turkey and then Azerbaijan. Members of the Dashnaksutyun party were responsible for multiple atrocities and terror acts both in Azerbaijan and Turkey. A research paper prepared by the Terrorism Analysis branch in coordination with FBI in 1984 titled "Global Terrorism: The Justice Commandos of the Armenian Genocide" states that "Terrorism has been an important tactic of ARF since its inception"¶ 50, SAC. Plaintiff also pleaded "PLAINTIFF was targeted by DEFENDANTS ANCA and ANCAWR because of her sex, race, color, religion, ancestry, national origin, citizenship. In the similar way all other

DEFENDANTS targeted PLAINTIFF because of her sex, race, color, religion, ancestry, national origin, citizenship as they joined DEFENDANTS ANCA and ANCAWR in persecuting PLAIN-TIFF and her business, and used pretty much similar tactics and methods.",¶ 288, SAC. The Unruh Civil Rights Act's purpose is "to secure to all persons equal access to public accommodations 'no matter'" the personal characteristics. *(Harris v. Capital Growth Investors XIV, 52 Cal.3d 1142, 278 Cal. Rptr. 614, 805 P.2d 873 (Cal. 1991).* It is intended to eradicate arbitrary, invidious discrimination in business establishments, and stand "as a bulwark protecting each person's inherent right to 'full and equal' access to 'all business establishments." *(Angelucci v. Century Supper Club, 41 Cal.4th 160, 59 Cal. Rptr. 3d 142, 158 P.3d 718 (Cal. 2007).* "To state a claim under the Unruh Civil Rights Act, a plaintiff must allege the defendant is a business establishment that intentionally discriminates against and/or denies plaintiff full and equal treatment of a service, advantage, or accommodation based on plaintiff's protected status." *(Liapes v. Facebook, Inc., 95 Cal.App.5th 910, 313 Cal. Rptr. 3d 330 (Cal. Ct. App. 2023).* "Intentional discrimination requires "'willful, affirmative misconduct.'" *(Koebke v. Bernardo Heights Country Club, 36 Cal. 4th 824, 31 Cal. Rptr. 3d 565, 115 P.3d 1212 (Cal. 2005).* Defendants denied Plaintiff "full and equal treatment of a service, advantage, or accommodation" when joined a radical group in maliciously abusing her business account by removing positive reviews and leaving only selective negative fake reviews, by deliberately keeping her manipulated obscene image on their platform by infringing upon her copyright and privacy rights, by refusing to close her business account contrary to their TOS while extorting money from her. Moreover, Plaintiff is sure that if she didn't bring this lawsuit she would be subjected to continuous torture of Armenian gang placing their fake reviews in her Yelp account on a weekly basis as they actually did before she sued them. Defendants intentionally discriminated against Plaintiff and are liable under Unruh Act.

**I. PLAINTIFF PLEADED ENOUGH FACTS FOR CIVIL HARASSMENT AND HER CLAIMS ARE NOT BARRED BY FIRST AMENDMENT AS DEFENDANTS WERE NOT A PUBLIC FORUM FOR "FREE OPINIONS", THE SPEECH AT DEFEN- DANTS' PLATFORM WAS UNPROTECTED SPEECH, AND THE TRUE INTENT OF DEFENDANTS WAS TO SILENCE PLAINTIFF'S INCONVENIENT POLITICAL SPEECH IN HER TWITTER ACCOUNT IN CONSPIRACY WITH ARMENIAN CAR- TEL MEMBERS.**

As Plaintiff pleaded in her SAC and outlined in this Opposition by raising the question of Constitutionality of Section 230 of CDA as applied to her case and on its face as over-broad, vague and used as a prior restraint by interactive computer services like Yelp and Google to si- lence people's speech, the true intent of Defendants as well as Defendants ANCA, ANCAWR, Aram Hamparian was to shut her up. Plaintiff pleaded in her SAC ""PLAINTIFF upon informa- tion and facts alleges that DEFENDANTS ANCA and ANCAWR use DEFENDANT YELP plat- form to harass Azerbaijani and Turkish business owners, whose views they do not like in order to suppress their speech in the United States.". YELP is also used against those business owners who dared not to recognize Armenian Genocide.", ¶ 46, SAC. In the SAC she also described how members of Armenian cartel chased to silence and made a business owner to apologize for his speech by making a public video, as well as by extorting money from him, ¶ 46, SAC. Members of Armenian cartel used Defendants' platform by placing negative reviews to do that. Members of Armenian cartel were using Defendants' platform every time when they didn't like Plaintiff's speech, ¶¶ 65, 66, 69, SAC.   One of the harassers in Plaintiff's Twitter account openly put her on notice that "Yelp is only the beginning", See Exhibits.   Now, Defendants claim that they are "public forum" for "free speech", the cases Defendants cited to support their ridiculous opinion that they are "public forum" open to free opinions tell nothing that Yelp has this privilege. The case of *Levitt v. Yelp! Inc., 765 F.3d 1123, 1126 (9th Cir. 2014)* only recognizes the opinions of the people ***about the services*** people had, not the right of Yelp to place at its platform all opin-

ions of the people about everything to which their platform is not open to. Yelp's platform is rather designated public forum, it is a forum where people can place their opinions about ***their experience in business establishments or about services they got, not place a review about the service they have never applied to get in a first place.*** As a designated public forum Defendants had the obligation to allow only those reviews which were coming from the business owner's clients, and if the business owner tells them that people who placed the reviews are not her customers they had to investigate it before allowing those reviews on their platform. Instead, Defendants claim immunity under Section 230 of CDA - which is criminally vague, over-broad and allows platforms like Yelp to manipulate business owners to their needs. Moreover, Yelp Inc. and Jeremy Stoppelman placed those reviews in retaliation and in conspiracy with cartel's other members to punish Plaintiff for her speech. In the case *DiNapoli v. Yelp Inc., 355 F. Supp. 3d 101 (D. Mass. 2019)* Court held "that alleged retaliatory conduct of website operator was not in furtherance of free speech, and thus operator could not prevail on anti-SLAPP motion". Court denied Yelp's motion to strike under Anti-Slapp holding that "In short, the fact that Yelp provides a forum for customer reviews does not immunize it from suit, nor does it mean that every act it undertakes is in furtherance of free speech. Yelp's alleged conduct here does not fall under Section 425.16(e) of the anti-SLAPP statute, and therefore the "special motion" to dismiss and to strike will be denied." *DiNapoli v. Yelp Inc., 355 F. Supp. 3d 101, 107 (D. Mass. 2019)*. Additionally, the speech Defendants allowed on their platform was unprotected speech. "…criminal harassment" is unprotected where it "constitutes true threats or speech that is integral to proscribable criminal conduct." (United States v. Sryniawski, 48 F.4th 583 (8th Cir. 2022). Intimidation in the constitutionally proscribable sense of the word is a type of true threat," where the speaker intends to place the victim "in fear of bodily harm or death." *Id.* "….three categories of harassing speech that are unprotected: speech integral to criminal conduct, defamatory speech, and obscenity." *Id.* "Speech is only actionable as defamation if it "implies the allegation of undisclosed defamatory facts." *Leighty v. Spokane Cnty., 2:24-CV-0165-TOR (E.D. Wash. Jul. 16, 2024)*. "But Prager's theory of UCL liability for fraudulent conduct is not subject to section 230 immu-

nity, in that the act that would give rise to liability is not the exercise of publishing discretion it-self, but defendants' misrepresentations regarding their exercise of that discretion—that is, mis-representations about the character of defendants' service." *Prager Univ. v. Google LLC, 85 Cal. App. 5th 1022, 301 Cal. Rptr. 3d 836, (2022).* Plaintiff pleaded in her SAC that Defendants al-lowed threats in her business account, thus she pleaded that Defendants placed old previously deleted reviews from clients with her old dated comments under them coming back to her Yelp business page as new reviews (this act can't be done by the third parties), ¶¶ 74, 96, SAC. De-fendants harassed her by refusing to close her business page when she requested them to do so, extorting money from her for the leads which were not in immigration law as she requested, but in tax law, by constantly changing the name of her business from Law Offices of Aynur Baghirzade to Accura Law Firm **after** she instructed them to close her page,¶¶ 97, 99, 100, SAC. Defendants harassed her when despite her complaints kept threats and inappropriately manipu-lated photos of her on their platform with the intent to harass and intimidate her,¶ 94, SAC.

## J. PLAINTIFF PLEADED ENOUGH FACTS FOR IIED AND NIED.

" A cause of action for intentional infliction of emotional distress exists when there is (1) an extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of probability of causing, emotional distress; (2) the plaintiff's suffering of extreme and emotional distress, and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. A defendant's conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. And the defendant's conduct must be intended to inflict injury or engaged with in realization that the injury will result. *Hugh-es v. Pair, 46 Cal.4th 1035, 1050-51 (2009).* Defendants as other Defendants in this case argue that Plaintiff didn't bring any facts on their extreme and outrageous conduct which is completely wrong and as other Defendants they ignore Rule 10 (c) of F.R.C.P. which states that "A statement

in a pleading may be adopted by reference elsewhere in the same pleading or in any other plead-ing or motion.". Every cause of action in Plaintiff's SAC starts with "PLAINTIFF hereby incor-porates by reference each and every paragraph, as if fully set forth herein.", ¶¶ 326, 334.  Further, in General Allegations part of her SAC, she pleaded all facts which count as extreme and outra-geous conduct. The fact that Defendants kept her manipulated photo on their Platform despite her complaints and in violation of her privacy and copyright was extreme and outrageous,¶ 94, SAC.The fact that they refused from closing her account and then changed the name of her law firm to the new one after she instructed them to close it was extreme and outrageous,¶¶ 97, 99, 100, SAC. The fact that Defendants placed in her account reviews which were before deleted and then came back with her own old dated comments under them was extreme and outrageous, ¶¶ 74, 96, SAC. The fact that Defendants manipulated the reviews in her account by removing posi-tive reviews and allowing only selective most damaging negative reviews was extreme and out-rageous, ¶¶ 94, 95, 96.

In terms of negligent infliction of emotional distress Defendants are also wrong that Plaintiff didn't plead based on what policy special relationship existed. "We have repeatedly rec-ognized that the negligent causing of emotional distress is not an independent tort, but the tort of negligence. The traditional elements of duty, breach of duty, causation, and damages apply. Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability. *(Burgess v. Superior Court, 2 Cal.4th 1064, 9 Cal. Rptr. 2d 615, 831 P.2d 1197 (Cal. 1992).* Plaintiff wasn't a person who had no relationship with Yelp, Plaintiff opened and main-tained a business account with Yelp and Yelp was bound to her by its TOS.  Plaintiff pleaded that Defendants had the obligation to close her business account under their own TOS which they didn't do,¶ 97. Article 14 of Yelp's Terms of Service establishes that "You may terminate the Terms at any time by closing your Account, discontinuing any access to or use of the Service.

and providing Yelp with a notice of termination." Plaintiff sent multiple messages to Yelp to terminate and close her account and received a clear response from their staff that her account will not be terminated. Now, Defendants play a game that they do not understand on what policy they caused emotional distress to the Plaintiff. Also, Defendants violated their obligations under multiple Laws which were well pleaded in Plaintiff's SAC - thus, they violated their duty not to harass her under California Code of Civil Procedure Section 527.6.,¶¶ 293 - 302. They violated their obligations under Unfair Competition Law, ¶¶ 279-285, other Laws and Regulations as it is pleaded in SAC.

### K. PLAINTIFF PLEADED ENOUGH FACTS TO ESTABLISH THAT DEFENDANTS DEFAMED HER.

Yelp and Stoppelman manipulated third party content to defame Plaintiff. They used their algorithms in discriminatory way to create their own speech about Plaintiff's business. Again, Defendants pretend that there is no Rule 10 (c) of F.R.C.P. which allows incorporation by reference in every pleading. Plaintiff's defamation cause of action and every cause of action starts with "PLAINTIFF hereby incorporates by reference each and every paragraph, as if fully set forth herein.",¶ 303, SAC. Facts about how Defendants defamed her were stated in General Allegations part of SAC,¶¶ 94, 95, 96. Additionally, she was under no obligation to plead what exact positive reviews were removed. There is no heightened pleading requirement for defamation cases."Courts have not looked with favor upon heightened pleading requirements for defamation because defamation is not included within the categories covered by Federal Rule of Civil Procedure 9" *Okeke v. Biomat USA, Inc., 927 F. Supp. 2d 1021, 1027 (D. Nev. 2013).*

**L. PLAINTIFF'S FALSE LIGHT CLAIM IS NOT BASELESS BECAUSE DEFENDANTS DO NOT HAVE PROTECTION OF SECTION 230 OF CDA AS THEY TARGETED HER FOR HER POLITICAL SPEECH.**

As it was articulated above Plaintiff raises the issue of Constitutionality of Section 230 of CDA with this pleading according to Rule 5.1. of F.R.C.P. Plaintiff's Yelp Business account was targeted every time Armenian cartel didn't like her speech, the cartel also, as facts and Exhibits show, targeted other business owners for their speech too by placing multiple negative reviews in their Yelp Business accounts and even extorting money from them after forcing them to apologize. Defendants' platform is used as a tool to suppress free speech of millions and millions business owners in the United States for the needs of one group of terrorists which for years successfully infiltrated and corrupted the entire U.S. system, and they do that because platforms like Yelp have criminally vague, over-broad Section 230 of CDA allowing this to happen. Since, interactive online platforms like Yelp and Google use Section 230 of CDA to suppress free speech of people, to form cartels, to engage into organize crime of extortion and blackmailing (as many caselaw with Yelp's participation show it) the section shall be revised, and the immunity shall go. In any case, as Plaintiff is persecuted for her speech and Defendants' platform was used to suppress her speech, Section 230 of CDA shall not apply to her case. Additionally, by keeping Plaintiff's manipulated photo in her account despite her protests Defendants infringed upon her copyright and Plaintiff reserves the right to amend her SAC further to add this cause of action too.

**M. PLAINTIFF IS NOT BARRED BY DEFENDANTS' TOS, BECAUSE DEFENDANTS VIOLATED THEIR OWN TOS AND IN ANY CASE RACKETEERING ACTIVITY IS NOT GOVERNED BY TOS.**

Courts for a long hold that because award of punitive damages is not possible under Arbitration agreements and injured person can't get statutory treble of damages under RICO if he arbitrates, arbitration agreement are not applicable to RICO cases. See *Pacific Care Health Sys., Inc. v. Book, 538 U.S. 401, 403, 123 S. Ct. 1531, 1534, 155 L. Ed. 2d 578 (2003).*

## N. FURTHER AMENDMENTS OF THE SAC ARE JUSTIFIED.

Plaintiff reserves her right to amend further her SAC to add causes of actions for violation of good fair requirement under Section 230 of CDA while Defendants were deleting Plaintiff's positive reviews, for violation of her copyright on her photo which they kept on their Platform for a quite long time despite her protests, for the breach of promissory estoppel when they refused to terminate her business page when she requested them to do so.

## V. CONCLUSION

Based on the foregoing, Plaintiff Aynur Baghirzade requests the Court grant her motion and deny Defendants' motion to dismiss Plaintiff's SAC with prejudice.

DATED: December 23, 2024

PLAINTIFF: Aynur Baghirzade

*Aynur Baghirzade*