ADRIANOS FACCHETTI, ESQ. (S.B.N. 243213)
LAW OFFICES OF ADRIANOS FACCHETTI, P.C.
4444 W. Riverside Drive, Suite 308,
Burbank, CA 91505
Telephone: (626) 793-8607
Facsimile: (626) 793-7293
Email: adrianos@facchettilaw.com

Attorney for Defendants
YELP INC. AND JEREMY STOPPELMAN

# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYNUR BAGHIRZADE, an individual, <br><br> Plaintiff, <br><br> v. <br><br> ARMENIAN NATIONAL COMMITTEE OF AMERICA, et al. <br><br> Defendants. | CASE NO. 24CV1077 RSH MMP <br><br> YELP INC. AND JEREMY STOPPELMAN'S REPLY IN SUPPORT OF MOTION FOR DISMISSAL OF SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. RULE 12(b)(6) <br><br> Date: 01/06/25 <br> Place: 3B-3rd Floor (Rm#: 3142) <br> Judge: Hon. Robert S. Huie <br><br> PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

## I. INTRODUCTION

Plaintiff's third attempt to cast Yelp and Jeremy Stoppelman's (the "Yelp Defendants") alleged actions as wire fraud or as part of some larger conspiracy, bereft of any factual support, does not defeat the immunity provided by Section 230. In her opposition, Plaintiff admits that her claims are based entirely on third-party reviews or Yelp's content moderation decisions on the Yelp business page relating to her law firm, for which Yelp bears no liability under Section 230. And Plaintiff's allegation that Yelp refused to take down the Yelp business page relating to her firm (which would have removed critical reviews of and eliminated consumers' ability to post future reviews) only reinforces that her Second Amended Complaint ("SAC") arises from Yelp's editorial choices, which Section 230 protects.

Additionally, Plaintiff completely fails to address the controlling cases Yelp cited in its moving papers and makes no attempt to respond to Yelp's arguments about her failure to allege facts, much less plausible causes of action. Indeed, simply labeling a content moderation dispute as wire fraud or organized crime without any supporting facts does not transform it into a valid legal claim. The law is clear: Platforms like Yelp's are immune from liability for third-party content and related editorial decisions. The Court should dismiss Plaintiff's SAC with prejudice.

## II. ARGUMENT

### a. The Court Should Disregard Plaintiff's Declaration and Newly Filed Exhibits

Along with her 40-page opposition, Plaintiff submitted a declaration and 144 pages of exhibits to try to inject new matter into her lawsuit. The declaration and exhibits are often irrelevant, conclusory, and argumentative, and they also violate the well-established rule that a court may only consider the allegations in the complaint, documents incorporated by reference, and matters of judicial notice when ruling on a motion to dismiss. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal,

a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (italics in original); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion"). Plaintiff's reliance on matters outside the SAC constitutes an improper attempt to amend her pleading through her opposition, which the Ninth Circuit has repeatedly held is not permissible. The Court should strike or disregard Plaintiff's declaration and exhibits and confine its analysis to the allegations in the SAC and Yelp's Terms of Service (which Plaintiff incorporated into the SAC by reference).

### b. Plaintiff's Muddled First Amendment and Section 230 Challenges Fail Because Yelp Is Not a State Actor and She Lacks Standing

The First Amendment prohibits abridgment of speech by the government, not by private parties. Yelp does not become a state actor merely because it moderates content or facilitates public discourse. As the Supreme Court made clear in *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019), hosting speech is not a "traditional, exclusive public function" comparable to municipal governance. Similarly, the Ninth Circuit in *Prager University v. Google LLC*, 951 F.3d 991, 994 (2020) rejected the notion that YouTube was subject to First Amendment scrutiny for content moderation decisions, noting that "[t]he Internet does not alter this state action requirement of the First Amendment."

Moreover, Plaintiff's repeated assertions that Yelp acted as a government proxy are unsubstantiated and legally deficient. Plaintiff alleges—without any factual support—that Yelp's actions are part of a broader scheme in which the government uses private platforms to "control speeches of millions and millions of businessmen." ECF No. 128 at 11. Vague and conclusory allegations of government involvement do not suffice under Rule 8 or any other standard. Indeed, courts have consistently dismissed such claims as insufficient to meet the state action standard.

*See, e.g., Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40-41 (D.D.C. 2019). Even if the government had encouraged or supported content moderation generally, this would not convert Yelp into a state actor absent direct and coercive involvement.

To the extent Plaintiff seeks a (non-pleaded) declaratory judgment that Section 230 is unconstitutional, she also lacks standing, which requires (1) an injury in fact, (2) fairly traceable to the defendant that is (3) likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). To establish an injury-in-fact, Plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff does not allege that Yelp's content moderation decisions would have been different without Section 230, nor can she. *See Trump v. Twitter Inc.*, 602 F. Supp. 3d 1213, 1225 (N.D. Cal. 2022) (dismissing constitutional challenge to Section 230; "vague and speculative allegation" that Twitter would not have de-platformed plaintiffs without it was conclusory and insufficient for standing).

### c. Section 230 Immunizes the Yelp Defendants.

The immunity provided under Section 230 applies where: (1) the defendant is a provider of an interactive computer service ("ICSs"); (2) the information alleged to be harmful was provided by another information content provider; and (3) the plaintiff seeks to treat the defendant as a publisher. *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *Delfino v. Agilent Technologies, Inc.*, 145 Cal.App.4th 790, 804-05 (2006). Plaintiff failed to present any facts or law showing Section 230 does not bar her claims.

*First*, Plaintiff does not dispute that the Yelp Defendants are ICSs. This element is therefore conceded.

*Second*, Plaintiff is unable to show that Yelp or Stoppelman is an information content provider for the content at issue in this case. A website operator does not

become liable as an "information content provider" by merely "facilitating the expression of information." *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193, 1197-1198 (N.D. Cal. 2009) (citation omitted). Rather, the website operator must materially contribute to the alleged illegality of the content. *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1167-1168 (9th Cir. 2008) (en banc). "A material contribution to the alleged illegality of the content does not mean merely taking action that is necessary to the display of allegedly illegal content. Rather, it means being responsible for what makes the displayed content allegedly unlawful." *Jones v. Dirty World Entertainment Recordings, LLC*, F.3d 398, 410 (6th Cir. 2014). As "long as users ultimately determine what content to post, such that the tool merely provides 'a framework that could be utilized for proper or improper purposes,'" the website operator is fully immunized under Section 230. *Goddard,* 640 F.Supp.2d at 1197-1198, *citing Roommates.com*, 521 F.3d at 1172.

In her opposition, Plaintiff claims that Yelp is an information content provider because it allegedly "placed in Plaintiff's account a formerly removed review as a new one with past dated comment of the Plaintiff under them."[1] ECF No. 128 at 21. Plaintiff seems to be claiming that Yelp's editorial discretion to choose which third-party information to publish somehow transforms Yelp into an information content provider under Section 230. However, *Plaintiff has not alleged (and cannot allege) any facts whatsoever to demonstrate that Yelp created the challenged content.* Yelp cannot create content already created by others.

---

[1] Plaintiff's allegations is false, but the Court need not resolve that factual dispute to grant Yelp's motion. Users Dav M. and Ara Ariana K. actually *updated* their reviews of Plaintiff's business using a feature available to all Yelp users, after Yelp had removed their initial reviews for violating Yelp's Content Guidelines. Yelp also removed the *updated* reviews after Plaintiff reported them, for the same reason. But even if Yelp had displayed formerly removed user reviews—thus changing its immunized editorial decision—it would still be an immunized editorial decision.

In fact, Plaintiff's argument does not back up her *own* claim. She objects to Yelp's supposed editorial decision to republish a third-party review with her own "old dated comments under them." ECF No. 128 at 21:25-26. In other words, she takes issue with Yelp sharing *her own* responses to third-party reviews she found objectionable—not the creation of any new content by Yelp. *Id.* at 37:10-12. All of Plaintiff's claims against the Yelp Defendants arise from third-party reviews (or her own responses) posted by Yelp's users and Yelp's publication decisions regarding the display and removal of the challenged content. *See, e.g.*, *Batzel v. Smith*, 333 F.3d 1018, 1032, n. 18 (9th Cir. 2003) (exercising discretion to choose what information to publish does not amount to creating or developing content).

Plaintiff's reliance on the inapplicable and non-binding *Anderson v. TikTok, Inc.*, 116 F.4th 180, 182-184 (3d Cir. 2024) is misguided. *Anderson* involved TikTok's user-tailored algorithmic design of video compilations. In contrast, as against the Yelp Defendants, this case is not about any alleged algorithmic design. *See generally* ECF No. 96 (SAC) (no mention of any alleged algorithm). Instead, this case is about Yelp's content moderation of third-party speech, and *Anderson* recognizes that Section 230 protects ICSs when "they are sued for someone else's expressive activity or content (i.e., third-party speech)." *Id.* at 183.

Notably, *Anderson* is also an outlier decision that conflicts with overwhelming authority affirming application of Section 230 to algorithms, including in other cases involving Yelp. In *Levitt v. Yelp! Inc.*—a case Plaintiff did not address in her opposition—the district court held that Yelp's recommendation software—used to filter and organize user reviews—constitutes a traditional editorial function protected under Section 230. *Levitt v. Yelp!*, Case No. C10-1321, 2011 WL 5079526, at *2 (N.D. Cal. Oct. 26, 2011), *affirmed on other grounds in Levitt*, 765 F.3d at 1123. Yelp's actions pursuant to its recommendation

review software did not make it a "developer" of the underlying content.[2]

Plaintiff also attempts to avoid Section 230 by alleging that Yelp and Stoppelman were "put on notice" of the offending content and refused to remove it. Yet notice of the challenged content is immaterial: Section 230 immunity "applies even after notice of the potentially unlawful nature of the third-party content." *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007); *Barrett v. Rosenthal*, 40 Cal.4th 33, 39 (2006) (Section 230 immunizes information service providers from notice liability). Notice does not eliminate immunity.

Plaintiff also contends that Section 230 does not apply because she alleges that (1) third-parties posted "distorted" photos of her that "infringe upon her copyright…," (2) she requested the removal of the photos, and (3) Yelp failed to remove them. ECF No. 128 at 39:20-22. This argument fails. As an initial matter, Plaintiff has not alleged a copyright infringement claim or invasion of privacy claim against these third-parties. Nor has she so much as identified anything protected by copyright law, let alone alleged ownership of the copyright, or plausibly alleged any supposed privacy right or violation.

Plaintiff's argument that Section 230 does not apply because of Yelp's Terms of Service is likewise unavailing. ECF No. 128 at 39. In the first place, Plaintiff has not alleged a breach of contract claim in her SAC. But even if she had, it would not matter because her claims clearly arise from Yelp's role as a publisher of third-party

---

[2] Beyond *Levitt*, numerous other decisions hold that algorithms are protected under Section 230, including controlling decisions from the Ninth Circuit. *See Dyroff v. Ultimate Software Group, Inc.,* 934 F.3d 1093, 1098 (9th Cir. 2019) (algorithmic tools, including automated notifications and user grouping, are protected functions under Section 230 because they do not create or alter the underlying user content); *see also Estate of Bride v. Yolo Technologies, Inc.*, 112 F. 4th 1168, 1181-83 (2024) (defendants' design choice of anonymity protected by Section 230); *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (Grindr's matchmaking algorithms did not make it a developer of user content, as the platform simply facilitated connections between users).

content and related editorial decisions regarding third-party content on its website.[3]

Plaintiff's argument that Yelp failed to act in "good faith" also fails. Plaintiff is wrongly conflating Section 230(c)(1) with (c)(2). Yelp claims immunity under (c)(1), which protects hosting third-party content and has no "good faith" requirement. *Zango, Inc. v. Kaspersky Lab, Inc.* 568 F.3d 1169, 1176 (9th Cir. 2009).

*Third*, Plaintiff seeks to hold Yelp responsible as the "publisher" or "speaker" of the third-party reviewers' content. In deciding this issue, "what matters is not the name of the cause of action"; instead, "what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Cross v. Facebook*, 14 Cal.App.5th 190, 207 (2017) (citation omitted); *see also Barnes v. Yahoo!, Inc.*, 565 F.3d 560, 566 (9th Cir. 2009) ("what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another"); *L.W. v. Snap Inc.*, 675 F. Supp. 3d 1087, 1095-1096 (S.D. Cal. Jun. 5, 2023) (holding "the Court must treat Defendants as publishers or speakers, regardless of how [Plaintiff's] claims are framed, because their theories of liability plainly turn on Defendants' alleged failure to monitor and remove third-party content.").

"Put slightly differently, 'courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Cross*, 14 Cal.App.5th at 207 (citations omitted). Based on these principles, "numerous courts have held [Section 230] bars claims based on a failure to remove content posted by others" and other editorial decisions by website operators with respect to the display of content. *Id*. The same conclusion is warranted here.

---

[3] The Terms of Service also unambiguously provide that "[t]he federal Communications Decency Act (47 U.S. Code § 230) limits the liability of interactive computer services, like Yelp, for their role in publishing third-party Content, including consumer reviews" and that Yelp is "under no obligation to enforce the Terms on [Plaintiff's] behalf against another user." ECF No. 103 at 6:9-7:3.

Even if this was a close case under Section 230—which it is not—the Ninth Circuit has cautioned that "close cases . . . must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites." *Roommates.com, LLC*, 521 F.3d at 1174. This guidance is even more applicable in straightforward cases like this one.

### d. Plaintiff's Claims Fail for Additional Reasons

Plaintiff fails to state a claim for relief for many reasons besides Section 230—and nothing in Plaintiff's opposition changes that.

For example, Plaintiff repeats her argument that the Yelp Defendants acted in concert with other alleged RICO defendants. ECF No. 128 at 22:13-27. But outside of the Yelp Defendants' role as publisher of third-party reviews, she does not point to any facts in the SAC to support her RICO claim. Nor does she provide any facts to allege the existence of an "enterprise." Plaintiff's threadbare conclusions are plainly insufficient to meet the plausibility standard under *Bell Atlantic v. Corp. Twombly*, 550 U.S. 550-552 (2007).

Similarly, Plaintiff argues that she pleaded enough facts suggesting a "conspiracy" to support her Sherman and Clayton act violations. ECF No. 128 at 27. But there are no facts whatsoever to support her allegation of a conspiracy. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1129 (9th Cir. 2015). Nor has Plaintiff pleaded any facts sufficient to define any market. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (plaintiff "must plead a relevant market" to state an antitrust claim).

Additionally, Plaintiff does not point to any case law that shows that Yelp is a place of "public accommodation" under 42 U.S.C. Section 2000(c). Her argument that Yelp "has two physical addresses" is irrelevant because her claims are not based on conduct that occurred at one of these physical locations, nor can it since Yelp's only physical locations are its offices where some of its employees work, which are not open to the public. ECF No. 128 at 29:4-5. Rather, all her claims are premised

on third-party content on Yelp. Plaintiff's reasoning would transform every business with a physical address—even private offices closed to the public—into a place of "public accommodation" under the law, regardless of whether the alleged conduct has any connection to the physical location.

Plaintiff's Unruh claim still fails. She was required to plead facts showing that "she has been the victim of defendant's discriminatory act." *See White v. Square*, *Inc.*, 7 Cal. 5th 1019, 1025 (2019). She did not. Instead, she attempts to recast Yelp's content moderation decisions as discriminatory, but there are simply no facts to support her patently far-fetched claim.

Plaintiff's UCL claim is premised on the same conclusions as her RICO claim, so the UCL claim fails too. *See Focus 15, LLC v. NICO Corporation,* 2022 WL 2355537 (N. D. Cal., June 30, 2022) (UCL claims that were derivative of RICO claims were dismissed as plaintiff failed to meet heightened pleading standard under Rule 9(b)). Additionally, Plaintiff completely ignores persuasive authority in Yelp's moving papers, which shows that the challenged speech is fully protected by the First Amendment. *Bernardo v. Planned Parenthood Federation of America*, 115 Cal.App.4th 322, 343 (2004) ("Noncommercial speech is entitled to full First Amendment protection and is thus not actionable under Business & Professions Code §§ 17200 and 17500.") Moreover, as the California Supreme Court has stated, "commercial speech must consist of factual representations about the business operations, products, or services of the speaker (or the individual company or company on whose behalf the speaker is speaking) . . ." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 962 (2002). Neither the alleged reviews nor Yelp's editorial decisions regarding whether and how to display third-party content contain any factual representations *about Yelp's services*. On the contrary, all the challenged speech is about Plaintiff or her law firm, which dooms this claim.

Plaintiff's opposition does nothing to save her harassment claim under Code of Civil Procedure section 527.6. Plaintiff has not provided any legal authority to

show that mere content moderation could constitute harassment. Nor can she show that such conduct "serves no legitimate purpose." *Schild v. Rubin*, 232 Cal. App. 3d 755, 762 (1991) (internal quotations omitted). To the contrary, Yelp operates a free public forum for online speech, as many courts have noted. *See Levitt,* 765 F.3d at 1126 ("Today, individuals can share their opinions with the entire world courtesy of a few taps on the keyboard. [Yelp] provides an online forum on which its users express opinions as to services ranging from dog walkers to taco trucks."); *see also Edwards v. District of Columbia*, 755 F.3d 996, 1006-7 (D.C. Cir. 2014) ("Further incentivizing a quality consumer experience are the numerous consumer review websites, like Yelp . . . which provide consumers a forum to rate the quality of their experiences . . . That the coal of self-interest often yields a gem-like consumer experience should come as no surprise.")

Plaintiff's defamation claim fails too, because she has not pleaded any defamatory facts, as opposed to protected opinions.

Plaintiff's IIED and NIED claims should also be dismissed. Nothing in Plaintiff's opposition shows that Yelp's editorial decisions qualifies as "extreme and outrageous" conduct. Quite the opposite, the allegations demonstrate that Yelp acted in the normal course of its business, *i.e.*, content moderation. With respect to Plaintiff's NIED claim, even if the court credits her incorrect argument that a "special relationship" existed, Yelp's Terms of Service foreclose any such claim.

//
//
//

## IV. CONCLUSION

Yelp and Stoppelman respectfully request that this Court grant their Motion to Dismiss the SAC with prejudice as to them.

DATED: December 30, 2024

                    LAW OFFICES OF ADRIANOS FACCHETTI, P.C.

                    By: /s/ Adrianos Facchetti
                        Attorney for Defendants,
                        YELP INC. and JEREMY STOPPELMAN