1  AYNUR BAGHIRZADE
   1968 S. Coast Highway #2429
2  Laguna Beach, CA 92651
   Phone: 619-630-6646
3  Email: contact@aynurlawyers.com

4  *AYNUR BAGHIRZADE, IN PRO SE*

5

6

7              **UNITED STATES DISTRICT COURT**
8             **SOUTHERN DISTRICT OF CALIFORNIA**

9

10  AYNUR BAGHIRZADE,                    Case No.: 3:24-CV-01077-RSH-MMP

11                    Plaintiff,         **PLAINTIFF'S OPPOSITION TO
                                         DEFENDANTS GOOGLE LLC AND
12          v.                           ALPHABET INC.'S MOTION TO
                                         DISMISS FOR FAILURE TO STATE
13  ARMENIAN NATIONAL                    A CLAIM; MEMORANDUM OF
    COMMITTEE OF AMERICA, et al.,        POINTS AND AUTHORITIES**

14

15                                       / Filed concurrently with Declaration of
                                         Aynur Baghirzade, Exhibits, Request for
16                                       Judiciary Notice, Proposed Order /

17

18

19                                       Presiding Judge: Hon. Robert Huie
                                         Magistrate Judge: Hon. Michelle M.
20                                       Petit

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION TO DISMISS          1

# TABLE OF CONTENTS

**I.    INTRODUCTION** ……………………………………………………12

**II.    FACTUAL AND PROCEDURAL BACKGROUND**……………..……13

**III.    LEGAL STANDARD FOR MOTION TO DISMISS**………………15

     1. Ninth Circuit is Hostile to 12 (b)(6) Motion for Failure to State Claim..15

**IV.    ARGUMENTS**

     **A. SECTION 230 OF CDA IS UNCONSTITUTIONAL BOTH ON ITS FACE AND AS APPLIED TO THE PLAINTIFF'S CASE**……………16

     1. Section 230 of CDA is unconstitutional as Government is behind Defendants' acts………………………………………………………16

     2. Section 230 of CDA is unconstitutional on its face as over-broad and vague………………………………………………………………17

     3. Section 230 of CDA is unconstitutional as used by Defendants as a prior restraint on Plaintiff's 1st Amendment Rights………………….……18

     **B. SECTION 230 OF CDA DOES NOT IMMUNE DEFENDANTS FROM RICO CLAIMS (COUNTS 1-3)**………………………………18

     1. Defendants primarily were engaged in content creation………………18

     2. Defendants discriminatively set up algorithms…………………………20

     3. Cases cited by Defendants for the online platforms allegedly releasing them from liability under civil RICO cases for third party content were overruled by recent Supreme Court decision……………………………22

**C. PLAINTIFF'S DENIAL OF PUBLIC ACCOMMODATION CLAIM AND ALL OTHER CLAIMS ARE VALID (COUNTS 5 & 8)**...........23

1. Since Government is behind Defendants' acts Section 230 CDA is unconstitutional, it is also unconstitutional as it is used to punish Plaintiff's political speech.................................................................................23

2. Section 230 of CDA does not bar Plaintiff's public accommodation claim because Google was engaged in content creation..............................23

3. Restricting Plaintiff's Youtube Channel and manipulating Plaintiff's Business Google Profile show intentional discrimination against Plaintiff to outcast her from the platforms...............................................................24

**D. DEFENDANTS ARE RESPONSIBLE FOR HARASSMENT AND OTHER TORTS UNDER STATE LAW (COUNTS 9, 10, 12, & 13)**....25

**E. SECTION 230 OF CDA DOES NOT APPLY TO PLAINTIFF'S RESTRAINTS ON COMPETITION CLAIMS AS IT IS UNCONSTITUTIONAL AND/OR DEFENDANTS WERE CONTENT CREATORS (COUNTS 4, 6, & 7)**.................................................26

1. Since Government is behind Defendants' acts Section 230 CDA is unconstitutional, it is also unconstitutional as it is used to punish Plaintiff's political speech.................................................................................26

2. Defendants were content creators by significantly manipulating and developing third party content and discriminatively using their algorithms.27

**F. PLAINTIFF PLEADED ENOUGH FACTS TO SHOW EXISTENCE OF DIFFERENT ENTERPRISES AS WELL AS ONE COMMON (ASSOCIATED IN FACT ENTERPRISE)**.................................28

1. Plaintiff pleaded enough facts to show existence of different enterprises, and in any case her pleading is enough for establishing of one single enterprise consisting of Defendants and their founder Sundar Pichai.......28

2. Plaintiff pleaded enough facts to show existence of Associated In Fact

Enterprise…………………………………………………………………30

**G**. **PLAINTIFF PLEADED ENOUGH FACTS TO IMPLICATE**

**GOOGLE IN RESTRAINING COMPETITION (COUNTS 4, 6, &7)**.32

1. Defendants didn't act independently and the market was defined………32

2. Plaintiff put on notice Defendants on what policies they imposed

restraints on trade against her …………………………………………..34

3. Plaintiff pleaded with particularity mail and wire fraud to successfully

establish Unfair Competition Claim…………………………………………35

**H. PLAINTIFF PLEADED ENOUGH FACTS TO PUT GOOGLE ON**

**NOTICE THAT IT DENIED HER A PUBLIC ACCOMMODATION**

**(COUNTS 5 & 8)**…………………………………………………………36

1.Plaintiff pleaded enough facts to establish that Google was involved in

intentional discrimination against her and thus liable under California Unruh

Act…………………………………………………… ………………...37

**I. PLAINTIFF PLEADED ENOUGH FACTS TO PUT GOOGLE ON**

**NOTICE THAT IT WAS RESPONSIBLE FOR HARASSMENT AS**

**WELL  AS  FOR OTHER STATE TORTS LAW VIOLATIONS**

**(COUNTS 9, 10, 12, & 13)**…………………………………………..37

**V.    FURTHER AMENDMENTS ARE JUSTIFIED**………………………..39

**VI.    CONCLUSION**………………………………………………………39

1

# TABLE OF AUTHORITIES:

2

3  *CASES:*

4

5  *Allstate Ins. Co. v. Plambeck,*
      802 F.3d 665, 674 (5th Cir. 2015)……………………………………28

6

7  *Anderson v. TikTok, Inc.,*
      116 F.4th 180, 183–84 (3d Cir. 2024)…………………………………21, 26

8

9

10  *ANDREW GRANT HAYMORE v. AMAZON.COM, INC.,*
      No. 2:24-CV-729 TLN-SCR, 2024 WL 4825253……………………25, 38

11

12

13  *Angermeir v. Cohen,*
      14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014)……………………………36

14

15  *Auster Oil Gas,*
      Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985)…………………………15

16

17

18  *Barnes v. Yahoo!, Inc.,*
      570 F.3d 1096, 1100 (9th Cir. 2009), as amended (Sept. 28, 2009)…..24, 27

19

20

21  *Bell Atl. Corp. v. Twombly,*
      550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)……16, 27, 28, 32

22

23  *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,*
      113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000)………………………………..30

24

25

26  *Brooks v. Jackson,*
      No. 11-cv-6627, 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013)……13

27

28

*C.B. v. Moreno Valley Unified Sch. Dist.,*
    544 F. Supp. 3d 973, 994 (C.D. Cal. 2021)..........................................39

*Ciralsky v. C.I.A.,*
    355 F.3d 661, 670–71 (D.C. Cir. 2004)...........................................16

*City of Lakewood v. Plain Dealer Publishing Co.,*
    486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988).........18

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).................32

*Daniels v. Alphabet Inc.,*
    No. 20-CV-04687-VKD, 2021 WL 1222166...................................14

*Davila v. Lang,*
    343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018)....................................13

*Earls v. N. Carolina Jud. Standards Comm'n,*
    703 F. Supp. 3d 701, 721 (M.D.N.C. 2023)...................................17

*Fair Hous. Council of San Fernando Valley v. Roommates.Com,*
    LLC, 521 F.3d 1157, 1167–68 (9th Cir.2008)..............20, 21, 23, 24, 27

*Flynn v. Sephora USA, Inc.,*
    No. SACV2200426DOCADS, 2023 WL 5669897................................34

*Fossil Grp., Inc. v. Angel Seller LLC,*
    627 F. Supp. 3d 180, 199 (E.D.N.Y. 2022)....................................29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Fusaro v. Cogan,*
    930 F.3d 241, 248 (4th Cir. 2019)………………………………………17

*Gallagher v. Philipps,*
    563 F. Supp. 3d 1048, 1086 (S.D. Cal. 2021)……………………………38

*Gibson v. United States,*
    781 F.2d 1334, 1337 (9th Cir. 1986)………………………………………16

*Gilligan v. Jamco Development Corporation,*
    108 F.3d 246, 248-49 (9th Cir. 1997)……………………………………..16

*Gonzalez v. Google LLC,*
    2 F.4th 871, 890 (9th Cir. 2021)…………………………………………..22

*Hall v. City of Santa Barbara,*
    833 F.2d 1270, 1274 (9th Cir. 1986)………………………………………15

*In re Firestar Diamond, Inc.,*
    654 B.R. 836, 865 (Bankr. S.D.N.Y. 2023)……………………………30, 32

*In re Nat. W. Life Ins. Deferred Annuities Litig.,*
    635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009)…………………………...30

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,*
    No. 4:23-CV-05448-YGR, 2024 WL 4532937…………………………22

*Jackson v. Segwick Claims Mgmt. Serv., Inc.,*
    699 F.3d 466, 480 (6th Cir. 2012)……………………………………27, 28

1

2

3

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988, 1003 (9th Cir. 2018)…………………………………………..35

4

5

6

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)………………28, 33

7

8

9

*McCaskill v. Gallaudet Univ.,*
    36 F. Supp. 3d 145, 159 (D.D.C. 2014)……………………………………38

10

11

*McDaniel v. Gile,*
    230 Cal. App. 3d 363, 372, 281 Cal.Rptr. 242 (Cal. Ct. App. 1991)………38

12

13

14

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334, 347, 115 S. Ct. 1511, 1519, 131 L. Ed. 2d 426 (1995)…….18

15

16

17

*Monsanto Co. v. Spray–Rite Service Corp.,*
    465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)………………27, 33

18

19

*Newman v. Google LLC,*
    No. 20-CV-04011-LHK, 2021 WL 2633423 (2021)…………………………24

20

21

22

*New York v. Ferber,*
    458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)……………..17

23

24

*Noah v. AOL Time Warner Inc.,*
    261 F. Supp. 2d 532 (E.D. Va. 2003)………………………………………36

25

26

27

28

*Odom v. Microsoft Corp.,*
        486 F.3d 541 (9th Cir. 2007)……………………………………………………30

*Opperman v. Path, Inc.,*
        87 F. Supp. 3d 1018, 1043 (N.D. Cal. 2014)…………………………………20

*Palatkevich v. Choupak*,
        2014 WL 1509236, (S.D.N.Y. Jan. 24, 2014)……………………………..30

*Pinkerton v. United States,*
        328 U.S. 640 (1946)………………………………………………………35

*Polaris Amphitheater Concerts, Inc. v. City of Westerville,*
        267 F.3d 503, 509 (6th Cir. 2001)………………………………………18

*Salinas v. United States,*
        522 U.S. 52, 53, 118 S. Ct. 469, 472, 139 L. Ed. 2d 352 (1997)…………37

*Scheur v. Rhodes,*
        416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)…………..15

*Stuart v. Camnitz,*
        774 F.3d 238, 244 (4th Cir. 2014)………………………………………17

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
        551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007)…….36

*Theatre Enterprises, Inc. v. Paramount Film Distrib. Corp.,*
        *346 U.S. 537, 540, 74 S. Ct. 257, 259, 98 L. Ed. 273 (1954)*……………..32

*Twitter, Inc. v. Taamneh,*
    598 U.S. 471, 143 S. Ct. 1206, 1209, 215 L. Ed. 2d 444 (2023).............22

*United States v. Applins,*
    637 F.3d 59, 82 (2d Cir. 2011)....................................23, 28, 32

*United States v. Collazo,*
    984 F.3d 1308, 1319–20 (9th Cir. 2021)...............................37

*United States v. Feldman,*
    853 F.2d 648 (9th Cir.1988)............................................30

*United States v. Garcia,*
    497 F.3d 964, 967 (9th Cir. 2007)......................................35

*United States v. Long,*
    301 F.3d 1095, 1103 (9th Cir.2002)...................................35

*United States v. Stevens,*
    559 U.S. 460, 485, 130 S. Ct. 1577, 1594, 176 L. Ed. 2d 435 (2010).......17

*United States v. Turkette,*
    452 U.S. 576, 580-81 (1981).............................................28

*United States v. U.S. Gypsum Co.,*
    438 U.S. 422, 443 n.20, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).............37

*United States v. Zemlyansky,*
    908 F.3d 1, 17 (2d Cir. 2018).........................................30

1

*Yuksel v. Twitter, Inc.,*
   No. 22-cv-05415-TSH, 2022 WL 16748612…………………………..22

2

3

4

5

6

**U.S. CONSTITUTION:**

7

8

U.S. Constit. amend. I………………………………………16, 17, 18, 23, 26, 28

9

10

**STATUTES:**

11

12

California Business & Professions Code, § 16720………………………….32, 34
California Business & Professions Code, § 1720………………………………32
California Civil Code, § 51……………………………………23, 24, 34, 36, 37
California Code of Civil Procedure, § 527.6…………………………………..25
Federal Rules of Civil Procedure, § 8……………………………………15, 16
Federal Rules of Civil Procedure, § 9 ………………………………………36
Federal Rules of Civil Procedure, §10…………………………………34, 35, 37
Federal Rules of Civil Procedure, § 12(b)6……………………………….15, 36
15 U.S.C. § 1 …………………………………………………………32
18 U.S.C. §§ 1961-68…………………………………18, 19, 20,22, 28, 30
42 U.S.C. §2000a……………………………………………23, 24, 36
47 U.S.C.A. § 230………12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 39

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. INTRODUCTION

Defendants Google LLC and Alphabet Inc. ("Google") following traditions of other Defendants in this case, especially Yelp Inc. and Jeremy Stoppelman, claim that they have protection of Section 230 of Communication Decency Act ("CDA") shielding them from their crimes, that Plaintiff failed to plead and establish enterprise, that all content on which Plaintiff complained to this Court was a "third party generated content" and therefore, Defendants are not liable. Additionally, Defendants distorted facts provided by the Plaintiff in inappropriate way, trying to mislead the court as to the true meaning of what Plaintiff really meant. In general, Defendants' motion is an unprofessional way to ridicule Plaintiff's Second Amended Complaint ("SAC") instead of professionally bringing arguments. Facts about war between Azerbaijan and Armenia were not given for Google to claim that they have no relationship to this war, but to give a background of the reasons of why Plaintiff became a target of the Enterprise. Additionally, Defendants are wrong that they were mere Platforms, which happened to be a place of the war of words, since Defendants chose the side in this war and joined this side by intentionally targeting Plaintiff, by trying to exclude her from their services, by intentionally blocking her Google business page, inappropriately deleting her content in violation of their own Terms of Service ("TOS"), by harassing Plaintiff with endless verifications of her Google business page every couple of weeks with clear intent not to allow her Google Business page to appear online in a normal way, by intentionally mixing her information with the information of the business with similar name which was not present in California and in San Diego, by intentionally placing this information side by side, by allowing content of Defendants Armenian National Committee of America ("ANCA"), Armenian National Committee of America Western Region ("ANCAWR"), Aram Hamparian and other members of Armenian cartel to appear under her name in Google Search as if more than 25 years of Plaintiff's legal experience and 48 years of her life was all about Armenian cartel and about this case in particular - all this Defendants claim being a "third party" generated content they placed as "publishers and editors " (of course, innocent) on their Platforms and therefore, section 230 of CDA must protect them. As further analysis will show Defendants are wrong.

1

2

## II. FACTUAL AND PROCEDURAL BACKGROUND

3

4      In the case *Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018)* Court considering

5  new facts presented first time in Plaintiff's opposition to the motion to dismiss concluded

6  "Because Davila is proceeding pro se, the Court may consider new facts raised in opposition

7  papers to the extent that they are consistent with the complaint, treating the new factual

8  allegations as amending the original complaint." citing case *Brooks v. Jackson, No. 11-cv-6627,*

9  *2013 WL 5339151, at \*3 (S.D.N.Y. Sept. 23, 2013)* ("Because a pro se plaintiff's allegations must

10  be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se

11  plaintiff's opposition memorandum, as long as the allegations are consistent with the

12  complaint.").    Defendants were first put on notice that they violate Plaintiff's copyright and

13  privacy rights by allowing her manipulated photos to appear under her name in Google Search

14  Results when Plaintiff filed her SAC on October 2, 2024. Defendants were also informed by a

15  separate email sent to their Counsel on November 7, 2024 (Exh. J2).    However, Defendants

16  played a game by first removing those photos and then placing them back (Exh. G ). *Therefore,*

17  *Plaintiff reserves her right in this Opposition to amend her SAC to bring new claims of her*

18  *copyright violation, violation of her privacy rights as well as breach of good faith and*

19  *promissory estoppel as Google violated its own TOS*. These amendments are warranted since

20  Court in its order approving Plaintiff's SAC instructed her not to amend her complaint until all

21  motions to dismiss are settled and as such amendment at the present time will delay her case and

22  prejudice all other Defendants.    Plaintiff needs also to plead another pattern of racketeering

23  activity which became obvious to her after she filed her SAC. Thus, verification hell brought

24  upon Plaintiff by the Defendants was not an isolated event. After she filed her complaint in court

25  she was continuously asked for verification by many Platforms - LinkedIn, Facebook, various

26  banks, police. She was either denied a service or kicked out from the online platforms bringing

27  verification issue as an excuse. Additionally, all online platforms and banks were asking for

28  Defendant's Driving License and didn't accept her Green Card.    Somehow, Plaintiff's Driving

License (which was expired at that time) issued by the State appeared for everybody more

important than Plaintiff's Green Card issued by the Federal Government. Finally, when at the beginning of November, 2024, she applied to establish a new account with Square Platform to accept payments from the clients and those payments were suspended  by the platform to "verify" her, on her questions what is going on to Square representative over the phone she received the answer that it is the ***_Government_*** which requires them to verify her (Exh. K2).  So, the verification hell was brought upon her by the Government itself for no apparent reason and Defendants were just an instrumental part of this campaign. Further research by the Plaintiff revealed that there is a group of Congressmen in the U.S. Congress co-chaired by Congressman Frank Pallone and named Armenian Caucus. The so-called Armenian Caucus includes around 111 members (among them 37 are representatives from California) - full list is available on ANCA's website https://anca.org/armenian-caucus/. Some members of this so called "Caucus" were engaged in adoption of multiple resolutions predominantly against Azerbaijan (it's enough to look at Frank Pallone's sponsored acts to make a decision how much bias this group is - https://anca.org/congress/frank-pallone-p000034-118/) . Ties between Defendants and Congress members are best illustrated in the case *Daniels v. Alphabet Inc., No. 20-CV-04687-VKD, 2021 WL 1222166, at \*4 (N.D. Cal. Mar. 31, 2021).* In this case Plaintiff alleged that Nancy Pelosi (a member of Armenian Caucus) during the interview warned social media platforms that "immunity under Section 230 of the CDA is "a gift" that "could be removed." *Id.* Plaintiff in the same case further alleged that "these communications and statements from Rep. Schiff and Speaker Pelosi show that these members of Congress coerced and encouraged defendants to engage in "reverse censorship," or the drowning out of disfavored content through the creation and dissemination of favored content...". *Id.* ¶¶ 25, 27. He notes that both Rep. Schiff and Speaker Pelosi represent California congressional districts, and that Ms. Wojcicki and Mr. Pichai regularly contribute to the Google LLC NetPac political action committee, which has donated to Rep. Schiff's and Speaker Pelosi's election campaigns. *Id.* ¶¶ 25-27. Mr. Daniels claims that the removal of the Fauci and George Floyd videos was done "at the behest of members of Congress." *Id.* ¶¶ 28-30." *Id.*

Plaintiff pleaded before in her SAC facts suggesting that Enterprise got a control over her financial sources, banking information and even IOLTA account, ¶¶ 187, 352, 353. She also

pleaded that she received a lot of threats of eviction, unemployment as well as a message that Enterprise "achieved the goal that Plaintiff has no business in the State of California", ¶ 186. Many Azerbaijanis report that they get fired from their job positions in U.S. and it is only the matter of time for them because Enterprise periodically hunts them. This suggests that Defendants ANCA, ANCAWR and Aram Hamparian are engaging Congress members for their "cause" not a first time against innocent residents of the United States just because they happened to be of different ethnicity and expressed views which contradict their views.

**Therefore, based on the new facts Plaintiff has the only explanation to the hell she encounters now is that Defendants ANCA, ANCAWR and Aram Hamparian invoked their "political" ties in the Congress to launch a hunt on her, and Defendants are members of this "hunt" operation. Since the Government is acting against Plaintiff by using Defendants - Section 230 of CDA shall not apply to her case.** Additionally, whether members of the so-called Armenian Caucus is a part of the Enterprise or not can be evidenced only after discovery process and therefore, dismissal of the Plaintiff's SAC will be premature.

## IV. LEGAL STANDARD FOR MOTION TO DISMISS

1. *Ninth Circuit is hostile to 12(b)(6) Motions for Failure to State a Claim.*

The Ninth Circuit is particularly hostile to motions to dismiss for failure to state a claim. "The federal rules require only a "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P 8 (a)*. The Rule 8 standard contains "a powerful presumption against rejecting pleading for failure to state a claim." *Auster Oil Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985); see also Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986)* ("It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.").

The Supreme Court has explained that 'it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Scheur v. Rhodes, 416 U.S. 232,*

*236, 94 S. St. 1683, 1686, 40 L.Ed.2d90* (1974)). In reviewing the sufficiency of a complaint, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Development Corporation, 108 F.3d 246, 248-49 (9th Cir. 1997).*

Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States, 781 F. 2d 1334, 1337 (9th Cir. 1986).* Claiming that Plaintiff didn't comply with Rule 8 (a) of F.R.C.P. is factually and legally wrong. First, Plaintiff pleaded all facts in the General Allegations part of her SAC as facts were overwhelming as well as the number of defendants in this case, then she made her claims separately for each cause of action, which are really plain, short and simple. Each of those claims do not take even more than 1 page, many are half page, so Plaintiff was in compliance with Rule 8 (a) of F.R.C.P. In the case *Ciralsky v. C.I.A., 355 F.3d 661, 670–71 (D.C. Cir. 2004) Court held that* "After all, Rule 8 does not require a "short and plain *complaint,*" but rather a "short and plain statement of the *claim.*" Fed.R.Civ.P. (a)(2) (emphasis added). "Moreover, it is "each averment of a pleading" that Rule 8(e)(1) states "shall be simple, concise, and direct" — not each pleading itself."*Id.*

## V. ARGUMENTS

**A. Section 230 of CDA is unconstitutional both on its face and as applied to Plaintiff's case.**

*1. Section 230 of CDA is unconstitutional as Government is behind Defendants' acts and uses Section 230 of CDA as an illegal tool to punish Plaintiff's 1st Amendment speech.*

As Plaintiff indicated before, on November 10, 2024, she was informed that verification hell was bought on her by the Government (Exh. K2, Declaration of Aynur Baghirzade). At the same time Google was restricting Plaintiff's Google Business page by demanding Plaintiff's

verification every couple of weeks totally in compliance with all other online platforms and banks. As there is a Government conduct behind Defendants' acts Plaintiff now claims that Section 230 of CDA shall not be applicable to her case."Regulations that discriminate against speech based on its content are presumptively invalid' and are usually subject to strict scrutiny." *Fusaro v. Cogan, 930 F.3d 241, 248 (4th Cir. 2019) (quoting Stuart v. Camnitz, 774 F.3d 238, 244 (4th Cir. 2014)).* Under strict scrutiny review, "such regulations must be 'necessary to serve a compelling state interest' and 'narrowly drawn to achieve that end.' " *Id.* " Laws that burden political speech' are also generally subject to strict scrutiny." *Id.* at 248–49. " *Earls v. N. Carolina Jud. Standards Comm'n, 703 F. Supp. 3d 701, 721 (M.D.N.C. 2023), appeal dismissed, No. 23-2229, 2024 WL 4930587 (4th Cir. Jan. 17, 2024).*

**2. Section 230 of CDA is unconstitutional on its face as over-broad and vague, thus giving online interactive platforms discretion to infringe upon people's 1st Amendment and other Constitutional rights whenever they want.**

"A party seeking to challenge the constitutionality of a statute generally must show that the statute violates the party's own rights". *New York v. Ferber,* 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). *"*In determining whether a statute's overbreadth is substantial, we consider a statute's application to real-world conduct, not fanciful hypotheticals…Accordingly, we have repeatedly emphasized that an overbreadth claimant bears the burden of demonstrating, "from the text of [the law] and from actual fact," that substantial overbreadth exists." *United States v. Stevens, 559 U.S. 460, 485, 130 S. Ct. 1577, 1594, 176 L. Ed. 2d 435 (2010).* Section 230 (c) (1) of CDA provides "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *47 U.S.C.A. § 230.* This part of the Statute is too over-broad and vague as it places too much discretion with the online interactive platforms to decide whether to remove the content or not. Thanks to this Section online interactive platforms like Yelp and Google feel free to manipulate third-party content on their platforms as they want, form cartels, take bribes, engage in extortions and later claim protection of this Section arguing that they have indulgence from the

Congress. Plaintiff's case in this regard is a vivid example.   The fact that these platforms can regulate a free speech of millions of business owners by manipulating third-party content and get away with it is horrifying.

      ***3.   Section 230 of CDA is unconstitutional as used by Defendants as a prior restraint on Plaintiff's 1Amendment free speech.***

      "When a law burdens core political speech, we apply "exacting scrutiny," and we uphold the restriction only if it is narrowly tailored to serve an overriding state interest." *McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 347, 115 S. Ct. 1511, 1519, 131 L. Ed. 2d 426 (1995).* "... A content-neutral regulation that "places unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 757, 108 S.Ct. 2138, 2144, 100 L.Ed.2d 771 (1988).* ***In other words, when a regulation fails to place appropriate limits on the discretion of public officials to administer the law in a manner that is abusive of speech, the result should be no different than if the law had brazenly set out to discriminate on the basis of content.*** At stake is the risk that in the absence of "narrowly drawn, reasonable and definite standards for the officials to follow," the law invites opportunities for the unconstitutional suppression of speech." *Polaris Amphitheater Concerts, Inc. v. City of Westerville, 267 F.3d 503, 509 (6th Cir. 2001).* Plaintiff's case shows that Government uses Google and Yelp to punish speech they do not like. Granting immunity to the interactive online platforms in this situation is in fact inviting them to abolish U.S. Constitution by making them the only authority in the country (along with Government) in terms of making decisions on what speech is allowed and what speech is not allowed. The Law, therefore, must change.

      **B. Section 230 of CDA does not immune Defendants from RICO claims (Counts 1-3).**

      ***1. Defendants primarily were engaged in content creation and therefore they have no immunity under Section 230 of CDA.***

According to the Defendants' TOS Profiles and content that do not meet criteria outlined in Google's TOS may be rejected from publication on Google. Google's TOS with regard to regulating Business profiles as to the Business owners' content is available at https://support.google.com/business/answer/13762416?sjid=17915483018833574533-NC - Judicial notice of Google's TOS is requested. Defendants can't claim that Denmark Law profile appeared in Google search results for her business in San Diego and Orange County areas because it was Denmark Law Firm which placed this profile there - Denmark Law Firm does not operate in California!, ¶ 108, SAC.     Also, as screenshots show the content of her business profile was manipulated by Defendants too, significantly changed, pictures she uploaded removed - no explanation was provided to Plaintiff as to why her pictures from her own profile were removed or not allowed. All allegations of Defendants that they are free to remove whatever content they want from her Business profile are not true as their own TOS establishes rules when such content can be removable (Exh. D and E).   Moreover, the Law requires removing the content in good faith. "No provider or user of an interactive computer service shall be held liable on account of (A) any action voluntarily taken *in good faith* to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." *47 U.S.C.A. § 230.*  Plaintiff until now does not know why her content was removed, and why her Business Google page gets unverified every two weeks. Defendants also were engaged in showing her profile to public in Russian language in California, while the setting Plaintiff chose in her profile was for English language. (Exh. H23, H24, H25). The truth is that her Business profile is unverified even today - apparently Defendants have troubles to verify her identity even after she sued them. Courts in the case *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100 (9th Cir.2009) concluded that "neither Section 230 (c) nor any other subsection in the CDA "declares a general immunity from liability deriving from third-party content." "Instead, to determine whether the CDA operates as a bar to civil liability, courts must determine whether "a plaintiff's theory of liability would treat a defendant as a publisher or speaker of third-party content." *Id.* at 1101. "[W]hat matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause

of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another..." *Id.* at 1101–02. Further, Court defined responsibility of the online platforms for the developing the content and turning it from neutral to libelous: "By contrast, the CDA does not bar claims against "information content providers." An entity "that is responsible, in whole or in part, ***for the creation or development" of the allegedly offending information is not entitled to the CDA's protection.*** "Development" refers "not merely to augmenting the content generally, but to materially contributing to its alleged unlawfulness." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1167–68 (9th Cir.2008)*. "A website operator who edits in a manner that contributes to the alleged illegality… in order to transform an innocent message into a libelous one—is directly involved in the alleged illegality and thus not immune." *Opperman v. Path, Inc., 87 F. Supp. 3d 1018, 1043 (N.D. Cal. 2014)*. Defendants contributed into libelous online content about Plaintiff by offensively changing the content, manipulating it, diluting her business information with the information of another business, by engaging in direct discrimination against her by suggesting her primarily "to close her business profile". Defendants also primarily were engaged in fraud when Plaintiff reported fake reviews on her Google Business profile as "of topic" (meaning placed by someone who was not Plaintiff's client) but received emails that this content was reported as spam (Exh. H28-H32), Plaintiff also has a video recording of how she reported those reviews as of topic but received emails that she reported them as spam), ¶ 114, SAC. As a result, fake reviews were not taken down by the Defendants and Plaintiff believes this was exactly a purpose of the Defendants. Each of those emails constitutes a wire fraud under RICO act. Since Defendants were engaged in content creation, sometimes primarily acting through their staff and agents, they can't now claim that they have Section 230 CDA protection against Plaintiff's civil RICO case.

**2. Defendants also discriminatively set up algorithms in such a way so that only Armenian cartel's publications come up under her name in Google Search Results.**

In the case *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F. 3d 1157, 1164 (9th Cir. 2008)* Court stated *"Roommate is not entitled to CDA immunity for the*

operation of its search system, which filters listings, or of its email notification system, which directs emails to subscribers according to discriminatory criteria. Roommate designed its search system so it would steer users based on the preferences and personal characteristics that Roommate itself forces subscribers to disclose."     Plaintiff added to the opposition the list of exhibits showing among others how her information is displayed in Google search results for her name - simple Googling her name gives overwhelming news of Armenian cartel about her, about the present case, about how Defendants ANCA, ANCAWR, Aram Hamparian and others are unhappy about her speech. Defendants now want to say that it is a third party information randomly appearing under her name without any manipulation of the search algorithms by them, that more than 25 years of Plaintiff's legal experience *is* about Armenians and the present case, that 48 years of her life *is* about the present case and Armenians too, and it all happened because it was third parties, not them who placed information in Google results. Plaintiff disagrees, Defendants obviously manipulated their system in the way to allow discriminate approach to her and her business and did that in co-operation with other members of the cartel. "…The Court held that a platform's algorithm that reflects "editorial judgments" about "compiling the third-party speech it wants in the way it wants" is the platform's own "expressive product"…" *Anderson v. TikTok, Inc., 116 F.4th 180, 183–84 (3d Cir. 2024).* Court further concluded "Section 230 immunizes only information "provided by another" 47 U.S.C. § 230(c)(1), and here, because the information that forms the basis of Anderson's lawsuit—i.e., TikTok's recommendations via its FYP algorithm—is TikTok's own expressive activity, § 230 does not bar Anderson's claims." *Anderson v. TikTok, Inc., 116 F.4th 180, 184 (3d Cir. 2024).* In interpreting the second and third prongs, the Court in its prior order focused on the analysis in *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1164 (9th Cir. 2008)* and established that "if the platform's conduct materially alters the content, enhancing its alleged illegality, the tool is not neutral, and Section 230 does not bar liability. Id. at 1174–75 ("Where it is very clear that the website directly participates in developing the alleged illegality ... immunity will be lost."). *In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig., No. 4:23-CV-05448-YGR, 2024 WL 4532937, at *15 (N.D. Cal. Oct. 15, 2024).*

**3.   *Cases cited by Defendants for the online platforms allegedly releasing them from liability under civil RICO cases for third party content were overruled by recent Supreme Court decision making it clear that online Platforms can't be released from liability if their acts are intentional.***

Defendants argue that they were merely innocent publishers of third party content, they were not a content creators, and refer to the overruled cases to claim that they are protected by Section 230 of CDA for their intentional acts. Defendants allege that the case *Gonzalez v. Google LLC, 2 F.4th 871, 890 (9th Cir. 2021), Yuksel v. Twitter, Inc., No. 22-cv-05415-TSH, 2022 WL 16748612* are authorities to declare that exception in CDA for the claims arising from criminal laws are only for criminal prosecutions while hiding from the Court and parties the fact that the case in Gonzalez v. Google LLC, 2 F.4th 871, 890 (9th Cir. 2021) was overruled by Supreme Court decision in *Twitter, Inc. v. Taamneh, 598 U.S. 471, 143 S. Ct. 1206, 1209, 215 L. Ed. 2d 444 (2023)*, and thus all prior decisions of the Courts shall be reviewed in the light of new Supreme Court decision. In its decision in *Twitter, Inc. v. Taamneh, 598 U.S. 471, 143 S. Ct. 1206, 1209, 215 L. Ed. 2d 444 (2023)* Court turned into consideration of the issue of intent of the online platforms and whether Plaintiffs pleaded intent of the Defendants enough not to dismiss the case. Therefore, even though the Court didn't primarily ruled on the matter of Section 230 of CDA, court accepted that when the pleading alleges intent on the side of Defendants by intentionally keeping offensive (criminal) content of the third parties - the case can not be dismissed. "…In other words, the defendant has to take some "affirmative act" "with the intent of facilitating the offense's commission." Rosemond, 572 U.S., at 71, 134 S.Ct. 1240…" *Twitter, Inc. v. Taamneh, 598 U.S. 471, 490, 143 S. Ct. 1206, 1221, 215 L. Ed. 2d 444 (2023)*. First of all, Plaintiff didn't bring here a claim under ATA, she brought claim under RICO, where conspiracy is proven once pattern of racketeering activity is established. "Court highlighted the importance of predicate racketeering acts because they can prove the agreement: Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable.")", *United States v. Applins, 637 F.3d 59, 82 (2d Cir. 2011)*. As such, the only

thing Plaintiff need to plead is a series of patterns of racketeering activities in which Defendants were engaged and they are enough in this case. Second, the facts of the case in Gonzales are quite different from the facts in the present case - in Gonzales third parties placed advertisements in Google and used this platform for the terror attacks on Plaintiffs and their families, in the present case Defendants through their staff members, communication and own content harassed and discriminated against Plaintiff, third party content was also discriminately used with the only objective to punish Plaintiff for her free speech and cause problems for her business - these are not the same cases.  Thus, Defendants' claims that they are immunized by Section 230 of CDA for their intentional acts of misusing third party content for the objectives of Armenian cartel fail.

**C. Plaintiff's denial of public accommodation claim and all other claims are valid as Section 230 of CDA is unconstitutional and Defendants primarily were engaged in content creation (Counts 5 & 8).**

*1. Since Government is behind Defendants' acts Section 230 CDA is unconstitutional, it is also unconstitutional as it is used to punish Plaintiff's political speech.*

Analysis on why Section 230 of CDA is unconstitutional was done in previous part of this Opposition (Section A, Arguments) and is applicable here as well.

*2. Section 230 of CDA does not bar Plaintiff's public accommodation claim because Google was engaged in content creation thus materially contributing to the content's illegitimacy.*

"…Congress sought to immunize the *removal* of user-generated content, **not the *creation of content…***" *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1163 (9th Cir. 2008).* Defendants now argue that they were not involved in content creation by showing Plaintiff's Google Business page to the public in Russian (in California) while the selected language for her business profile was English in Setting (See Exh. H23, H24, H25), in

1  showing to the people in California her business google page as verified on smartphones while

2  showing Denmark Law Firm's profile on laptops (Exh. I ), ¶ 109, SAC, by intentionally mixing

3  her business information with information of Denmark law firm in Google search results  - all

4  this Defendants allege were done not by them, but by third parties. Defendants now want to say

5  that it was Denmark Law firm which wanted its name to be mixed and confused with the

6  business of Plaintiff, it was not Defendants who horribly manipulated and developed information

7  in such a way as to make it libelous. In *Fair Hous. Council of San Fernando Valley v.*

8  *Roommates.Com, LLC, 521 F.3d 1157, 1163 (9th Cir. 2008)* Court concluded "But, the fact that

9  users are information content providers does not preclude Roommate from *also* being an

10  information content provider by helping "develop" at least "in part" the information in the

11  profiles. As we explained in *Batzel,* the party responsible for putting information online may be

12  subject to liability, even if the information originated with a user." *Id.*  Additionally, Section 230

13  C (2) (A) of CDA  requires from the internet interactive platforms to act in ***good faith*** in

14  restricting access to or availability of material that the provider or user considers to be "obscene,

15  lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable " *Barnes v.*

16  *Yahoo!, Inc., 570 F.3d 1096, 1100 (9th Cir. 2009), as amended (Sept. 28, 2009).* Since

17  Defendants were actively involved in libelous content creation about the Plaintiff they now can't

   claim protection of Section 230 of CDA.

18

19       *3. Restricting Plaintiff's Youtube Channel and manipulating Plaintiff's Business*

20  *Google Profile show intentional discrimination against Plaintiff to outcast her from the*

21  *platforms, thus amounting to denial of public accommodation.*

22

23       In the case *Newman v. Google LLC, No. 20-CV-04011-LHK, 2021 WL 2633423, at *6*

24  *(N.D. Cal. June 25, 2021)* Court noted that "Plaintiffs do not allege that they have been removed

25  from YouTube or prevented from posting their videos on YouTube. Furthermore, Plaintiffs' own

26  allegations suggest that a large percentage of Plaintiffs' videos remain available in Restricted

27  Mode and eligible for monetization on YouTube." Contrary to the facts in this particular case,

28  Plaintiff alleged that she was denied a public accommodation by intentional discrimination

OPPOSITION TO MOTION TO DISMISS                    24

against her with complete restriction put on her videos, and as such her videos are not visible to the public at all - she pleaded the video views stopped counting and it could only mean that Youtube stopped showing her videos to public, ¶111, SAC.  All other allegations of Defendants that they can remove Plaintiff's Business Profile, remove her channel and etc. contradict first to their own TOS (both To Google's and Youtube's), and second to Section 230 (c) of CDA good faith requirement in editing and removing content of the third parties., *See 47 U.S.C.A. § 230.* Defendants' TOS about restricting videos on Youtube channels states: "YouTube operates a system of "strikes" in respect of Content that violates the YouTube Community Guidelines. Each strike comes with varying restrictions and may result in the permanent removal of your channel from YouTube...If you believe that a strike has been issued in error, you may appeal here." (Exh. F2).  Plaintiff's videos were restricted without any issuance of the strike, Plaintiff was not informed why, how and for what reasons her videos were restricted, all her complaints were ignored and not answered. Additionally, Plaintiff's Youtube video content was solely on the topics of Immigration Law and didn't have anything which could remotely violate their TOS. Defendants' claim that they can do whatever they want to users' videos without any reason is false. Defendants deliberately and purposefully discriminated against Plaintiff with the sole purpose to outcast her from their Platforms.

**D. Since Defendants primarily were engaged in harassment against Plaintiff by using their own staff, their own content and manipulated and significantly developed (to make it libelous) third party content, Defendants are responsible for harassment and other torts under State Law (Counts 9, 10, 12 & 13).**

"Harassment" is "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Civ. Proc. Code § 527.6(b)(3)." *ANDREW GRANT HAYMORE, Plaintiff, v. AMAZON.COM, INC., Defendant., No. 2:24-CV-729 TLN-SCR, 2024 WL 4825253, at *5 (E.D. Cal. Nov. 19, 2024)*. The Court held that a platform's algorithm that reflects "editorial judgments" about "compiling the third-party speech it wants in the way it wants" is the platform's own "expressive product"…" Anderson v. TikTok, Inc., 116 F.

4th 180, 183–84 (3d Cir. 2024). Court further concluded "Section 230 immunizes only information "provided by another" 47 U.S.C. § 230(c)(1), and here, because the information that forms the basis of Anderson's lawsuit—i.e., TikTok's recommendations via its FYP algorithm—is TikTok's own expressive activity, § 230 does not bar Anderson's claims." *Anderson v. TikTok, Inc., 116 F.4th 180, 184 (3d Cir. 2024).* In other words, Defendants do not have protection of Section 230 of CDA for their own tortious acts. Thus, Defendants used discriminatory algorithms by placing excessive news under Plaintiff's name in Google Search, ¶¶ 101, 102, 103, 104, SAC. Defendants primarily harassed Plaintiff when they removed her Google Business page without any explanations and obviously without any good faith, ¶ 105, SAC. Defendants multiple times harassed Plaintiff when they continuously asked for her verification, verifying her one day and unverifying her on the following day,¶¶ 106, 107, 113. Defendants intentionally harassed and intimidated Plaintiff when they significantly altered her Google Business page by showing Denmark law firm's Google Business page with similar trade name on laptops and her verified Business page on smartphones,¶¶ 108, 109, 110. Defendants' employees primarily harassed Plaintiff by proposing her to "close her business page", which obviously was an ultimate goal of Defendants,¶ 113, SAC. Defendants primarily harassed and intimidated Plaintiff when they sent her multiple emails that she reported fake reviews on her Business Google page as spam, while she reported them all as of topic (meaning that people were not her clients and didn't have any business related experience with her),¶ 114, SAC. Defendants are liable for harassment and other torts.

**E.  Section 230 of CDA does not apply to Plaintiff's Restraints on Competition Claims as it is unconstitutional on its face and as applied to Plaintiff's case and/or Defendants were content creators (Counts 4, 6, & 7 ).**

*1. Since Government is behind Defendants' acts Section 230 CDA is unconstitutional, it is also unconstitutional as it is used to punish Plaintiff's political speech.*

1  Analysis on why Section 230 of CDA is unconstitutional was done in previous part of

2  this Opposition (Section A, Arguments) and is applicable here as well.

3

4  ***2. Defendants were content creators by significantly manipulating and developing third***

5  ***party content and discriminatively using their algorithms in placing under Plaintiff's name***

6  ***overwhelming news of Armenian cartel to damage her business and reputation.***

7

8  Courts in the case *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100 (9th Cir.2009) concluded

9  that "neither Section 230 (c) nor any other subsection in the CDA "declares a general immunity

10  from liability deriving from third-party content." "Instead, to determine whether the CDA

11  operates as a bar to civil liability, courts must determine whether "a plaintiff's theory of liability

12  would treat a defendant as a publisher or a speaker of third-party content." *Id.* at 1101**. "**As we

13  explained in *Batzel,* the party responsible for putting information online may be subject to

14  liability, even if the information originated with a user." *Fair Hous. Council of San Fernando*

15  *Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1165 (9th Cir. 2008).* Additionally, Defendants'

16  claims all over their motion that Plaintiff associated them with Orange County Bar Association is

17  nothing more than a good distortion. As it will be discussed further, enterprise can be proven

18  even by existence of one enterprise as in the case of Google if Plaintiff pleads the conspiracy

19  between the corporation and a member of its Board or a shareholder, or it can be proven by

20  existence of several enterprises, like Google and Yelp along with other enterprises like referral

21  organizations in the present case. "A plaintiff may plead more than one enterprise.  Pleading

22  alternative enterprises "does not undermine the plausibility of the pleadings." *Jackson v.*

23  *Segwick Claims Mgmt. Serv., Inc., 699 F.3d 466, 480 (6th Cir. 2012).*  Again, in terms of

24  conspiracy Defendants refer to the details of conspiracy in *Twombly*, and tend to distort it, while

25  under *Twombly* "..proof of a § 1 conspiracy must include evidence tending to exclude the

26  possibility of independent action, see Monsanto Co. v. Spray–Rite Service Corp., 465 U.S. 752,

27  104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); and at the summary judgment stage a § 1 plaintiff's offer

28  of conspiracy evidence must tend to rule out the possibility that the defendants were acting

independently, *see Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct.*

1348, 89 L.Ed.2d 538 (1986)" *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).* Defendants now want to say that allowing overwhelming news of Armenian cartel under Plaintiff's name was an independent act or distorting Plaintiff's Google Business page and  placing it together with Denmark Law Firm's page at the same time for the same region for smartphones and laptops was an independent act too. Besides, conspiracy among Defendants is proven by series of predicate acts under RICO.  "Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable.")", *United States v. Applins, 637 F.3d 59, 82 (2d Cir. 2011).*

**F. Plaintiff pleaded enough facts to show existence of different enterprises as well as one common (associated in fact enterprise) with the common goal to destroy Plaintiff's reputation, business, income and punish her for using her 1st Amendment rights under U.S. Constitution (Counts 1-3).**

*1. Plaintiff pleaded enough facts to show existence of different enterprises, and in any case her pleading is enough for establishing of one single enterprise consisting of Defendants and their founder Sundar Pichai.*

"…an enterprise may be an illegitimate enterprise, e.g., a Mafia family, or a wholly legitimate enterprise, e.g., a corporation." *United States v. Turkette, 452 U.S. 576, 580-81 (1981).* "A plaintiff may plead more than one enterprise.  Pleading alternative enterprises "does not undermine the plausibility of the pleadings." *Jackson v. Segwick Claims Mgmt. Serv., Inc., 699 F.3d 466, 480 (6th Cir. 2012).* "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.* "RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Plambeck, 802 F.3d at 673 (quoting 18 U.S.C. § 1961(4)) (internal quotation marks omitted).*"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Fossil Grp., Inc. v. Angel Seller*

*LLC, 627 F. Supp. 3d 180, 199 (E.D.N.Y. 2022).* Defendants now want to claim that they are not corporation, partnership or organization. Additionally, they want to claim that their shareholder Sundar Pichai was not a distinct defendant (a person) different from their corporate status, and therefore they have no liability even as a separate enterprise (even not going into details of the conspiracy, the analysis of which is also absurd in Defendants' pleading). In her SAC Plaintiff pleaded "PLAINTIFF…alleges that DEFENDANTS GOOGLE and SUNDAR PICHAI do everything to place any defamatory information under her name to appear in Google Search." , ¶ 104, SAC. Further, in her SAC she also pleaded : "For comparison, when PLAINTIFF makes a GOOGLE search for VODKA none of the VODKA producing companies in Russia appears in the search results, the results shows vodkas only in San Diego and nearby areas! PLAINTIFF is sure that it was organized campaign of the Enterprise together with DEFENDANTS GOOGLE and SUNDAR PICHAI to deliberately damage her business." ,¶ 108, SAC. In Plaintiff's opinion this is also not enough *for pleading existence of one separate enterprise.* Further, Plaintiff in her SAC pleaded, "On or around May 25, 2024, PLAINTIFF noticed that her GOOGLE business profile appears in the search results on the iPhone, but not on the computers. So, DEFENDANTS GOOGLE and SUNDAR PICHAI in order to confuse PLAINTIFF'S clients even more were showing them PLAINTIFF'S business page in GOOGLE search results on cellphones, while they were showing Denmark law firm's results for San Diego and Orange County areas on the computers. When she checked the status of her business profile, she discovered that it was verified. So, while PLAINTIFF'S business profile was verified for the unknown reasons DEFENDANTS GOOGLE and SUNDAR PICHAI continued showing to the people Denmark Law Firm in search results on the computer under her law firm's name!",¶ 109, SAC. This is also not enough in Defendants' opinion for pleading *one separate enterprise*. In general, any of Plaintiff's pleadings in SAC related to Defendants and Sundar Pichai is enough to establish enterprise even without going to details of conspiracy with other enterprises in this particular case, ¶ 101 - 117, SAC. Thus, Defendants' allegations that Plaintiff didn't plead enough facts to show enterprise are false.

*2. Plaintiff pleaded enough facts to show existence of Associated In Fact Enterprise through conspiracy of multiple corporations and persons with the goal to damage Plaintiff's reputation, business, income, career and generally life in the United States.*

"Multiple corporations or other legal entities can, when working in concert either overtly or covertly, form an association-in-fact RICO enterprise." *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000).* "An associated-in-fact enterprise must have "a common purpose of engaging in a course of conduct." *In re Nat. W. Life Ins. Deferred Annuities Litig., 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009).* "The common purpose element, however, does not require the enterprise participants to share all of their purposes in common. *See, e.g., Odom,* 486 F.3d at 552 (finding a single common purpose sufficient). And all members of the enterprise need not be directly working with all other members of that enterprise. *See United States v. Feldman,* 853 F.2d 648 (9th Cir.1988). "What RICO does require as a showing of common purpose is 'proved by evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *In re Nat. W. Life Ins. Deferred Annuities Litig., 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009).*

Similarly as with allegations for the enterprise, Defendants pretend that they don't know what rules apply to pleading conspiracy under RICO demanding that Plaintiff must provide the evidence of the agreement with signatures and seals of all defendants and moreover, must do it at the pleading stage! "Indeed, courts have recognized that not only are "Section 1962(d) conspiracies ... easier to prove than violations of [Section] 1962(c)," *Palatkevich v. Choupak,* 2014 WL 1509236, at *22 (S.D.N.Y. Jan. 24, 2014), but RICO conspiracies are also easier to demonstrate than "basic" conspiracies, as RICO conspiracies "do not require proof that a defendant knowingly agreed to facilitate a specific crime (*e.g.*, mail fraud)" and "have a more removed *mens rea* requirement" than "basic" conspiracies. *Zemlyansky*, 908 F.3d at 11, n.7; *see also Salinas*, 522 U.S. at 63, 118 S.Ct. 469. "Unlike 'basic' conspiracy, RICO conspiracy does not require proof that the defendant intended that specific criminal acts be accomplished."). *In re Firestar Diamond, Inc., 654 B.R. 836, 865 (Bankr. S.D.N.Y. 2023).* In her SAC Plaintiff pleaded

"When DEFENDANT ANCA and ANCAWR realized that they couldn't disbar PLAINTIFF, with the intent to defraud they placed her distorted tweet, where as they allege she "called for genocide" in Google Search under her name, DEFENDANTS ANCA and ANCAWR also took care that the headlines for all her name search results come with "to disbar or disbarring Aynur Baghirzade", ¶ 101, SAC.  Further she pleaded "…DEFENDANT GOOGLE and DEFENDANT SUNDAR PICHAI conspired and acted on the orders of DEFENDANT ANCA ANCAWR from approximately June, 2023 by deliberately harassing, intimidating PLAINTIFF and damaging her reputation." and she states here facts of how her images started appearing in Google Search immediately after she was harassed in her Twitter account with some of them impersonating and presenting her as a criminal.",¶ 102, SAC. The fact that she alleged it on "upon facts and information" in her pleading does not change its meaning, as she simply stated that she does not allege them without having evidence. Further, Plaintiff pleaded "…DEFENDANTS GOOGLE and SUNDAR PICHAI do everything to place any defamatory information under her name to appear in Google Search. While DEFENDANT ANCA'S tweets and headlines about PLAINTIFF appear in Google Search, none of PLAINTIFF's tweets opposing to DEFENDANT ANCA'S opinion are there…",¶ 104, SAC. Further Plaintiff alleged in her SAC, that "PLAINTIFF believes that DEFENDANT GOOGLE in the similar way as DEFENDANT YELP became a part of the Armenian Enterprise to deliberately damage her business and confuse her clients.",¶ 108, SAC. Further, Plaintiff pleaded how her business Google profile was appearing on smartphones and laptops differently and how it was placed side by side with Denmark Law information and she also stated that this was in the habits of the Armenian Enterprise ,¶ 110, SAC. Further, Plaintiff pleaded that Youtube stopped showing her videos to public without any explanation and didn't respond to her complaints : "After doing google search for Youtube, PLAINTIFF realized that Youtube was purchased by DEFENDANT GOOGLE in 2006, and what PLAINTIFF experienced is nothing more than a common scheme and plan of the single big Enterprise to damage her business and punish her for her speech…",¶ 111, SAC. Now, claiming that Plaintiff didn't plead enough facts and didn't show the purpose, didn't show conspiracy between Defendants and other co-defendants are merely groundless and baseless accusations or a confirmation of Defendants' own unprofessionalism. Defendants are advised to read the entire

SAC in order to make a decision whether Plaintiff showed the existence of the associated in fact enterprise or not, ¶¶ 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114,115,116,117, SAC. Additionally, contrary to Defendants' allegations, Plaintiff was not required to show how Google cooperated and conspired with other members of the cartel because it is not required under RICO statute. "There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy. (internal citation omitted)" *In re Firestar Diamond, Inc., 654 B.R. 836, 865 (Bankr. S.D.N.Y. 2023).* Moreover, all facts in Plaintiff's SAC list enough predicate acts to come to the conclusion that Defendants indeed formed a cartel against Plaintiff and were in conspiracy with one another. "...Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable.")", *United States v. Applins, 637 F.3d 59, 82 (2d Cir. 2011).*

### G. Plaintiff pleaded enough facts to implicate that Google was involved in Restraining on Competition (Counts 4, 6, &7)

#### 1. Defendants didn't act independently and the market was defined.

Defendants' allegations that Plaintiff failed to implicate Google for violation of Sherman & Clayton Act, Unfair Competition and other restraint on competition claims are not valid. Plaintiff pleaded enough facts that Defendants didn't act independently but did it in tandem and conspiracy with one another (Specifically Defendants ANCA and ANCAWR), ¶¶ 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114,115,116,117, SAC. "Because § 1 of the Sherman Act "does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination, or conspiracy," *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)*, "[t]he crucial question" is whether the challenged anticompetitive conduct "stem[s] from independent decision or from an

agreement, tacit or express," *Theatre Enterprises,* 346 U.S., at 540, 74 S.Ct. 257." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).* "..proof of a § 1 conspiracy must include evidence tending to exclude the possibility of independent action, see Monsanto Co. v. Spray–Rite Service Corp., 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); and at the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently, see Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)" *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).* Defendants now want to claim that they acted "independently" by placing Armenian cartel news under Plaintiff's name in Google search, that Google Search under Plaintiff's name brings only news of the Armenian enterprise about her completely accidentally - Defendants want to say that it was not in agreement with the Enterprise,¶¶ 101, 102, 116, 117.  Similarly, they want to claim that kicking out Plaintiff's Google Business Profile into unverified status multiple times was also an independent act, so much independent that they can't even now verify her after she literally sued them in this court,¶ 113, SAC. Defendants also want to claim that mixing her business information with information of Denmark Law firm was an "independent act", especially when they were showing to the public Google Business page of Denmark Law firm in San Diego and Orange County areas while her verified business profile at smartphones,¶¶ 108, 109, 110, SAC.  Defendants also think that it was mere coincidence that Plaintiff started experiencing these problems after she was harassed for her speech in her Twitter account by Defendants ANCA, ANCAWR, Aram Hamparian and other members of the Armenian cartel,¶ 102, SAC. Defendants also believe that another platform responsible for business ratings (Defendant Yelp) suddenly got mad and started causing troubles to Plaintiff's business completely accidentally.  Additionally, Defendants are wrong that Plaintiff didn't define the market. In her SAC she indicated that she currently resides in San Diego, California,¶ 37, SAC. Further in her SAC she indicated that "On or around May 2, 2024, when next time PLAINTIFF made a GOOGLE search for ACCURA LAW she was shocked by discovering that GOOGLE business page of Accura Advokatpartnerselskab - the Denmark law firm appears in search results for San Diego and Orange County areas, while this law firm was not present in California…",¶

108, SAC. So, it is clear from SAC that Defendants targeted her business in San Diego and
Orange County areas, specifically in the State of California, targeted so much that they were
showing Denmark Law Firm's Google Business Page along with her website on laptops while
showing her verified Google Business page on smartphones along with Denmark Law Firm's
website to the public. Plaintiff's each cause of action starts with "PLAINTIFF hereby
incorporates by reference each and every paragraph, as if fully set forth herein.", therefore the
entire SAC shall be read as one according to Rule 10 (c) of F.R.C.P. Plaintiff therefore
successfully defined the market.

### 2. Plaintiff put Defendants on notice based on what policy they imposed restrictions on trade against her.

California Business and Professions Code ("B.P.C.") § 16721(a) provides that "No person
within the jurisdiction of this state shall be excluded from a business transaction on the basis of a
policy expressed in any document or writing and imposed by a third party where that policy
requires discrimination against that person on the basis of any characteristic listed or defined in
subdivision (b) or (e) of Section 51 of the Civil Code or on the basis that the person conducts or
has conducted business in a particular location." *Flynn v. Sephora USA, Inc., No.
SACV2200426DOCADS, 2023 WL 5669897, at *5 (C.D. Cal. Aug. 11, 2023).* In terms of the
policy upon which Defendants acted they need to read SAC carefully,¶¶ 54, 88, 262, 263, 264,
266, SAC. They definitely missed a lot of information. Plaintiff incorporated by reference to her
SAC the research paper named: Global Terrorism: Justice Commandos of Armenian Genocide,
prepared in coordination with FBI and CIA,¶ 54, SAC. The document is added here as an Exhibit
A. This document describes very well on what policies Defendants ANCA and ANCAWR acted,
and since Google joined these Defendants in persecuting Plaintiff because of her race,
nationality, religion and etc., it incorporated this policy too. Now, playing a game that there was
no written policy based on which Defendants acted is simply false. Moreover, in her SAC
Plaintiff pleaded that "By calling it "carcinoma" PLAINTIFF didn't mean any harm to
Armenians specifically, she meant that it has to be reformed to eradicate nationalistic Njdeh

philosophy of Aryan race superiority to which Armenians worship till now and which actually keeps killing people both in Armenia and Azerbaijan.",¶ 88, SAC. Further, Plaintiff pleaded "Armenia's official ideology is built on Tsegakron, the nationalistic (fascist) ideology established by former Nazi collaborator G. Njdeh, whose enormous monuments are erected everywhere in Armenia…",¶ 262, SAC. In her SAC Plaintiff also pleaded that "Since DEFENDANTS acted together with DEFENDANTS ANCA and ANCAWR in persecuting PLAINTIFF, they are in the similar way liable for discrimination against the PLAINTIFF",¶ 266, SAC. Plaintiff also, incorporates here Letter of Citizens for Responsibility and Ethics In Washington as well as APPENDIX TO THE CONGRESSIONAL RECORD (Exh. B and C) asking to take a Judicial Notice of those documents. Defendants also violated their own policies - Google's TOS for Google Business pages (specifically removing content in good faith) and Youtube TOS, as they removed Plaintiff's content without any explanations and without any good faith, they also didn't keep their promises under those policies (Exh. D, E, F).  Plaintiff requests to take Judicial Notice of those Google policies too.  Courts regularly hold that "A conspirator is criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Long, 301 F.3d 1095, 1103 (9th Cir. 2002) (per curiam) (citing Pinkerton, 328 U.S. at 645–48, 66 S.Ct. 1180), United States v. Garcia, 497 F.3d 964, 967 (9th Cir. 2007).*  So, no matter how much Defendants would argue now, they are part of the conspiracy and they adopted a fascist Njdeh philosophy while persecuting Plaintiff on the orders of the Enterprise.

### 3. Plaintiff pleaded with particularity mail and wire fraud to successfully establish Unfair Competition Claim.

Similarly Defendants pretend that there is no Rule 10 (c) of F.R.C.P. and Plaintiff had to plead all facts under each cause of action. Each Cause of action in Plaintiff's SAC incorporates other parts of the SAC as fully pleaded under it. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion…" Rule 10 (c) of F.R.C.P. Although the incorporation-by-reference doctrine is designed to prevent artful pleading

by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).* "..courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss…" *Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007).*

Additionally, Plaintiff pleaded with particularity every fraudulent act attributable to Defendants. Every mail & wire fraud was stated with particularity who, what, when, where and how,¶¶ 101*, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117.* "In …complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity." Instead, "Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Angermeir v. Cohen, 14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014).*

**H. Plaintiff pleaded enough facts to put Google on notice that it outcasted her from Google's platforms and denied her a Public Accommodation (Counts 5 & 8).**

"Places of public accommodation" are limited to actual, physical places and structures, and thus cannot include chat rooms, which are not actual physical facilities but instead are virtual forums for communication provided by AOL to its members." *(Noah v. AOL Time Warner Inc., 261 F. Supp. 2d 532 (E.D. Va. 2003).* Google's contention that it was not a place of public accommodation is quite questionable. Google manipulated and distorted Plaintiff's Google Business Profile and deliberately placed it along with Denmark Law Firm's Google Business Profile. Both Plaintiff's and Denmark Law Firm's businesses have physical offices and thus are covered by Title II of Civil Rights Act. Google is not taken responsible for the chats of third parties to claim that it is not a place of public accommodation, Google deliberately and intentionally distorted and manipulated Plaintiff's business information and presented it to the public as a business in Denmark.

***1. Plaintiff pleaded enough facts to establish that Google was involved in intentional discrimination against her and thus liable under California Unruh Act.***

Defendants' arguments that Plaintiff didn't plead enough facts to establish intentional discrimination under Unruh Act are baseless. In her SAC Plaintiff pleaded "PLAINTIFF was targeted by DEFENDANTS ANCA and ANCAWR because of her sex, race, color, religion, ancestry, national origin, citizenship. In the similar way all other DEFENDANTS targeted PLAINTIFF because of her sex, race, color, religion, ancestry, national origin, citizenship as they joined DEFENDANTS ANCA and ANCAWR in persecuting PLAINTIFF and her business, and used pretty much similar tactics and methods.",¶ 288, SAC. Further, Plaintiff pleaded "DEFENDANTS GOOGLE and SUNDAR PICHAI knew that PLAINTIFF was persecuted by Armenian Enterprise but chose to join this Enterprise in damaging her business and reputation despite her numerous complaints.",¶ 291, SAC. "the government must prove that the defendant had the "intent to effectuate the object of the conspiracy." *1320 United States v. U.S. Gypsum Co., 438 U.S. 422, 443 n.20, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); see also Salinas, 522 U.S. at 65, 118 S.Ct. 469* ("A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense.") *United States v. Collazo, 984 F.3d 1308, 1319–20 (9th Cir. 2021)*. Since Plaintiff pleaded conspiracy and articulated intent of the Defendants while describing substantive offenses committed by the Defendants intentional discrimination was established, ¶¶ 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 112, 113, 114, 115, 116, 117, SAC. Intentional discrimination also was pleaded in other parts of SAC -¶¶ 54, 88, 262, 263, 264, 266, SAC., which were incorporated in this section by reference under Rule 10 (c) of FRCP. Defendants are liable for violation of Unruh Act.

**I. Plaintiff pleaded enough facts to put Google on notice that it was responsible for harassment as well as for other State Torts Law violations (Counts 9, 10, 12, & 13).**

"Harassment" is "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses

the person, and that serves no legitimate purpose." Cal. Civ. Proc. Code § 527.6(b)(3)."

*ANDREW GRANT HAYMORE, Plaintiff, v. AMAZON.COM, INC., Defendant.*, No. 2:24-CV-729 TLN-SCR, 2024 WL 4825253, at \*5 (E.D. Cal. Nov. 19, 2024). Plaintiff pleaded enough facts showing that Defendants were intentionally harassing her. Defendants harassed her when started showing her manipulated Google Business page together with Denmark Law firm's Google Business page on their platforms while Denmark Law Firm was not present in California,¶¶ 108, 109, 110. Defendants intentionally and deliberately harassed Plaintiff by constantly kicking her account into unverified status shortly after verification,¶¶ 105, 106, 107. Defendants harassed Plaintiff by sending her multiple emails that the fake reviews she reported to them as of topic (not from the actual clients) are spam,¶ 114. Defendants primarily harassed Plaintiff by suggesting to her to close her account,¶ 113. Now, claiming that everything they did was not a harassment is simply ridiculous.

Similarly in defamation case claiming that Defendants have absolute immunity from the "opinions" they allowed under her Google Search results is not true and is not supported by federal case law. "Assertions of opinion on a matter of public concern receive full constitutional protection **if they do not contain a provably false factual connotation.**" *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 159 (D.D.C. 2014). *Further*, it is not supported by California case law too. "…Statements of opinion do not enjoy blanket protection…Statements of opinion that imply a false assertion of fact are actionable.' "*Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1086 (S.D. Cal. 2021). Allowing cartel's news under Plaintiff's name in Google search that she "called for genocide", that "she is a racist who called for the next genocide of Armenians" are all false statements of facts and done with actual malice,¶¶ 101, 102, 103. It is also interesting that Defendants here protect the rights of Armenian cartel to place statements of "opinions" under her name in Google results. No comments at this point.

Similarly, everything Defendants did they did with the intent to cause her emotional distress. Their actions were extreme and outrageous. "Behavior is considered outrageous where a defendant: "(1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *McDaniel v. Gile*, 230 Cal. App. 3d 363, 372, 281 Cal.Rptr. 242 (Cal.

1  *Ct. App. 1991)." C.B. v. Moreno Valley Unified Sch. Dist., 544 F. Supp. 3d 973, 994 (C.D. Cal.*

2  *2021).* Everything to which Defendants subjected Plaintiff starting with verification hell and

3  manipulating her Google Business Profile was done to cause her emotional distress and caused

4  her emotional distress.

5  Similarly, Defendants are liable for negligent infliction of emotional distress because they

6  violated a duty under their own TOS both for Google and Youtube (Exh. D, E, F - Judicial Notice

7  is requested for those documents). Those documents are pretty much clear what duties Google

8  had before Plaintiff while operating her Google channel and her Google Business page.

9  Defendants were required to remove all her business information according to their TOS, the

10  similar obligation exists under the Law - Section 230 (c) of CDA, instead, Defendants restricted

11  her Google business page, restricted her videos without giving any explanations or issuing any

12  warning (read: did it in bad faith). Defendants are liable for NIED.

13  **V. FURTHER AMENDMENTS ARE JUSTIFIED**

14

15  Plaintiff's further amendments are justified as she has new facts which became known to

16  her after filing her SAC.  Thus, as she noted before, the fact of her copyright violation on her

17  own photos were made known to Google after filing her SAC. Additionally, in lieu of new facts

18  that Government could be behind Google's acts she needs to amend her SAC to add the United

19  States and the State of California as Defendants. Some other amendments such as violation of

20  promissory estoppel by Defendants by not following their own TOS, violation of good faith

21  doctrine in removing her content are also warranted. Plaintiff didn't file new amendment as there

22  are too many Defendants in this case and new amendment will prejudice them as well as delay

23  her case, and  because it was recommended by the Court in its order granting her SAC to wait for

24  until all motions are settled before filing next amendment (Docket # 93).

25  **VI. CONCLUSION.**

26  Based on foregoing Plaintiff respectfully asks to deny Defendants' motion and/or

27  alternatively allow her to amend her SAC.

28

OPPOSITION TO MOTION TO DISMISS                    39

DATED: January 3, 2025

PLAINTIFF: Aynur Baghirzade

By: *Aynur Baghirzade*