1   AYNUR BAGHIRZADE
    1968 S. Coast Highway #2429
2   Laguna Beach, CA 92651
    Phone: 619-776-4882
3   Email: contact@aynurlawyers.com

4   *AYNUR BAGHIRZADE, IN PRO SE*

5

6

7                   **UNITED STATES DISTRICT COURT**
8                  **SOUTHERN DISTRICT OF CALIFORNIA**

9

10  AYNUR BAGHIRZADE,                    Case No.: 3:24-CV-01077-RSH-MMP

11                  Plaintiff,           **PLAINTIFF'S OPPOSITION TO
                                         DEFENDANTS ARMENIAN
12          v.                           NATIONAL COMMITTEE OF
                                         AMERICA, ARAM HAMPARIAN
13  ARMENIAN NATIONAL                    AND ARMENIAN NATIONAL
    COMMITTEE OF AMERICA, et al.,        COMMITTEE OF AMERICA
14                                       WESTERN REGION'S MOTION TO
                                         DISMISS FOR FAILURE TO STATE
15                                       A CLAIM; MEMORANDUM OF
                                         POINTS AND AUTHORITIES
16

17                                       / Filed concurrently with Exhibits,
                                         Request for Judiciary Notice and
18                                       Proposed Order /

19

20

21                                       Presiding Judge: Hon. Robert Huie

22                                       Magistrate Judge: Hon. Michelle M.
                                         Petit
23

24

25

26

27

28

# TABLE OF CONTENTS

**I.    INTRODUCTION** ……………………………………………………10

**II.    FACTUAL AND PROCEDURAL BACKGROUND**…………………10

**III.    LEGAL STANDARD FOR MOTION TO DISMISS**………………13

1. Ninth Circuit is Hostile to 12 (b)(6) Motion for Failure to State Claim..13

2. Plaintiff pleaded a short and plain statements of the claims for 31 Defendants she has…………………………………………………………..13

**IV.    ARGUMENTS**

**A. Plaintiff successfully established first, second and third RICO claims by sufficiently pleading fraud and Enterprise** ………………………..15

1. Plaintiff successfully pleaded fraud………………………………………15

2. Plaintiff successfully pleaded Associated In Fact Enterprise…………..16

**B. Plaintiff successfully pleaded short and plain statements to establish claim under 15 U.S.C. § 1 Et Seq**……………………………………..21

**C. Plaintiff successfully pleaded short and plain statements to establish claim under California Business and Professions Code Section 16720 Et seq**…………………………………………………………………………22

**D. Plaintiff successfully pleaded short and plaint statements to establish claim under California Business & Professions Code § 17200 Et Seq**..24

**E. Plaintiff successfully pleaded short and plain statements to establish claim under California Code of Civil Procedure § 527.6, Harassment**.25

OPPOSITION TO ARMENIAN NATIONAL COMMITTEE OF AMERICA, ARAM HAMPARIAN, ARMENIAN NATIONAL COMMITTEE OF AMERICA WESTERN REGION'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

2

Case No.: 3:24-CV-01077-RSH-MMP

1. Plaintiff was not required to establish civil conspiracy, since Defendants primarily harassed Plaintiff in Twitter, and in any case she successfully established conspiracy under RICO statute....................26

2. Plaintiff successfully pleaded short and plain statements to show harassment..............................................................................27

3. There is no requirement for the Plaintiff to plead sixth element, and in any case Defendants were put on notice that their speech was not Constitutional..............................................................................28

4. Plaintiff put Defendants on notice that their speech was unprivileged and moreover unprotected speech............................................29

**F. Plaintiff was not bound by heightened pleading standard of defamation claims under California State Law because she brought her claim in a federal court**.........................................................30

1. Plaintiff identified defamatory statements and in any case she didn't even need to do that as the lawsuit was brought before federal court.............30

2. Plaintiff put Defendants on notice that their statements were false.......31

3. Defendants were put on notice that they made their publications based on false facts.........................................................................31

4. Plaintiff put Defendants on notice that their speech was unprivileged and moreover unprotected speech............................................32

**G. Plaintiff pleaded short and plain statements putting Defendants on notice on her claim for malicious prosecution**...............................32

**H. Plaintiff pleaded short and plain statements putting Defendants on notice on her claims for IIED and NIED**....................................34

1. Plaintiff pleaded enough facts to put Defendants on notice that their speech was not a political speech....................................................34

2. Plaintiff pleaded enough facts to put Defendants on notice that their conduct was extreme and outrageous……………………………………34

3. Plaintiff pleaded short and plain statements to establish a claim for NIED……………………………………………………………………36

**I. Plaintiff pleaded short and plain statements putting Defendants on notice that they placed her in false light**………………………………..36

**V. FURTHER AMENDMENTS ARE JUSTIFIED** …………………………..37

**VI. CONCLUSION** …………………………………………………………..38

# TABLE OF AUTHORITIES

*CASES:*

*Angermeir v. Cohen,*
    14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014)……………...……………15, 25

*Auster Oil Gas,*
    Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985)…………………………13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)..13, 15, 21, 27, 28

*Bible Believers v. Wayne Cnty., Mich.,*
    *805 F.3d 228, 246 (6th Cir. 2015)*……………………………………………32

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,*
    113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000)…………………………………17

*Cochran v. Cochran,*
    65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540, 543 (1998)……………..34

*Collins v. Waters,*
    92 Cal. App. 5th 70, 73, 308 Cal. Rptr. 3d 326, 329 (2023)…………..28, 29

*Conley v. Gibson,*
    355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)…………..13

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)………………21

*Earls v. N. Carolina Jud. Standards Comm'n,*
    703 F. Supp. 3d 701, 723 (M.D.N.C. 2023)………………………………34

*Flynn v. Sephora USA, Inc.,*
    No. SACV2200426DOCADS, 2023 WL 5669897, at *5 (C.D. Cal. Aug. 11, 2023)………………………………………………………………………22

*Gallagher v. Philipps,*
563 F. Supp. 3d 1048, 1086 (S.D. Cal. 2021)………………………30, 32, 37

*Gibson v. United States,*
781 F.2d 1334, 1337 (9th Cir. 1986)………………………………………13

*Gilligan v. Jamco Development Corporation,*
108 F.3d 246, 248-49 (9th Cir. 1997)……………………………………13

*Golick v. State of California,*
82 Cal. App. 5th 1127, 1138, 299 Cal. Rptr. 3d 229, 238 (2022)…………36

*Gorbey v. Chambers,*
No. 3:20-CV-806, 2020 WL 2574651, at *2 (M.D. Pa. May 21, 2020)…..14

*Graboff v. Colleran Firm,*
744 F.3d 128, 137 (3d Cir. 2014)…………………………………………..37

*Hall v. City of Santa Barbara,*
833 F.2d 1270, 1274 (9th Cir. 1986)……………………………………13

*H.J. Inc. v. Nw. Bell Tel. Co.,*
492 U.S. 229, 232, 109 S. Ct. 2893, 2897, 106 L. Ed. 2d 195 (1989)…….20

*In re Firestar Diamond, Inc.,*
654 B.R. 836, 865 (Bankr. S.D.N.Y. 2023)…………………………………19

*In re Nat. W. Life Ins. Deferred Annuities Litig.,*
635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009)……………………………17

*Jackson v. Segwick Claims Mgmt. Serv., Inc.,*
699 F.3d 466, 480 (6th Cir. 2012)……………………………………..14, 16

*Jaffe v. Stone,*
    18 Cal. 2d 146, 150, 114 P.2d 335, 338 (1941)……………………………33

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988, 1003 (9th Cir. 2018)……………………………………24, 27

*MacDonald v. Joslyn,*
    275 Cal. App. 2d 282, 289, 79 Cal. Rptr. 707, 711 (Ct. App. 1969)………33

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)……………………21

*Monsanto Co. v. Spray–Rite Service Corp.,*
    465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)……………………21

*McCaskill v. Gallaudet Univ.,*
    36 F. Supp. 3d 145, 159 (D.D.C. 2014)………………………………30, 31

*Odom v. Microsoft Corp.,*
    486 F.3d 541, 555 (9th Cir. 2007)………………………………………17

*Okeke v. Biomat USA, Inc.,*
    927 F. Supp. 2d 1021, 1027 (D. Nev. 2013)……………………………30, 31

*Palatkevich v. Choupak,*
    2014 WL 1509236, at *22 (S.D.N.Y. Jan. 24, 2014)………………………19

*Salinas v. United States,*
    522 U.S. 52, 54–55, 118 S. Ct. 469, 472, 139 L. Ed. 2d 352 (1997)………19

*Scheur v. Rhodes,*
    416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)……………13

*Skinner v. Tuscan Inc.,*
    No. CV-18-00319-TUC-RCC, 2020 WL 5946898, at *3 (D. Ariz. Oct. 7, 2020)……………………………………………………………………37

*Sheldon Appel Co. v. Albert & Oliker,*
    47 Cal. 3d 863, 871, 765 P.2d 498, 501 (1989)……………………………32

1

2
*Theatre Enterprises,*
3
    *346 U.S., at 540, 74 S.Ct. 257*……………………………………………21

4
*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
5
    551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007)…….24

6
*Travis v. Yates,*
7
    No. 1:06CV0438 AWIDLBP, 2007 WL 165196, at *2 (E.D. Cal. Jan. 16,
2007)…………………………………………………………………..14

8

9
*United Artists Corp. v. United Artist Studios LLC,*
10
    No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *8 (C.D. Cal. Oct.
11
17, 2019)…………………………………………………………………….25

12
*United States v. Applins,*
13
    637 F.3d 59, 82 (2d Cir. 2011)……………………………………………19, 26

14

15
*United States v. Garcia,*
    497 F.3d 964, 967 (9th Cir. 2007)…………………………………………25

16

17
*United States v. Satterfield,*
18
    548 F.2d 1341, 1344 (9th Cir. 1977)………………………………………14

19
*United States v. Turkette,*
20
    452 U.S. 576, 576–77, 101 S. Ct. 2524, 2525, 69 L. Ed. 2d 246 (1981)....
21
………………………………………………………………………..14, 16

22
*United States v. Zemlyansky,*
23
    908 F.3d 1, 17 (2d Cir. 2018)……………………………………………19

24

25

26

27

28

*STATUTES:*

California Business & Professions Code, § 16720……………………………..22
California Business & Professions Code, § 1720……………………………….24
California Business & Professions Code, § 6043.5………………………………35
California Civil Code, § 51…………………………………………………..22
California Code of Civil Procedure, § 527.6………………………………25, 28
California Penal Code, § 182…………………………………………………..20
California Penal Code, § 422…………………………………………………..20
Federal Rules of Civil Procedure, § 8………………………………….10, 13, 14
Federal Rules of Civil Procedure, § 9 ……………………………10, 15, 25, 31
Federal Rules of Civil Procedure, §10………………………………………..24
Federal Rules of Civil Procedure, §18………………………………………..14
Federal Rules of Civil Procedure, § 20………………………………………..14
Federal Rules of Civil Procedure, § 12(b)6……………………………………24
15 U.S.C. § 1 …………………………………………………………………..21
18 U.S.C. §§ 1961-68…………………………………10, 14, 15, 17, 19, 20, 25, 26

# I. INTRODUCTION

Defendants Armenian National Committee of America ("ANCA"), Aram Hamparian, Armenian National Committee of America Western Region ("ANCAWR") filed a motion to dismiss alleging that 74 pages for roughly 32 Defendants are too much, that's why Plaintiff's SAC does not comply with a "short and plain statement " requirements under Rules 8 (a)(2), 8 (d)(1) of the Fed. Rules of Civ. Proc., that Plaintiff failed to show existence of the "enterprise" - argument, which deserves a Nobel Prize, that Plaintiff alleges conspiracies without showing any evidence, that Defendants' attacks on Plaintiff were political speech and many more. Defendants are clearly unaware about RICO statute and its requirements, they probably do not know or pretend that they do not know what is a predicate act and why Plaintiff was referring in her SAC to other instances of their Clients' illegal activity or illegal activity of other people related to them. Allegations that Plaintiff didn't plead fraud for her RICO claims with particularity under Rule 9 (b) is false as fraud was pleaded with particularity and in any case fraud doesn't need to be pleaded with particularly in complex RICO cases and Plaintiff's case is a complex RICO case.

# II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her complaint in June 21, 2024, after being targeted by Defendants for her speech, and after experiencing ongoing harassment, intimidation, death, eviction and other threats as well as entertaining long term difficulties with getting cases from the referral organizations. As Plaintiff outlined in her SAC, she became a target of Defendants from approximately 2021, since the time she moved to the United States.

Further, Plaintiff filed her FAC on August 15, 2024, and served Defendants. On November 16, 2024, Plaintiff after Court's approval filed her SAC.

Defendants are wrong that initial statements in her SAC (¶¶ 36-60) are unrelated to her claims, these particular statements are about ANCA, ANCAWR, Aram Hamparian and how they illegally chase people like Plaintiff, facts about  war between Azerbaijan

1    and Armenia were given to show why Plaintiff became their target. Simon Maghakyan

2    was not one of the various Armenian Twitter users as they allege, he didn't just have

3    speeches on ANCA's events, he was a Community Development Coordinator at this

4    organization,¶ 65, SAC. In other words, Simon Maghakyan was a manager at ANCA and

5    as such was presenting and representing ANCA when he harassed Plaintiff,¶ 65, SAC. It

6    is amusing how Defendants try to put the responsibility on various Twitter accounts for

7    everything happened and claim that they were not responsible for those acts. This is

8    wrong for several reasons. First, this is wrong because those people were harassing

9    Plaintiff in the same way as Defendants were harassing people in the past (¶¶ 40 - 42,

10   SAC), second they were engaged in the same pattern of mail & wire fraud, as Defendants

11   regularly engage against their opponents (¶¶ 43-46, SAC ), third, rich history of terrorism

12   and terror related acts and death threats Plaintiff was regularly receiving constitute the

13   same pattern (¶¶ 50-56, SAC). Defendants really need to read what constitute a pattern of

14   racketeering activity if they think that predicate acts she was pleading in her SAC have

15   no relationship to them. Thus, Plaintiff pleaded in her SAC that Defendants are either

16   governed or have significant ties with Armenian Revolutionary Federation ("ARF"), ¶¶

17   50-54, SAC. She further referred in her SAC to the research paper prepared by the

18   Terrorism Analysis branch in coordination with FBI in 1984 titled "Global Terrorism: The

19   Justice Commandos of the Armenian Genocide", which stated that "terrorism was at

20   inception of ARF",¶ 54, SAC. The document was further added as an Exhibit A in

21   Plaintiff's opposition to Defendants Yelp Inc, and Jeremy Stoppelman's motion to

22   dismiss (Docket # 128, ESF page No.2255 - 2276), Plaintiff therefore incorporates this

23   document here. Additionally, Plaintiff wants to incorporate here the research letter

24   prepared by the Citizens for Responsibility and Ethics in Washington ("CREW"), where

25   they brought evidence that Defendants are agents, and in fact inseparable part of ARF

26   (Docket No. 128, ESF page No. 2277 - 2284). Judicial notice for this document was

27   requested by the Plaintiff before, she requests the same Judicial notice here as well.

28

OPPOSITION TO ARMENIAN NATIONAL COMMITTEE OF AMERICA, ARAM HAMPARIAN,
ARMENIAN NATIONAL COMMITTEE OF AMERICA WESTERN REGION'S MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff also in her SAC made statements that "Armenia's official ideology is built on Tsegakron, the nationalistic (fascist) ideology established by former Nazi collaborator G. Njdeh, whose enormous monuments are erected everywhere in Armenia.", ¶ 262, SAC. Plaintiff hereby incorporates here an Appendix to Congressional Records, A 2074, where Congressman Frank E. Hook for the state of Michigan back in 1945 offered his article about how ARF corrupted U.S. political system, gave some evidence on its financial sources, offered evidence on co-operation of ARF with Nazis and even getting subsidies from them, openly named this foreign political party "fascist". This Appendix was previously added to Plaintiff's Opposition to Defendants Google LLC and Alphabet Inc.'s motion to dismiss and judicial notice was requested, the same judicial notice is requested here for this document (Docket # 145, ECF page No. 2573 - 2576). Article is a very valuable source of information describing how dashnaks persecuted their opponents in the United States, including Armenians, who refused cooperating with them, what type of military strict system they have inside of their organization and how they operate.

In lieu of those facts it is quite strange to see how Defendants now try to blame Plaintiff that she considers innocent Armenian organizations responsible for her troubles. Those "innocent" Armenian organizations are megaphone of the foreign terrorist organization, tightly affiliated with them, having rich history of involvement into terrorist acts both in the United States and internationally. Plaintiff has nothing to do with innocent Armenians, she is targeted by the terrorist organization and by the way, by the same Hairenik which back in 1933 threatened Archbishop Tourian's life and eventually delivered its threats. Hairenik made maliciously defamatory news about Plaintiff thinking somehow that it owns and rules Plaintiff's career and license too, ¶ 116, SAC. Defendants are wrong - we are dealing with terrorist organization having ambition to replace the U.S. Constitution and rule this country based on its goals, and unfortunately we observe now how it deeply corrupted the entire U.S. system.

## III. LEGAL STANDARD FOR MOTION TO DISMISS.

### 1. Ninth Circuit is hostile to 12(b)(6) Motions for Failure to State a Claim.

The Ninth Circuit is particularly hostile to motions to dismiss for failure to state a claim. "The federal rules require only a "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P 8 (a)*. The Rule 8 standard contains "a powerful presumption against rejecting pleading for failure to state a claim." *Auster Oil Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985); see also Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986)* ("It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.").The Supreme Court has explained that 'it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Scheur v. Rhodes, 416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90* (1974)). In reviewing the sufficiency of a complaint, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Development Corporation, 108 F.3d 246, 248-49 (9th Cir. 1997).*Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986)* (quoting *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).)*. "Detailed factual allegations are not required", *Twombly, 550 U.S., at 555, 127 S.Ct. 1955*. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the plaintiff is entitled to relief for the misconduct alleged. *Id., at 556, 127 S.Ct. 1955.*

### 2. Plaintiff pleaded short and plain statements of the claims for 31 Defendants she has.

"Rule 8(a) does not require an elaborate recitation of every fact a plaintiff may ultimately rely upon at trial, but does require a statement sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47."

1    *Travis v. Yates, No. 1:06CV0438 AWIDLBP, 2007 WL 165196, at *2 (E.D. Cal. Jan. 16,*

2    *2007).* "Rule 20 governs permissive joinder of parties and explains that a Plaintiff may

3    only join multiple Defendants in a single case if: (1) "any right to relief is asserted against

4    them jointly, severally, or in the alternative with respect to or arising out of the same

5    transaction, occurrence, or series of transactions or occurrences," and (2) "any question

6    of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)

7    (2)." *Gorbey v. Chambers, No. 3:20-CV-806, 2020 WL 2574651, at *2 (M.D. Pa. May*

8    *21, 2020).* "In other words, notwithstanding the broad joinder-of-claims language of Rule

9    18(a), a Plaintiff may join multiple Defendants in a single complaint only if he asserts at

10   least one claim linking *all* Defendants that (1) arises out of the same transaction or

11   occurrence and (2) involves a common question of law or fact. *Id.*; Wright & Miller,

12   *supra*, § 1655." *Id.* "Charges against multiple defendants may not be joined merely

13   because they are similar in character, and even dissimilar charges may be joined against

14   multiple defendants if they arise out of the same series of transactions constituting an

15   offense or offenses." *United States v. Satterfield, 548 F.2d 1341, 1344 (9th Cir. 1977).* So,

16   basically, despite Defendants' allegations that claims against multiple defendants are not

17   allowed, Rules of Fed. Civ. Pro. are quite clear when and under what circumstances they

18   are allowed. Here, Defendants are sued under Racketeer Influenced Corrupt

19   Organizations Act ("RICO") allowing to sue multiple organizations, companies,

20   individuals for forming a cartel (Mafia group) in order to undertake illegal activity

21   described under RICO statute as a predicate act. RICO claims are pleaded against all

22   Defendants. Contrary to allegations of Defendants, Plaintiff is not suing unrelated

23   Defendants, they all are related as predicate acts listed by the Plaintiff in SAC show, ¶¶

24   79 - 93, SAC. "…an enterprise may be an illegitimate enterprise, e.g., a Mafia family, or

25   a wholly legitimate enterprise, e.g., a corporation." *United States v. Turkette, 452 U.S.*

26   *576, 580-81 (1981).* "A plaintiff may plead more than one enterprise. Pleading

27   alternative enterprises "does not undermine the plausibility of the pleadings." *Jackson v.*

28

*Segwick Claims Mgmt. Serv., Inc., 699 F.3d 466, 480 (6th Cir. 2012).* "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.* Plaintiff's SAC shows very well that she is suing an Associated in Fact Enterprise with the common purpose to destroy her business, career and reputation as well as leave her with no income. Alternative enterprises in this case are referral organizations (responsible for her income), Google and Yelp (responsible for the rating of her business and reputation) and these particular Defendants  putting everything in motion in all these enterprises. Additionally, Plaintiff's every cause of action shows against what Defendants they are made, the allegation that Defendants were not put on notice what claims were made against them are wrong.

## IV. ARGUMENTS

### A. Plaintiff successfully established first, second and third RICO claims by sufficiently pleading fraud and Enterprise.

#### 1. Plaintiff successfully pleaded fraud.

"In …complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity." Instead, "Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Angermeir v. Cohen, 14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014).* The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading, ... so the happenstance that a complaint is 'conclusory,' whatever exactly that overused lawyers' cliche means, does not automatically condemn it". *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 590, 127 S. Ct. 1955, 1985, 167 L. Ed. 2d 929 (2007).* "The federal rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties" *Id.*

Plaintiff pleaded with enough particularity mail and wire fraud in her SAC. Thus, she pleaded that after Defendant ANCAWR organized a meeting near LA Consulate when group of Azerbaijanis were beaten "a group of Armenians with intent to defraud by using mail and wire sent numerous complaints to Los Angeles Police Department about sheriff Fakhri Mirzaguliyev demanding his resignation, all of those complaints investigation proved to be false and defamatory.", ¶ 40, SAC. Plaintiff also showed the time and location when and where the incident happened - it happened near LA Consulate on or around July 21, 2020.  Plaintiff also pleaded that "In 2022, DEFENDANTS ANCA and ANCAWR with intent to defraud targeted Doctor Mehmet Oz during his election campaign to U.S. Senate. Before launching a smear campaign against Dr. Oz DEFENDANT ANCA and ANCAWR several times using wire asked him by tagging his Twitter account whether he recognizes Armenian genocide or not.", ¶ 43, SAC. Further Plaintiff pleaded with enough particularity how group of Armenians similarly as Defendants targets business accounts of representatives of Turkish and Azerbaijani community by spreading lies and misinformation just because they are unhappy about their speech, ¶¶ 44 - 47, 49, SAC. Moreover, the fact how this pattern of wire fraud affected Plaintiff is very well pleaded in other parts of the SAC showing how effectively Defendants conspired with online platforms such as Google and Yelp and how they primarily attacked Plaintiff in Twitter for her speech, ¶¶ 69, 71-77, 79, 82-119, SAC. Plaintiff pleaded with enough particularity how Defendants were engaged in the pattern of mail & wire fraud.

### 2. Plaintiff successfully pleaded Associated in Fact Enterprise.

"…an enterprise may be an illegitimate enterprise, e.g., a Mafia family, or a wholly legitimate enterprise, e.g., a corporation." *United States v. Turkette, 452 U.S. 576, 580-81 (1981).* "A plaintiff may plead more than one enterprise.  Pleading alternative enterprises "does not undermine the plausibility of the pleadings." *Jackson v. Segwick Claims Mgmt. Serv., Inc., 699 F.3d 466, 480 (6th Cir. 2012).* "If a party makes alternative

statements, the pleading is sufficient if any one of them is sufficient." *Id.* "RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Plambeck, 802 F.3d at 673 (quoting 18 U.S.C. § 1961(4))* Multiple corporations or other legal entities can, when working in concert either overtly or covertly, form an association-in-fact RICO enterprise." *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000).* "An associated-in-fact enterprise must have "a common purpose of engaging in a course of conduct." *In re Nat. W. Life Ins. Deferred Annuities Litig., 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009).* "The common purpose element, however, does not require the enterprise participants to share all of their purposes in common. *See, e.g., Odom,* 486 F.3d at 552 (finding a single common purpose sufficient). And all members of the enterprise need not be directly working with all other members of that enterprise. *See United States v. Feldman,* 853 F. 2d 648 (9th Cir.1988). "What RICO does require as a showing of common purpose is 'proved by evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *In re Nat. W. Life Ins. Deferred Annuities Litig., 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009).*

Defendants' allegations that Plaintiff lumps Defendants in one lawsuit are wrong. Plaintiff pleaded enough facts to show that all Defendants are related to each other with the common purpose to destroy Plaintiff's business, income, reputation and generally well-being, that's why Defendants corrupted Yelp and Google (responsible for business rating and reputation), corrupted all referral organizations so that Plaintiff has no client and moreover gets into trouble because she was sent referrals which could potentially jeopardize her license, corrupted her landlord to continuously harass and intimidate her, stole her car so that she has troubles with traveling for business and personal needs. As to the structure and longevity, Plaintiff pleaded separate enterprises (referral organizations), online platforms (Google and Yelp) and her landlord because how her car disappeared

from her garage. They all are related to each other by the commonality of their business and by the nature of the predicate acts. Additionally, Plaintiff incorporated in her SAC a research paper - "Global Terrorism: The Justice Commandos of the Armenian Genocide", which states that ARF is a secret foreign terrorist organization,¶ 54, SAC. ARF has also its offices in the United States. As we are talking about secret organization many members of this organization are quite respectable people agitating for the Armenian genocide recognition in public but inside of their communities quite openly encouraging terrorism. Plaintiff pleaded before how a lawyer licensed in California quite openly encouraged terrorism, ¶¶ 55, 56, SAC. Since these people could be lawyers, judges, businessmen there is no doubt that they form a network when it is needed for their organization's purposes to carry out its goals, and unfortunately Plaintiff became their goal. Therefore, alleging now that referral organizations do not have dashnaks as its members or in their leadership or Google and Yelp does not have them in their staff is laughable. However, in lieu of new discovered circumstances, Plaintiff believes that instructions to treat Plaintiff how she was treated were given on a government level, since sending police to stop her every month is not something which can be done on a lower level. Therefore, since Defendants put in motion the whole Enterprise which associated itself with dashnaks, Plaintiff successfully pleaded enough facts to show how different members of this Enterprise coordinated, acted and persecuted Plaintiff. They all used similar tactics and methods, ¶¶ 71 - 214, SAC.

In terms of personality of Simon Maghakyan Plaintiff made it clear in her SAC that Simon was not just a random speaker at ANCA's events, he was a Community Development Coordinator for this organization and as such he was presenting and representing Defendants when he harassed her online, and then placed a fake review in her Yelp account, ¶ 65, SAC. Also, after Simon Maghakyan's online harassment Plaintiff received two other threats in her Twitter account threatening her with "another Khojali .. this time in Irvine and comparing her with cockroaches", ¶ 67, SAC. Strangely enough

cockroaches started appearing in Plaintiff's further residence places - one in the hotel in her cosmetic bag, another one in her temporary apartment in San Diego (after she reported to Defendant Attorney Search Network and Jake Baloian her new address),¶¶ 175, 208, SAC, and third cockroach issue appeared at her new residential address when the landlord sent her a document to sign for cockroach treatment while she had flies, ¶ 208, SAC. So, claiming now that story with Maghakyan was an isolated event is wrong. Plaintiff didn't need to show signed agreement to plead conspiracy either. "Indeed, courts have recognized that not only are "Section 1962(d) conspiracies ... easier to prove than violations of [Section] 1962(c)," *Palatkevich v. Choupak, 2014 WL 1509236, at *22 (S.D.N.Y. Jan. 24, 2014)*, but RICO conspiracies are also easier to demonstrate than "basic" conspiracies, as RICO conspiracies "do not require proof that a defendant knowingly agreed to facilitate a specific crime (e.g., mail fraud)" and "have a more removed mens rea requirement" than "basic" conspiracies. *Zemlyansky, 908 F.3d at 11, n. 7; see also Salinas, 522 U.S. at 63, 118 S.Ct. 469.* "Unlike 'basic' conspiracy, RICO conspiracy does not require proof that the defendant intended that specific criminal acts be accomplished."). *In re Firestar Diamond, Inc., 654 B.R. 836, 865 (Bankr. S.D.N.Y. 2023).* And also, since Plaintiff pleaded enough predicate acts she does not need to establish a conspiracy by any other special means. "..Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable.")", *United States v. Applins, 637 F.3d 59, 82 (2d Cir. 2011).* In terms of the predicate acts Defendants are mistaken too. Plaintiff didn't just plead defamation, Plaintiff pleaded enough predicate acts of mail & wire fraud with Defendants' involvement,¶¶ 40, 42 - 49,¶¶ 79, 82 -96, 101 - 104, SAC. Defendants also sent fraudulent complaint to the State Bar claiming that Plaintiff was "calling for the genocide of Armenians" as they basically did it with police officer protecting innocent people near LA Consulate,¶ 65, 91, 92, SAC. Besides, mail & wire fraud, Plaintiff pleaded enough

predicate acts of Defendants' involvement into terror acts, ¶¶ 50 - 59, SAC. Terrorism is a predicate act according to RICO statute, *§ 2332b, 18 U.S. Code*. Besides terrorist acts listed in SAC, Plaintiff requests to take Judicial notice of other terrorist acts to which leadership of ARF and ANCA as well as their members have relationship. The most recent one happened in January, 2023, when a member of ANCA - Aram Brunsom wishing to become a fedayi ignited a black powder in his apartment which resulted in explosion. As it was later discovered he was preparing to bomb Azerbaijani embassy. (See Exh. B - Judicial notice requested). Since Plaintiff was getting nonstop death threats after she was targeted by Defendants for her speech in Twitter, Plaintiff pleaded enough predicate acts, ¶¶ 67, 79, 80, 81, SAC. Death threats constitute a predicate act. "Racketeering activity" is defined in RICO to mean "any act or threat involving" specified state-law crimes". *H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 232, 109 S. Ct. 2893, 2897, 106 L. Ed. 2d 195 (1989).* Threatening somebody with a murder is a state crime in California under *§ 422 of Cal. Penal Code.* Conspiracy to kill someone is also a crime, *§ 182 Cal. Penal Code.* Both constitute predicate acts. As to the continuity of the behavior, Defendants need open Google Search where they placed their false accusations under Plaintiff's name and also read SAC carefully to see in how many ways and for how long time Defendants are after Plaintiff. Additionally, Plaintiff pleaded enough facts to establish that Defendants took a control over her business as she couldn't stop them from their fraudulent actions and she was injured as a result of such control, ¶ 230, SAC. She pleaded in her SAC that Defendants gained control over her business by placing defamatory news under her name in Google Search,¶ 232, SAC. She also pleaded that she suffers significant losses as a result of Defendants' actions.,¶ 234, 235, SAC. As to the facts how Defendants acquired control over Plaintiff's business they need to read the entire SAC, specifically ¶¶ 71 - 227, SAC. Posting online is not criminal unless it is a fraud to deceive public about qualities of the Plaintiff's character and business to deprive her of the income - therefore, Plaintiff successfully pleaded wire & mail fraud.

**B. Plaintiff successfully pleaded short and plain statements to establish claim under 15 U.S.C. § 1 Et Seq.**

Defendants' allegations that Plaintiff failed to implicate them for violation of Sherman & Clayton Act is not true. Plaintiff pleaded enough facts that Defendants didn't act independently but did it in tandem and conspiracy with one another, ¶¶ 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114,115,116,117, SAC. "Because § 1 of the Sherman Act "does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination, or conspiracy," *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)*, "[t]he crucial question" is whether the challenged anticompetitive conduct "stem[s] from independent decision or from an agreement, tacit or express," *Theatre Enterprises, 346 U.S., at 540, 74 S.Ct. 257." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)*. "..proof of a § 1 conspiracy must include evidence tending to exclude the possibility of independent action, see *Monsanto Co. v. Spray–Rite Service Corp., 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)*; and at the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently, see *Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)*. Defendants now want to claim that they acted "independently" by placing their news under Plaintiff's name in Google search, that Google Search under Plaintiff's name brings only news of Armenian cartel about her completely accidentally - Defendants want to say that it was not in agreement with Defendants Google LLC., Sundar Pichai and Alphabet Inc.,¶¶ 101, 102, 116, 117.  Similarly, they want to claim that fake reviews in her Google and Yelp accounts appeared completely accidentally shortly after she was attacked by their tweets, 79 - 118, SAC. Defendants also want to say that the threats Plaintiff received in her Twitter account shortly after she was targeted by their

Community Manager Coordinator Simon Maghakyan appeared completely accidentally, ¶¶ 65, 67, SAC. They want to say that death threats she was getting nonstop in her phone, emails and Twitter account shortly after she was targeted by Defendants appeared also completely unexpectedly, and those threats have no relationship to the fact that Defendants are affiliated with the terror group, ¶¶ 79, 94, SAC.   Defendants also want to say that Defendant Yelp Inc. got completely mad and blocked Plaintiff's phone number completely accidentally while keeping in her account selectively outrageous fake reviews despite her protests, they want also to say that a person who approached her with the deal "to close her Twitter account or face consequences" was completely independent person and they do not use Yelp to silence businessmen, ¶¶ 76, 94 - 100, SAC ? They want to say that people approaching her with questions "Do you recognize Armenian genocide ?" and warning her that "Yelp is only the beginning" were independent people having no relationship to them, ¶ 70, (See Exh. F and G to Opposition to Defendants Yelp Inc. and Jeremy Stoppelman's Motion to Dismiss, Docket # 128, ECF page No. 2344 - 2347 ) ? Similarly, they allege that the fact that all referral organizations where Plaintiff was a member started sending her fraudulent referrals completely accidentally and it was completely independent action not related to their "political" ties in Congress without FARA registration, ¶¶ 144 - 188, SAC ?

**C. Plaintiff successfully pleaded short and plain statements to establish claim under California Business and Professions Code Section 16720 Et seq.**

California Business and Professions Code ("B.P.C.") § 16721(a) provides that "No person within the jurisdiction of this state shall be excluded from a business transaction on the basis of a policy expressed in any document or writing and imposed by a third party where that policy requires discrimination against that person on the basis of any characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code or on the basis that the person conducts or has conducted business in a particular location." *Flynn v. Sephora USA, Inc., No. SACV2200426DOCADS, 2023 WL 5669897,*

*at \*5 (C.D. Cal. Aug. 11, 2023).* In terms of the policy upon which Defendants acted they need to read SAC carefully,¶¶ 54, 88, 262, 263, 264, 266, SAC. Plaintiff incorporated by reference to her SAC the research paper named: Global Terrorism: Justice Commandos of Armenian Genocide, prepared in coordination with FBI and CIA,¶ 54, SAC (Docket # 128, ESF page No.2255 - 2276). This document describes very well on what policies Defendants ANCA, ANCAWR and Aram Hamparian acted. In her SAC Plaintiff also pleaded that "Defendants ANCA and ANCAWR with intent to defraud by using mail and wire organize smear campaigns against representatives of Azerbaijani and Turkish origin on a regular basis, stalk their residential, businesses addresses as well as their banking information in the United States, and by using its network of Armenians working for the U.S. companies (Armenian Enterprise) regularly harass and defame them to damage their reputation, income, emotional wellbeing and generally to make their life hard in the United States", ¶ 42, SAC. Further, in her SAC Plaintiff pleaded that "By calling it "carcinoma" PLAINTIFF didn't mean any harm to Armenians specifically, she meant that it has to be reformed to eradicate nationalistic Njdeh philosophy of Aryan race superiority to which Armenians worship till now and which actually keeps killing people both in Armenia and Azerbaijan.",¶ 88, SAC. Further, Plaintiff pleaded "Armenia's official ideology is built on Tsegakron, the nationalistic (fascist) ideology established by former Nazi collaborator G. Njdeh, whose enormous monuments are erected everywhere in Armenia…",¶ 262, SAC. Plaintiff also pleaded in her SAC that Defendants are either governed or have significant ties with ARF - a terrorist organization, ¶ 50, 51, SAC. Plaintiff also, incorporated here Letter of Citizens for Responsibility and Ethics In Washington as well as APPENDIX TO THE CONGRESSIONAL RECORD previously filed as Exhibits to Plaintiff's Opposition to Defendants' Yelp Inc. and Google LLC's motions to dismiss (Docket # 128, ECF page No.2255 - 2276 and Docket # 145, ECF page No. 2573 - 2576) - Judicial notice is requested. Moreover, Defendants again ignore Rule 10 (c) of Federal Rules of Civil Procedure allowing incorporation by reference

everywhere in the pleading, and every paragraph, every claim in Plaintiff's SAC starts with "PLAINTIFF hereby incorporates by reference each and every paragraph, as if fully set forth herein", therefore under Rule 10 (c) of Federal Rules of Civil Procedure the whole SAC of Plaintiff shall be read as one whole single document." "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion…" Rule 10 (c) of F.R.C.P. Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a wellpleaded claim." *Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).* "..courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss…" *Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007).*

**D. Plaintiff successfully pleaded short and plaint statements to establish claim under California Business & Professions Code § 17200 Et Seq.**

Section 17200 et seq. of California Business and Professional Code defines unfair competition as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising …" "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion…" *Rule 10 (c) of F.R.C.P." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).* Defendants' allegations that Plaintiff failed in pleading her claim for this cause of action are legally and factually wrong, because Plaintiff pleaded all facts about Defendants' fraudulent actions in SAC in details, and all claims incorporated by reference all other parts of SAC. Defendants want a Court to make a decision based on how Plaintiff pleaded claims separately from the rest of her complaint, which would be a direct violation of Rule 10 (c) of F.R.C.P and other federal court decisions on the matter. "..courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss…" *Tellabs, Inc. v.*

*Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 *(2007)*. Additionally, Plaintiff pleaded with specificity all wire and mail fraud committed by Defendants in compliance with requirements of Rule 9 (b) of F.R.C.P. ¶¶ 40, 42 - 49, 71 - 76, 79 - 96, SAC. "In …complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity." Instead, "Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Angermeir v. Cohen, 14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014).*, and since RICO statute is involved, Plaintiff attributes to Defendants all other mail & wire fraud committed by other Defendants as acts of one conspirator are attributable to another. Courts regularly hold that "[A] conspirator [is] criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Garcia, 497 F.3d 964, 967 (9th Cir. 2007).*

**E. Plaintiff successfully pleaded short and plain statements to establish claim under California Code of Civil Procedure § 527.6, Harassment.**

"Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." Cal. Code Civ. Proc. § 527.6(b)(3). "Course of conduct" is a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email". *Id.* § 527.6(b)(1). Additionally, the harassment "must be that which would cause a reasonable person to suffer substantial emotional distress, and must

actually cause substantial emotional distress to the petitioner." *Id.* § 527.6(b)(3). The statute exempts "constitutionally protected activity.' " *Id.* § 527.6(b)(1). *United Artists Corp. v. United Artist Studios LLC, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *8 (C.D. Cal. Oct. 17, 2019).* Plaintiff pleaded short and plain statements putting Defendants on notice that their actions constituted harassment. Plaintiff was continuously harassed by Defendants and by their agents for about 3 years now, and directly by Defendants for the last year. Defendants primarily targeted her in her Twitter account by placing numerous tweets, those tweets served no legitimate purpose, if they wanted to file a complaint on her to the Bar they could do that without publishing numerous tweets declaring this intention and tagging her account - clearly, the only purpose Defendants had is to intimidate, threaten and damage Plaintiff, ¶¶ 79 - 93, SAC.  Defendants didn't obviously want just to file a complaint to the Bar.

**1. Plaintiff was not required to establish civil conspiracy, since Defendants primarily harassed Plaintiff in Twitter, and in any case she successfully established conspiracy under RICO statute.**

Plaintiff doesn't need to plead any conspiracy since Defendants primarily targeted her publicly by tagging her X account and account of the State Bar of California and threatening her with disbarment, ¶¶ 79 - 93, SAC. Defendants did it continuously for about 2 months, nonstop, for no legitimate purpose. Defendants could complain to the Bar without harassing Plaintiff publicly, on the top of that as rejection letter from the State Bar showed it later, Defendants didn't have even any legitimate purpose to prosecute Plaintiff for her speech and go after her license.  So, Plaintiff successfully pleaded harassment claim even without pleading any conspiracy. And in terms of the conspiracy she is not bound by the requirement of any civil conspiracy under state law since she successfully pleaded conspiracy under RICO, and RICO statute supersedes any state conspiracy claim. "Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the

enterprise's affairs, the inference of an agreement to do so is unmistakable.", United States v. Applins, 637 F.3d 59, 82 (2d Cir. 2011). Defendants are inseparable part of ARF, very well known by persecution of the people of the same background as Plaintiff,¶¶ 50 - 54, SAC. Defendants organized the similar type of smear campaigns against other representatives of the nation/ethnicity Plaintiff belongs in the past,¶¶ 40 - 49, SAC. Defendants for about two months harassed Plaintiff in social media - specifically Twitter by placing non-stop defamatory statements about her, tagging State Bar of California's twitter account and demanding her disbarment,¶¶ 79 - 93, SAC. After Defendants made those tweets, Plaintiff's emails, social media accounts, phone were flooded with threats, including death threats,¶¶ 79 - 81, SAC. As Plaintiff successfully showed a pattern of racketeering activity and this activity shows agreement, she does not need to prove agreement under civil conspiracy. Additionally, as to the matter of identifying people who harassed her in her Twitter account immediately after Defendants targeted her it is a matter of discovery, not a pretrial motion stage. Plaintiff believes that identifying those people would not be a problem and it's apparent from their actions that they are very much related to Defendants.

### 2. Plaintiff successfully pleaded short and plain statements to show harassment.

Plaintiff considers it annoying both for herself and for the Court to be forced in fact to repeat her statements in SAC in this motion. Due to the number of Defendants in this case, complexity of the issues and interrelations of all facts with one another, all of them were listed in General Allegations part of SAC. The particular statements of Defendants constituting harassment are all listed in  SAC, ¶¶ 79 - 93, SAC. Those statements were incorporated by reference to her Harassment cause of action, ¶ 293, SAC. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion…" *Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).*  Additionally, Plaintiff was not required to plead in her

OPPOSITION TO ARMENIAN NATIONAL COMMITTEE OF AMERICA, ARAM HAMPARIAN, ARMENIAN NATIONAL COMMITTEE OF AMERICA WESTERN REGION'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

27                          Case No.: 3:24-CV-01077-RSH-MMP

SAC all facts under Twombly. " The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading... so the happenstance that a complaint is 'conclusory,' whatever exactly that overused lawyers' cliche means, does not automatically condemn it". *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 590, 127 S. Ct. 1955, 1985, 167 L. Ed. 2d 929 (2007)*. "Under the notice system of pleading established by the Rules of Civil Procedure, ... the ancient distinction between pleading 'facts' and 'conclusions' is no longer significant". *Id.* "The federal rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties" *Id.* Plaintiff pleaded enough facts to give Defendants a fair notice of harassment claim.

**3. There is no requirement for the Plaintiff to plead sixth element, and in any case Defendants were put on notice that their speech was not Constitutional.**

"Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." *Cal. Code Civ. Proc. § 527.6(b)(3)*. Statute has all elements of harassment claim for the Plaintiff to plead. It is obvious that constitutionally protected speech would not be punishable as harassment, but there is no obligation on the part of the Plaintiff to plead it. For the Plaintiff it was pretty much clear from the beginning that Defendants' speech was not constitutionally protected and was made with actual malice. "Actual malice is a term of art in defamation law. If you, with actual malice, publish falsehoods about a public figure, you forfeit the constitutional protection." *Collins v. Waters, 92 Cal. App. 5th 70, 73, 308 Cal. Rptr. 3d 326, 329 (2023), as modified on denial of reh'g (June 5, 2023), review denied (Aug. 9, 2023)*. Defendants' allegations that Plaintiff didn't give in her SAC enough information to put them a notice that their speech was unprotected is false. Plaintiff gave enough information in her SAC that Defendants made their statements by distorting and cutting off her tweets, by tagging State Bar of California Twitter account and demanding her disbarment, that they targeted her in her professional capacity as a

lawyer, that they placed defamatory news and tweets under her name in Google Search to maliciously damage her reputation, career and license, that they lied that she called for genocide of Armenians, ¶¶ 79 - 93, SAC. This all gives Defendants a good notice that their speech was unprotected  as it was made with actual malice, that it was an invitation for their community to attack Plaintiff personally, and those attacks immediately followed, that Plaintiff was getting death threats following their news immediately. Under Rule 8 (a) of F.R.C.P. Plaintiff was required only to plead short and plain statements to give a notice, she was not required to plead detailed facts. Additionally, Plaintiff is not even required to establish an actual malice as Plaintiff was neither a public official, nor a public figure.

**4.  Defendants' claim that their speech was a political speech fails as their speech was a targeted harassment made with actual malice.**

"The federal constitutional guarantee of free speech has its fullest and most urgent application in the conduct of political campaigns. Those engaged in political debate are entitled not only to speak responsibly, but also to speak foolishly and without moderation." *Collins v. Waters, 92 Cal. App. 5th 70, 73, 308 Cal. Rptr. 3d 326, 329 (2023), as modified on denial of reh'g (June 5, 2023), review denied (Aug. 9, 2023).* Plaintiff wasn't a politician, she was not running for the office in the United States or Azerbaijan, she wasn't targeted during her election campaign. Instead, she was targeted because she is a lawyer, Defendants demanded her disbarment, not her resignation as a politician. Lawyers are not elected in California or in the United States, they take a bar exam and get a license to practice Law. Additionally, Plaintiff didn't make any statement by using her business account, she was tweeting in her personal account  - targeting her business and her professional  license because of her political speech is indicative of the intent and malice to damage her. In comparison with Dr. Oz, whom Defendants targeted while he was running for the U.S. Senate, Defendants have no constitutional protections here. Additionally, their speech served as an invitation for an attack on Plaintiff, which

immediately followed. Plaintiff was brutally attacked by horrible tweets, emails, calls, messages. Every tweet made by the Defendants was a targeted outrageous and illegitimate harassment, there was nothing political there.,¶¶ 79 - 93, SAC. Moreover, Defendants's speech was unconstitutional call for violence, and thus was unprotected.

**F. Plaintiff was not bound by heightened pleading standard of defamation claims under California State Law because she brought her claim in a federal court.**

**1.    Plaintiff identified defamatory statements and in any case she didn't even need to do that as the lawsuit was brought before federal court.**

Defendants are wrong that defamatory statements were not identified by Plaintiff. They all were identified with particularity. Defendants need to read SAC very carefully, ¶¶ 79 - 93, SAC. Statements speak of themselves - blaming Plaintiff in calling for the genocide while placing her distorted tweets under those statements were in Defendants' view upper class "opinion" statements. Those statements which were based on distorted tweets of Plaintiff were not opinions, and in any case opinions do not enjoy a blanket protection under the Law. "Assertions of opinion on a matter of public concern receive full constitutional protection if they do not contain a provably false factual connotation." *McCaskill v. Gallaudet Univ., 36 F. Supp. 3d 145, 159 (D.D.C. 2014).* Further, it is not supported by California case law too. "Because defamation requires a falsehood, it is sometimes said that an opinion, which is neither true nor false, is not actionable. This is an oversimplification. Statements of opinion do not enjoy blanket protection. The issue is whether the statement of opinion implies a statement of fact. Statements of opinion that imply a false assertion of fact are actionable." *Gallagher v. Philipps, 563 F. Supp. 3d 1048, 1086 (S.D. Cal. 2021).* And in any case Plaintiff was not required to plead with particularity all defamatory statements as her lawsuit is brought before federal court, and there is no heightened pleading requirement in a federal court. "Courts have not looked with favor upon heightened pleading requirements for defamation because defamation is not included within the categories covered by Federal Rule of Civil Procedure 9". *Okeke*

1    *v. Biomat USA, Inc., 927 F. Supp. 2d 1021, 1027 (D. Nev. 2013).*

2    **2. Plaintiff put Defendants on notice that their statements were false.**

3    Plaintiff put Defendants on notice that their speech was false. Thus, in her SAC

4    she pleaded "From approximately January, 2024, till the end of February, 2024, for about

5    two months, DEFENDANTS ANCA and ANCAWR continuously made defamatory

6    statements about PLAINTIFF in Twitter, Instagram, Reddit and other Platforms by taking

7    her single tweet out of context, distorting, manipulating it and blaming PLAINTIFF that

8    she called for the genocide of Armenians, ***which was a complete lie***.", ¶ 79, SAC.

9    Further, Plaintiff explained in other parts of her SAC the essence of her tweets, their

10   meaning and how her tweets were maliciously distorted, cut off, manipulated and used by

11   Defendants, ¶¶ 80-93, SAC. The wording of her tweets and how exactly they were

12   manipulated by the Defendants was also pleaded in her SAC, ¶¶ 80-93, SAC. They are

13   also added here as Exhibits …. Also, Plaintiff wasn't required to plead with particularity

14   falsity, she needed just to put Defendants on notice and she did it. "Courts have not

15   looked with favor upon heightened pleading requirements for defamation because

16   defamation is not included within the categories covered by Federal Rule of Civil

17   Procedure 9" *Okeke v. Biomat USA, Inc., 927 F. Supp. 2d 1021, 1027 (D. Nev. 2013).*

18   **3.  Defendants were put on notice that they made their publications based on
19   false facts.**

20   Plaintiff pleaded all tweets made by Defendants,¶¶ 79-93, SAC. Plaintiff also

21   explained in her SAC how her tweets were manipulated, cut off, distorted and presented

22   to the public,¶¶ 79-93, SAC. Defendants presented her speech as a matter of fact, not as a

23   matter of opinion, that's why they used her manipulated tweets under their news, they

24   can't now claim that those news were matters of opinion, and in any case matters of

25   opinion are not entitled to full protection of Law, especially if they are made based on

26   false facts. "Assertions of opinion on a matter of public concern receive full

27   constitutional protection if they do not contain a provably false factual connotation."

28

*McCaskill v. Gallaudet Univ., 36 F. Supp. 3d 145, 159 (D.D.C. 2014).* "Statements of opinion do not enjoy blanket protection. The issue is whether the statement of opinion implies a statement of fact. Statements of opinion that imply a false assertion of fact are actionable." *Gallagher v. Philipps, 563 F. Supp. 3d 1048, 1086 (S.D. Cal. 2021).*

**4. Plaintiff put Defendants on notice that their speech was unprivileged and moreover unprotected speech.**

Defendants' speech was unprivileged and moreover it was a speech inviting an imminent attack on Plaintiff, and such attack followed immediately, therefore it was unprotected, ¶ 309, SAC. "*Brandenburg* test precludes speech from being sanctioned as incitement to riot unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Bible Believers v. Wayne Cnty., Mich., 805 F.3d 228, 246 (6th Cir. 2015).* Allegations of Defendants that their tweets were political are laughable. Defendants for 2 months nonstop were blaming Plaintiff in calling for the genocide by using her manipulated tweets as "evidence" under their news and were calling for her disbarment (her license has no relationship to politics so far), ¶¶ 79 -93, SAC. Defendants's tweets were personally about Plaintiff in her professional capacity as a lawyer, Plaintiff is neither a politician, nor is running for any office, Defendants' tweets have no other political purpose or nature except attacking her in her personal and professional capacity., ¶¶ 79 -93, 305, 307, SAC.

**G. Plaintiff pleaded short and plain statements putting Defendants on notice on her claim for malicious prosecution.**

"Under the governing authorities, in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought

without probable cause; and (3) was initiated with malice." *Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863, 871, 765 P.2d 498, 501 (1989).* "A voluntary dismissal of a civil action or proceeding by the plaintiff therein is not ordinarily considered a dismissal 'on technical grounds' within the meaning of the Jaffe opinion. Such a voluntary dismissal, though expressly made 'without prejudice,' is a favorable termination which will support an action for malicious prosecution." *MacDonald v. Joslyn, 275 Cal. App. 2d 282, 289, 79 Cal. Rptr. 707, 711 (Ct. App. 1969).* "It is not enough, however, merely to show that the proceeding was dismissed. The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort, that is, the malicious and unfounded charge of crime against an innocent person.", *Jaffe v. Stone, 18 Cal. 2d 146, 150, 114 P.2d 335, 338 (1941).* Defendants again try to distort the facts by claiming that the complaint to the State Bar was filed "by the people of Armenian origin", thus doing their best to claim that those people had no relationship to Defendants. Complaint was filed on Defendants' initiative. Thus, in her SAC Plaintiff pleaded "On or around February 6, 2024, DEFENDANT ANCA tweeted "Dark day for the California State Bar: The @StateBarCA has refused to act on a complaint against Aynur Baghirzade - @BaghirzadeAynur (a lawyer licensed to practice in California) - for publicly tweeting calls for the eradication of #Armenia and Armenians ", ¶ 92, SAC. By doing so, Defendants posted the complaint itself and State Bar answer to this complaint, See Exh…. Now, claiming that it was someone else but Defendants is not serious. Plaintiff does not also understand what Defendants mean under "commencing legal action" against her, they filed a complaint which was fully investigated by the State Bar and then dismissed. As case law referred above shows there is no requirement under the Law for the complaint being ended with Plaintiff's prosecution, it's enough that there was a frivolous complaint filed with malice, investigation was conducted and the case was dismissed. The fact that Defendants filed the complaint with malice was pleaded vey well

in SAC, ¶¶ 92, 319 - 325, SAC.

**H. Plaintiff pleaded short and plain statements putting Defendants on notice on her claims for IIED and NIED.**

**1. Plaintiff pleaded enough facts to put Defendants on notice that their speech was not a political speech.**

"In short, the Supreme Court's First Amendment jurisprudence defines core political speech as the discussion of public issues and the exchange of ideas for bringing about political and social change and reserves the highest level of protection for such speech." *Earls v. N. Carolina Jud. Standards Comm'n, 703 F. Supp. 3d 701, 723 (M.D.N.C. 2023).* Targeting U.S. attorney's bar license and claiming that she called for the genocide and that's why must be disbarred while maliciously cutting off Plaintiff's tweets, distorting and manipulating them is not a political speech. Defendants didn't discuss with Plaintiff genocide in Somali or somewhere else, they continuously harassed her for more than two years through their different agents and primarily on constant basis for about two months, threatening her with disbarment. Disbarment of the lawyer serves no political interest, additionally Plaintiff was neither a politician, nor a public figure. If Defendants wanted to disbar her, they could peacefully file a complaint against her instead of harassing her for 2 months in social media and doing it intentionally in public. Plaintiff pleaded enough facts to put Defendants on notice that their speech was not political (as the speech was about Plaintiff in her professional capacity as a lawyer) and the speech was done with actual malice. See ¶¶ 79- 93, SAC.

**2. Plaintiff pleaded enough facts to put Defendants on notice that their conduct was extreme and outrageous.**

"The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were

actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran, 65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540, 543 (1998).* Calling publicly for attorney's disbarment for two months non - stop in social media by tagging Plaintiff's and State Bar of California's accounts, by maliciously distorting Plaintiff's tweets, by publishing multiple outrageously false news under her name in Google Search, by using Plaintiff's photos and putting there their own logo without her consent - all this, while different people were sending her simultaneously death threats is outrageous conduct and is not a petty oppressions and insults, ¶¶ 79 - 93, SAC. The fact that State Bar placed information on its website calling to the public to do the complaints on attorneys does not come to the meaning that people can go public to social media and harass lawyers with disbarment for 2 months nonstop. Defendants could file their complaints without chasing and threatening Plaintiff for 2 months in social media, but their intention was to punish Plaintiff for her speech, to chase her to silence, to intimidate and damage her, that's why they didn't simply filed the complaint. Moreover, *Section 6043.5. of California Business and Professions Code* states "Every person who reports to the State Bar or causes a complaint to be filed with the State Bar that an attorney has engaged in professional misconduct, knowing the report or complaint to be false and malicious, is guilty of a misdemeanor." So, State Bar clearly does not want public to file false and malicious complaints against lawyers, let alone chase lawyers in social media with constant calls for their disbarment. As to other people's relationship to Defendants I would advise them to read what is a pattern of racketeering activity before trying to distort law and mislead Court. Terrorism is a predicate act, Defendants are related to ARF. Many death threats Plaintiff received were made from the names of the well known terrorists in order to intimidate and threaten Plaintiff even more, some of the threats were coming from the names of well known Nemesis operation terrorists, or terrorists who achieved their "glory" in Karabakh by killing and torturing innocent people and kids. These threats followed immediately after Plaintiff was targeted in their news by

Defendants, they followed 1st time too after Simon Maghikyan, who is presented as Defendants' Community Development Coordinator targeted her in Twitter, ¶¶ 67, 79, 81, 94, SAC. Defendants' own community members were also targeted for their speech after they criticized Defendants for being a Russian agent, ¶ 60, SAC.

### 3. Plaintiff pleaded short and plain statements to establish a claim for NIED.

"As a general principle, a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *Golick v. State of California, 82 Cal. App. 5th 1127, 1138, 299 Cal. Rptr. 3d 229, 238 (2022), <u>review denied</u> (Nov. 30, 2022)*. However, a "duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if "the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Id.* Defendants' contentions that Plaintiff didn't plead duty of care and breach of that duty are legally and factually wrong. First, Plaintiff pleaded "DEFENDANTS ANCA and ANCAWR owed the duty of care to the reasonable person and could act with tact not to endanger the life and mental condition of the PLAINTIFF, but they went forward with absolutely outrageous conduct of harassment for about two months on a daily basis.",¶ 336, SAC. Then she pleaded cause of action for harassment, which was incorporated to her NIED claim by reference, ¶¶ 293-302, SAC. Then she pleaded "DEFENDANTS ANCA and ANCAWR breached their duty of care to the PLAINTIFF, and subjected her to significant emotional distress, anxiety, shock and panic.",¶ 337. As all portions of SAC were incorporated by reference by Plaintiff, including her cause of action for NIED, Defendants needed to read the entire SAC as one. Defendants violated their duty of care under all laws based on which Plaintiff brought her causes of actions, Defendants violated their duty not to form and conspire with others to form a cartel against Plaintiff's business, violated their duty not to harass her, violated the duty not to prosecute her maliciously, not to put her in false light and etc .

### I. Plaintiff pleaded short and plain statements putting Defendants on notice

**that they placed her in false light.**

"To state a claim of false light, a plaintiff must demonstrate "(1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Skinner v. Tuscan Inc., No. CV-18-00319-TUC-RCC, 2020 WL 5946898, at *3 (D. Ariz. Oct. 7, 2020).* "A false light claim can be established where true information is released if the information tends to imply falsehoods." *Graboff v. Colleran Firm, 744 F.3d 128, 137 (3d Cir. 2014).* "Falsity with respect to a defendant's statements thus carries the same meaning in the defamation and false-light-invasion-of-privacy contexts."*Id.* "Accordingly, publication of factually correct statements that convey a false impression can be actionable as defamation (if the statements had a grievous effect on one's reputation), or actionable as a false light invasion of privacy (if the statements would be highly offensive to a reasonable person)." *Id.*

Blaming a licensed attorney in calling for the genocide while she didn't, attacking her in her professional capacity, using her photos on the publications without her permission, putting a logo of ANCA on her photos as she is a commodity of ANCA is highly offensive for the Plaintiff. Plaintiff does not belong to ANCA and does not support their views. Additionally, all these references to the "opinion" are laughable as Defendants maliciously twisted the facts in her tweets and based their "opinions" on the false facts, moreover presented those "opinions" as facts. "Statements of opinion do not enjoy blanket protection. The issue is whether the statement of opinion implies a statement of fact. Statements of opinion that imply a false assertion of fact are actionable." *Gallagher v. Philipps, 563 F. Supp. 3d 1048, 1086 (S.D. Cal. 2021).*

**V. FURTHER AMENDMENTS ARE JUSTIFIED**

Plaintiff believes that no further amendments of her SAC is required with regard to the causes of actions she pleaded in relation to Defendants, but if such necessity exists

OPPOSITION TO ARMENIAN NATIONAL COMMITTEE OF AMERICA, ARAM HAMPARIAN, ARMENIAN NATIONAL COMMITTEE OF AMERICA WESTERN REGION'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

37                    Case No.: 3:24-CV-01077-RSH-MMP

1  then they will be justified. Defendants continue their illegal actions towards Plaintiff by

2  engaging more and more companies into cartel and even use their ties in the Government

3  and persecute her now on a government level. Plaintiff needs to amend her SAC to add

4  those new facts and asks Court to allow her to do so as they became obvious to her after

5  filing her SAC.

6

7  **VI. CONCLUSION**

8      Based on foregoing, Plaintiff Aynur Baghirzade requests the court grant her

9  motion and deny Defendants' motion to dismiss Plaintiff's SAC with prejudice.

10

11      DATED: January 12, 2025

12

13                                    PLAINTIFF: Aynur Baghirzade

14                                    By: *Aynur Baghirzade*

15

16

17

18

19

20

21

22

23

24

25

26

27

28