AYNUR BAGHIRZADE
1968 S. Coast Highway #2429
Laguna Beach, CA 92651
Phone: 619-776-4882
Email: contact@aynurlawyers.com

*AYNUR BAGHIRZADE, IN PRO SE*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYNUR BAGHIRZADE,<br><br>                    Plaintiff,<br><br>          v.<br><br>ARMENIAN NATIONAL<br>COMMITTEE OF AMERICA, et al., | Case No.: 3:24-CV-01077-RSH-MMP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>/ Filed concurrently with Exhibits, Request for Judiciary Notice, Proposed Order /<br><br>Presiding Judge: Hon. Robert Huie<br>Magistrate Judge : Hon. Michelle M. Petit |

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

1                Case No.: 3:24-CV-01077-RSH-MMP

1

## TABLE OF CONTENTS:

**I.    INTRODUCTION** …………………………………………………..8

**II.    LEGAL STANDARD TO COMPEL ARBITRATION**…………………8

**III.   LEGAL STANDARD TO DISMISS FOR FAILURE TO STATE A CLAIM**………………………………………………………………10

1.    Plaintiff pleaded enough facts to put Defendants on notice on all of her claims…………………………………………………………………10

2.    Fraud was pleaded with particularity and in any case there is no requirement to plead mail & wire fraud with particularity in complex RICO cases…………………………………………………………………12

**IV.   ARGUMENTS**……………………………………………………13

  A.    ARBITRATION AGREEMENT HAS NEVER BEEN FORMED OR IT IS UNENFORCEABLE……………………………………………13

1.    Arbitration clause is a product of fraudulent scheme………………13

2.    Arbitration agreement is a product of economic duress……………14

3.    Both Jake Baloian and scope of the violations Plaintiff faced at ASN are outside of the Arbitration Agreement…………………………………16

4.    Arbitration process will be costly and may significantly affect the chances of getting justice served…………………………………………19

5.    Plaintiff's claims will not be effectively vindicated if arbitration clause applies………………………………………………………………..19

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

2    Case No.: 3:24-CV-01077-RSH-MMP

B.   DEFENDANTS ARE PART OF RICO CONSPIRACY (1ST, 2ND AND 3RD CAUSES OF ACTIONS)………………………………20

C.   FACTS IN GENERAL ALLEGATIONS PART OF SAC WERE INCORPORATED BY REFERENCE INTO ALL SPECIFIC CAUSES OF ACTIONS………………………………………21

D.   PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY WERE IN VIOLATION OF ANTI-TRUST LAWS (4TH, 6TH AND 7TH CAUSES OF ACTIONS)….22

E.   PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY DENIED HER A PUBLIC ACCOMMODATION (5TH AND 8TH CAUSES OF ACTION)….23

F.   PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY HARASSED HER WITH INADEQUATE REFERRALS  (9TH CAUSE OF ACTION)………………………25

G.   PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY INTENTIONALLY INFLICTED EMOTIONAL DISTRESS ON HER………………………………26

H.   PLAINTIFF PUT DEFENDANTS ON NOTICE THAT THEY NEGLIGENTLY INFLICTED EMOTIONAL DISTRESS ON HER………………………………………………………26

V.   CONCLUSION ……………………………………………………..28

**TABLE OF AUTHORITIES**

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

3          Case No.: 3:24-CV-01077-RSH-MMP

*CASES:*

*Angelucci v. Century Supper Club,*
    41 Cal. 4th 160, 167, 158 P.3d 718, 721 (2007)……………………………..24

*Angermeir v. Cohen,*
    14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014)……………………………..12

*Ashcroft v. Iqbal,*
    556 U.S. 662, 663-64 (2009)……………………………………………………11

*Auster Oil Gas,*
    Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985)…………………………11

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)……………11, 12

*Brennan v. Bally Total Fitness,*
    198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002)……………………………..9, 14

*Brower v. Gateway 2000,*
    246 A.D.2d 246, 676 N.Y.S.2d 569, 573 (1st Dep't 1998)………………..15

*Burgess v. Superior Ct.,*
    2 Cal. 4th 1064, 1071, 831 P.2d 1197, 1199 (1992)………………………..27

*Chanchani v. Salomon/Smith Barney, Inc.,*
    No. 99 Civ. 9219, 2001 WL 204214………………………………………..8,14

*Clegg v. Cult Awareness Network,*
    18 F.3d 752, 756 (9th Cir. 1994)……………………………………………..23

*Cochran v. Cochran,*
    65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540, 543 (1998)……………..26

*Conley v. Gibson,*
    355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)…………….11

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

4    Case No.: 3:24-CV-01077-RSH-MMP

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    191 F.3d 198, 203 (2d Cir. 1999)……………………………………………9, 15

*Garten v. Kurth*,
    265 F.3d 136, 142 (2d Cir. 2001)……………………………………………14

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840, 844 (2d Cir.1987)………………………………………………8

*Gibson v. United States*,
    781 F.2d 1334, 1337 (9th Cir. 1986)………………………………………11

*Gilligan v. Jamco Development Corporation*,
    108 F.3d 246, 248-49 (9th Cir. 1997)………………………………………11

*Gonzalez v. Toscorp Inc.*,
    No. 97 CIV. 8158 (LAP), 1999 WL 595632……………………………9, 14

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79, 93, 121 S. Ct. 513, 523, 148 L. Ed. 2d 373 (2000)…………19

*Hall v. City of Santa Barbara*,
    833 F.2d 1270, 1274 (9th Cir. 1986)………………………………………11

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229, 232, 109 S. Ct. 2893, 2897, 106 L. Ed. 2d 195 (1989)…….19

*In re Firestar Diamond, Inc.*,
    *654 B.R. 836, 865 (Bankr. S.D.N.Y. 2023)*………………………………20

*In Re Humana Inc. Managed Care Litig.*,
    285 F.3d at 973………………………………………………………………16

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988, 1003 (9th Cir. 2018)…………………………………………21

*Klay v. All Defendants*,
    389 F.3d 1191, 1198 (11th Cir. 2004)………………………………………16

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

5    Case No.: 3:24-CV-01077-RSH-MMP

*Klos v. Lotnicze,*
    133 F.3d 164, 168 (2d Cir.1997)……………………………………………9, 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614, 633, 105 S. Ct. 3346, 3357, 87 L. Ed. 2d 444 (1985)………9

*Palatkevich v. Choupak,*
    2014 WL 1509236, at *22 (S.D.N.Y. Jan. 24, 2014)………………………20

*Salinas v. United States,*
    522 U.S. 52, 54–55, 118 S. Ct. 469, 472, 139 L. Ed. 2d 352 (1997)………20

*Scheur v. Rhodes,*
    416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)…………..11

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.,*
    120 F.4th 59, 91 (2d Cir. 2024)…………………………………………20

*Sullivan v. Little Hunting Park, Inc.,*
    396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)………………………24

*Sutton v. Hollywood Ent. Corp.,*
    181 F. Supp. 2d 504, 511 (D. Md. 2002)…………………………………16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
    551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007)…….21

*Thomson–CSF S.A. v. American Arbitration Ass'n.,*
    64 F.3d 773, 776–77 (2d Cir.1995)…………………………………………8

*United States v. Applins,*
    637 F.3d 59, 82 (2d Cir. 2011)……………………………………………21

*United States v. Garcia,*
    497 F.3d 964, 967 (9th Cir. 2007)………………………………………13, 19

*United States v. Zemlyansky,*
    908 F.3d 1, 17 (2d Cir. 2018)……………………………………………20

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

6    Case No.: 3:24-CV-01077-RSH-MMP

*Wright v. SFX Entm't Inc.,*
    No. 00 Civ. 5354, 2001 WL 103433…………………………………………..8, 9

**STATUTES:**

California Code of Civil Procedure, § 51………………………………………..24

California Code of Civil Procedure, § 527.6……………………………………25, 26

California Penal Code,§ 182……………………………………………………19

California Penal Code,§ 422……………………………………………………19

Federal Arbitration Act,§ 4……………………………………………………..9

Federal Rules of Civil Procedure, § 8…………………………………………10

Federal Rules of Civil Procedure, § 9 …………………………………………..12

Federal Rules of Civil Procedure, § 10 (c)……………………………………21, 22

18 U.S.C. §§ 1961-1968…………………………………………12, 13, 16, 18, 20

42 U.S.C. § 2000a……………………………………………………………23, 24

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

7    Case No.: 3:24-CV-01077-RSH-MMP

## I.  INTRODUCTION

Defendants Attorney Search Network ("ASN") and Jake Baloian after joining cartel and engaging in multiple instances of mail & wire fraud claim that Plaintiff's case must be dismissed for lack of jurisdiction or alternatively dismissed for failure to state a claim. Defendants also blame Plaintiff in being a racist because "innocent" Armenian Executive Director of their organization has no relationship to the cartel and planted cockroaches in her residential apartment, that Plaintiff somehow didn't list enough facts to implicate them, and that every disagreement must be the subject of the arbitration agreement to be considered precisely in Los Angeles (heavily populated by radical dashnaks), where police "could not" even "find" people assaulting consulate and embassy workers openly in the streets while having footages of videos with their faces on their hands. Defendants are wrong. Plaintiff was not informed properly that she is giving up her rights to sue in federal court, the agreement she signed with arbitration clause is unconscionable, and in any case the scope of the violations she faced is outside of the agreement she was fraudulently induced to sign.

## II. LEGAL STANDARD TO COMPEL ARBITRATION.

"When deciding whether to compel arbitration, a district court must first consider whether there is an agreement to arbitrate. *See Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987); *Wright v. SFX Entm't Inc.,* No. 00 Civ. 5354, 2001 WL 103433, at *2 (S.D.N.Y. Feb 7, 2001). Courts apply generally accepted principles of contract law to determine whether parties have agreed to arbitrate. *See Thomson–CSF S.A. v. American Arbitration Ass'n.,* 64 F.3d 773, 776–77 (2d Cir.1995); *Genesco,* 815 F.2d at 845; *Chanchani v. Salomon/Smith Barney, Inc.,* No. 99 Civ. 9219, 2001 WL 204214, at *2 (S.D.N.Y. Mar. 1, 2001). For example, an agreement to arbitrate that was the product of economic duress or coercion is invalid. *See, e.g., Chanchani,* 2001 WL 204214, at *2 (holding that a

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

8    Case No.: 3:24-CV-01077-RSH-MMP

party is not bound by a signed arbitration agreement where she "can demonstrate special circumstances, such as duress or coercion, that contradict her intent to be bound"); *Gonzalez,* 1999 WL 595632, at *3 (same). Similarly, a party will not be bound by an arbitration agreement that is unconscionable". *Brennan v. Bally Total Fitness,* 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002). "An unconscionable contract is "one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms." *Id.* (citing *Corbin on Contracts* *382 § 128). In other words, a contract is unconscionable where there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* "The test for procedural inadequacy in forming a contract is whether, in light of all the facts and circumstances, a party lacked "a meaningful choice" in deciding whether to sign the contract. *Desiderio,* 191 F.3d at 207." *Id.* "To determine whether a contract was validly formed, a court should focus on evidence of high pressure or deceptive tactics, the use of fine print in the contract, and any disparity in experience and education, *i.e.* bargaining power, between the parties." *See Wright,* 2001 WL 103433, at *3; *Gillman,* 73 N.Y.2d at 10–11, 537 N.Y.S.2d 787, 534 N.E.2d 824; *see also Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997)." *Id.* "A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. *See Desiderio,* 191 F.3d at 207. While the procedural aspect of unconscionability is shown by reference to the contract formation process, "substantive elements of unconscionability appear in the context of the contract per se...." *Friedman,* 407 N.Y.S.2d at 1008." *Id.* "The determination of the propriety of a motion to compel arbitration pursuant to Section 4 of the Federal Arbitration Act (FAA) is a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614,*

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

9                              Case No.: 3:24-CV-01077-RSH-MMP

*626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)."* "The second step in ruling on a motion to compel arbitration involves deciding whether "legal constraints external to the parties' agreement foreclosed arbitration." *Id.*

Contrary to Defendants' allegations, no contract with arbitration clause was signed with the Plaintiff, Defendants even didn't define the Arbitration Clause in the agreement and placed it under Reporting heading. Besides, they used so much fine print *(See Exh. B)* that Plaintiff didn't know on existence of any arbitration clause in their agreement up until Counsel for the Defendants called her, and even after the call she hardly could find Section 12, and was horrified that another Section in the agreement requires her to arbitrate claims in Los Angeles. So, the arbitration terms are scattered in the agreement which makes it even more difficult to see it. Moreover, Los Angeles is very inconvenient forum for the Plaintiff, it is a home to very large Armenian diaspora, and though Plaintiff has nothing against peaceful Armenians, considering the sensitivity of the matter and the fact how Enterprise effectively uses its ties and connections to damage her, her case will be definitely prejudiced, and there is no even guarantee that she will not be physically attacked in LA as attacks in LA on representatives of her community are very common, ¶¶ 40, 41, SAC. Plaintiff even avoids traveling to LA if there is no urgent need to do so.

## III.  LEGAL STANDARD TO DISMISS FOR FAILURE TO STATE A CLAIM.

### 1. Plaintiff pleaded enough facts to put Defendants on notice on all her claims.

The Ninth Circuit is particularly hostile to motions to dismiss for failure to state a claim. "The federal rules require only a "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P 8 (a).* The Rule 8 standard contains "a powerful presumption against rejecting pleading for failure to

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

10                Case No.: 3:24-CV-01077-RSH-MMP

state a claim." *Auster Oil Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985); see also Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986)* ("It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.").

The Supreme Court has explained that 'it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." *Scheur v. Rhodes, 416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)).* In reviewing the sufficiency of a complaint, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Development Corporation, 108 F.3d 246, 248-49 (9th Cir. 1997).* Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).).* Under Federal Rules of Civil Procedure 8 (a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations are not required, Twombly, 550 U.S., at 555, 127 S.Ct. 1955, but the Rule does not call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its place", id., at 570, 127 S.Ct. 1955.

"A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the plaintiff is entitled to relief for the misconduct alleged". *Id., at 556, 127 S.Ct. 1955.* When there are well pleaded factual allegations, a court should assume their veracity and then determine whether their plausibility gives rise to an entitlement to relief". *Ashcroft v. Iqbal,* 556 U.S. 662, 663-64 (2009).

Plaintiff pleaded a short and plain statement of the claims. Plaintiff pleaded enough facts to put Defendants on notice that they were engaged in multiple

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

11    Case No.: 3:24-CV-01077-RSH-MMP

instances of wire & mail fraud, ¶¶ 172 - 179,  email communication with Defendants are also added here as *Exhibit A*. Contrary to Defendants' allegations all facts were listed in SAC with particularity, the only thing Plaintiff didn't mention in her SAC are the names and contact information of the referred clients, because she is bound by confidentiality rules of the State Bar of California.

**2. Fraud was pleaded with particularity and in any case there is no requirement to plead mail & wire fraud with particularity in complex RICO cases.**

"In …complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity." Instead, "Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *Angermeir v. Cohen,* 14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014).  "The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading, ... so the happenstance that a complaint is 'conclusory,' whatever exactly that overused lawyers' cliche means, does not automatically condemn it". *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 590, 127 S. Ct. 1955, 1985, 167 L. Ed. 2d 929 (2007).* "The federal rules do not prohibit the pleading of facts or legal conclusions as long as fair notice is given to the parties" *Id.*

Mail & wire fraud were pleaded with particularity in SAC. For instance, Plaintiff pleaded that on October 6, 2023, she got a referral for patent law from Defendants while she was not a member of IP Panel., ¶ 172, SAC. Then she pleaded that "For the period of September - October, 2023, PLAINTIFF was getting referrals from DEFENDANT ASN, which were not in her area of practice, clients whose cases demanded a lawsuit in another jurisdiction, or clients whose

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

12    Case No.: 3:24-CV-01077-RSH-MMP

cases must be done by someone who has a license in a different state, clients, whose cases would demand PLAINTIFF to travel to Northern California and etc. Eventually, on or around October 6, 2023, PLAINTIFF requested DEFENDANT ASN to remove her from Business Litigation panel and leave her only on Immigration Law panel list.", ¶ 173, SAC. Then she pleaded with particularity how Defendants effectively conspired with other Defendants - Los Angeles County Bar Association and Orange County Bar Association by harassing her with cases in Northern California while she was living in Southern California as well as by sending her patent referrals, ¶¶ 154, 161, 172, 174, 180, SAC. Further, she pleaded that she was still getting from Defendants referrals for the panels she asked them to remove her, ¶¶ 177 - 179, SAC, and since RICO statute is involved, Plaintiff attributes to Defendants all other mail & wire fraud committed by other Defendants as acts of one conspirator are attributable to another. Courts regularly hold that "[A] conspirator [is] criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Garcia, 497 F.3d 964, 967 (9th Cir. 2007).*

### IV. ARGUMENTS

### A. ARBITRATION AGREEMENT HAS NEVER BEEN FORMED OR IT IS UNENFORCEABLE.

#### 1. Arbitration clause is a product of fraudulent scheme

"...A two-step analysis is employed to determine whether a party may be compelled to arbitrate, under which, first, whether the party has agreed to arbitrate the dispute is examined, and this question itself is further subdivided, such that a court, to determine whether the party has agreed to arbitrate a dispute, must ask: (1) is there a valid agreement to arbitrate the claims, and (2) does the dispute in question fall within the scope of that arbitration agreement; if both questions are

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

13                                    Case No.: 3:24-CV-01077-RSH-MMP

answered in the affirmative, the court then asks whether any federal statute or policy renders the claims nonarbitrable.... " *Garten v. Kurth,* 265 F.3d 136, 142 (2d Cir. 2001). "Claims regarding fraud in a contract containing an arbitration clause are, for the most part, also subject to arbitration. *See, e.g., Campaniello,* 117 F.3d at 666. As the Court explained in *Moseley,* however, arbitration is not mandated where the arbitration clause is part of the fraudulent scheme—where it is used to carry out the fraud." *Id.*

As Plaintiff mentioned it above, she knew about existence of the arbitration clause in her agreement only after Counsel for the Defendants called her, and only after several careful reviews of the contract noticed two fine printed clauses in the agreement requiring her to arbitrate any issue arising from the contract in Los Angeles *(Exh. B)*. Defendants used very fine print to enclose the arbitration clause in their agreement and did it not under Arbitration heading but under Reporting heading, which is equivalent to fraud. Defendants were required to take care that the arbitration clause is conspicuously written in the contract to make it noticeable to everybody. Sending to attorneys the agreement in the form they did shows the intent to defraud them of their right to sue in the regular courts where they will be more protected and incur less expenses. Moreover, the venue they are forcing on the attorneys is the most convenient to them. If they wanted their clause to be enforceable they had to take care about making arbitration clause at least visible.

**2. Arbitration agreement is a product of economic duress.**

"For example, an agreement to arbitrate that was the product of economic duress or coercion is invalid. *See, e.g., Chanchani,* 2001 WL 204214, at *2 (holding that a party is not bound by a signed arbitration agreement where she "can demonstrate special circumstances, such as duress or coercion, that contradict her intent to be bound"); *Gonzalez,* 1999 WL 595632, at *3 (same). Similarly, a party will not be bound by an arbitration agreement that is unconscionable." *Brennan v.*

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

14    Case No.: 3:24-CV-01077-RSH-MMP

*Bally Total Fitness,* 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002). "An unconscionable contract is "one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms." *Id.* (citing *Corbin on Contracts* \*382 § 128). In other words, a contract is unconscionable where there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* "To determine whether a contract was validly formed, a court should focus on evidence of high pressure or deceptive tactics, the use of fine print in the contract, and any disparity in experience and education, *i.e.* bargaining power, between the parties. *See Wright,* 2001 WL 103433, at \*3; *Gillman,* 73 N.Y.2d at 10–11, 537 N.Y.S.2d 787, 534 N.E.2d 824; *see also Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997)" *Id.* "Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to …needy individuals on a take-it-or-leave-it basis with no opportunity to change the terms."); *Brower v. Gateway 2000,* 246 A.D.2d 246, 676 N.Y.S.2d 569, 573 (1st Dep't 1998)" *Id.* "A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. *See Desiderio,* 191 F.3d at 207. While the procedural aspect of unconscionability is shown by reference to the contract formation process, "substantive elements of unconscionability appear in the context of the contract per se...." *Friedman,* 407 N.Y.S.2d at 1008." *Id.*

Defendants are large referral corporation providing referrals to attorneys in many states, including State of California. They basically send to attorneys the contract with fine arbitration clause (scattered in the agreement) with take it or leave it purpose. Attorneys are not given any other choice - if they want to get benefits of the contract they have to agree to its terms. Attorneys also can't primarily reach to the clients and propose their services directly to clients under

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

15    Case No.: 3:24-CV-01077-RSH-MMP

Rules of Professional Responsibility of the State Bar of California, they have to work with referral organization, and such agreement put them in the position when they are forced to sign it even if they know that there is an arbitration clause in it. Plaintiff didn't even know that she signed arbitration agreement with Defendants since the print of the arbitration clause is very fine. In this regard, the arbitration agreement is unenforceable.

**3.  Both Jake Baloian and scope of the violations Plaintiff faced at ASN are outside of the Arbitration Agreement.**

"A review of our decision reveals that we affirmed two findings of the district court that bear on indirect RICO claims: (1) "that an HMO may not invoke its arbitration clause to compel arbitration of an aiding-and-abetting charge regarding a doctor's contractual rights with a different HMO ... [and (2) that] an HMO that is not a signatory to a particular contract may not invoke that contract's arbitration clause to compel arbitration." *In Re Humana Inc. Managed Care Litig.,* 285 F.3d at 973. After making this determination, we affirmed the district court's refusal to compel arbitration of indirect RICO claims." *Klay v. All Defendants,* 389 F.3d 1191, 1198 (11th Cir. 2004). *"*In our case, a significant relationship does not exist between the claims and the contract containing the arbitration clause. Unlike the situation in *Long,* here, Plaintiffs' tort claims do not bear a significant relationship to the contract between the parties—that is, the malicious prosecution; false imprisonment; negligent hiring, training, and supervision…claims have nothing whatsoever to do with the video rental contracts." *Sutton v. Hollywood Ent. Corp.,* 181 F. Supp. 2d 504, 511 (D. Md. 2002).

Contrary to Defendants' allegations, Jake Baloian was not sued only in his professional capacity, he was sued personally as well, ¶ 19, SAC, and as such all claims attributable to Defendant Baloian in his personal capacity shall be outside of the scope of arbitration agreement (which has never been formed in any case).

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

16                    Case No.: 3:24-CV-01077-RSH-MMP

"RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Plambeck, 802 F.3d at 673 (quoting 18 U.S.C. § 1961(4))…….* Facts presented by the Plaintiff suggest that Mr. Baloian formed "partnership" beyond the organization where he was an Executive Director. Thus, in her SAC, Plaintiff pleaded "On or around October 6, 2023, DEFENDANT ASN sent her a referral for someone who was looking for PATENT filing. As PLAINTIFF recalls it, a voice of the "client", who wanted the service was suspiciously similar to the voice of the person requesting for similar services on a referral from DEFENDANT LACBA sent to her on or around May 31, 2023. PLAINTIFF was not a member of IP Panel", ¶ 172, SAC. The story with referring to her "patent filings" started first in Orange County Bar Association ("OCBA") and continued through her membership in other referral organizations while she was not a member of IP panel in any of them, ¶¶ 154, 161, 172, 180, SAC. This clearly suggests that Defendants got into the conspiracy with other referral organizations which are not the parties to the arbitration agreement she allegedly signed with them. The scope of the conspiracy they got involved goes way beyond their arbitration agreement. Facts also suggest that Mr. Baloian formed conspiracy not only with referral organizations outside of its own organization but also with Defendants Armenian National Committee of America ("ANCA"), Aram Hamparian, Armenian National Committee of America Western Region ("ANCAWR") and other members of the Armenian cartel. Thus, in her SAC Plaintiff pleaded that Defendant ASN requested her to give them her new address which she did, and on the following day (!) she heard the noise in her doorway and saw a cockroach coming right to the center of her apartment and she also discovered her car in the garage with a flat tire, ¶¶175, 176, SAC *(Exh. C3, C5, C6)*. Plaintiff was at new apartment, her new address was unknown to anybody

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

17    Case No.: 3:24-CV-01077-RSH-MMP

except Defendants Jake Baloian and ASN. Defendants are wrong that blaming cockroach on Mr. Baloian is inappropriate, cockroach is not a regular insect in the entire story, cockroach is a pattern of stalking and a pattern of outrageous racism in which Defendants now try to blame Plaintiff. Thus, in her SAC, Plaintiff pleaded that "Comparing Azerbaijanis to cockroaches in the most terrible racist way was very common for Armenians harassing PLAINTIFF in her Twitter account. One of them even sent her a picture of the cockroach with the heading - Where are you, we are coming… It was after PLAINTIFF moved away from her temporary apartment in San Diego. Before an enormous cockroach was found in one of the hotels where PLAINTIFF stayed for a short period of time, right in her cosmetic bag! It is necessary to notice that PLAINTIFF has never stayed in cheap or dirty hotels.", ¶ 175, SAC, *See Exh. C2.*  The story with cockroaches also continued in her another apartment in San Diego where she lives now when the landlord on her request to treat her apartment for fly infestation required to sign and send back to them a document to treat her apartment for cockroach infestation, ¶ 208, SAC, See also *Exh. C4.*  In the similar way the Enterprise again targeted her car in her new residential address by stealing it from her own parking space this time, ¶¶ 192, 193, SAC. Additionally, terrorism is outside of the arbitration agreement as well. Plaintiff pleaded not once that she was threatened with death by Armenian radical dashnaks, ¶¶ 67, 79 - 81, SAC, See also *Exh. H* to Plaintiff's Opposition to Defendants ANCA, Aram Hamparian and ANCAWR's motion to dismiss (Docket # 155, ECF page No. 2920 -2935 ). She also got from Defendants a referral where the referred person wanted her to come to underground garage "to do the job", ¶ 179, SAC. Therefore, Defendants have to be taken responsible not only for mail & wire fraud, but for the terrorism as well. Terrorism is a predicate act according to RICO statute, *§ 2332b, 18 U.S. Code.* Death threats constitute a predicate act. "Racketeering activity" is defined in RICO to mean "any act or threat involving"

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

18                    Case No.: 3:24-CV-01077-RSH-MMP

specified state-law crimes". *H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 232, 109 S. Ct. 2893, 2897, 106 L. Ed. 2d 195 (1989).* Threatening somebody with a murder is a state crime in California under *§ 422 of Cal. Penal Code.* Conspiracy to kill someone is also a crime, *§ 182 Cal. Penal Code.* Both constitute predicate acts. Courts regularly hold that "[A] conspirator [is] criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Garcia, 497 F.3d 964, 967 (9th Cir. 2007).* Defendants are liable for conspiracy to kill or physically damage Plaintiff which is outside of their arbitration agreement.

**4. Arbitration process will be costly and may significantly affect the chances of getting justice served.**

"…we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 93, 121 S. Ct. 513, 523, 148 L. Ed. 2d 373 (2000).

The arbitration agreement Defendants refer suggests that every party must bear its costs, so basically Defendants want Plaintiff to pay for the costly arbitration because they were dishonest and cheated her out of their services, and moreover, they want her to do that in Los Angeles, in the most inconvenient forum for her. JAMS fee for filing only ranges from $ 2, 000 to $ 3, 500, the cost of the arbitrator charging hourly rate will make her expenses even more. Defendants simply use Arbitration clause (hidden in their Agreement) to cheat attorneys and avoid responsibility for their actions.

**5. Plaintiff's claims will not be effectively vindicated if arbitration clause applies.**

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

19                Case No.: 3:24-CV-01077-RSH-MMP

"Bearing in mind a healthy regard for the federal policy in favor of enforcing valid arbitration agreements, we recognize that the "effective vindication" exception applies in rare cases where an arbitration agreement "prevent[s] parties from effectively vindicating their statutory rights." *Id.* at 395." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C., 120 F.4th 59, 91 (2d Cir. 2024).*

Plaintiff's clams will not be effectively vindicated if arbitration clause applies. Arbitration clause in Defendants' agreement makes it arbitrary for the Plaintiff to do it in Los Angeles - in one of the highly populated by Armenian dashnaks geographical area. Considering how effectively Enterprise uses its network and ties to damage Plaintiff even in San Diego, adjudicating any claim in Los Angeles where police can't identify suspects on a footage after they assault embassy employees and consuls would be utterly prejudicial for the Plaintiff. Plaintiff does not think that she would have impartial and fair arbitration in LA, since Enterprise buys everyone around her, and this unfortunately concerns even judges, ¶¶ 120, 126, SAC.  Moreover, it could even jeopardize her life in light of the circumstances she has, ¶¶ 40, 41, SAC. Plaintiff does not travel to LA unless there is an urgent necessity, and she does not think that arbitration is such necessity.

## B. DEFENDANTS ARE PART OF RICO CONSPIRACY (1ST, 2ND AND 3RD CAUSES OF ACTIONS).

Plaintiff didn't need to show signed agreement to plead RICO conspiracy. "Indeed, courts have recognized that not only are "Section 1962(d) conspiracies ... easier to prove than violations of [Section] 1962(c)," *Palatkevich v. Choupak, 2014 WL 1509236, at \*22 (S.D.N.Y. Jan. 24, 2014)*, but RICO conspiracies are also easier to demonstrate than "basic" conspiracies, as RICO conspiracies "do not require proof that a defendant knowingly agreed to facilitate a specific crime (e.g., mail fraud)" and "have a more removed mens rea requirement" than "basic"

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

20    Case No.: 3:24-CV-01077-RSH-MMP

conspiracies. *Zemlyansky, 908 F.3d at 11, n.7; see also Salinas, 522 U.S. at 63, 118 S.Ct. 469.* "Unlike 'basic' conspiracy, RICO conspiracy does not require proof that the defendant intended that specific criminal acts be accomplished."). *In re Firestar Diamond, Inc., 654 B.R. 836, 865 (Bankr. S.D.N.Y. 2023).* And also, since Plaintiff pleaded enough predicate acts, she does not need to establish a conspiracy by any other special means, ¶¶ 172-179, SAC. *See also Exh. A.* "..Where ... the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable.")", *United States v. Applins, 637 F.3d 59, 82 (2d Cir. 2011).*

## C. FACTS IN GENERAL ALLEGATIONS PART OF SAC WERE INCORPORATED BY REFERENCE INTO ALL SPECIFIC CAUSES OF ACTIONS.

Defendants' allegations that Plaintiff didn't mention any facts in specific causes of actions are baseless. Due to the complexity of the issues and RICO claims all facts were listed in General Allegations part of the SAC, and all those facts were incorporated by reference to the specific causes of actions according to Rule 10 (c) of F.R.C.P. Every paragraph, every claim in Plaintiff's SAC starts with "PLAINTIFF hereby incorporates by reference each and every paragraph, as if fully set forth herein", therefore under Rule 10 (c) of Federal Rules of Civil Procedure the whole SAC of Plaintiff shall be read as one whole single document. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion…" Rule 10 (c) of F.R.C.P. "Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a wellpleaded claim." *Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).* "..courts must consider the complaint in its entirety, as well as

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

21                    Case No.: 3:24-CV-01077-RSH-MMP

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss…" *Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007).* As to "innocent", "poor" Mr. Baloian Defendants need to carefully read entire General Allegations part of SAC, specifically ¶¶ 172 - 179, SAC. Mr. Baloian was in conspiracy both with other referral organizations and Armenian cartel specifically to damage Plaintiff. Next cockroach in her apartment and attack on her car which resulted in flat tire happened after Mr. Baloian got information about her new address (not known to anybody else except ASN and Mr. Baloian) Plaintiff stayed there just for 1 month. Then, the same cockroach story and this time disappearance of her car from her own garage spot appeared at her next residential address after various accounts in Twitter informed her that her address is found, ¶¶ 191, 192, 193, 208, SAC. Defendant Baloian must be fired from his position and not cherished as a "poor" and an "innocent" victim. Plaintiff adds here also email communications she had with Mr. Baloian and ASN staff concerning the issues she experienced. *See Exh. A.*

### D. PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY WERE IN VIOLATION OF ANTI-TRUST LAWS (4TH, 6TH AND 7TH CAUSES OF ACTIONS).

Defendants again claim that Plaintiff didn't plead enough facts for these specific causes of actions while she did. All facts how they conspired with each other and with other referral organizations to ruin Plaintiff's business were pleaded with particularity,¶¶ 172 - 179, SAC. Plaintiff didn't need to plead all facts for all Defendants under specific causes of actions - instead she incorporated them by reference. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion…" Rule 10 (c) of F.R.C.P. As to unlawful discrimination and discriminatory policies upon which Defendants acted they need to read SAC carefully, ¶¶ 54, 88, 262, 263, 264, 266, SAC. Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

22          Case No.: 3:24-CV-01077-RSH-MMP

incorporated by reference to her SAC the research paper named: Global Terrorism: Justice Commandos of Armenian Genocide, prepared in coordination with FBI and CIA,¶ 54, SAC, previously added as an Exhibit A to Defendants Yelp Inc. and Jeremy Stoppelman's motion to dismiss (Docket # 128, ESF page No.2255 - 2276). This document describes very well on what policies Defendants acted. Further, in her SAC Plaintiff pleaded that "By calling it "carcinoma" PLAINTIFF didn't mean any harm to Armenians specifically, she meant that it has to be reformed to eradicate nationalistic Njdeh philosophy of Aryan race superiority to which Armenians worship till now and which actually keeps killing people both in Armenia and Azerbaijan.",¶ 88, SAC. Further, Plaintiff pleaded "Armenia's official ideology is built on Tsegakron, the nationalistic (fascist) ideology established by former Nazi collaborator G. Njdeh, whose enormous monuments are erected everywhere in Armenia…",¶ 262, SAC. Plaintiff also, incorporates here Letter of Citizens for Responsibility and Ethics In Washington as well as APPENDIX TO THE CONGRESSIONAL RECORD previously filed as Exhibits to Plaintiff's Opposition to Defendants' Yelp Inc. and Google LLC's motions to dismiss (Docket # 128, ECF page No.2255 - 2276 and Docket # 145, ECF page No. 2573 - 2576) - Judicial notice is requested. Since Defendants joined radical organization against Plaintiff they are liable in the similar way for discriminating against her.

**E. PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY DENIED HER A PUBLIC ACCOMMODATION (5TH AND 8TH CAUSES OF ACTION).**

"Consistent with the language of the statute, we hold that Title II covers only places, lodgings, facilities and establishments open to the public, and applies to organizations only when they are affiliated with a place open to the public and membership in the organization is a necessary predicate to use of the facility. When the organization is unconnected to entry into a public place or facility, the plain

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

23    Case No.: 3:24-CV-01077-RSH-MMP

language of Title II makes the statute inapplicable." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 756 (9th Cir. 1994). "*Organizations* fall under the purview of Title II when entry into a facility open to the public is dependant on membership in the organization governing the facility. *See, e.g., Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)" *Id.* Defendants now want to claim that their organization is not open to the public, that it does not have a physical office, does not have membership requirements for attorneys, that attorneys are not members of the public ? Instead, Defendants claim that Title II of the *Civil Rights Act of 1964, 42 U.S.C. § 2000a (1988)* applies only to restaurants. Defendants are wrong. They horribly discriminated against Plaintiff and outcasted her from their services when started deliberately and intentionally sending her fake referrals, joined to other referral organizations in this "sacred" mission of persecuting a lawyer because of her nationality, origin, immigration status and other qualities, by joining to terrorist organization in stalking her residential address and relaying this information to them, by intentionally sending her referrals which could potentially result in her disbarment.

Additionally, for unknown reasons Defendants avoided speaking about Section 51 of Unruh Act which prohibits discrimination at business establishments. "The Act stands as a bulwark protecting each person's inherent right to "full and equal" access to "all business establishments." (§ 51, subd. (b); *Isbister, supra,* 40 Cal.3d at p. 75, 219 Cal.Rptr. 150, 707 P.2d 212.) The Act, like the common law principles upon which it was partially based, imposes a compulsory duty upon business establishments to serve all persons without arbitrary discrimination." *Angelucci v. Century Supper Club,* 41 Cal. 4th 160, 167, 158 P.3d 718, 721 (2007). Defendant ASN is a business establishment, it is a California Stock Corporation, it provides referral services to the attorneys based on their membership in this organization, as such it had the obligation to provide services to the attorneys on

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

24                     Case No.: 3:24-CV-01077-RSH-MMP

non discriminative basis, but instead they chose discriminating against her, going into conspiracy with the terrorist group, harassed and intimidated her in the similar way as Armenian cartel does. Defendants are liable for intentionally discriminating against Plaintiff and outcasting her from their services.

### F. PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY HARASSED HER WITH INADEQUATE REFERRALS  (9TH CAUSE OF ACTION).

Defendants started sending Plaintiff inadequate referrals from approximately September - October, 2023, when she was already in San Diego. Defendants ANCA, Aram Hamparian, ANCAWR attacked her publicly in January 2024, just in couple of months after Defendants decided that they can abuse her. Contrary to allegations of Defendants, facts about how specifically she was harassed by Defendants were well pleaded in SAC, ¶¶ 172 - 179, SAC. Besides sending to Plaintiff inadequate (useless) referrals, Defendants were engaged in practice of sending her referrals which could jeopardize her license, ¶¶ 178, 179, SAC. Moreover, referral which could potentially put her life in danger, ¶ 179, SAC. Defendants were also engaged in practice of sending her referrals she repeatedly asked them not to send her, ¶¶ 173, 177, SAC, *See Exh. A*. **"**Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." *Cal. Code Civ. Proc. § 527.6(b)(3)*. "Course of conduct" is a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

25    Case No.: 3:24-CV-01077-RSH-MMP

mail, facsimile, or email". *Id.* § 527.6 (b)(1). Defendants obviously harassed Plaintiff.

**G. PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY INTENTIONALLY INFLICTED EMOTIONAL DISTRESS ON HER.**

"The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran,* 65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540, 543 (1998).

In Defendants' opinion, sending to Plaintiff for several months non-stop referrals which were not in her area of practice, referrals which demanded a lawsuit in another jurisdiction, or clients whose cases must be done by someone who has a license in a different state, clients, whose cases would demand Plaintiff to travel to Northern California while she lives in Southern California were not with the intent to cause her severe emotional distress and leave her with no business? ¶ 172, SAC. In Defendants' opinion, repeatedly sending her referrals she asked repeatedly not to send her was not with the purpose to cause her emotional distress ?, ¶¶ 173, 177, SAC. In Defendants' opinion, sending her referrals which could potentially jeopardize her license was not extreme and outrageous conduct with the intent to cause Plaintiff severe emotional distress ?, ¶¶ 178, 179, SAC. In Defendants' opinion, sending her a referral which could potentially put her life in danger was not an extreme and outrageous conduct ?, ¶ 179, SAC. Defendants were engaged in series of actions with the goal not only to deprive her the business and opportunity to practice Law, but also to harass and cause her extreme and outrageous conduct.

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

26                    Case No.: 3:24-CV-01077-RSH-MMP

## H. PLAINTIFF PUT DEFENDANTS ON NOTICE THAT THEY NEGLIGENTLY INFLICTED EMOTIONAL DISTRESS ON HER.

Contrary to Defendants' allegations, tort of NIED does not require Plaintiff to plead facts that she suffered physically or was in the zone of danger, also there is no Law that tort of NIED applies only to bystanders. "The law of negligent infliction of emotional distress in California is typically analyzed, as it was in this case, by reference to two "theories" of recovery: the "bystander" theory and the "direct victim" theory." *Burgess v. Superior Ct.,* 2 Cal. 4th 1064, 1071, 831 P.2d 1197, 1199 (1992). "The distinction between the "bystander" and "direct victim" cases is found in the source of the duty owed by the defendant to the plaintiff." *Id.* " In contrast, the label "direct victim" arose to distinguish cases in which damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is "assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Id.*

Defendants had the obligation to send to Plaintiff referrals which are in compliance with the Rules of the State Bar of California, and they failed to do that. They repeatedly for at least two months sent her referrals which were not in her area of practice, referrals which potentially jeopardize her license, referrals requiring her to represent clients far from the region where she lives (for the clients in Northern California while she lived in Southern California), even referrals which could endanger her life, ¶¶ 172 - 179. Plaintiff pleaded that as a result of Defendants's actions she was shocked, ¶ 179, SAC. Also as a result of Enterprise's actions Plaintiff developed panic attacks. (See Declaration of Aynur Baghirzade). Plaintiff also recalls that Defendants stopped sending her any referrals once Defendants ANCA, ANCAWR and Aram Hamparian launched a smear campaign against her in January, 2024, the last referral they sent her in January was about illegal transaction and request afterwards to come to underground garage, ¶ 179,

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

27    Case No.: 3:24-CV-01077-RSH-MMP

SAC. All this happened to plaintiff because Defendants' Executive Director is a poor, innocent, suffering Armenian having no ties with ANCA.

**V. CONCLUSION**

Jake Baloian was not sued because he is an Armenian, he was sued based on the facts proving that he was engaged in purposeful, targeted discrimination against Plaintiff to ruin her business and finances, stalked and relayed her information to the Enterprise, harassed and intimidated her. So, nothing personal, only facts. Similarly, ASN was not sued because its CEO is Armenians, it was sued for engaging in multiple instances of mail & wire fraud as well as going into conspiracy with the terrorist group to stalk her residential address and endanger her life & safety.

Therefore, based on foregoing Plaintiff respectfully asks Court to grant her opposition and deny Defendants' motion.

DATED:  January 17, 2025

By: *Aynur Baghirzade*

PLAINTIFF: Aynur Baghirzade

PLAINTIFF'S OPPOSITION TO DEFENDANTS ATTORNEY SEARCH NETWORK AND JAKE BALOIAN'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES

28    Case No.: 3:24-CV-01077-RSH-MMP