AYNUR BAGHIRZADE
1968 S. Coast Highway #2429
Laguna Beach, CA 92651
Phone: 619-776-4882
Email: contact@aynurlawyers.com

*AYNUR BAGHIRZADE, IN PRO SE*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYNUR BAGHIRZADE,<br><br>                    Plaintiff,<br><br>          v.<br><br>ARMENIAN NATIONAL COMMITTEE OF AMERICA, et al., | Case No.: 3:24-CV-01077-RSH-MMP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>/ Filed concurrently with Exhibits, Request for Judiciary Notice, Proposed Order /<br><br>Presiding Judge: Hon. Robert Huie<br>Magistrate Judge : Hon. Michelle M. Petit |

# TABLE OF CONTENTS:

I.    INTRODUCTION ……………………………………………………….9

II.   LEGAL STANDARD TO DISMISS FOR FAILURE TO STATE A
      CLAIM……………………………………………………………….9

III.  ARGUMENTS……………………………………………………....10

      A.   STATUTORY SCHEME DEFENDANTS ALLEGE NEITHER
           EXCLUDE ATTORNEYS FROM THE PUBLIC, NOR GIVES
           INDULGENCE TO MISTREAT THEM………………………..10

      1.   Section 6155 of California Business & Professions Code has no rule
           allowing Defendants to mistreat attorneys…………………………10

      2.   Defendants are liable for the referrals they sent both before the
           public and attorneys…………………………………………...…11

      3.   Section 6155 of California Business & Professions Code gives no
           right to Defendants to limit Attorneys' practice of Law…………..13

      B.   DEFENDANTS HAVE NO IMMUNITY FOR PLAINTIFF'S
           CLAIMS FOR DAMAGES. ……………………………………14

      1.   Waiver was about participation in the mentoring program, not about
           denying that participation and wavers generally do not apply when a party
           acts with intent or gross negligence……………………………..14

      2.   Section 43.95 of California Civil Code does not apply to Plaintiff and they
           sent fake referrals to Plaintiff with actual malice………………….15

      C.   PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF AS HER
           STORY WITH DEFENDANTS AND OTHER REFERRAL
           ORGANIZATIONS SHOW THAT SHE WILL REPEATEDLY
           SUFFER THE SAME INJURY AGAIN……………………………15

D.    PLAINTIFF SUCCESSFULLY PLEADED ALL RICO CLAIMS (FIRST TO THIRD CAUSES OF ACTIONS)………………………..17

1.    Plaintiff successfully pleaded Associated in Fact and alternative Enterprises…………………………………………………………17

2.    Plaintiff successfully pleaded multiple instances of predicate act of mail & wire fraud committed by Defendants…………………………20

3.    Plaintiff pleaded enough facts to put Defendants on notice that they were engaged in predicate act of terrorism against Plaintiff……………..20

E.    PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY VIOLATED ANTI-TRUST LAWS (FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION)…………21

1.    Defendants' Rules restricting California attorneys' practice in Orange County are in violation of federal Anti-Trust Laws………………………21

F.    OCBA DISCRIMINATED AGAINST PLAINTIFF AND IS A PLACE OF PUBLIC ACCOMMODATION…………………………..26

1.    OCBA is a place of public accommodation under Section 2000a of 42 U.S.C………………………………………………………..26

2.    Plaintiff put Defendants on notice that they intentionally, arbitrary and unreasonably discriminated against her…………………………28

G.    PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY HARASSED HER….29

H.    PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE ON IIED AND NIED CLAIMS…………………………30

I.    PLAINTIFF ALLEGED ENOUGH FACTS IMPLICATING TRUDY LEVINDOFSKE AND TERESA VUKI…………………………………31

IV.    CONCLUSION………………………………………………36

1

# TABLE OF AUTHORITIES

2

*CASES:*

3

4

*Angelucci v. Century Supper Club,*
  41 Cal. 4th 160, 167, 158 P.3d 718, 721 (2007)…………………………12, 27

5

6

7

*Angermeir v. Cohen,*
  14 F. Supp. 3d 134, 145–46 (S.D.N.Y. 2014)……………………………….20

8

9

*Ashcroft v. Iqbal,*
  556 U.S. 662, 663-64 (2009)……………………………………………………10

10

11

12

*Auster Oil Gas,*
  Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985)…………………………….9

13

14

15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)………..10, 24, 25

16

17

*Blue Cross & Blue Shield of New Jersey,*
  Inc. v. Philip Morris, Inc., 113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000)..17, 31

18

19

20

*Brown v. Smith* (1997)
  55 Cal.App.4th 767, 786-787, 64 Cal.Rptr.2d 301…………………………….27

21

22

*City of Columbia v. Omni Outdoor Advertising, Inc.,*
  499 U.S. 365, 370 (1991)……………………………………………………….23

23

24

*City of Santa Barbara v. Superior Ct.,*
  41 Cal. 4th 747, 761, 161 P.3d 1095, 1104 (2007)………………………….14

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

4                    Case No.: 3:24-CV-01077-RSH-MMP

*Clegg v. Cult Awareness Network,*
    18 F.3d 752, 756 (9th Cir. 1994)……………………………………………..26

*Cochran v. Cochran,*
    65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540, 543 (1998)……………29

*Conley v. Gibson,*
    355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)…………10

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)………………25

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc,*
    365 U.S. 127 (1961)……………………………………………………………25

*Flynn v. Sephora USA, Inc.,*
    No. SACV2200426DOCADS, 2023 WL 5669897, (2023)………………14

*Gibson v. United States,*
    781 F.2d 1334, 1337 (9th Cir. 1986)…………………………………………10

*Gilligan v. Jamco Development Corporation,*
    108 F.3d 246, 248-49 (9th Cir. 1997)………………………………………10

*Hall v. City of Santa Barbara,*
    833 F.2d 1270, 1274 (9th Cir. 1986)…………………………………………9

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229, 232, 109 S. Ct. 2893, 2897, 106 L. Ed. 2d 195 (1989)……21

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

5    Case No.: 3:24-CV-01077-RSH-MMP

1

2

3

*In re Nat. W. Life Ins. Deferred Annuities Litig.,*
    635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009)……………………………17

4

5

*Jackson v. Segwick Claims Mgmt. Serv., Inc.,*
    699 F.3d 466, 480 (6th Cir. 2012)…………………………………………17

6

7

8

*Khoja v. Orexigen Therapeutics, Inc.,*
    899 F.3d 988, 1003 (9th Cir. 2018)……………………………………28, 29

9

10

*Lane v. Kitzhaber,*
    283 F.R.D. 587, 599 (D. Or. 2012)………………………………………15

11

12

13

*Miller v. Amusement Enters., Inc.,*
    394 F.2d 342, 349 (5th Cir. 1968)………………………………………27

14

15

16

*Monsanto Co. v. Spray–Rite Service Corp.,*
    465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)…………………25

17

18

*Munson v. Del Taco, Inc.,*
    46 Cal.4th 661, 666, 94 Cal.Rptr.3d 685, 208 P.3d 623 (2009)…………..12

19

20

21

*Norton v. LVNV Funding, LLC,* 396 F. Supp.
    3d 901, 920 (N.D. Cal. 2019)…………………………………………...15

22

23

24

*Sargoy v. Resolution Trust Corp.*
    *(1992) 8 Cal.App.4th 1039, 1044, 10 Cal.Rptr.2d 889……………………..*

25

26

27

*Scheur v. Rhodes,*
    416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)…………..10

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

6    Case No.: 3:24-CV-01077-RSH-MMP

*Siddle v. Crants,*
    650 F. Supp. 2d 773, 787 (M.D. Tenn. 2009)……………………………………20

*Sullivan v. Little Hunting Park, Inc.,*
    396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)………………………26

*United States v. Feldman,*
    853 F.2d 648 (9th Cir.1988)…………………………………………………17

*United States v. Garcia,*
    497 F.3d 964, 967 (9th Cir. 2007)………………………………………..21, 26

*United Mine Workers v. Pennington,*
    381 U.S. 657 (1965)…………………………………………………………24

*United States v. Turkette,*
    452 U.S. 576, 580-81 (1981)………………………………………………..17

*Washington v. Landmark Tech. A, LLC,*
    637 F. Supp. 3d 1154, 1162 (W.D. Wash. 2022)…………………………24

***STATUTES:***

Cal. Bus. & Prof. Code § 6078……………………………………………………..23

Cal. Bus. & Prof. Code § 6106………………………………………………………12

Cal. Bus. & Prof. Code § 6155…………………………………………………10, 11, 13

Cal. Bus. & Prof. Code § 16720………………………………………………………22

Cal. Bus. & Prof. Code § 17200………………………………………………………22

California Civil Code,§ 43.95…………………………………………………………15

California Code of Civil Procedure, § 51……………………………………12, 14, 27

California Code of Civil Procedure, § 527.6…………………………………..28

California Penal Code, § 182……………………………………………………..21

California Penal Code, §422……………………………………………………..21

California State Bar Lawyer Referral, Rule 3.801……………………………….13

California State Bar lawyer referral, Rule 3.824………………………………….22

California State Bar Lawyer Referral, Rule 3.826………………………12, 29, 30

California State Bar Rules, Rule 8.4………………………………………12, 17, 30

Federal Rules of Civil Procedure, § 8………………………………………….…9

Federal Rules of Civil Procedure, § 9 ………………………………………….20

Federal Rules of Civil Procedure, § 10 (c)………………………………27, 28, 29

15 U.S.C. § 1……………………………………………………………….22, 24

18 U.S.C. §§ 1961-1968……………………………………………17, 18, 21, 31

42 U.S.C. § 2000a……………………………………………………………26, 27

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

8          Case No.: 3:24-CV-01077-RSH-MMP

## I. INTRODUCTION

Defendants Orange County Bar Association ("OCBA"), Trudy Levindofske and Teresa Vuki filed a motion to dismiss arguing that because referral services exist for the benefit of the public they have no obligations before attorneys (argument which deserves a Nobel Prize), that's why they have full right to discriminate against any attorney they want, set up cartels with other referral organizations, limit referrals only to the attorneys in their area and only to the attorneys they like (for this purpose they completely distort the Law) and all their actions are approved by the State Bar of California - that's why they are good. Defendants are wrong. Defendants are liable both to the public and to the attorneys under Rules of the State Bar of California, they are also bound by the Rules of Professional Responsibility, and sending to the Plaintiff a fake referral once per month to defraud her and leave her with no business, to harass her on the orders of other cartel members is clearly a violation of the Rules of Professional Responsibility and all their Board members as well as Business Litigation Panel members shall be Defendants in this case and moreover, shall be disbarred.

## II. LEGAL STANDARD TO DISMISS FOR FAILURE TO STATE A CLAIM.

### 1. The Ninth Circuit is particularly hostile to motions to dismiss for failure to state a claim.

The Ninth Circuit is particularly hostile to motions to dismiss for failure to state a claim. "The federal rules require only a "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed.R.Civ.P 8 (a)*. The Rule 8 standard contains "a powerful presumption against rejecting pleading for failure to state a claim." *Auster Oil Gas, Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985); see also Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986)* ("It is axiomatic that 'the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."). The Supreme Court has explained that 'it may appear on the face of the pleading that a recovery is very

remote and unlikely but that is not the test." *Scheur v. Rhodes, 416 U.S. 232, 236, 94 S. St. 1683, 1686, 40 L.Ed.2d90 (1974)).* In reviewing the sufficiency of a complaint, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Development Corporation, 108 F.3d 246, 248-49 (9th Cir. 1997).* Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. 1986) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L.Ed.2d 80 (1957).).* Under Federal Rules of Civil Procedure 8 (a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Detailed factual allegations are not required, *Twombly,* 550 U.S., at 555, 127 S.Ct. 1955. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the plaintiff is entitled to relief for the misconduct alleged". *Id., at 556, 127 S.Ct. 1955.* When there are well pleaded factual allegations, a court should assume their veracity and then determine whether their plausibility gives rise to an entitlement to relief". *Ashcroft v. Iqbal,* 556 U.S. 662, 663-64 (2009). Plaintiff pleaded a short and plain statement of the claims. Plaintiff pleaded enough facts to put Defendants on notice that they were engaged in conspiracy with other referrals organizations and dashnaks to damage her business, endanger her life, harass and intimidate her as well as outcast her from their services.

### III. ARGUMENTS

**A. STATUTORY SCHEME DEFENDANTS ALLEGE NEITHER EXCLUDE ATTORNEYS FROM THE PUBLIC, NOR GIVES INDULGENCE TO MISTREAT THEM.**

**1. Section 6155 of California Business & Professions Code has no rule allowing Defendants to mistreat attorneys.**

Defendants' interpretation of Section 6155 of California Business & Professions Code is completely wrong. Section 6155 requires referral services to get registered with the State Bar of California, this alone does not come to the meaning that referral organizations are special, they out of application of other Laws and regulations, and that's why they can do whatever they want to participating attorneys and they have no obligations before those attorneys (considering that referral organizations' profits come from attorneys' membership fees, other dues, their shared fees from the cases they get through the referral organizations). Moreover, Section 6155 is a powerful example that referral organizations ***do have*** obligations before participating attorneys. Thus, Section 6155 (b) states: "(b) A referral service ***shall not be owned or operated***, in whole or in part, directly or indirectly, by those lawyers to whom, individually or collectively, more than 20 percent of referrals are made. For purposes of this subdivision, a referral service that is owned or operated by a bar association, as defined in the minimum standards, shall be deemed to be owned or operated by its governing committee so long as the governing committee is constituted and functions in the manner prescribed by the minimum standards.". So, this provision is a powerful example that 1) State Bar didn't want the referral organizations to exist to benefit only group of lawyers and thus leave other attorneys with insufficient or no referrals and 2) State Bar didn't want to violate Anti - Trust Laws by creating businesses which will turn into monopoly of certain lawyers and exist only to enrich them. However, considering how Defendants' operate their business this monopoly surely was established.

**2. Defendants are liable for the referrals they sent both before the public and attorneys.**

Defendants' allegations that they had the duty only before the public and not the Plaintiff are completely false. Defendants had the obligations both before the public and before the Plaintiff and Rules of the State Bar of California are completely clear on that. Rule 3.826 of the State Bar of California requires Defendants to allocate referrals fairly

among panel members, it also requires them not to monopolize the business by sending those referrals to a single law firm or a lawyer, it also states that referral "*shall not violate restrictions against unlawful solicitation and false and misleading advertising or otherwise violate the Rules of Professional Conduct or law applicable to a licensee of the State Bar". (Rule 3.826 (D) (2) of the State Bar of California).* Sending to the panel attorney fake referrals is a fraud and is a violation of the Rules of Professional Conduct *(Rule 8.4. of the State Bar of California)*, creating cartels and engaging in dishonest malicious criminal activity to ruin career and income of another attorney by engaging in corruption and dishonesty is a violation of the Rules of Professional Conduct *(Rule 8.4. of the State Bar of California)*, and all lawyers engaged in this activity, including members of their Board should be disbarred for what they did to the Plaintiff. "The *commission of any act involving moral turpitude, dishonesty or corruption, whether the act is committed in the course of his relations as an attorney or otherwise*, and *whether the act is a felony or misdemeanor or not*, constitutes a cause for disbarment or suspension. *(§ 6106, California Business & Professions Code)*. Besides, the Rules of Professional Responsibility and Rules of the State Bar of California for referral organization, OCBA is subject to other Laws and regulations as a business establishment and has the duties to refrain from discrimination, unfair competition, Anti-Trust violations and etc. Defendants are not special entity above the Law just because they are licensed by the State Bar of California. Accordingly, "the term 'business establishments' [should be] used in the broadest sense possible." *Id.*; *Munson v. Del Taco, Inc.,* 46 Cal.4th 661, 666, 94 Cal.Rptr.3d 685, 208 P.3d 623 (2009) (quoting *Angelucci v. Century Supper Club,* 41 Cal.4th 160, 167, 59 Cal.Rptr.3d 142, 158 P.3d 718 (2007). "Courts have considered various factors when determining whether to apply the Unruh Act to organizations such as non-profit associations, as operating as an equivalent to a business establishment, "including: (a) what, if any, business benefits one may derive from membership; (b) the number and nature of paid staff; (c) whether the organization

has physical facilities; (d) what are the purposes and activities of the organization; (e) the extent to which the organization is open to the public; (f) whether there are any fees or dues for participation or membership; and (g) the nature of the organization's structure." Since attorneys' participation at referral organizations was based on their membership, and referral organizations use those membership and other fees  paid by attorneys to pay and keep their staff, they are business establishments affecting interstate commerce and liable under all applicable Laws and regulations Plaintiff listed in her SAC.

**3. Section 6155 of California Business & Professions Code gives no right to Defendants to limit Attorneys' practice of Law based on their residence or business address in violation of federal Anti-Trust Laws.**

Defendants' reference to Section 6155 (d) of CBPC to justify their monopolization of the market in Orange County is completely wrong. Section 6155 (d) of CBPC has no provisions allowing defendants to monopolize the market and restrict attorneys' practice according to their residence, office location or phone number. It excludes certain LRS activities such as allowing charging reduced fees for certain practice areas or requiring attorneys to satisfy minimum requirements to participate at LRS ,but there is no exclusion for geographic restriction on attorneys' practice based on their residence, or their phone number. Similarly, Rule 3.801 of the State Bar of California deals with application requirements of the ***referral service to get certified in each county,*** it has no requirement that referral service can, let alone must, restrict lawyers' practice based on their location or phone number in a particular area. Defendants are absolutely aware that they violated federal Anti -Trust Laws by drafting their Rules in the way they did. Their rules do not comply with Federal Anti-Trust Laws and none of the State Bar Rules allow them to do so, moreover, any certification of their Rules with the State Bar of California does not save them too, because State Bar is not an authority in terms of Anti-Trust Laws violation. "No person within the jurisdiction of this state shall be excluded from a business transaction on the basis of a policy expressed in any document or writing and

imposed by a third party where that policy requires discrimination against that person on the basis of any characteristic listed or defined in subdivision (b) or (e) of Section 51 of the Civil Code *or on the basis that the person conducts or has conducted business in a particular location.*" *Flynn v. Sephora USA, Inc., No. SACV2200426DOCADS, 2023 WL 5669897, at \*5 (C.D. Cal. Aug. 11, 2023).* Defendants' attempt to limit attorneys living in other neighborhood counties from doing business in their county if they do not live there or have their main business office there is a clear violation of Anti - Trust Laws. Lawyers living in neighborhood counties can travel to Orange County to meet their clients, but this was not the concern of Defendants, they just wanted to usurp the market for their own benefit.

**B. DEFENDANTS HAVE NO IMMUNITY FOR PLAINTIFF'S CLAIMS FOR DAMAGES.**

**1.Waiver was about participation in the mentoring program, not about denying that participation and wavers generally do not apply when a party acts with intent or gross negligence.**

Defendants' allegations that Plaintiff waived any claims against them because of her participation in the mentoring program are wrong. Waiver was about quality of the mentorship program and advises given by mentors, was generally about *Plaintiff's participation* in the program, not intentional and deliberate denial that participation. *See Exh. F7.* Scope of her waiver definitely didn't include and mean discrimination or allowing intentional torts like harassment and IIED. "Courts generally agree that one may not exonerate himself or herself from liability for willful or wanton misconduct, for gross negligence, or for intentional torts, even if there is broad exculpatory language." *City of Santa Barbara v. Superior Ct.,* 41 Cal. 4th 747, 761, 161 P.3d 1095, 1104 (2007). Since Defendants intentionally gave her a mentor she didn't ask for and intentionally denied her request to change that mentor, the waiver she signed is unenforceable.

**2. Defendants have no immunity, Section 43.95 of California Civil Code does not apply to Plaintiff and they sent fake referrals to Plaintiff with actual malice.**

First of all, Defendants refer to a wrong Law arguing that they have immunity. The real Law which immunizes referral organizations *for the negligence and malpractice of the lawyers when they refer members of public to them* is Section 43.95 of California Civil Code - this is a good question why Defendants used a wrong law. This Law does not apply to Plaintiff for two reasons: 1) It immunizes referral organizations from the claims coming *from members of public* while they refer them to lawyers if the lawyer is negligent or commits malpractice and 2) referral organizations have no immunity under this Law *if they act with actual malice.* Plaintiff is not a member of public for the purposes of this specific Law, she is a lawyer and in any case, Defendants acted with actual malice when they sent her fake referrals for about a year so that she has no business.

**C. PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF AS HER STORY WITH DEFENDANTS AND OTHER REFERRAL ORGANIZATIONS SHOW THAT SHE WILL REPEATEDLY SUFFER THE SAME INJURY AGAIN.**

Allegations that Plaintiff does not have a standing is wrong. "A plaintiff does not lose standing to seek injunctive relief when the unlawful conduct ceases after a lawsuit is filed." *Lane v. Kitzhaber,* 283 F.R.D. 587, 599 (D. Or. 2012). "..the court does not "lightly infer an abandonment of the unlawful activities." *Norton v. LVNV Funding, LLC,* 396 F. Supp. 3d 901, 920 (N.D. Cal. 2019). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... *if unaccompanied by any continuing, present adverse effects.*" *Norton v. LVNV Funding, LLC,* 396 F. Supp. 3d 901, 919 (N.D. Cal. 2019). Plaintiff became a member of OCBA LRS on February 14, 2023, ¶ 148, SAC. For a year (!) Defendants were sending her fake referrals, once per month with the intent to defraud and deprive her of any business, ¶¶ 148 -154, SAC. Plaintiff didn't renew her membership with Defendants because she was mistreated,

harassed, cheated and given fake referrals for the entire year. It was not that Plaintiff didn't want to stay with Defendants, it was because of her experience and fraud at their organization that she decided to leave them. Additionally, she faced the same issue in all (!) other referral organizations she joined, ¶¶ 148 -185, SAC. For about 2 years all referral organizations cheated her, and surprisingly all started doing that by sending her first Patent referral after she expressed her opinion to Defendants that she has more experience in IP Law than any other member of their IP Panel, ¶ 154, SAC. Defendants created a big cartel against Plaintiff by literally calling and ordering her in all other referral organizations, and now they claim that she is not their member. Of course, she is not their member because they did everything to outcast her and even now in their pleading they declare that they don't want to see her as their member, so they will continue discriminating against her if she returns - this is exactly the reason why Plaintiff currently refuses joining any referral organization until Court issues necessary injunctions. As to her express "request" to "discriminate" against Armenians, she gave more detailed answer to this question in her Opposition to Defendants LACBA, Seth Chavez and Coco Su's motion to dismiss. (See Docket # 164, ECF page No. 3148 - 3153). Similarly, as she responded to Defendant LACBA, she wants to let know Defendants that 1) they are not the State Bar of California to make any decision on violation of Rules of Professional Responsibility by Plaintiff, this power belongs solely to State Bar and Supreme Court, they are just sold out lawyers for the needs of the cartel and nothing more; 2) to name "discrimination " Plaintiff's concerns about her life & safety under the circumstances she has is a very good indication of their quality as a lawyer and their "knowledge" of Law; 3) Plaintiff has never asked them not to send her Armenian clients and they have no reasons to worry that she will ask them about it in the future, because she informed even LACBA that they can continue sending her referrals in a neutral way but of course this was not their intent, intent was to leave her without business on the orders from Enterprise; 4) Defendants are dishonest organization run by

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

16                    Case No.: 3:24-CV-01077-RSH-MMP

the lawyers who were engaged in multiple instances of mail & wire fraud and all lawyers in the governing committee in their organization shall be subject to discipline according to Rule 8.4. of the State Bar of California.

**D. PLAINTIFF SUCCESSFULLY PLEADED ALL RICO CLAIMS (FIRST TO THIRD CAUSES OF ACTIONS) .**

**1. Plaintiff successfully pleaded Associated in Fact and alternative Enterprises.**

"…an enterprise may be an illegitimate enterprise, e.g., a Mafia family, or a wholly legitimate enterprise, e.g., a corporation." *United States v. Turkette, 452 U.S. 576, 580-81 (1981).* "A plaintiff may plead more than one enterprise. Pleading alternative enterprises "does not undermine the plausibility of the pleadings." *Jackson v. Segwick Claims Mgmt. Serv., Inc., 699 F.3d 466, 480 (6th Cir. 2012).* "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.* "RICO defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Plambeck, 802 F.3d at 673 (quoting 18 U.S.C. § 1961(4)).* Multiple corporations or other legal entities can, when working in concert either overtly or covertly, form an association-in-fact RICO enterprise." *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000).* "An associated-in-fact enterprise must have "a common purpose of engaging in a course of conduct." *In re Nat. W. Life Ins. Deferred Annuities Litig., 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009).* "The common purpose element, however, does not require the enterprise participants to share all of their purposes in common. *See, e.g., Odom,* 486 F.3d at 552 (finding a single common purpose sufficient). And all members of the enterprise need not be directly working with all other members of that enterprise. *See United States v. Feldman,* 853 F. 2d 648 (9th Cir.1988). What RICO does require as a showing of common purpose is 'proved by evidence of an ongoing organization, formal or informal, and evidence that

the various associates function as a continuing unit." *Id.* Plaintiff pleaded enough facts to show that all Defendants are related to each other with the common purpose to destroy Plaintiff's business, income, reputation and generally well-being, that's why she brought a lawsuit against Yelp and Google (responsible for business rating and reputation), against all referral organizations (responsible for giving her clients), against her landlord and car leasing company (responsible for her well being and traveling for her business needs). **So**, *referral organizations are alternative enterprise among pleaded one associated in fact Armenian enterprise., ¶ 218, SAC.* Plaintiff also successfully showed how referral organizations sabotaged her business by basically harassing her with the same type of referrals and cheating her by taking her money and giving nothing in return. Thus, she pleaded that in one of her emails to Defendant OCBA after her application for IP Panel was rejected, she mentioned that she is more qualified for this panel than any other panel member at their organization except may be for Patent Law, and after this email she was haunted with Patent referrals in all referral organizations even though she was not a member of their IP Panel, ¶ 154, SAC. Moreover, all referrals organizations sent her Patent referral before they started abusing and harassing her with even more fake referrals, ¶¶ 154, 161, 172, 180, SAC. She also pleaded that after Defendant OCBA refused from taking her to Business Litigation panel, Defendant LACBA started sending her fake Business litigation leads and as a result she couldn't retain any business litigation client using their service, ¶ 159, SAC. All referral organizations by commonality of their service, membership of the lawyers (most of them are members of both organizations), by their reporting structure to the State Bar of California constitute one single enterprise, connections between them are indisputable. Additionally, Plaintiff incorporated in her SAC a research paper - "Global Terrorism: The Justice Commandos of the Armenian Genocide", which states that ARF is a secret foreign political and terrorist organization,¶ 54, SAC. According to this Research Paper ARF has the largest network established precisely in California. *(See Exhibit A to Defendants' Yelp Inc. and*

*Jeremy Stoppelman's motion to dismiss (Docket # 128, ESF page No.2255 - 2276)*. As we are talking about secret organization many members of this organization are quite respectable people - they are lawyers, judges, businessmen, politicians and there is no doubt that they form a network when it is needed for their organization's purposes. Plaintiff pleaded before how a lawyer licensed in California quite openly encouraged terrorism, ¶¶ 55, 56, SAC. Therefore, alleging now that referral organizations do not have dashnaks as their members or in their leadership is laughable. Alleging also that Defendants have no ties with Defendant ANCA is also ridiculous, as they have ties with this organization through their respective dashnak members and employees in their staff, ¶¶ 57, 58, 62, 238 -241, SAC. Defendants' allegations that they have no ties with Armenian community is also ridiculous. Los Angeles is a home to the largest Armenian community in California, the state of California is also a home to the largest Armenian community in the United States (information about statistics can be found at the website of Consulate General of Armenia in Los Angeles - https://la.mfa.am/en/community-overview/ - Judicial Notice is requested). Besides, as Plaintiff pleaded before in her Opposition to Defendants' Google LLC and Alphabet Inc.' motion to dismiss, there is a group of Congressmen who are members of the so called Armenian Caucus under leadership of ANCA which can be found at ANCA's website, among roughly 118 members in this Caucus around 46 are from California (Judicial Notice is requested). Plaintiff also pleaded before in her Opposition that facts after she filed her SAC revealed that she is targeted by the government *(See Plaintiff's Opposition To Defendants Google LLC and Alphabet Inc's Motion to Dismiss, Docket # 145, ECF Page No. 2512)*. Plaintiff also pleaded that some Armenian accounts in Twitter let her know that they achieved the goal that they left her with no business in California and she is just tweeting for likes, ¶ 186, SAC. Plaintiff successfully pleaded Enterprise.

**2. Plaintiff successfully pleaded multiple instances of predicate act of mail & wire fraud committed by Defendants.**

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

19                    Case No.: 3:24-CV-01077-RSH-MMP

1    "To state a claim for mail or wire fraud, a plaintiff must show that "(1) the

2    defendants formed a scheme or artifice to defraud; (2) the defendants used the United

3    States mails [or wires] ... in furtherance of the scheme and (3) the defendants did so with

4    the specific intent to deceive or defraud." *Siddle v. Crants*, 650 F. Supp. 2d 773, 787

5    (M.D. Tenn. 2009). "In …complex civil RICO actions involving multiple defendants,

6    Rule 9(b) does not require that the temporal or geographic particulars of each mailing or

7    wire transmission made in furtherance of the fraudulent scheme be stated with

8    particularity." Instead, "Rule 9(b) requires only that the plaintiff delineate with adequate

9    particularity in the body of the complaint, the specific circumstances constituting the

10   overall fraudulent scheme." *Angermeir v. Cohen, 14 F. Supp. 3d 134, 145–46 (S.D.N.Y.*

11   *2014).* In terms of predicate acts Plaintiff pleaded all predicate acts with particularity. She

12   pleaded multiple mail & wire fraud committed by Defendants, ¶¶ 144-154, SAC. She

13   pleaded all mail & wire fraud with particularity in all other referral organizations as well,

14   ¶¶ 144 - 185, SAC. She pleaded other predicate acts of multiple mail & wire fraud in the

15   Industry, ¶¶ 122- 134, SAC. Plaintiff pleaded also multiple other mail & wire fraud

16   committed by other members of the cartel, ¶¶ 40 - 121, SAC. In general, facts about

17   numerous instances of mail & wire fraud are overwhelming in this case, and Defendants'

18   allegations that they are not enough are clearly false. Facts in Plaintiff's SAC also show

19   that she experienced the same type fraud in all referral organizations she joined after her

20   membership with OCBA, that this pattern is continuous now for over two years already,

21   and is not going to change absent court's injunctions. Plaintiff does not join any referral

22   organization anymore because she is sure that she will face the same issues  in other

23   referral organizations too, that's why she filed her complaint with this court.

24        **3. Plaintiff pleaded enough facts to put Defendants on notice that they were**

25   **engaged in predicate act of terrorism against Plaintiff.**

26        Plaintiff pleaded not once that she was threatened with death by Armenian radical

27   dashnaks, ¶¶ 67, 79 - 81, SAC (*See also Exh. K* to this Opposition and *Exh. H to*

28

*Plaintiff's Opposition to Defendants ANCA, Aram Hamparian, ANCAWR's motion to dismiss, Docket # 155, ECF page No. 2920 -2935*). Since even after her warnings sent to Defendants they make it conditional that she has to represent Armenians in order to join their service (which by itself is outrageous racism under Plaintiff's circumstances), Defendants are not only in conspiracy with cartel to ruin her business, but also to kill and damage her physically. The same type strange referral she got at another referral organization - Attorney Search Network, when the referred person wanted her to come to underground garage "to do the job", ¶ 179, SAC. Therefore, Defendants have to be taken responsible not only for mail & wire fraud, but for the terrorism as well. Terrorism is a predicate act according to RICO statute, *§ 2332b, 18 U.S. Code*. Death threats constitute a predicate act. "Racketeering activity" is defined in RICO to mean "any act or threat involving" specified state-law crimes". *H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 232, 109 S. Ct. 2893, 2897, 106 L. Ed. 2d 195 (1989).* Threatening somebody with a murder is a state crime in California under *§ 422 of Cal. Penal Code.* Conspiracy to kill someone is also a crime, *§ 182 Cal. Penal Code.* Both constitute predicate acts. Courts regularly hold that "[A] conspirator [is] criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Garcia, 497 F.3d 964, 967 (9th Cir. 2007).* Defendants are liable for conspiracy to kill or physically damage Plaintiff.

**E. PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY VIOLATED ANTI-TRUST LAWS (FOURTH, SIXTH AND SEVENTH CAUSES OF ACTION).**

**1. Defendants' Rules restricting California attorneys' practice in Orange County are in violation of federal Anti-Trust Laws and none of the State Law or State Bar Rules Defendants listed allow them to do so.**

Defendants are right that California Law restricts their operation as a referral service to the county where they got their certification from the State Bar of California,

however, it does not allow them to restrict practice of **California licensed attorneys and exclude them from their geographic area.** Attorneys licensed in California can practice the Law wherever they want in California absent any inconvenience to the clients. In this regard, OCBA LRS could admit them by requiring them to travel to Orange County in order to meet the clients or to have virtual meetings with the clients if they can't reasonably travel, but imposing the Rules conditioning licensed attorneys to have a main office in Orange County or to reside in Orange County, or to have a phone number with OC area code and then state in their Rules that if an attorney practices from home it will be made known to the prospective clients before referring them, is clearly done to monopolize the market and, moreover, to exclude small law firms and solo practitioners from their referral service *(See Exh. A)*. Additionally, none of the State Bar Rules listed by Defendants allow them to limit California attorneys access to their market. Rule 3.801 of the State Bar of California deals with applications process of the referral organizations for certification and the restriction under this Rule concerns referral organizations, not attorneys. Rule states that referral organizations must limit their practice to the county for which they were licensed, it says nothing that Defendants could restrict California attorneys' geographic practice area. Additionally, Rule 3.824 of the State Bar of California makes it pretty much clear that there is no intent to restrict attorneys' practice to the certain geographic areas "A member of any service that operates in more than one county may take referrals from any of the counties in which the service operates; provided, however, **that the member must agree to travel to each county as reasonably necessary to perform legal services (such as client meetings), and must either maintain a place of business in each county or be able to offer an otherwise suitable location or method for the performance of such services. Remote services may be provided if they are adequate to meet a client's needs.**" OCBA Rules requiring attorneys either to have the main office or live in Orange County in oder to get referrals from them are clearly in violation of the State Bar Rules, not going even into details of the federal Anti - Trust

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

22    Case No.: 3:24-CV-01077-RSH-MMP

Law requirements.  Additionally, Section 6155 (d) of the Business & Professions Code gives Defendants no indulgence for Anti-Trust Law violations. None of the exceptions listed under Section 6155 (d) of BPC are applicable to the Defendants' case. Defendants intentionally twist the facts and distort the Law. The fact that their Rules were certified by the State Bar of California has no meaning as well, because State Bar of California is not an authority in terms of Anti - Trust Law violations, State Bar of California's primary purpose is to protect the public by licensing and regulating attorneys, not by monitoring anti-trust violations. *(Rule 4.1. of Ca St. Rules of State Bar; Cal. Bus. & Prof. Code § 6078).*

Similarly, Defendants have no immunity under *Parker immunity*, they are not the Supreme Court which "regulates attorneys". They are non-profit organization with restricted license from the State Bar of California to regulate the referral service ***in accordance*** with all applicable State Bar, state and ***federal Laws.*** No one, including State Bar, can give them indulgence to violate federal Law.  Case *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 370 (1991), which Defendants cited in their defense is not applicable to them as well, because there is no state policy, as it was shown in above analysis, which allows them to geographically limit practice of California attorneys solely for their own benefit and monopoly.

As to the minimum standards for the attorneys to join their panel membership, as Plaintiff explained in her SAC she had more than enough experience as a lawyer to qualify for the panels for which they didn't approve her, ¶¶ 147, 148, SAC. Plaintiff is a holder of merit based green card ***based on her experience as a lawyer, issued by the federal government. Plaintiff also had more than enough CLEs to join their business Litigation panel but they didn't approve her***, ¶¶ 147, 148, SAC.

As Plaintiff explained it above, State Bar of California is not an entity responsible for compliance with Anti- Trust Laws and as such can't give them an indulgence to violate federal Law or certify their compliance with federal Anti-Trust Laws. Defendants

are not Supreme Court, are not State Bar of California, are not even any state municipality agency, they are non-profit organization with a limited license from the State Bar to operate referral service *in accordance with all applicable Laws and State Bar Rules, which they clearly failed to do*.

Similarly, *Noerr-Pennington* doctrine is not applicable to Defendants as well. *Noerr-Pennington* doctrine is judicially created doctrine that grants antitrust immunity to private parties petitioning the government to adopt laws or rulings that may be anticompetitive. The US Supreme Court set out the doctrine in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc,* 365 U.S. 127 (1961) and *United Mine Workers v. Pennington,* 381 U.S. 657 (1965).  Defendant *didn't lobby the government to adopt anti-competitive Law. Additionally, State Bar is not the agency adopting the Laws.* They petitioned the State Bar *to certify them as a referral organization*. As analysis above shows nothing in the Rules of the State Bar of California or any other Laws Defendants listed allows them to violate Anti-Trust laws or establishes a policy permitting them to restrict California attorneys' geographic practice area. Rule 3.824 of the State Bar of California is quite clear on this point. Even if this doctrine would be applicable it still will fail under "sham" exception. "The only exception to *Noerr-Pennington* is the sham exception, under which petitioning activity is not immunized if it is both objectively baseless and in subjective bad faith." *Washington v. Landmark Tech. A, LLC,* 637 F. Supp. 3d 1154, 1162 (W.D. Wash. 2022). Here, it is not clear why would the State grant Defendants a privilege to monopolize the legal business of the entire county and exclude all others except to benefit Defendants. What is the objective standard to do that if the Rules allow alternative ways how attorneys can meet their clients in Orange County ?

Cases Defendants try to bring in their defense also fail to establish any immunity, the settlement agreement in *Sanders* between states and tobacco companies was first of all a settlement agreement, not the application for certification to get license on operating

referral organization which clearly has certain rules and standards which Defendants must meet, second, the settlement agreement was approved by the Court, here Defendants do not have any Court approval for their violation. Defendants' allegations that Plaintiff failed to implicate them for violation of Sherman & Clayton Act are not true as well. "Because § 1 of the Sherman Act "does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination, or conspiracy," *Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984)*, "[t]he crucial question" is whether the challenged anticompetitive conduct "stem[s] from independent decision or from an agreement, tacit or express.*" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 553, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)*. "..proof of a § 1 conspiracy must include evidence tending to exclude the possibility of independent action, see *Monsanto Co. v. Spray–Rite Service Corp., 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984)*; and at the summary judgment stage a § 1 plaintiff's offer of conspiracy evidence must tend to rule out the possibility that the defendants were acting independently*" Id.* As Plaintiff explained it above Defendants monopolized the business by violating all Anti-Trust Laws, their Rules requiring attorneys either to have a main business office in Orange County or a residence in Orange County, and on the top of it a phone number starting with Orange County area code and then stating that the fact that attorneys are working from home will be made known to the prospective clients before they are referred to them are all product of the conspiracy to restrain the trade and accumulate business in the hands of big corporations *(See Exh. A)*. This act of agreement is independent because neither the State Bar Rules, nor any other state or federal Law allows them to do so. Defendants also were engaged in deceptive and fraudulent practices, false advertisement because they took Plaintiff's membership fees and then sent her fake referrals, they also conspired with all other referral organizations and obviously with other cartel members to exclude Plaintiff from the market, ¶¶ 136 - 154, SAC.

**F. OCBA DISCRIMINATED AGAINST PLAINTIFF AND IS A PLACE OF PUBLIC ACCOMMODATION.**

**1. OCBA is a place of public accommodation under Section 2000a of 42 U.S.C.**

Contrary to Defendants' arguments, places of public accommodation under Section 2000a of 42. U.S.C. are not limited to entertainment places and restaurants, they include any place which affects interstate commerce. "All persons shall be entitled to the full and equal enjoyment of the goods, ***services…*** and accommodations of any place of public accommodation… without discrimination or segregation on the ground of race, color, religion, or national origin.". Further, Defendants' allegations are not supported by case law on the subject as well. "Consistent with the language of the statute, we hold that Title II covers only places, lodgings, facilities and establishments open to the public, and applies to organizations only when they are affiliated with a place open to the public and ***membership*** in the organization is a necessary predicate to use of the facility." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 756 (9th Cir. 1994). "*Organizations* fall under the purview of Title II when entry into a facility open to the public is dependant on membership in the organization governing the facility. *See, e.g., Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)" *Id.* Bar Associations are open to the public, they regularly hold meetings with the public, provide to them pro-bono and other types of services as well as provide food and drinks (as well as sell them) at their events,  similarly referral services are open to the attorneys who are licensed in the State of California and whose license are in good standing, LRS office is located in the same building with OCBA and is a part of it. Moreover, attorneys must pay membership fees to join referral service and after joining this service they have to pay certain share of their fees they get from their clients back to referral organization. Now, claiming that they are not the places of public accommodation is simply false. Plaintiff was also a member of both OCBA and referral service at OCBA and paid all required

membership fees. "The scope of what constitutes a place of public accommodation "is to be liberally construed and broadly read" with "open minds attuned to the clear and strong purpose of" Title II." *Miller v. Amusement Enters., Inc.*, 394 F.2d 342, 349 (5th Cir. 1968).

**2. Plaintiff put Defendants on notice that they intentionally, arbitrary and unreasonably discriminated against her.**

The Unruh Civil Rights Act "prohibits intentional discrimination in access to public accommodations." *Brown v. Smith* (1997) 55 Cal.App.4th 767, 786-787, 64 Cal.Rptr.2d 301 (*Brown*).) The Unruh Civil Rights Act only applies to "business establishments" that are "generally open to the public" *In re Cox* (1970) 3 Cal.3d 205, 216, 90 Cal.Rptr. 24, 474 P.2d 992, and mandates that those establishments "serve all persons without **arbitrary** discrimination." *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 167, 59 Cal.Rptr.3d 142, 158 P.3d 718. Contrary to Defendants' allegations, Plaintiff didn't only plead that Defendants joined ANCA, ANCAWR and Aram Hamparian in discriminating against her. Plaintiff pleaded a lot of facts on how Defendants discriminated against her first based on their policy requiring Plaintiff to have Orange County area code to join their referral service, then by excluding from her applications all her international certificates and credentials and rejecting to accept her to the panels she was qualified for, then by not giving her a mentor in Business Litigation, then by sending her one fake referral each month to torture her and leave her with no business, ¶¶ 136 - 154, SAC. Additionally, she didn't need to plead all facts under separate causes of actions as every statement in her SAC was incorporated by reference according to Rule 10 (c) of F.R.C.P. and Defendants needed to read the entire SAC as a whole document. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion…" Rule 10 (c) of F.R.C.P. "Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the doctrine is not a tool for defendants to short-circuit the resolution of a

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

27          Case No.: 3:24-CV-01077-RSH-MMP

well pleaded claim." *Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).* Plaintiff also pleaded intentional discrimination very well, listing on what policy they acted and what ideology they incorporated by persecuting Plaintiff, ¶¶ 50-62, SAC *(Docket # 128, ECF page No.2255 - 2276 and Docket # 145, ECF page No. 2573 - 2576 - Judicial notice is requested).*

### G. PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE THAT THEY HARASSED HER.

"Section 527.6 defines harassment as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." *Cal. Code Civ. Proc. § 527.6(b)(3).* Defendants pretend that they are innocent organization which only provides referrals and as such is not bound by any rules. However, the problem is that Defendants are bound by the Rules of the State Bar of California making it clear that referral organizations do have duties before attorneys, and referrals they send should comply with the Rules of Professional Conduct *(Rule 3.826 (A), (B), (D) (2) of the State Bar of California, Rule 8.4. of the State Bar of California).* Therefore*,* continuously sending to the Plaintiff one fake referral per month with no intent to give her a business served 1) no legitimate interest and 2) seriously alarmed, annoyed and harassed Plaintiff. As a business establishment OCBA should have also complied with all existing state and federal Laws not to discriminate against their members by denying membership or by otherwise outcasting them from their services, not to create cartels in violation of federal Laws, not to engage in Anti - Trust violations, ¶¶ 136 - 154, SAC.  Plaintiff started getting Patent referrals in all other referral organizations after she sent an email to Defendants regarding her opinion about their IP Panel members, ¶ 154, SAC. In Defendants' opinion it was also ok to send to the Plaintiff an email that up to this date their organization "have generated over $2.3 million in attorney fees"  while knowing that none of the referrals they sent to the Plaintiff gained her any client?, ¶ 153,

SAC. This email is actually ***a clear acceptance*** on the part of Defendants that they defrauded Plaintiff and intentionally sent her fake referrals. Plaintiff didn't complain about quality of the leads, she complained about being defrauded, and since she faced the same pattern in all referral organizations she brought a RICO claim under predicate act of mail & wire fraud as well as terrorism and conspiracy to kill and damage Plaintiff. She also specifically pleaded instances of other type of harassment she faced while she was their member, ¶ 152, SAC. All statements in her SAC were incorporated by reference under Rule 10 (c) of F.R.C.P. and Defendants needed to read the entire SAC, not just specific causes of actions, ¶ 293, SAC. "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion…" *Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).* Plaintiff pleaded enough facts to give Defendants a fair notice of harassment claim.

**H. PLAINTIFF PLEADED ENOUGH FACTS TO PUT DEFENDANTS ON NOTICE ON IIED AND NIED CLAIMS.**

"The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct." *Cochran v. Cochran,* 65 Cal. App. 4th 488, 494, 76 Cal. Rptr. 2d 540, 543 (1998). Defendants continue arguing that since they provide the service to the public they can treat attorneys as they wish, they can also cheat them, send them fake referrals and do whatever they please to do - looks like this is exactly how they want to operate. First of all, they know it very well that they have duties both before the public and before attorneys. *(See 3.826 of the State Bar of California).* Second, they are bound by the Rules of Professional Responsibility ***not to*** " (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; (c) engage in conduct

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

29                    Case No.: 3:24-CV-01077-RSH-MMP

involving dishonesty, fraud, deceit, or reckless or intentional misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice.." (*Rule 8.4. of the State Bar of California).* Third, they have duty under federal RICO Statute not to create cartels and conspire against attorney to outcast her from the market. Fourth, they have a duty under Anti - Trust Laws not to create monopolies and usurp the market. Defendants' arguments that they are special entity, above the Law, untouchable by anybody if the State Bar of California certified their referral service are ridiculous. They are according to the analysis above a business enterprise, their activity affects intestate commerce, they are bound by all federal and state laws and their absurd allegations of immunity are wrong. Creation of cartels, sending to attorney fake referrals, deceptive business practices, not approving her for the panels she was qualified for are extreme and outrageous conduct which was pleaded by Plaintiff in her SAC with particularity,¶¶ 136 - 154, SAC. Defendants are liable for IIED.

Similarly as with NIED all allegations of Defendants that they didn't have any duty before Plaintiff are wrong. As it was articulated above Defendants did have duties. As a business establishment they also have duties under all federal and applicable state laws Plaintiff listed in her SAC. Allegations of Defendants that they are above all state and federal laws are simply laughable. Defendants couldn't also state any authority with releases them from being subject to all applicable Laws which Plaintiff used in her SAC. Since Defendants had the duties and violated all of them by cheating and discriminating against Plaintiff they are liable for the emotional distress they caused to Plaintiff.

## G. PLAINTIFF ALLEGED ENOUGH FACTS IMPLICATING TRUDY LEVINDOFSKE AND TERESA VUKI.

Both Trudy Levindofske and Teresa Vuki were sued in their professional and personal capacity. They were or are managers at Defendant OCBA, ¶¶ 13, 14, SAC. Plaintiff also specifically mentioned Defendants under causes of actions implicating how they damaged Plaintiff, ¶¶ 152, 153, 220, 230, 231, 238-241, 248, 249, 254, 273-275,

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

30    Case No.: 3:24-CV-01077-RSH-MMP

292, 301, 302, 316, 332, SAC. "RICO defines an enterprise as "***any individual***, partnership, corporation, association or other legal entity, and ***any union or group of individuals associated in fact although not a legal entity***."*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc., 113 F. Supp. 2d 345, 365 (E.D.N.Y. 2000).* Trudy Levindofske and Teresa Vuki are liable in both their professional and personal capacity for forming a cartel and damaging Plaintiff as well as for other causes of actions.

## IV. CONCLUSION

Based on foregoing Plaintiff respectfully asks to deny Defendants' motion with prejudice or alternatively allow her to amend her complaint if necessary.


DATED:  January 24, 2025


By: *Aynur Baghirzade*

PLAINTIFF: Aynur Baghirzade

PLAINTIFF'S OPPOSITION TO DEFENDANTS ORANGE COUNTY BAR ASSOCIATION, TRUDY LEVINDOFSKE AND TERESA VUKI'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

31     Case No.: 3:24-CV-01077-RSH-MMP