Jeffrey W. Cowan, Esq., SBN 157474
The Cowan Law Firm
9301 Wilshire Boulevard, Suite 609
Beverly Hills, California 90210-6190
jeffrey@cowan-law.com
Tel: (310) 394-1420; Fax: (310) 394-1430

Attorneys for Defendants
**Attorney Search Network, Inc. and Jake Baloian**

# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYNUR BAGHIRZADE, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ARMENIAN NATIONAL COMMITTEE OF AMERICA, a Non-Profit Corporation; ARAM HAMPARIAN, an individual; ARMENIAN NATIONAL COMMITTEE OF AMERICA WESTERN REGION, a California Nonprofit Public Benefit Corporation; ARMEN SAHAKYAN, an individual; YELP Inc., a Delaware Stock Corporation; JEREMY STOPPELMAN, an individual; GOOGLE LLC., a Delaware Limited Liability Company; APLHABET Inc., a Delaware Stock Corporation; ORANGE COUNTY BAR ASSOCIATION, a California Nonprofit Mutual Benefit Corporation; TRUDY LEVINDOFSKE, an individual; TERESA VUKI, an individual; LOS ANGELES COUNTY BAR ASSOCIATION, a California Nonprofit Mutual Benefit Corporation; SETH CHAVEZ, an individual; COCO SU, an individual; ATTORNEY SEARCH NETWORK, a California Stock Corporation; JAKE BALOIAN, an individual; Nolo, a California Stock Corporation; MH SUB I, LLC, a Delaware Limited Liability Company; LEGALMATCH CALIFORNIA, a | Case No. 3:24-CV-01077 RSH MMP<br><br>[Assigned to Hon. Robert S. Huie; Action filed on August 15, 2024]<br><br>**Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)**<br><br>[Evidentiary objections filed separately]<br><br>Date: TDB (if any, per Court)<br><br>Place: Courtroom 3B: Edward J Shwartz United States Courthouse |

i

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

| | |
|---|---|
| 1 | Domestic Corporation; ESTRELLA ) |
| | SANCHEZ, an individual; DOES 1 ) |
| 2 | THROUGH 300, inclusive ) |
| | ) |
| 3 | Defendants ) |
| | ) |
| 4 | _____ ) |

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

## I.   INTRODUCTION & SUMMARY OF ARGUMENT

She never read the arbitration agreement that she signed.

Plaintiff Aynur Baghirzade, a licensed lawyer who alleges that she received insufficient and inappropriate referrals not because of a lack of competence but because of her national origin, now claims that she never read – or even noticed – the arbitration paragraph in the two page agreement that she signed when joining Defendant Attorney Search Network.

Federal and state law is settled that a party is presumed to have read a writing she signs and may not side-step its enforcement by claiming that she did not bother to read or understand it after the fact.   There is nothing unconscionable or unlawful about the subject arbitration terms, which specify that they apply to "any dispute" between ASN and Ms. Baghirzade and specify that the arbitration will proceed pursuant to the rules of JAMS or whatever other arbitration provider is selected.`

Rather, Ms. Baghirzade's primary objections are that (1) Los Angeles contains so many Armenians ("radical dashnaks") that their mere presence would somehow taint an arbitration held there, (2) unspecified fraud existed about the two page document that she read at her leisure, and (3) the costs of arbitration are shared.  None are grounds to invalidate an arbitration agreement.

Accordingly, Defendants Attorney Search Network and Jake Baloian respectfully submit that the Court should grant their motion to dismiss because (a) Ms. Baghirzade signed a lawful arbitration agreement and (b) the Court accordingly lacks jurisdiction to adjudicate her claims.

In the alternative, Ms. Baghirzade – via her declaration, her requests for judicial notice, and her multiple judicial admissions within the last two months – has admitted that she bases her claims on a vast conspiracy theory premised on the notion that multiple persons and entities that have no history of dealings among themselves  harbor antipathy towards her and have based their actions on

her national origin. Such arguments (plus assertions that this Court is biased against Ms. Baghirzade) fail the "plausibility" theory that SCOTUS requires for a complaint to state a cause of action.

## II. THE PARTIES' ARBITRATION AGREEMENT APPLIES TO THE CLAIM S OF PLAINTIFF – WHO HAS SHOWN NO DURESS OR COERCION WHILE ADMITTING SHE NEVER READ IT

The Court lacks jurisdiction to adjudicate Ms. Baghirzade's claims because she agreed, when she joined ASN, to arbitrate all disputes – and no facts exist to satisfy defenses of unconscionability or duress.  No, Ms. Baghirzade just didn't bother to read a two page agreement despite having all the time and opportunity to do so in the comfort of her own office.

A. The Parties' Agreement Requires Arbitrating All Disputes

As she must, Ms. Baghirzade concedes the terms of the subject arbitration language.  Paragraph 12 of the ASN membership agreement begins as follows:

> "The Service and the Member shall submit any dispute between themselves, including disputes regarding fees owed to the Service, regardless of when the dispute arises, to binding arbitration by JAMS/Endispute, or such other independent arbitration service."

(Baloian Declaration, Ex. 1)

Nor is ¶ 12 buried or somehow concealed.  It is a separate, numbered paragraph.  Nevertheless, Ms. Baghirzade contends (¶ 2 of her declaration) that she never "noticed" this language before signing the ASN agreement.[1]

---

[1] Paragraph 2 of the Baghirzade Declaration states:  "When I signed the agreement with Defendants I didn't know and I didn't notice the arbitration clause in it - I knew about its existence only after I was called by the Counsel for the Defendants, obviously after Defendant got sued by me in this Court."

2

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

Likewise, Ms. Baghirzade concedes that ¶ 18 of the Agreement – entitled "Choice of Forum – requires that an arbitration be adjudicated in Los Angeles (where ASN is based):

> "This agreement shall be governed by and construed in accordance with the laws of the State of California. Any arbitration proceeding and/or other any other action arising out of this Agreement shall take place in Los Angeles County, California."

(Baloian Declaration, Ex. 1)

B.  <u>Arbitration Agreements May include RICO Claims and are Presumed valid</u>

Arbitration agreements are presumed valid per federal and California statutory law. *See* 9 U.S.C. § 2; California Code of Civil Procedure § 1281.[2] *See also Engalla v. Permanente Medical Group, Inc.,* 15 Cal. 4th 951, 971 (1997).

1.  <u>RICO claims generally are subject to arbitration agreements</u>

Pursuant to these statutes, courts consistently hold that broadly drafted commercial arbitration agreements that encompass all disputes arising between parties are enforceable. *See, e.g., Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016); *Uptown Drug*

---

[2] Although only Ms. Baghirzade signed the membership agreement, it is enforceable. For over 100 years, the courts have held that an enforceable contract exists when a writing provides for the signature of only one party, contains that signature, and then is acted upon by the other party. *See, e.g., Remsberg v. Hackney Manufacturing Co.*, 174 Cal. 799, 802 (1917) (a "written contract binding upon both parties" was created when one party accepted and acted on a signed order from the other); *Dallman Supply Company v. Smith-Blair*, Inc., 103 Cal. App. 2d 129, 132 (1951) ("It is a settled rule that the receipt and acceptance by one party of a paper signed by the other only, and purporting to embody all the terms of a contract between the two, binds the acceptor, as well as the signer, to the terms of the contract"); *Minton v. Mitchell*, 89 Cal. App. 361, 371 (1928) (part performance, accession to terms of agreement and receipt of benefits under it estopps party from challenging it). Pursuant to the FAA, Act, this general rule regarding contracts applies to arbitration agreements. *See Hedges v. Carrigan*, 117 Cal. App. 4th 578, 583-584 (2004) (citing *Perry v. Thomas*, 482 U.S. 483, 492-492, fn. 9 (1987)).

*Company, Inc. v. CVS Caremark Corporation*, 962 F.Supp.2d 1172, 1186-1187 (N.D. Cal 2013) (enforcing agreement that requires arbitration of "any and all disputes" arising in connection with or from the parties' agreement).[3] The courts further consistently hold that doubts about the scope of arbitrable issues are to be resolved in favor of arbitration. *See, e.g., Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013).

As the moving papers discussed, this rule of enforcing arbitration extends to civil RICO claims that fall within the scope of an arbitration agreement. *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 407 (2003); *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) ("the appellants' civil RICO and pendent state law claims are arbitrable as controversies "arising out of or relating to" their accounts. . .")

Here, the membership agreement's plain, simple language ("any dispute") necessarily includes civil RICO claims, other statutory claims, and common law claims that Ms. Baghirzade seeks to assert.

2. <u>The cases on which Ms. Baghirzade relies are either factually inapposite or were overruled by the U.S. Supreme Court.</u>

Instead of addressing these authorities, and in an attempt to avoid being bound by the agreement's simple but broad terms, Ms. Baghirzade cites several cases without discussion for the proposition that her RICO claims are not subject to arbitration because they are "indirect." The arguments lack merit for several reasons.

First, Ms. Baghirzade cites to *In re Humana Inc. Managed Care Litig.,* 285 F. 3d

---

[3] It is settled that courts in this context define the word "any" to mean "of whatever kind" or "without restriction." (Merriam Webster's Collegiate Dict. (10th ed.1993) p. 53, col. 1.)." *See, e.g., Zabrucky v. McAdams*, 129 Cal.App.4th 618 (2005) (reversing trial court due to failure to give prohibition in CC&Rs against the erection of "any structures" a broad, inclusive interpretation.) *See also In re Wyman's Estate*, 208 Cal. App. 2d 489, 492 (1962) (citing California Supreme Court and appellate court decisions since 1925 where "any" was interpreted to mean "all").

4

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

971 (11th Cir. 2002) even though it is factually unavailing.[4] In *In Re Humana*, a group of subscribers and doctors had sued the HMO defendants for a variety of claims that included RICO. The district court ruled that claims between parties that were signatories to arbitration agreements were enforceable. The 11th Circuit affirmed. *Id.* at 973-974. It also affirmed the district court's order that a defendant HMO could not compel arbitration when sued on an "aiding and abetting" theory that it had conspired to help another HMO breach its duties to a doctor and his patients while confirming that the HMO could compel arbitration of claims related to its own contractual relationship with the plaintiff. *Id.*, at footnote 4. This holding, however, is inapplicable here because (a) it confirms that arbitration should be compelled as to claims related to Ms. Baghirzade's contractual relationship with ASN, and (b) the 2nd amended complaint lacks a single fact showing that ASN did anything to conspire with any of the other defendants. *In re Humana* further confirms that arbitration should be confirmed as to claims against non-signatory Mr. Baloian (ASN's executive director) on a theory of equitable estoppel to protect against her relying on some contractual terms while avoiding others. *Id.* at 974.

Similarly, Ms. Baghirzade incorrectly relies on *Klay v. All Defendants*, 380 F.3d 1191 (11th Cir. 2004), which she cites without any relevant discussion. *Klay* involved some of the same parties as in *In re Humana*. There, the court affirmed the district's order compelling arbitration of "direct" claims (including RICO) between litigants that were parties to an arbitration agreement. *Klay* is inapposite because here the operative complaint has no facts (as opposed to legal conclusions) establishing "indirect" RICO claims that entail ASN or Mr. Baloian. [*Klay*'s "indirect" RICO claims involved doctors who were not in the network of a patient's HMO who sued for payment for services they had provided.]

The last case on which Ms. Baghirzade relies, *Sutton v. Hollywood Ent. Corp*, 181

---

[4] In addition, the U.S. Supreme Court partially reversed *In re Humana Inc.* in *PacifiCare Health Systems, Inc. V. Book*, 538 U.S. 401 (2003), for reasons not relevant here.

5

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

F. Supp. 2d 504, 511 (D. Md. 2002), is not remotely on point because there the court held that a video store customer's claims for, *inter alia,* false imprisonment and malicious prosecution for being mistaken for a criminal and wrongly detained and arrested were too indirect to his rental contract with the defendant retailer to be enforceable. Here, however, the operative complaint's allegations are directly tied to the ASN membership agreement and its terms by which Ms. Baghirzade would be eligible to receive client referrals. Claims based on the alleged failure to receive enough "good" referrals are directly related to her membership in ASN. Arbitration therefore should be compelled.

Accordingly and pursuant to the foregoing authorities, the arbitration agreement should be enforced because no indirect claims exist.

B.   <u>Neither Procedural nor Substantive Unconscionability Exists</u>

It is settled under California and 9th Circuit law that both procedural and substantive unconscionability must exist before a court invalidates an arbitration agreement. *See, e.g., OTO, L.L.C. v. Kho*, Cal. 5th 111, 125 (2019). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to" conclude that the term is unenforceable." *Id.*

Here, no substantively unconscionable terms exist in the ASN agreement (a burden of carrying that Ms. Baghirzade bears given the presumption in favor of arbitration). The arbitration is to be conducted pursuant to the standard rules of JAMS or other ADR providers. No terms in the agreement favor ASN more than Ms. Baghirzade in ways that courts find substantively unconscionable (*e.g.,* shortening the statute of limitations, barring punitive damages, unequal application of the agreement's scope). *A fortiori*, the agreement's terms pass muster, and the agreement is *per se* enforceable on its face and there is no merit to the claim that arbitration is too expensive (Opp. p. 10:17-24) because that argument could be made to every arbitration agreement. Courts reject it in non-FEHA, commercial disputes absent a specific showing – and none has been made here. *See, e.g., Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).

The fact that the agreement requires arbitration in Los Angeles – where ASN is

6

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

The Cowan Law Firm
9301 Wilshire Blvd., Suite 609
Beverly Hills, California 90210
(310) 394-1420

based and only an hour from where Ms. Baghirzade lived when she signed the agreement also fails to establish substantive unconsconability. No one forced her to move an hour away. Plus, courts routinely enforce mandatory forum clauses. *See, e.g,. Intershop Communications v. Superior Court,* 104 Cal.App.4th 191, 196 (2002).

[Nor has Ms. Baghirzade carried her burden of showing that procedural unconscionability exists, let alone any that is severe. There is no evidence that ASN refused her request to negotiate the terms of its membership agreement – and no such testimony is possible because Ms. Baghirzade admits she never read the entire document. Nor is the font of the document so small that it is illegible. Nor was Ms. Baghirzade ambushed or otherwise "surprised" or pressured into signing the document.]

C.   No Fraud or Duress Exists – Ms. Baghirzade Just Failed to Read the Agreement.

Instead of addressing the foregoing analysis in the moving papers (thereby tacitly conceding it), Ms. Baghirzade alternates between *ipse dixit* arguments that either fraud or duress should bar enforcement of her agreement to arbitrate.

The contentions lack a scintilla of merit.

First, no fraud exists – as opposed to an admitted failure to read a contract. Almost 30 years ago, the California Supreme Court confirmed that not bothering to read an agreement is no defense to an arbitration agreement (or any other kind of contract). *See, e.g., Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal.4th 394, 423 (1996) ("If a party, with such reasonable opportunity, fails to learn the nature of the document he or she signs, such "negligence" precludes a finding the contract is void for fraud in the execution."); *accord Employee Painters' Trust v. J & B Finishes*, 77 F.3d 1188, 1191-1192 (9th Cir. 1996) ("A party who signs a written agreement is bound by its terms, even though the party neither reads the agreement nor considers the legal consequences of signing it.").

Plus, Ms. Baghirzade has put forth no evidence of fraud – because none exists. She received the ASN membership agreement. All she needed to do was read it, something that experienced lawyers know to do, and something that Ms. Baghirzade does not claim

7

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

she was unable to do. [The contract's font is smaller than 12 point but still fully legible; and in any event Ms. Baghirzade does not testify that it was too small for her to read or that she was unable to use the "Zoom" feature on whatever software she was using to make the document's font bigger to facilitate reading it before she signed it.]

Nor is there any evidence of duress (economic or otherwise). ASN had no special knowledge of Ms. Baghirzade's circumstances, and by her own admission no one put the proverbial gun to her head or threatened the life or safety of a relative. Ms. Baghirzade just didn't bother to read the agreement.

Also lacking merit is Ms. Baghirzade's argument that she had "no choice" but to sign the agreement (that she never read) because ethical rules bar her from soliciting business from clients whom she knows need a lawyer. The argument lacks merit because the same prohibition applies to state-bar certified referral services. They operate websites and otherwise advertise to the general public, and then refer prospective clients as appropriate. Their presence and service spares lawyers the need to spend thousands of dollars up front in advertising. These economic realities constitute no duress or unconscionability.

### III. IN THE ALTERNATIVE, THE COURT SHOULD GRANT THE MOTION TO DISMISS BECAUSE THE ALLEGATIONS LACK NOT ONLY PLAUSIBILITY BUT ALSO FACTS SHOWING THAT ASN AND MR. BALOIAN HAD ANY DEALINGS WITH OTHER DEFENDANTS.

A.  The "Plausibility" Standard for Stating a Cause of Action

As she must, Ms. Baghirzade concedes that a complaint must include enough facts (as opposed to mere conclusions) to make its allegations "plausible." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). *See also Gerbery v. Wells Fargo Bank,* 2013 WL 3946065 (C.D. CA 2013) (citing *Ashcroft v. Iqbal* and *Bell Atl Corp v. Twombly).*

Plus, more detail is needed when a cause of action rests on allegations of fraud. *See,*

The Cowan Law Firm
9301 Wilshire Blvd., Suite 609
Beverly Hills, California 90210
(310) 394-1420

8

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

*e.g.,* F.R.C.P. Rule 9(b)  (" In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.")

B. <u>No Alleged Facts Establish the Required Plausibility or Needed Specificity</u>

Here, the SAC fails to meet these standards.  Not a single fact is alleged showing how ASN or Mr. Baloian had any interactions with the other defendants – or had any reason or motive to do so.

Instead, Ms. Baghirzade doubles down on her conclusory allegations – including the fact that ASN and Mr. Baloian are somehow responsible for a cockroach in her new apartment and a flat tire on her car.  (Opp. P. 17:22-25:12).  Because cockroaches are a common bane of apartment inhabitants, and because flat tires can happen to anyone, more is needed to maintain a federal lawsuit than alleging that ASN knew her address and that *a fortiori* it somehow planted a dead roach in her home (hours away from Ventura Blvd. in Los Angeles) and gave her a flat tire.  Indeed, much more is needed to establish plausibility – especially given the lack of an alleged motive or other actions showing that ASN and Mr. Baloian did anything wrong other than having a last name evidencing his Armenian ancestry.  That alone cannot be enough to link Mr. Baloian and ASN to the alleged persons who, per the SAC, have threatened or harassed Ms. Baghirzade.  This latter point is especially true given Ms. Baghirzade's assertion that she did not sue Mr. Baloian just because of his ancestry (Opp. 28:4) but rather because of unspecified facts that she never alleges.

Similarly, the allegation that Ms. Baghirzade received an ASN referral from someone whose voice resembled a referral from another bar referral service (Opp. 17:4-17) cannot alone constitute plausible facts showing a conspiracy to send her crummy referrals when it is more (or at least) plausible that a client needing a lawyer turned to than one referral service.

Last, it is worth noting that Ms. Baghirzade has "doubled down" on her conspiracy assertions "Armenians worship a philosophy of Aryan race superiority," which in turn is based on a fascist ideology of a Nazi collaborator. (Opp. 23:5-19).  Generalizations of the

9

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

prevalence of racism in Armenia cannot establish plausibility about the actions (and their motives) of U.S. citizens who have lived their entire lives in the USA.

C. <u>The Other Claims Also Fail</u>

The public accommodation claim fails because, aside from the lack of plausible facts alleged, a lawyer referral service is not a place of public accommodation. A hotel, bar, restaurant, or truck stop surely are – but not a referral service that operates via a website and customer service representatives that take phone calls.

Similarly, failing to send enough "good" referrals does not constitute harassment under the California C.C.P. § 527.6 civil restraining order statute for the reasons the moving papers discuss and which the opposition fails to address.

Next and also similarly, Ms. Baghirzade has neither authority nor analysis to support the assertion that getting referrals outside her area of practice is so "extreme and outrageous" as to constitute an intentional tort. Certainly, she has not alleged any of the tort's elements as to either outrageous conduct or knowing that it would affect her.

Last, no facts support the negligent infliction of emotional distress claim for the reasons the moving papers discuss as well as the fact that California law recognizes that lawyers may practice throughout the entire state. Nothing stops a lawyer in San Diego from representing a client in Sacramento or a more northern county if she chooses to do so. And per the rules of professional conduct, it is a lawyer's duty to accept cases that either fall within her sphere of competence or which she reasonably believes she can sufficiently quickly get up to speed. *See,* California Rules of Professional Conduct Rule 1.1.[5] And of course ASN (but not Mr. Baloian) had a contractual duty to make referrals as deemed

---

[5] Subsection 3 of the rule states as follows: "If a lawyer does not have sufficient learning and skill when the legal services are undertaken, the lawyer nonetheless may provide competent representation by (i) associating with or, where appropriate, professionally consulting another lawyer whom the lawyer reasonably believes* to be competent, (ii) acquiring sufficient learning and skill before performance is required, or (iii) referring the matter to another lawyer whom the lawyer reasonably believes* to be competent.

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)

appropriate pursuant to the terms of the ASN membership agreement, but not a duty lying in tort.

## IV. CONCLUSION

Alleging a cockroach in an apartment or a flat tire – without more - cannot plausibly establish that either Mr. Baloian or anyone else acting on ASN's behalf did anything towards her that was unlawful – let alone rise to the level of a conspiracy (RICO or otherwise) or other violation of either statutory or common law.

For the reason set forth herein and in the moving papers, Mr. Baloian and ASN respectfully submit that the Court should grant their petition/motion and dismiss the complaint as to them.

Respectfully submitted,

**THE COWAN LAW FIRM**

DATED: January 29, 2025

By: ___*Jeffrey W. Cowan*_____
Jeffrey W. Cowan
Attorneys for **Defendants Attorney Search Network, Inc. and Jake Baloian**

11

Defendants Attorney Search Network, Inc.'s and Jake Baloian's Reply Brief in Support of Motion to Dismiss (re 2nd Amended Complaint)