1  Heather L. Rosing, Bar No. 183986
   Leah A. Plaskin Lorenz, Bar No. 228008
2  ROSING POTT & STROHBEHN,
   in partnership with Zelms Erlich & Lenkov
3  501 West Broadway, Suite A380
   San Diego, California 92101
4  Tel: 619-990-5566
   Hrosing@rosinglaw.com
5  Llorenz@rosinglaw.com

6  Attorneys for Defendants LOS ANGELES
   COUNTY BAR ASSOCIATION, COCO
7  SU, and SETH CHAVEZ

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| AYNUR BAGHIRZADE, an individual, | Case No. 24CV1077 RSH MMP |
|---|---|
| Plaintiff, | **DEFENDANTS LOS ANGELES COUNTY BAR ASSOCIATION, COCO SU, AND SETH CHAVEZ'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | |
| ARMENIAN NATIONAL COMMITTEE OF AMERICA, a Non-Profit Corporation, et al, | |
| Defendants. | Judge: Hon. Hon. Robert S. Huie<br>Courtroom: 3B |

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................4

II.  PLAINTIFF'S OPPOSITION CONFIRMS THAT SHE CANNOT STATE A CLAIM AGAINST THE LACBA DEFENDANTS ......................................................5

   A. The Claims are Based on Improper Speculation and Conclusions ....................5

   B. Plaintiff's Exhibits Confirm that LACBA Did Not Engage in Any Wrongdoing and Contradict the Allegations in her Complaint.........................7

   C. LACBA Could Not Violate Rules to Meet Plaintiff's Demands and its Refusal to Do So Does Not Support Any of Plaintiff's Claims ......................................9

   D. Plaintiff has not Alleged Any Actionable Claims Against LACBA................10

   E. Further Leave to Amend Would be Futile.........................................................13

III. CONCLUSION ................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Apex Oil Co. v. DiMauro*
  822 F.2d 246, 252 (2nd Cir. 1987) .................................................................. 11

*Ashcroft v. Iqbal*
  556 U.S. 662, 678 (2009) ................................................................................ 5

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544, 555 (2007) ................................................................................ 5

*Ileto v. Glock, Inc.*
  349 F.3d 1191, 1200 (9th Cir. 2003) ............................................................... 5

*In re Complex Asbestos Litig.*
  232 Cal.App.3d 572, 586 (1991) ................................................................... 10

*Jackson v. LegalMatch.com*
  42 Cal.App.5th 760, 772 (2019) .................................................................... 10

*Moss v. U.S. Secret Service*
  572 F.3d 962, 969 (9th Cir. 2009) ................................................................. 10

*MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*
  2022 WL 17220647, at *6 (C.D. Cal. Oct. 20, 2022) .................................... 11

*Young v. Kann*
  926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) ..................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981, 1007 (9th Cir. 2009) ............................................................... 13

**Statutes**
Cal. Bus. & Prof. Code § 6155 (d) ...................................................................... 9

**Rules**
Rules of Professional Conduct, Rule 8.4.1 ......................................................... 9
State Bar Rule 3.826(D)(1) .................................................................................. 9

## I. INTRODUCTION

Plaintiff Aynur Baghirzade has convinced herself that the problems she has faced recently – concerning her business, her residence, and social media – must all be connected and that every person she perceives as having done her wrong must be conspiring to harm her. Plaintiff's conclusory allegations and speculation, however, do not support any of her claims against Defendants the Los Angeles County Bar Association, Coco Su, and Seth Chavez (the "LACBA Defendants"). Instead, Plaintiff spins a conspiracy in the Second Amended Complaint ("SAC") that is based on attenuated events and "facts," many of which are contradicted by the exhibits she filed with her Opposition. In short, Plaintiff points to various events in her life and concludes that they must be the result of a conspiracy. With respect to the LACBA Defendants, Plaintiff assumes that because (1) the LACBA Defendants are located in Los Angeles, an area with a high Armenian population and (2) LACBA's Lawyer Referral Service, Smart Law ("LRS"), provided Plaintiff with allegedly insufficient referrals around the same time as other events Plaintiff describes in her SAC, the LACBA Defendants must be working with all of the Defendants to harm her. Because of speculative theories like this – which are found throughout the SAC – Plaintiff's claims are devoid of merit and are frivolous.

The facts Plaintiff alleges with respect to the LACBA Defendants include LACBA's refusal to screen out potential Armenian clients (which would clearly violate the State Bar of California's Rules that all certified lawyer referral services must heed), and LACBA's failure to provide enough referrals in Plaintiff's practice areas. Somehow Plaintiff concludes that these alleged wrongdoings mean that the LACBA Defendants are part of an "Armenian Enterprise" and a "Mafia." What exactly the Enterprise, or Mafia, is; its purpose and the common purpose shared by all defendants; and the nature of the LACBA Defendants' alleged racketeering activity remain a mystery. In short, Plaintiff

does not allege any facts that are sufficient to support her conspiracy theories – or any actionable claim – against the LACBA Defendants, and her SAC should be dismissed with prejudice.

## II. PLAINTIFF'S OPPOSITION CONFIRMS THAT SHE CANNOT STATE A CLAIM AGAINST THE LACBA DEFENDANTS

### A. The Claims are Based on Improper Speculation and Conclusions

Plaintiff spends much of her Opposition regurgitating the allegations set forth in her SAC, but she fails to demonstrate that such allegations are sufficient to state any of her claims, or to establish that any actionable claims exist. "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level," and a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Id*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's SAC does not do so.

The SAC is replete with legal conclusions cast in the form of factual allegations, which cannot be taken as true (*Ileto v. Glock, Inc*., 349 F.3d 1191, 1200 (9th Cir. 2003)), and with speculative theories as to LACBA's connection to the "Armenian Enterprise" or the "Mafia." Although she insists in her Opposition that she has alleged a claim against the LACBA Defendants, Plaintiff fails to demonstrate that is the case and fails to connect her factual conclusions to her claims. For example, in an effort to demonstrate that LACBA is part of some undefined enterprise and conspired with the other defendants, Plaintiff simply speculates that LACBA is part of a conspiracy because "ARF is a secret foreign political and terrorist organization" and the terrorist network has a good presence in Los Angeles; Los Angeles "is a home to the largest Armenian community in California"; members of the secret organization are respectable people so there is

no doubt "they form a network when it is needed for their organization's purposes"; a former LACBA President is an Armenian American"; and LACBA has "ties with this organization through their respective dashnak members and employees in their staff." [Oppos., pp. 19:4- 20, 20:11-16.] Plaintiff does not, however, describe how LACBA's alleged conduct meets any of the elements required to state any of her conspiracy claims.

In addition, rather than provide the details regarding how LACBA allegedly conspired against her, Plaintiff repeatedly concludes that everything negative in her life must be the result of a conspiracy to bring her down. But, again, she fails to allege facts showing how the independent events she describes are in any way connected. In the SAC, and in her Opposition, Plaintiff alleges that she was harassed on Twitter, she did not receive sufficient referrals from referral services, "the cartel" placed rats and cockroaches in her residence, and her car was towed. Plaintiff then hypothesizes that because her country of origin has been in wars with Armenia, all of this must be the result of an Armenian conspiracy against her, and because Plaintiff had issues with referrals around the same time she was allegedly being harassed on Twitter, LACBA was a part of a master conspiracy to harm her. [Oppos., pp. 14:23-15:16.]

Further, although her claims rest on the defendants having a common goal, Plaintiff fails to allege facts showing that the LACBA Defendants communicated with any of the other defendants regarding the alleged conspiracy; worked with them in any way; or were aware of any of the other defendants' actions. Instead, again, Plaintiff assumes that because she received referrals to Armenian clients after a rat was found in her parking garage and she was the recipient of negative tweets, LACBA has to be part of a conspiracy to harm her.

But, even assuming that Plaintiff had alleged facts showing an actual connection between LACBA and the other defendants, as discussed below, her claims would still fail. Plaintiff's allegations – which she has now had multiple

opportunities to amend – do not state any type of claim against the LACBA Defendants and should be dismissed.

### B. Plaintiff's Exhibits Confirm that LACBA Did Not Engage in Any Wrongdoing and Contradict the Allegations in her Complaint

Plaintiff filed exhibits with her Opposition, which consist of a series of email exchanges she had with representatives of LACBA's LRS program. [See Doc 164-4.] Rather than demonstrate that LACBA was involved in a conspiracy, and harassed and discriminated against Plaintiff, the emails confirm that LACBA worked hard to satisfy Plaintiff. The LRS representatives acted professionally, explained why the LRS could not do what Plaintiff wanted, and provided Plaintiff with several options to address her concerns. [*Id.*] LRS representatives patiently explained how the referral program works; that the number of referrals will vary and are not, and cannot be, guaranteed; LACBA must comply with the State Bar rules governing referral services and, thus, cannot screen out Armenian clients; Plaintiff was free to turn down clients; and Plaintiff could opt out of online referrals, which would allow her to turn down cases before clients were referred to her. [*Id.*]

The emails also reveal Plaintiff's misunderstanding of how a lawyer referral service works, as demonstrated by her email complaining that she has been getting strange referrals "where potential clients under various excuses do not retain me." [Doc. 164-4, Exs. A11-A12.] While the LRS can make referrals to Plaintiff, it cannot make potential clients decide to hire Plaintiff.

Next, although Plaintiff claims LACBA stopped giving her referrals altogether, the emails confirm that was not the case. [See e.g., Doc. 164-4, Exs. A15, B2, C2, J2.] Instead, Plaintiff complained that the referrals were inadequate.

Plaintiff's allegations regarding the conclusion of her membership in the LRS are also inaccurate. First, Plaintiff admitted in her declaration that she did

not renew her LRS membership and, thus, that she was not kicked out. [Doc 164-1, ¶ 3.] Second, the emails confirm that the LRS never canceled Plaintiff's membership. After Plaintiff complained about referrals to Armenians clients, the LRS explained, multiple times, why the LRS was not permitted to limit referrals based on national origin or ancestry considerations. [*Id.*, Exs. B3-B4, E2.] The LRS – taking no steps to kick Plaintiff out – told Plaintiff that she was welcome to deny referrals and to opt out of web referrals, where she could deny referrals before the clients knew she was the referred attorney. LACBA's Director of Operations, Seth Chavez, also reached out to Plaintiff to discuss her experience with the LRS (in light of her complaints), and told Plaintiff that he welcomed her input regarding how to help her receive referrals and to grow her business. [*Id.*, Exs. A13, B4, E2.][1] Chavez also told Plaintiff that if she felt her life was in danger as a result of being a member of the LRS, she could (voluntarily) be removed from the service as there was no requirement that she be a member (and, thus, no one made Plaintiff put her "life under risk to serve [the] public"). [*Id.*, Ex. E8; see Oppos., p. 33:15-19.]

Lastly, rather than working to harm her business, the LRS worked with Plaintiff to find solutions. When Plaintiff complained about the number of referrals she received, the LRS looked into it to make sure there were no issues with her profile or status; again confirmed it could not guarantee the number of referrals; and asked if Plaintiff wanted to add panels, languages, or other filters to increase her rotation. [Doc. 164-4, Exs. D2, E8, H4.]

Thus, Plaintiff's exhibits do not support RICO claims, claims of harassment or discrimination, restraints on trade, or the infliction of emotional distress. Instead, they reveal that LACBA tried to work with Plaintiff; gave clear

---

[1] Plaintiff decided not to speak with Chavez and stated that she, instead, would file a lawsuit. [Doc. 164-4, Ex. A13.]

explanations as to why Armenian referrals could not be screened out and provided Plaintiff with options to address her refusal to work with Armenians; was forthcoming on how referrals worked and the reality that referrals ebb and flow and cannot be guaranteed; and welcomed Plaintiff's input on bettering her experience with the LRS and assisting Plaintiff in growing her business.

### C. LACBA Could Not Violate Rules to Meet Plaintiff's Demands and its Refusal to Do So Does Not Support Any of Plaintiff's Claims

The heart of Plaintiff's allegations against the LACBA Defendants is that they did not agree to violate the State Bar of California's rules that all lawyer referral services must follow. While Plaintiff may not want to receive any referrals from Armenians, State Bar Rule 3.826(D)(1) prohibits lawyer referral services from discriminating on the basis of race, religious creed, color, national origin, ancestry, or other categories of discrimination. The Rules of Professional Conduct also prohibit such discrimination. See Rules of Professional Conduct, Rule 8.4.1; see also Cal. Bus. & Prof. Code § 6155 (d) (addressing requirements to increase, not decrease, "access to the justice system for all Californians"). If LACBA's LRS started asking each potential referral what his or her background and origin is, and then made sure that attorney members did not receive referrals from potential clients who identify with race, religions, or ancestry that the attorney members prefer not to work with, there is no question that LACBA's LRS – the first lawyer referral service in the United States and one of the largest of its kind – would jeopardize its certification status and its ability to help members of the public locate lawyers.

As for providing Plaintiff with more referrals, in compliance with her repeated demands, that also could not be done. Lawyer referral services must establish procedures to ensure that referrals are allocated equitably to all panel members. State Bar Rule 3.826(A). The LRS could not provide Plaintiff with more referrals to satisfy her needs, at the expense of other members. And,

ultimately, the purpose of lawyer referral services is not to ensure attorneys a certain volume of business, but rather is to "exist for the true benefit of the public." *Jackson v. LegalMatch,com*, 42 Cal.App.5th 760, 772 (2019). To that end, although Plaintiff complains that referrals were strange or fake when clients did not hire her, potential clients are not obligated to hire a lawyer referred to them and have the right to counsel of their choice. *In re Complex Asbestos Litig.*, 232 Cal.App.3d 572, 586 (1991). [See also See Doc. 100-5, Ex. C.]

Plaintiff's dissatisfaction with the quality and quantity of referrals she received in no way supports claims for RICO violations, discrimination, harassment, restraint of trade, or emotional distress. Moreover, Plaintiff points to no obligation by LACBA – contractual or otherwise – that requires LACBA to guarantee the quality or quantity of referrals. The LRS, like all referral services, depends upon the information provided by potential clients and their needs. The LRS cannot control the accuracy or completeness of that information, and potential clients' needs ebb and flow. And, regardless of Plaintiff's wild conspiracy theories as to why LACBA would not screen out Armenian referrals and give her better referrals, those alleged wrongdoings do not support any actionable claim, including those raised in Plaintiff's SAC.

### D. Plaintiff has not Alleged Any Actionable Claims Against LACBA

To state a claim against the LACBA Defendants, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). Plaintiff's SAC does not meet that standard, and her Opposition fails to address her pleading insufficiencies. As previously discussed, Plaintiff infers the existence of a conspiracy from her experience of multiple alleged wrongs at the hands of multiple individuals and entities. This inference is unsupported, and Plaintiff's speculation is insufficient to entitle her to relief under RICO or any other statute. *Young v. Kann*, 926 F.2d 1396, 1405 n.

16 (3d Cir. 1991) (holding conspiracy claims based on plaintiff's subjective suspicions and unsupported speculation were properly dismissed at screening).

      Addressing the RICO claims (claims 1-3) first, after multiple opportunities to allege the relevant enterprise, its common purpose, the connection between the defendants, LACBA's racketeering activity, and predicate acts, Plaintiff continues to speculate and conclude that the LACBA Defendants were part of some undescribed criminal enterprise, working with defendants who LACBA has not communicated with and has no connection to, and in furtherance of a conspiracy of which it was, and still is, unaware. A conspiracy does not exist because Plaintiff has also sued Armenian organizations, many Armenians live in Los Angeles, a former LACBA President is Armenian, some of the defendants are also lawyer referral services, and Plaintiff's complaints regarding LACBA arose around the same time that she received allegedly harassing tweets from Armenians. See e.g., *MSP Recovery Claims, Series LLC v. Avanir Pharms., Inc.*, 2022 WL 17220647, at *6 (C.D. Cal. Oct. 20, 2022) (holding MSP "fail[ed] to plead RICO predicate acts of mail or wire fraud, as it d[id] not identify false or misleading statements by Defendant"). And Plaintiff's gripes with the LRS do not address any conduct that comes close to racketeering, as described in 18 U.S.C. section 1961(1).

      The claims based on violations of anti-trust laws, including the Sherman and Clayton Acts (claims 4, 6, and 7), continue to disregard the requirement that there be an anti-competitive impact on the market as a whole. Plaintiff focuses on the impact to herself – not receiving enough referrals from the LRS. Further, conduct that is as consistent with permissible conduct as with an illegal conspiracy does not support an inference of an antitrust conspiracy. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2nd Cir. 1987). All of the referral organizations follow regulatory requirements, and LACBA's decision to abstain from screening Armenian clients, as well as its failure to guarantee a certain number of

referrals, complied with its regularly requirements. The fact that other referral organizations engaged in similar conduct regarding their referrals does not support a claim for an anti-trust conspiracy.

Plaintiff's discrimination claims (claims 5 and 8) fail to describe any discriminatory intent or intentional discrimination. Rather, as seen in Plaintiff's Exhibits A-E, LACBA refused to discriminate against potential clients and made great efforts to provide Plaintiff with non-discriminatory options to avoid working with Armenian clients and to help grow her business. Further, the purpose of these claims is to remove humiliation involved in discriminatory denials of access to facilities open to the general public. LACBA's referral service is not a place of public accommodation, and, regardless, LACBA never denied Plaintiff access to its referral service.

Next, Plaintiff's harassment claim (claim 9) is perplexing. Plaintiff joined the LRS to receive referrals and now claims that the receipt of referrals constitutes harassment. While Plaintiff may not like the referrals she received, the receipt of insufficient referrals, from a lawyer referral service, does not constitute harassment. Moreover, Plaintiff vacillates between claiming she barely received any referrals, in which case the harassment is even more unclear, and she received too many harassing referrals.

Finally, despite Plaintiff's protestations, she has described no conduct by the LACBA Defendants that constitutes extreme and outrageous conduct to support claims for intentional or negligent infliction of emotional distress (IIED and NIED) (claims 12 and 13). Similarly, Plaintiff fails to allege facts showing that LACBA's conduct caused her to suffer severe or extreme emotional distress. And, with respect to NIED, she describes no duty that LACBA owed her.

In closing, Plaintiff has alleged no facts that would support a rational inference that LACBA intended any negative consequences to Plaintiff, worked with other defendants to harm her, or engaged in any wrongdoing.

### E. Further Leave to Amend Would be Futile

Plaintiff has been apprised multiple times of her pleading deficiencies. She has already filed three complaints and, in her Opposition, does not demonstrate the ability to allege any additional facts that will cure the pleading deficiencies. Instead of pointing to additional facts she can allege to support her claims, Plaintiff declares she is sure no further amendments are needed. Indeed, there are no additional facts Plaintiff can plead to establish that a refusal to discriminate against potential clients and the alleged failure to provide a member of a lawyer referral service with the quality and quantity of referrals they desire constitutes RICO violations, harassment, discrimination, a restraint of trade, or the infliction of emotional distress. Because Plaintiff has failed to state a claim, despite having several opportunities to amend, further leave to amend is not warranted. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

### III. CONCLUSION

For the reasons discussed herein and in the moving papers, the LACBA Defendants respectfully request that this Court grant their Motion to Dismiss with prejudice.

ROSING POTT & STROHBEHN

DATED: February 3, 2025   By:   /s/ *Leah A. Plaskin Lorenz*
Heather L. Rosing
Leah A. Plaskin Lorenz
Attorneys for Defendants LOS ANGELES COUNTY BAR ASSOCIATION, COCO SU, and SETH CHAVEZ

# CERTIFICATE OF SERVICE

*BAGHIRZADE v. ARMENIAN NATIONAL COMMITTEE OF AMERICA*
USDC SD CA Case No. 24CV1077 RSH MMP

I hereby certify that on February 3, 2025, I electronically filed the foregoing **DEFENDANTS LOS ANGELES COUNTY BAR ASSOCIATION, COCO SU AND SETH CHAVEZ'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Executed on February 3, 2025, at San Diego, California.

/s/ *Leah A. Plaskin Lorenz*
_____
Leah A. Plaskin Lorenz