1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9              SOUTHERN DISTRICT OF CALIFORNIA
10
11   AYNUR BAGHIRZADE,                    Case No.: 24-cv-1077-RSH-MMP
12
                              Plaintiff,  **ORDER DISMISSING SECOND**
13                                        **AMENDED COMPLAINT AND**
        v.                                **ADDRESSING PENDING MOTIONS**
14
15   ARMENIAN NATIONAL
     COMMITTEE OF AMERICA et al.,
16                                        [ECF Nos. 97, 98, 100, 101, 102, 103, 104,
                                          109, 113, 129, 148, 159, 166]
17                            Defendants.
18
19          Before the Court are numerous motions. First are motions to dismiss or motions to
20   strike filed by various defendants, directed to the Second Amended Complaint ("SAC") of
21   plaintiff Aynur Baghirzade. ECF Nos. 97, 98, 100, 101, 102, 103, 104, 109, 113, 148.
22   Second are Plaintiff's ex parte applications to amend the filing date of record as to certain
23   briefs that she has filed. ECF Nos. 129, 166. Third is Plaintiff's ex parte application to
24   disqualify. ECF No. 159. The disposition of the motions is set forth below.
25          //
26          //
27
28                                         1

# I.     BACKGROUND

Plaintiff is a licensed attorney proceeding pro se. On June 21, 2024, Plaintiff filed her original Complaint in this matter [ECF No. 1] along with a motion to proceed in forma pauperis [ECF No. 2]. The Court denied Plaintiff's IFP motion as incomplete. ECF No. 4. Plaintiff thereafter filed a second IFP motion [ECF No. 5]. The Court denied that motion on the grounds that it failed to establish financial eligibility. ECF No. 6. Plaintiff thereafter paid the filing fee. ECF No. 8.

On August 12, 2024, Plaintiff filed a motion to amend the names of various defendants in her Complaint. ECF No. 10. The Court granted the motion. ECF No. 11. On August 15, 2024, Plaintiff filed her First Amended Complaint ("FAC"). ECF No. 12. Certain defendants thereafter filed motions to dismiss or to strike, directed to the FAC.

On October 2, 2024, Plaintiff filed a motion for leave to file a second amended complaint. ECF No. 59. Some Defendants filed statements of non-opposition, while others opposed the request. On November 15, 2024, the Court granted Plaintiff leave to amend and denied as moot and without prejudice the motions to dismiss or strike directed to the FAC. ECF No. 93.

On November 16, 2024, Plaintiff filed her Second Amended Complaint ("SAC"), the operative pleading. ECF No. 96. The SAC names 31 defendants. The Court lists them below, grouping those defendants who have appeared through the same counsel or are otherwise associated in the SAC:

- Armenian National Committee of America ("ANCA"), Aram Hamparian, Armenian National Committee of America Western Region ("ANCAWR") (collectively, the "ANCA Defendants"). Plaintiff alleges that a fourth defendant, Armen Sahakyan, is the Executive Director of ANCAWR; he has not appeared in the action.

- Yelp, Inc. ("Yelp") and Jeremy Stoppleman (collectively, the "Yelp Defendants").

- Google LLC ("Google") and Alphabet, Inc. ("Alphabet") (collectively, the "Google Defendants"). Plaintiff also sues Google CEO Sundar Pichai, but he has not appeared in the action.

- Orange County Bar Association ("OCBA"), Trudy Levindofske, and Teresa Vuki (collectively, the "OCBA Defendants").

- Los Angeles County Bar Association ("LACBA"), Seth Chavez, and Coco Su (collectively, the "LACBA Defendants").

- Attorney Search Network ("ASN") and Jake Baloian (collectively, the "ASN Defendants").

- Greystar California, Inc. ("Greystar").

- Kia America, Inc. ("Kia").

The remaining defendants named in the Complaint, who have not appeared, are MH Sub 1 LLC, LegalMatch California, Nolo, Estrella Sanchez, Zartonk Media LLC, Zaven Kouroghlian, Van Der Megerdichian, Hairenik Association, Ani Tchaghlasian, LegalShield, and Parker-Stanbury LLP.

The Clerk has entered default as to LegalMatch California and Estrella Sanchez [ECF No. 78] and Plaintiff has filed an ex parte application for default judgment as to these two defendants [ECF No. 99] which remains pending.

The SAC brings fourteen claims: (1) racketeering activity in violation of 18 U.S.C. § 1962(c), (2) racketeering activity in violation of 18 U.S.C. § 1962(b), (3) RICO conspiracy in violation of 18 U.S.C. § 1962(d), (4) conspiracy in restraint of trade in violation of the Sherman Act and the Clayton Act, (5) denial of public accommodation in violation of 42 U.S.C. § 2000a, (6) prohibited restraints on competition in violation of Cal. Bus. & Prof. Code § 16720, (7) unfair competition in violation of Cal. Bus. & Prof. Code § 17200, (8) denial of public accommodation in violation of Cal. Civ. Code § 51, (9) harassment in violation of Cal. Civ. Proc. Code § 527.6, (10) defamation, (11) malicious

prosecution, (12) intentional infliction of emotional distress, (13) negligent infliction of emotional distress, and (14) false light invasion of privacy. ECF No. 96.

On November 25, 2024, two sets of Defendants filed motions directed to the SAC:

- The Google Defendants filed a motion to dismiss. *See* ECF Nos. 97 (motion), 145 (opposition), 152 (reply).

- The OCBA Defendants filed a motion to dismiss. *See* ECF Nos. 98 (motion), 165 (opposition), 171 (reply).

Thereafter, additional Defendants likewise filed motions to dismiss or to strike:

- The LACBA Defendants filed a motion to dismiss. *See* ECF Nos. 100 (motion), 164 (opposition), 170 (reply).

- The ANCA Defendants filed a motion to dismiss and a motion to strike. *See* ECF Nos. 101, 102 (motions); 155, 156 (oppositions); 161, 162 (replies).

- The Yelp Defendants filed a motion to dismiss. *See* ECF Nos. 103 (motion), 128 (opposition), 138 (reply).

- The ASN Defendants filed a motion to dismiss. *See* ECF Nos. 104 (motion), 160 (opposition), 168 (reply).

- Kia filed a motion to dismiss. *See* ECF Nos. 113 (amended motion), 172 (opposition), 173 (reply).

- The Greystar Defendants filed a motion to dismiss and to strike. *See* ECF Nos. 148 (motion), 174 (opposition). =

Plaintiff has filed two additional ex parte applications relating to the pending motions. ECF Nos. 129, 166. Plaintiff has also filed a motion to disqualify the undersigned from presiding over the case. ECF No. 147.

## II.    LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a 12(b)(6) motion, a plaintiff must allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "*Iqbal* explained that '[t]wo working principles underlie' *Twombly*: (1) courts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;' and (2) only a complaint that states a plausible claim for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678-79).

For claims alleging "fraud or mistake," a heightened pleading standard applies. Federal Rule of Civil Procedure 9(b) requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "requires … an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . .so that they can defend against the charge and not just deny that they have done anything wrong.") (citation and internal quotation marks omitted).

Where a party proceeding pro se is also a licensed attorney, that party is not entitled to the liberal pleading standard that would otherwise apply to a pro se litigant. *Huffman v. Lindren*, 81 F.4th 1016, 1021 (9th Cir. 2023) ("There is a good reason that we afford leeway

to pro se parties …. That logic does not apply to practicing attorneys, nor should the grace extend to them.").

## III.    MOTIONS TO DISMISS

The first five of the SAC's fourteen claims are federal claims; the remaining nine are claims brought under California law. The Court begins by addressing the federal claims.

### A.    RICO Claims

Plaintiff alleges violations of three provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 28 U.S.C. § 1961 *et seq.*: Section 1962(c) (Claim One), 1962(b) (Claim Two), and 1962(d) (Claim Three).

***Substantive RICO offenses.*** Section 1962(c) states that it shall be unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity …." Another provision, Section 1962(b), states that it shall be unlawful "for any person through a pattern of racketeering activity … to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

"The elements of a civil RICO claim are as follows: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's "business or property."'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996)). Although Section 1962(c) and (b) have different language, both substantive offenses have parallel requirements. *See Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013) ("In order to state a claim for a substantive RICO violation under either 18 U.S.C. § 1962(b) or (c), a plaintiff must plead the following elements: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. Though sections 1962(b) and (c) have some distinct elements, the touchstone of both is that each individual

6

defendant must be shown to have personally participated in a pattern of racketeering activity.").

An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 945 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. Defendants in RICO actions must have had "some knowledge of the nature of the enterprise … to avoid an unjust association of the defendant[s] with the crimes of others," but the requirement of a common purpose may be met so long as the defendants were each "aware of the essential nature and scope of the enterprise and intended to participate in it." *United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015).

The conduct element of § 1962(c) requires that the defendant have "participate[d] in the operation or management of the enterprise itself," and that the defendant played "some part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993). In determining whether the conduct element has been satisfied, relevant questions include whether the defendant "occup[ies] a position in the chain of command," "knowingly implements [the enterprise's] decisions," or is "indispensable to achiev[ing] the enterprise's goal." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (holding that attorney's performance of services for alleged associated-in-fact enterprise was not sufficient to satisfy § 1962(c)'s conduct element).

A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. § 1961(5). Racketeering activity refers to the predicate acts listed in 18 U.S.C. § 1961. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985)

1  ("'[R]acketeering activity' consists of no more and no less than commission of a predicate

2  act."). Where a plaintiff alleges RICO claims against more than one defendant, the

3  "plaintiff must allege at least two predicate acts by *each* defendant." *In re WellPoint, Inc.,*

4  *Out-of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011). Proving

5  two predicate acts is a necessary condition for finding a violation, but may not be sufficient.

6  *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). To establish a "pattern of

7  racketeering activity," the predicate acts must be both "related" and "continuous." *Id.* at

8  238-39. "Predicate acts extending over a few weeks or months and threatening no future

9  criminal conduct do not satisfy this requirement: Congress was concerned in RICO with

10  long-term criminal conduct." *Id.* at 242.

11      ***RICO Conspiracy.*** A RICO conspiracy under § 1962(d) may be established by proof

12  of an agreement to commit a substantive violation of RICO. *Oki Semiconductor Co. v.*

13  *Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th Cir. 2002) ("It is the mere agreement to

14  violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO

15  violations ever occurred as a result of the conspiracy"). The conspirator must have been

16  "aware of the essential nature and scope of the enterprise and intended to participate in it."

17  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (citing *Baumer v. Pachl*, 8

18  F.3d 1341, 1346 (9th Cir. 1993)). Where a complaint fails to allege the requisite substantive

19  elements of a RICO claim, it also fails to properly allege a RICO conspiracy. *Turner v.*

20  *Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) ("Because appellants failed to allege the

21  requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants'

22  claim under 18 U.S.C. § 1962(d), which makes it 'unlawful for any person to conspire to

23  violate any of the provisions of subsections (a), (b), or (c) of this section,' also fails.");

24  *Malley v. San Jose Midtown Dev. LLC*, No. 5:20-cv-01925, 2022 WL 62915, at *7 (N.D.

25  Cal. Jan. 6, 2022); *Coast Dental Servs., LLC v. Ozder Dental Corp.*, No. LA CV 19-04066,

26  2020 WL 3840438, at *4 (C.D. Cal. Apr. 3, 2020).

27

28

Here, Plaintiff alleges predicate racketeering acts of mail and wire fraud. SAC ¶¶ 219, 222. Because these are theories of fraud, the heightened pleading standard under Rule 9(b) applies to Plaintiff's RICO claims. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (holding that Rule 9(b) "applies to civil RICO fraud claims").

Plaintiff's pleading falls short in several ways. First, Plaintiff fails to plead facts that plausibly establish an association-in-fact enterprise. The SAC first mentions an "enterprise" in referring to a "network of Armenians working for U.S. companies (Armenian Enterprise)." SAC ¶ 42. But later in Claim One, she alleges that all "DEFENDANTS are enterprises," and that "[t]hey also formed a common Enterprise with the purpose to damage PLAINTIFF'S reputation, to ruin her business and to intimidate and harass her on a constant basis," *id.* ¶ 218. Plaintiff therefore alleges that each Defendant is an enterprise, and that they all act together as an enterprise; and it is unclear whether the "Armenian enterprise" is the same or a still different enterprise. Plaintiff joins all 31 defendants in her RICO claims, suggesting she intended to allege a single enterprise; but her briefing indicates that she intended to plead "alternative enterprise[s]." *See, e.g.*, ECF No. 165 at 18. The SAC fails to define or specify the enterprise or enterprises that are the subject of her RICO claims in a manner that would allow the Court to conclude that she has stated a claim.

Plaintiff's definition of enterprise aside, she has also failed to allege facts that plausibly establish the purpose, relationships, or longevity needed to establish any association-in-fact enterprise. Instead, she appears to have grouped together 31 individuals or entities against whom she has various grievances, and alleged in a conclusory manner that they constitute a single enterprise whose unified purpose is to harm her. This is inadequate.

Plaintiff also fails to adequately allege that any defendant conducted the affairs of a RICO enterprise through a pattern of racketeering activity. Plaintiff relies on mail fraud

and wire fraud as predicate acts constituting the racketeering activity.[1] SAC ¶¶ 219, 222; *see also* ECF No. 165 at 19-20. "Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). "In the absence of direct evidence of intent, the party asserting fraud must first prove 'the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension,' and then, 'by examining the scheme itself' the court may infer a defendant's specific intent to defraud." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (quoting *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir.1984)).

The SAC makes frequent use of the labels "fraud," "fraudulent," or "intent to defraud," but falls short in identifying actual theories of mail or wire fraud, much less in plausibly supporting those theories with the allegation of specific facts. Her uses of the term "intent to defraud" are conclusory and serve as a repeated formula rather than as an elaboration of alleged facts. Such allegations are not properly pleaded. Additionally, many of those allegations relate to persons other than Defendants, or to actions allegedly taken by Defendants against persons other than Plaintiff.

The Court addresses those allegations in Claim One that may come closest to the mark. The SAC alleges that certain Defendants "were responsible for giving PLAINTIFF accurate and real referrals/leads, however, instead, they did everything to take her money and damage her business by defrauding her." *Id.* ¶ 219. Here, Plaintiff may be attempting to allege (for example) that one or more of Defendants made some representation to her about referral leads that it was selling her; that those leads were false; that the person

---

[1]    The SAC also refers to other federal crimes that as pleaded are not predicate acts under 18 U.S.C. § 1961. SAC ¶ 222.

making that representation knew that the leads were false; that that person intended to deceive her into paying for those leads; and that mail or wires were used in connection with that scheme. Neither Claim One nor the general allegations in the body of the SAC relating to referrals, *see* SAC ¶ 144 *et seq.*, disclose whether this is her theory. If Plaintiff were making such an allegation as to one predicate act of mail or wire fraud, she would need to specify in non-conclusory terms "the who, what, when, where, and how" of the underlying facts. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

The SAC also alleges that certain Defendants "manipulated her account by using wire and with the intent to defraud placing there fraudulent amounts PLAINTIFF does not owe." SAC ¶ 223. Here, Plaintiff may be attempting to allege (for example) that one or more Defendants sent her a bill containing representations about amounts that she owed or about services performed; that those representations were false; that the person making the representations knew that they were false; that that person intended to deceive her into believing those representations and paying the bill; and that mail or wires were used in connection with that scheme. Again, neither Claim One nor the general allegations in the body of the SAC disclose whether this is her theory. If Plaintiff were making such an allegation, she would need to allege with sufficient particularity the facts underlying such transactions.[2]

Plaintiff's briefing argues that she adequately pleaded mail and wire fraud, and cites numerous paragraphs in the SAC, but her briefing is even less specific than the SAC itself as to her actual theories of mail or wire fraud. *See, e.g.*, ECF No. 165 at 19-20.

---

[2]    Claim Two alleges that certain Defendants "by using wire placed false and misleading information about PLAINTIFF's business to acquire control over her business and ruin it, and in fact achieved it." SAC ¶ 231. This allegation is not sufficiently specific to allow the Court to evaluate it further. It does not contain a non-conclusory factual allegation that plausibly establishes a predicate act.

Plaintiff fails to allege facts that plausibly establish a single act of racketeering, much less a pattern of racketeering activity, as to any Defendant. She fails to state a claim for a substantive violation of RICO. *See Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008) (affirming district court's dismissal of a complaint under Rule 9(b) where the alleged predicate acts of plaintiffs' RICO claim were not pleaded with particularity). In addition to failing to state a claim for a substantive RICO violation, Plaintiff fails to adequately allege a conspiracy to commit such a substantive RICO violation; she goes no further in establishing a conspiracy than she does in establishing an association-in-fact enterprise. Accordingly, the Court dismisses Plaintiff's RICO claims.

## B.    Antitrust Claims

Plaintiff's fourth claim is captioned "conspiracy in restraint of trade or commerce in violation of Section 1 et seq. of the Sherman & Clayton Act 15 U.S.C." SAC at p. 52. Plaintiff alleges, "Sherman Act, codified as Title 15 of the United States Code, prohibits 'every contract, combination, or conspiracy in restraint of trade,' and 'any monopolization, attempted monopolization, or conspiracy or combination to monopolize.'" *Id.* ¶ 246. Plaintiff further alleges, "Section 7 of the Clayton Act, codified as Title 15 of the United States Code, prohibits mergers and acquisitions where the effect 'may be substantially to lessen competition, or to tend to create a monopoly.' Clayton Act also bans certain discriminatory prices, services, and allowances in dealings between merchants." *Id.* ¶ 246.

Plaintiff's two quotations from the Sherman Act are taken from, respectively, 15 U.S.C. § 1 and 15 U.S.C. § 2. These two sections provide different causes of action. "[A] cause of action under 15 U.S.C. § 1 consists of the following three elements: (1) an agreement, conspiracy, or combination between two or more entities; (2) an unreasonable restraint of trade under either a per se or rule of reason analysis; and (3) the restraint affected interstate commerce." *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996). A Section 2 conspiracy to monopolize claim has the following elements: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance

of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assoc., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).[3]

"For a successful antitrust conspiracy claim under either Section 1 or Section 2 of the Sherman Act, a plaintiff must plead 'allegations plausibly suggesting (not merely consistent with) agreement,' so there is 'enough factual matter (taken as true) to suggest that an [unlawful] agreement was made.'" *D'Augusta v. Amer. Petroleum Inst.*, 117 F.4th 1094, 1104 (9th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)). "[T]o support such a plausible inference, a plaintiff must plead "who, did what, to whom (or with whom), where, and when.'" *D'Augusta*, 117 F.4th at 1104 (quoting *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015)).

Here, Plaintiff alleges that defendant OCBA violated antitrust laws "by establishing the rules requiring the lawyers to have Orange County residence or to have a main business office in the Orange County to become a member of the referral service." SAC ¶ 248. Plaintiff's Claim Four does not contain specific allegations against any other defendant than OCBA, but states that "[c]onspiracy among DEFENDANTS to exclude PLAINTIFF from the market is clearly a restraint on trade," *id.* ¶ 248, and that "DEFENDANTS' actions caused significant damage to the PLAINTIFF's business," *id.* ¶ 249.

Plaintiff fails to plead facts to plausibly establish the elements of either Sherman Act claim. Her allegation that all Defendants conspired against her is conclusory. She refers only to a single defendant, OCBA, and its eligibility rules for its lawyer referral service. She does not explicitly allege that those rules constitute an unreasonable restraint of trade, much less plead facts plausibly establishing that element. She does not allege any injury to her in connection with those rules; instead, her pleading reflects that she was not excluded

---

[3]    Plaintiff's quotation from the Clayton Act is taken from 15 U.S.C. § 18, entitled "acquisition by one corporation of stock of another." The Court cannot discern any relationship between that statute and an adequately pleaded claim.

but in fact, became a member of that referral service and received client referrals through that service. SAC ¶¶ 148-49. The fact that none of those individuals referred ultimately chose to retain her—that "all those referrals ended up with returning no real case to the PLAINTIFF," *id.* ¶ 149—does not somehow render OCBA's eligibility rules unlawful. Her allegations do not come close to articulating a theory of monopolization, much less pleading facts in support.

The Court dismisses Claim Four for failure to state a claim.

## C.    Public Accommodation Claim

Plaintiff's fifth claim is brought under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. That statute provides: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

To establish a prima facie case under § 2000(a), a plaintiff must show: (1) she is a member of a protected class, (2) she attempted to exercise the right to full benefits and enjoyment of a place of public accommodation, (3) she was denied those benefits and enjoyment, and (4) such services were available to similarly-situated persons outside the protected class who received full benefits or enjoyment, or were treated better. *McKinnon v. YUM! Brands, Inc.*, No. 1:15-cv-00286, 2017 WL 3659166, at *3 (D. Idaho Aug. 24, 2017) (citing *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138 (9th Cir. 2006)).

The statute specifies those establishments that constitute places of public accommodation. 42 U.S.C. § 2000a(b). These include, for example, hotels, restaurants, and theaters. *Id.* Plaintiff alleges that Defendants were "places of public accommodation" to the extent that they provide services to the public generally, or more specifically to licensed attorneys. SAC ¶¶ 254-57. However, the SAC has not alleged facts that would establish that any Defendant is a "place [] of public accommodation" as defined by the statute under

which she is suing. "[C]ourts have interpreted the definition of places of public accommodation narrowly, generally adhering to the three categories outlined in the statute—lodgings, restaurants, and entertainment facilities[.]" *Touma v. Gen. Counsel of Regents*, No. SACV 17-1132-VBF(KS), 2017 WL 10541005, at *12 n.5 (C.D. Cal. Dec. 13, 2017); *see also Dragonas v. Macerich*, No. CV-20-01648-PHX-MTL, 2021 WL 363852, at *4 (D. Ariz. Feb. 3, 2021) ("[c]ourts have consistently declined to expand this definition to include facilities not specifically listed"; holding that a shopping mall was not a place of public accommodation under Title II). The SAC does not plead facts that would place any defendant in any of these categories. The SAC alleges that Defendants are "open to public," or in the case of bar associations or legal service providers "are open to the lawyers to provide them with the referrals/leads if they satisfy certain standards," SAC ¶ 255, but the fact of offering a service to the public or to some segment of the public does not amount to being a "place of public accommodation." Plaintiff's briefing argues that bar associations in general are open to the public and provide food and drinks at their events [ECF No. 164 at 31; ECF No. 165 at 26], but even if this fact had been pleaded it would be insufficient to establish that any Defendant is a place of public accommodation.

In addition to failing to allege facts that plausibly establish that Defendants are places of public accommodation, Plaintiff has failed to allege facts establishing that she attempted to exercise the right to full benefits and enjoyment of such places of public accommodation; that she was denied those benefits; or that such services were available to similarly-situated persons outside the protected class who received full benefits or enjoyment, or were treated better. The Court dismisses Claim Five for failure to state a claim.

The Court therefore grants the first set of motions to dismiss, filed by the Google Defendants and the OCBA Defendants, as to the SAC's federal claims.

//

//

//

15

### D.    State Law Claims and Supplemental Jurisdiction

Plaintiff brings the remainder of her claims under California law. As the basis for subject matter jurisdiction over these state-law claims, the SAC invokes "diversity jurisdiction as one or several of the DEFENDANTS are residents of different states." SAC ¶ 35; *see also* Complaint ¶ 24. However, defendants residing in different states from each other is not the standard for diversity jurisdiction under 28 U.S.C. § 1332. That statute provides, in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between …
>
> (2) citizens of a State and citizens or subjects of a foreign state, *except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State.*

28 U.S.C. § 1332(a) (emphasis added). Plaintiff asserts that she is a citizen of Azerbaijan, has been admitted to the United States as a lawful permanent resident, and resides in California. SAC ¶ 37 ("PLAINTIFF is a citizen of the Azerbaijan Republic, who is currently a green card holder and resides in San Diego, California."); ¶ 38 ("PLAINTIFF got her green card in 2016 … and moved to the United States on a permanent basis in 2021, after pandemic."). Plaintiff's allegations reflect that at least one defendant is a citizen of California. *See, e.g.*, SAC ¶ 6 (alleging that "DEFENDANT YELP Inc., is a Delaware Stock Corporation with its headquarters in San Francisco, California."); ¶ 15 (alleging that "DEFENDANT LACBA, is a Nonprofit Mutual Benefit Corporation organized under the laws of the State of California"); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … where it has its principal place of business …."). Accordingly, the Court does not have diversity jurisdiction over Plaintiff's state-law claims.

Instead, the Court's jurisdiction over Plaintiff's state-law claims is supplemental, based on the relationship between those claims and Plaintiff's federal claims. *See* 28 U.S.C. § 1367(a). The supplemental jurisdiction statute provides that a court may decline to exercise such supplemental jurisdiction where, as here, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A trial court's decision to decline or retain supplemental jurisdiction is informed by considerations of economy, convenience, fairness, and comity. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). "When all federal claims have been dismissed before trial, the interests promoted by supplemental jurisdiction are no longer present, and a court should decline to exercise jurisdiction over state-law claims." *Souch v. Howard*, 27 F. App'x 793, 795 (9th Cir. 2001).  As concerns the exercise of supplemental jurisdiction, this case is not unusual, the majority of Plaintiff's claims are state claims, and the case is still only at the pleading stage. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are dismissed without prejudice.

All claims in the SAC are therefore dismissed.

### E.    Remaining Defense Motions

The Court recognizes that the first set of moving parties, the Google Defendants and the OCBA Defendants, have also moved to dismiss Plaintiff's state claims. The Court also recognizes that other Defendants have filed motions to dismiss or to strike. In light of the dismissal of the SAC, the Court **DENIES AS MOOT**, and without prejudice, the remaining motions to dismiss or strike.  *See, e.g.*, *Mirkooshesh v. Elie*, No. 22-cv-07615-AMO, 2024 WL 1055995, at *4 (N.D. Cal. Mar. 11, 2024) (denying without prejudice anti-SLAPP motions directed to state claims, "[b]ecause the Court has declined supplemental jurisdiction over the state law claims") (citations omitted).

Defendant Kia's motion to dismiss includes a request for sanctions pursuant to Federal Rule of Civil Procedure 11. ECF No. 113. That request does not comply with the procedural requirements of Rule 11(c)(2), which provides: "A motion for sanctions must

be made separately from any other motion …. The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper [or] claim … is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Kia's request for sanctions is not made separately from its motion to dismiss, and neither Kia's motion nor the supporting declaration establishes the required pre-filing service of the motion. Kia's request for sanctions is therefore **DENIED**. The Court declines to award attorneys' fees in connection with the motion.

The various requests for judicial notice made by Defendants are **DENIED AS MOOT**. Plaintiff's requests for judicial notice seek to offer material outside of the SAC that is not relevant to and does not remedy the deficiencies the Court has identified in the SAC. ECF Nos. 128-4, 145-3, 155-2, 156-2, 160-2, 164-2, 165-2, 172-2. Those requests are **DENIED**.

### F.    Leave to Amend

When a court dismisses a complaint, it must determine whether to grant leave to amend. "A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)). Leave to amend "is properly denied . . .if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

The Parties dispute whether Plaintiff should be granted leave to amend. The pleading that the Court is dismissing is already Plaintiff's third. Although the Court has identified numerous deficiencies in the SAC, the Court cannot at this time rule out that she could cure the deficiencies. The Court therefore exercises its discretion to grant Plaintiff leave to amend Claims One through Five to address the deficiencies described in this order.

The leave to amend granted herein is limited. Plaintiff's briefing indicates her intent to add further claims and defendants. ECF No. 145 at 39. The problem with the SAC, however, is not a lack of claims or defendants—instead, it is a failure to adequately plead a single cognizable federal claim against any one of the defendants she has sued. In granting Plaintiff leave to amend her five federal claims, the Court is not granting her leave to add new federal or state claims, or new defendants. If Plaintiff seeks to make amendments beyond those authorized herein, she must file a separately noticed motion to amend. The Court does not anticipate granting such a motion to amend in advance of ruling on any motions directed to the third amended complaint that Plaintiff files. That is, before addressing any new claims or defendants that Plaintiff might in the future seek to add, the Court intends to evaluate whether Plaintiff's third amended complaint cures the deficiencies in the claims she has already brought.

Within **fourteen (14) days** of the date of this order, Plaintiff may file a third amended complaint consistent within the limitations specified above. If the third amended complaint exceeds the leave granted herein, for example by adding new claims or defendants, the Court will strike it. Additionally, if Plaintiff files a third amended complaint, she must also file a redline version identifying the changes relative to the SAC. *See* CivLR 15.1(c).[4] Failure to timely file a complaint third amended complaint will result in dismissal of the action.

The Court is dismissing Plaintiff's state claims pursuant to 28 U.S.C. § 1367(c)(3), based on its dismissal of all Plaintiff's federal claims. If Plaintiff seeks to pursue those state claims in this Court, she must re-allege such state claims in her third amended complaint. If the Court determines that Plaintiff states a federal claim in her third amended complaint, the Court will have supplemental jurisdiction over the state claims and will set a separate

---

[4]    A party that files a motion to amend a pleading must likewise submit such a redline. *See* CivLR 15.1(b).

briefing schedule for any motions to dismiss or strike these claims. In other words, motions to dismiss or to strike directed at the third amended complaint should, unless and until further briefing is directed, address only the federal claims in the third amended complaint.

## IV.    ANCILLARY MOTIONS

Plaintiff has filed two ex parte applications relating to the motions to dismiss addressed above. In the first, she requests that the Court deem the filing date of her opposition [ECF No. 128] to the Yelp Defendants' motion to dismiss to be December 23, 2024 (rather than December 24, 2024), due to technical problems she encountered in trying to timely file the motion. In the second, she requests that the Court deem the filing date of her opposition [ECF No. 165] to the OCBA Defendants' motion to dismiss to be January 27, 2025 (rather than January 28, 2025). Neither request is opposed by Defendants. Accordingly, Plaintiff's two ex parte applications relating to filing dates are **GRANTED**.

## V.    MOTION TO DISQUALIFY

Plaintiff has moved to disqualify the undersigned. ECF No. 147. The motion is based in part on the Court's rulings at the outset of the case denying Plaintiff's IFP request. *Id.* at 3. She also faults the Court for denying without prejudice her motion for leave to electronically file, which the Court thereafter granted when she re-filed the motion correcting the identified deficiencies. *See* ECF Nos. 11 (denying motion without prejudice for failing to meet requirements in ECF Manual; quoting relevant language from ECF Manual), 52 (granting Plaintiff's renewed request to e-file). She further faults a ruling of the Court extending her time to file oppositions, but declining the entire amount of additional time she requested. ECF No. 146. She also complains about technical problems she has encountered with the Court's e-filing system, and about her interactions with staff from the Clerk's Office and the PACER customer service line. ECF No. 147 at 3-4. Plaintiff also appears to take issue with the fact that the Court declined to order an "investigation" into problems she had with her PACER account. ECF No. 89.

Plaintiff's disqualification motion alleges that the Court is biased, cooperated with Defendants in obstructing justice, and is seeking political advantage in ruling against Plaintiff. *Id.* at 2. She describes the Court as being "on errands for the Enterprise," apparently referring to a criminal RICO enterprise. *Id.* at 8-9. She states her intention to sue the undersigned. *Id.* at 9; ECF No. 147-1 at p. 6.

Section 455(a) of Title 28 of the U.S. Code instructs that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "[R]ecusal is appropriate where 'a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) (quoting *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993)). Judges should recuse only when there is good reason for doing so: "[A] judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (citation and internal quotation marks omitted).

The Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). "Almost invariably, they are proper grounds for appeal, not for recusal." *Id.* Here, as far as the Court can discern, the principal basis for Plaintiff's motion to disqualify are those rulings of the Court that displeased her. Neither Plaintiff's technical problems nor her dissatisfaction with judiciary staff are matters relevant to bias. The Court does not see a basis for recusal, and Plaintiff's motion is **DENIED**.

## VI.    FUTURE MOTIONS AND OTHER FILINGS

The Court reminds Plaintiff, who is an attorney licensed in California and a member of the Bar of this Court, of the requirements for filing motions in this Court. All counsel are expected to be familiar with and follow the Local Rules of this Court, as well as the undersigned's Pretrial Civil Procedures, all of which are available on the Court's website.

These requirements include, for example, identifying a hearing date for noticed motions, such that the opposing party can compute the time in which an opposition brief is due without the need for a further scheduling order of the Court. *See* CivLR 7.1(b) (motion hearing dates), 7.1(e) (scheduling of briefing); Chambers Civ. Proc. III (noticed motions). Filings must be in 14-point font. Civ.LR 5.1(a). Page limits apply. CivLR 7.1(h). Furthermore, the Court advises Plaintiff that an ex parte application may be filed instead of a noticed motion only when expressly authorized by another rule or when there is insufficient time to hear a regularly noticed motion; and in those circumstances, the ex parte application must comply with the applicable Civil Local Rules and the undersigned's Pretrial Civil Procedures.

Plaintiff's filings to date have consistently failed to comply with the applicable rules, but the Court has accepted them nonetheless—even without a request from Plaintiff to excuse the non-compliance. Failure to follow applicable rules or orders in the future may result in filings being stricken.

The Court also reminds Plaintiff that as a member of the Bar of this Court, she is subject to its rules regarding civility and professionalism. *See, e.g.*, CivLR 2.1(a)(2)(h) ("We expect lawyers to honor and maintain the integrity of our justice system, including by not impugning the integrity of its proceedings, or its members.").

## VII.  CONCLUSION

For the foregoing reasons:

1. The motions to dismiss filed by the Google Defendants [ECF No. 97] and the OCBA Defendants [ECF No. 98] are **GRANTED** as to the federal claims in the Second Amended Complaint.

2. The Court declines to exercise supplemental jurisdiction over the state claims in the Second Amended Complaint. Those claims are **DISMISSED** without prejudice.

3. The Second Amended Complaint is **DISMISSED**.

4.      Plaintiff is **GRANTED** leave to amend only, as follows: Within ***fourteen (14) days*** of the date of this order, Plaintiff may file a third amended complaint consistent within the limitations specified above. If the third amended complaint exceeds the leave granted herein, for example by adding new claims or defendants, the Court will strike it. Failure to timely file a conforming third amended complaint will result in dismissal of the action.

5.      Defendant Kia's request for sanctions [ECF No. 113] is **DENIED**. No fees are awarded.

5.      The remaining motions to dismiss [ECF Nos. 100, 101, 102, 103, 104, 113, 148] are **DENIED AS MOOT** and without prejudice.

6.      Plaintiff's ex parte applications relating to the filing dates of opposition briefs [ECF Nos. 129, 166] are **GRANTED**.

7.      Plaintiff's motion to disqualify [ECF No. 147] is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 27, 2025

_____
Hon. Robert S. Huie
United States District Judge